**GREENBERG TRAURIG, LLP**
Hal M. Hirsch (HH 0417)
David Jay (DJ 7221)
200 Park Avenue
Florham Park, New Jersey  07932
Phone: (973) 360-7900
Fax:     (973) 301-8410

*Attorneys for Joseph P. LaSala and Fred S. Zeidman,*
*as Co-Trustees of the AremisSoft Liquidating Trust, Plaintiffs*

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH P. LASALA and FRED S. ZEIDMAN, as CO-TRUSTEES of the AREMISSOFT CORPORATION LIQUIDATING TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>MARFIN POPULAR BANK PUBLIC COMPANY, LTD.,<br><br>Defendant. | Civil Action No.<br>09-CV-00968 (JAP) |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER REQUIRING DEFENDANT TO RETAIN AND PRESERVE DOCUMENTS, RECORDS AND DATA

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................ ii, iii

I.   PRELIMINARY STATEMENT ............................................................1

II.  STATEMENT OF RELEVANT FACTS

Laiki and AremisSoft ................................................................2

AremisSoft ...............................................................................3

The AremisSoft Fraud ..............................................................4

The AremisSoft Trust ...............................................................6

The Trust's Attempt to Obtain Documents and Data From Laiki ...........7


ARGUMENT

I.   THIS COURT SHOULD ORDER LAIKI BANK TO
     IMMEDIATELY RETAIN AND PRESERVE DOCUMENTS,
     RECORDS AND DATA PERTAINING TO KYPRIANOU,
     POYIADJIS, AND THEIR AFFILIATED ENTITIES
     AND ANY FACTS AT ISSUE IN THIS CASE ......................................13

II   LAIKI CANNOT RELY ON FOREIGN LAW TO
     REFUSE PRODUCTION OF DOCUMENTS ..........................................17

CONCLUSION ........................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alfadda v. Fenn,*
 149 F.R.D. 28 (S.D.N.Y. 1993) ............................................................... 18

*Capricorn Power Co., Inc. v. Siemans Westinghouse Power Corp.,*
 220 F.R.D. 429 (W.D.Pa. 2004) ............................................................... 13

*Commodities Futures Trading Commission v. FX Trading, LLC,*
 2005 WL 3801597 (D.N.J. Dec. 5, 2005) .......................................... 14, 15

*Cortese v. Radian Group Inc., SA*
 2008 WL 269473 ....................................................................................... 14

*Dexia Credit Local v. Rogan,*
 231 F.R.D. 538 (N.D.Ill. 2004) .......................................................... 17, 18

*FTC v. Stout,*
 1999 WL 34833240 ................................................................................... 14

*Kronisch v. United States,*
 150 F.3d 112 (2d Cir. 1998) ..................................................................... 17

*Marsellis-Warner Corp. v. Rabens,*
 51 F.Supp.2d 508 (D.N.J. 1999) ............................................................... 14

*Micron Technology, Inc. v. Rambus, Inc.,*
 255 F.R.D. 135 (D.Del. 2009) ................................................................... 16

*Samsung Electronics Co, Ltd. v. Rambus, Inc.,*
 439 F.Supp.2d 524 (E.D. Va. 2006) .......................................................... 17

*Treppel v. Biovail Corp.,*
 233 F.R.D. 363 (S.D.N.Y. 2006) .............................................................. 14

*U.S. Commodity Futures Trading Commission v. Efrosman,*
 2005 WL 3832923, at *1 (S.D.N.Y. Sept. 30, 2005) ................................ 14

*Zubalake v. UBS Warburg LLC,*
   229 F.R.D. 422 (S.D.N.Y. 2004) ............................................................. 16

**Federal Statutes**

11 U.S.C. § 101 .................................................................................. 6

7 U.S.C. §13a-1 ................................................................................. 14

# I.   PRELIMINARY STATEMENT

Joseph P. LaSala and Fred S. Zeidman, as Co-Trustees (the "Co-Trustees" or "Plaintiffs") of the AremisSoft Liquidating Trust (the "AremisSoft Trust" or "the Trust"), respectfully bring this motion for an order requiring Defendant Marfin Popular Bank Public Company, Ltd., formerly Cyprus Popular Bank, a.k.a. Laiki Bank, doing business in Cyprus and England, among other places, as Marfin Laiki Bank ("Laiki" or "the Bank"), to preserve documents and data relevant to the AremisSoft Trust's action against Laiki for damages, and to transfer those documents and data to Laiki's United States counsel to be held until the discovery phase of this case.  This relief is required and is appropriate now because of Laiki's demonstrated history of refusing to comply with requests for documents and information by the AremisSoft Trust.  Laiki's refusal even extended to the Trust's requests for banking documents concerning AremisSoft Corporation and its affiliates ("AremisSoft" or "the Company"), even though the Trust stands in the shoes of AremisSoft.  In short, Laiki has resisted due demand and legal proceedings to obtain information needed to ascertain the full extent of Laiki's activities and connection to the massive financial fraud perpetrated on AremisSoft.

## II.   STATEMENT OF RELEVANT FACTS

### LAIKI AND AREMISSOFT

As is fully set forth in the Complaint filed in this matter, from 1999 through 2002 AremisSoft's former chairman and CEO Lycourgos Kyprianou ("Kyprianou") opened accounts at Laiki in the name of AremisSoft and the names of several of its subsidiaries and divisions.  Laiki knew that apart from the AremisSoft accounts, Kyprianou and his family also maintained personal accounts at the Bank. Kyprianou also maintained accounts at Laiki of entities he owned or controlled, or over which he had signatory authority.  These accounts included Aremis Holdings Ltd. ("Aremis Holdings") and Aremis Technology Ventures Ltd. ("Aremis Technology") in which Kyprianou was the sole director, officer and shareholder. Aremis Holdings and Aremis Technology maintained their principal place of business in Nicosia, Cyprus.  Laiki knew or had reason to know that the entities' principal business was managing Kyprianou's investments and that Kyprianou used Aremis Holdings and Aremis Technology as holding companies for shares and options of AremisSoft stock.  (Compl. ¶ 37).[1]

The AremisSoft accounts at Laiki from time to time maintained balances in the millions of dollars. Notwithstanding the obligation of Laiki to know its customer, exercise due care and diligence and to investigate transactions that appear irregular, involve large sums of money or involve suspicious circumstances, Laiki

---

[1] Citations to "Compl." refer to the Complaint filed in this action on March 4, 2009 asserting claims against Laiki Bank for aiding and abetting breaches of fiduciary duties, civil conspiracy, and breach of contract.

permitted Kyprianou to transfer funds for purposes which it knew or had reason to know were unrelated to any legitimate business activities of AremisSoft. (Compl. ¶ 40).

Laiki facilitated, aided and abetted and conspired with Kyprianou and AremisSoft co-CEO Roys Poyiadjis ("Poyiadjis") by serving as a vehicle to loot Company assets and launder millions of dollars in tainted proceeds from their massive international fraud. (Compl. ¶ 2).   In gross violation of its legal and contractual duties to AremisSoft as a depositor, Laiki, knowingly or acting with willful blindness, allowed Kyprianou and Poyiadjis to engage in transactions which converted millions of dollars from AremisSoft accounts to accounts used for their personal benefit, and further allowed them to launder millions of dollars of the proceeds of their fraud.  By reason thereof, AremisSoft sustained millions of dollars in damages. (Compl. ¶ 4).

**AREMISSOFT**

From 1998 to 2001 AremisSoft, a Delaware Corporation with a principal place of business in New Jersey and worldwide operations in the United States, Cyprus, the United Kingdom, India and Eastern Europe,  purported to develop and sell computer software technology particularly for the healthcare, hospitality, construction, and manufacturing industries.  AremisSoft's stock was traded on the NASDAQ exchange.  Kyprianou was the founder of AremisSoft and served from its inception as the Chairman of the Board of Directors and Chief Executive Officer

from 1997 to 2000, and co-CEO with Poyiadjis from February 2001 to July 31, 2001, at which time Kyprianou resigned from the Company. (Comp. ¶ 9).

## THE AREMISSOFT FRAUD

In May 2001 the United States Attorney's office for the Southern District of New York and the Securities and Exchange Commission ("SEC") began an intense investigation into AremisSoft after an article appeared in the *New York Times* reporting that the true value of an AremisSoft contract with the Bulgarian government was less than $4,000,000, instead of the $37,500,000 reported by the Company. At the same time, other international news organizations began reporting that Kyprianou and Poyiadjis fraudulently misrepresented the value and profitability of AremisSoft. At least one class action lawsuit had been filed against AremisSoft and its directors by May 24, 2001. (Compl. ¶ 24).

The investigation revealed that from about 1998 through July 2001, Kyprianou and Poyiadjis and others caused the Company to issue false and fraudulent public statements and regulatory filings representing to the investing public and regulators that AremisSoft's business, revenues, and profits were experiencing rapid growth with annual revenues exceeding $100,000,000. None of this, however, was true. The effect of these fraudulent misrepresentations was that the perceived value and profitability of AremisSoft was far higher than its actual value and profitability. As a result, the value of AremisSoft shares traded on the NASDAQ National Market were artificially inflated. Kyprianou, Poyiadjis, and

others secretly and illegally sold their AremisSoft shares at inflated prices to investors who were ignorant of the scheme and believed the price paid to be fair and reasonable.  (Compl. ¶¶ 24, 26).

To conceal their illegal conduct, Kyprianou and Poyiadjis engaged in a sophisticated money laundering scheme, employing numerous entities to hold and sell their AremisSoft stock, and numerous bank accounts to hold and transfer the proceeds of their scheme.  Kyprianou could not have succeeded without the knowing and substantial assistance provided by other individuals, entities, and financial institutions, and in this particular case, Laiki.  (Compl. ¶ 27).

When the truth about AremisSoft's financial condition and business was revealed, the price of AremisSoft's publicly held shares plummeted. The NASDAQ halted trading in AremisSoft on July 30, 2001. By the time the fraud was uncovered, the investing public had sustained losses of approximately $500,000,000, plus interest.  During this period,  news of these events, including accusations of fraud and commencement of numerous class action law suits, was widespread and notorious.  (Compl. ¶¶ 29-30).

On December 19, 2001, the United States Attorney for the Southern District of New York obtained an indictment against Poyiadjis.  On June 24, 2002, a superseding indictment was returned against Kyprianou, Poyiadjis, and M.C. Mathews ("Mathews"), the top AremisSoft executive in India.  (Compl. ¶ 32).

5

**THE AREMISSOFT TRUST**

As a result of the massive fraud perpetrated by Kyprianou, Poyiadjis and others, on March 15, 2002, AremisSoft filed for protection from its creditors in the United States Bankruptcy Court for the District of New Jersey under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq.  As part of the bankruptcy, the AremisSoft Trust, a Delaware trust, was formed pursuant to three Orders entered by this Court as follows:  (i) July 1, 2002 Order (the "confirmation Order") confirming the First Amended Joint Plan of Reorganization of AremisSoft (the "Plan"); (ii) August 1, 2002 Order approving a Class Action Settlement with AremisSoft; and (iii) August 16, 2002 Order entered nunc pro tunc to August 1, 2002, correcting the Order and Final Judgment previously entered August 1, 2002, filed in a Chapter 11 case captioned In re AremisSoft Corp., Bankruptcy Case No. 02-32621 (D.N.J.).  Under the terms of the Plan as approved by this Court in the Confirmation Order, any and all allowed claims of the Company which arose prior to the filing were assigned to and for the benefit of the AremisSoft Trust.  The AremisSoft Trust stands in the shoes of the Company, and is the representative of the Company and its shareholders who are beneficiaries of the AremisSoft Trust. (Compl. ¶ 5).

## THE TRUST'S ATTEMPT TO OBTAIN DOCUMENTS AND DATA FROM LAIKI

The Trust's investigation of Laiki's activities regarding AremisSoft and Kyprianou have been frustrated by Laiki's repeated denial of requests for information and documents. At every turn, Laiki either failed to respond to requests for information or begrudgingly produced only scant information and only after being ordered to do so as a result of an order obtained by the Trust in England. In Cyprus, Laiki steadfastly refused to produce any documents concerning accounts maintained by Kyprianou, entities he owned or controlled, or even accounts maintained by AremisSoft and it affiliates, Laiki's former banking customer, notwithstanding that the Trust is the successor to AremisSoft.

Beginning in June 2005, the Trust, through its counsel in Cyprus, requested Laiki's Cyprus office to

> disclose and hand over copies of all documents whatsoever, which are or have been at any time in your possession, power or control, including but not limited to all debit and credit advices, wire transfers, bank statements, correspondence, emails, signature cards, account opening documents, notes of meetings and of other oral communications, resolutions, credit or loan agreements, other agreements, etc. pertaining to the aforesaid AremisSoft Corporation and any and all of its affiliates, including but not limited to Aremis (Holdings) Ltd including but not limited to the following accounts with your Bank, namely the Account of AremisSoft Corporation 106-33-000750, and the account of Aremis (Holdings) Ltd 189-245-90011.

*See Ex. A to the annexed Certification of Hal M. Hirsch, Esq.("Hirsch Cert.).* Laiki failed to produce the requested documents even though it concerned AremisSoft's own banking information.

In October 2005, the Trust obtained an *ex parte* freezing order against Kyprianou in the High Court of Justice, Queens Bench Division, Commercial Court, United Kingdom. The Court also ordered Laiki to produce to the Trust documents relating to accounts held by Kyprianou "solely or jointly with any other person(s)" (the "UK Order"). *Ex. B to the Hirsch Cert.* at ¶ 4.1. In response, Laiki produced mainly documents concerning accounts controlled by Kyprianou and his family members in the London branch of Laiki but did not include data relating to AremisSoft. Laiki further claimed that it does "not hold within this jurisdiction details of linked accounts elsewhere in the world." *Ex. C to the Hirsch Cert.*

In November 2005, the Trust obtained a freeze order in the British Virgin Islands ("BVI") against certain BVI entities owned or controlled by Kyprianou, including Aremis Holdings and Aremis Technology, and enjoined these entities from dissipating assets up to $500 million. The Order also appointed a Receiver to take control of these entities (the "BVI Order). *Ex. D. to the Hirsch Cert.* at ¶ 2.1, 3.1 et seq. Because Aremis Holdings and Aremis Technology maintained accounts at Laiki in Cyprus, the Trust's Cypriot counsel served the Bank with a copy of the Order. Laiki again demonstrated its recalcitrance at providing documents and data

to the Trust by responding that "the terms of the order are not binding for any person outside the jurisdiction of the Court that made the order."    *Ex. E to the Hirsch Cert.*

In December 2005, the Trust filed an application in Cyprus against, among others, Laiki pursuant to a doctrine known as a Norwich Pharmacal doctrine.  The application sought discovery from the Bank concerning Kyprianou and AremisSoft.  As of that time, the Trust was not aware of the extent of Laiki's participation in the AremisSoft fraud.  In opposing the discovery application, Laiki makes a barrage of legal challenges.  In September 2006 the District Court of Cyprus denied the Trust's application, in part, on the ground that the Trust was proceeding in a civil action against Kyprianou in Cyprus for his role in the AremisSoft fraud and the Trust was limited to seeking disclosure orders in connection with that litigation.[2]

In 2008 the Trust again sought to obtain information from Laiki.   In connection with a settlement the Trust entered into with certain of Kyprianou's family members and entities he owned or controlled, Kyprianou's wife and daughter provided the Trust with broad Powers of Attorney ("POA's").   Pursuant to the POA's, Laiki was requested to provide the Trust with information and/or

---

[2] As the Court is aware, on July 21, 2005, the Trust commenced an action in Cyprus against Kyprianou, his wife Hermione Kyprianou, the auditor Pavlos Meletiou, and certain known business entities owned or controlled by Kyprianou, and simultaneously filed an application in Cyprus for a *Mareva* injunction and interim ancillary relief against assets owned and/or controlled by Kyprianou.  A preliminary *Mareva* order was granted which froze all assets belonging to Kyprianou and entities he owns and/or controls worldwide worth up to US $500,000,000.  The *Mareva* order became absolute in February 2006, and was unanimously affirmed by the Cyprus Supreme Court in February 2007.

documentation relating to assets owned or controlled by Kyprianou over which Kyprianou's wife and daughter had authority to act. *Ex. F to the Hirsch Cert.* On June 8, 2008, Laiki responded that "according to the Greek Bank Secrecy Law, Banks are not allowed to disclose any information on any account, to an authorized representative [sic]." *Ex. G to the Hirsch Cert.*

Lastly, in December 2008 the Trust deposed the former US representative of Laiki pursuant to a Rule 2004 Subpoena issued in connection with AremisSoft's post-bankruptcy proceeding pending in this Court. *Ex. H to the Hirsch Cert.* The deponent, Nicos Paphitis, at all relevant times was employed by Laiki in the United States first as a Representative Officer, and then as its Chief Representative Officer until on or about December 1, 2008. In response to questioning from the Trust's attorney, Mr. Paphitis testified that he was advised by Laiki as follows:

> Q.:   Now, when you received the subpoena that we served on you, did you contact anyone at Laiki Bank -
>
> A.:   Yes, I did.
>
> Q.:   - to let them know that you were served with a subpoena?
>
> A.:   I faxed them, too. I called them and faxed them the information. I told them, I'm no longer with the bank. They told me, you can go there as an individual. You are not allowed to give any informations [sic] from the Bank.
>
>     The have to -- whatever informations [sic] you give is -- it has to be on your personal level. You don't - the bank is not going to give -- I mean, and they told me I am no longer with them and I am not allowed to give any -- disclosure any information regarding the clients.

\*                 \*                 \*

They told me, Listen, you don't have any informations [sic]. Even if you have, you cannot give it to them because you are no longer an employee with the bank. They give you a subpoena on a personal level. You can go there as an individual. You can answer any questions that they -- on a personal level, they ask you, but whatever they ask you related to the bank, they have to come directly to us. That's their opinion; their legal opinion from Cyprus.

*Ex. I to the Hirsch Cert., pp. 19-20, 21-22*

As set forth in the Complaint, the record based on the evidence presently available to the Trust confirms that Laiki was complicit in the frauds Kyprianou and Poyiadjis perpetrated on AremisSoft whereby the Company and its shareholders were defrauded by not less than $70 million. During the subject time, records reflect that Laiki did not do any investigation, due diligence or raise any concern over suspicious activity, or otherwise seek to restrain Kyprianou and Poyiadjis from their felonious activities. Laiki did not do the basic inquiry of its account holder AremisSoft as to the propriety of the accounts maintained at the Bank. Laiki should have engaged in due diligence because, upon information and belief, it knew or had reason to believe that Kyprianou and Poyiadjis were engaged in fraudulent and unlawful activities, and it was intent upon assisting, enabling and permitting their behavior for Laiki's financial gain.

Indeed, Laiki was so intent upon maintaining a financial relationship with Kyprianou that in 2004 and 2005, even after criminal charges and civil actions were filed and published world wide and after a fugitive arrest warrant was pending internationally for Kyprianou, Laiki opened accounts for the Kyprianous at Laiki's London branch and enabled and permitted transfers of money between London and Cyprus. (Compl. ¶ 47).

The Trust has been able to piece this evidence together despite Laiki's repeated efforts to stymie the Trust's attempts to obtain documents and account data even as it pertains to AremisSoft's own accounts. Given the passage of time since Laiki's participation in the underlying fraud, and because its records appear to be located in, at least, the United States, Cyprus, the United Kingdom and Greece, an immediate order is justified to require Laiki to maintain and preserve documents and data relevant to this action. The Trust's request that these documents be marshaled, preserved and transferred to Laiki's United States counsel is not meant to gain an unfair advantage over Laiki. Rather the Trust seeks to create and maintain a level playing field whereby the Trust and Laiki can litigate this case with the knowledge that relevant and important evidence exists and is maintained by Laiki's counsel for safekeeping so that it may be produced at the appropriate time during the discovery phase of this litigation.

## ARGUMENT

**I.    THIS COURT SHOULD ORDER LAIKI BANK TO IMMEDIATELY RETAIN AND PRESERVE DOCUMENTS, RECORDS AND DATA PERTAINING TO KYPRIANOU, POYIADJIS, AND THEIR AFFILIATED ENTITIES AND ANY FACTS AT ISSUE IN THIS CASE**

Laiki knew or was willfully blind to the fact that Kyprianou and Poyiadjis had committed numerous breaches of fiduciary duty and, nevertheless, provided substantial assistance and encouragement to Kyprianou's and Poyiadjis' scheme to misrepresent the true financial nature of AremisSoft, profit from the sale of shares of AremisSoft at artificially inflated prices, and then conceal their ill-gotten proceeds by laundering the proceeds through accounts at Laiki.   Laiki further aided and abetted Kyprianou and Poyiadjis' breaches of fiduciary duty by enabling and permitting Kyprianou and Poyiadjis to launder millions of U.S. dollars which were the proceeds of their insider trading activities.   (Compl. ¶ 50-51).   Given Laiki's unlawful conduct, it is imperative that the Court act swiftly to ensure that the crucial evidence in this case is retained, preserved and produced to the Bank's United States counsel for safekeeping.

Although some courts employ a three part balancing test to evaluate the need for a preservation order, *see, e.g., Capricorn Power Co., Inc. v. Siemans Westinghouse Power Corp.*, 220 F.R.D. 429, 433-34 (W.D.Pa. 2004) (balancing the following factors: (1) concern for maintenance of integrity of evidence in absence of an order; (2) irreparable harm to party seeking preservation in absence of the order;

13

and (3) capability of party to maintain the evidence); *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 370-71 (S.D.N.Y. 2006) (balancing: 1) the danger of destruction of the documents to be preserved; 2) the importance of at-risk or destroyed documents; and 3) the burden preservation would place on the parties), other courts readily enter preservation orders. *See, e.g., Cortese v. Radian Group Inc., SA,* No. 07-3375, 2008 WL 269473, *8,   (E.D.Pa., Jan 30, 2008) (entering order during the pendency of litigation that parties shall take all reasonable steps to preserve all documents within their possession, custody or control relevant to the subject matter of the litigation); *FTC v. Stout*, No. 99-5705, 1999 WL 34833240,  (D.N.J. Dec. 8, 1999) (good cause found for entering preservation order); *Marsellis-Warner Corp. v. Rabens,* 51 F.Supp.2d 508, 513 (D.N.J. 1999) (noting without discussion that defendants were directed to preserve all documents relating to allegations in the Complaint).

In *U.S. Commodity Futures Trading Commission v. Efrosman*, No. 05 Civ. 8422 KMW, 2005 WL 3832923, at *1 (S.D.N.Y. Sept. 30, 2005), the Court granted an *ex-parte* statutory order freezing the defendants' assets, prohibiting defendants from destroying or altering any books, records or other documents, and to repatriate such assets and documents to the United States. The Court also granted leave to take depositions with respect to discovery of assets and information.[3]

---

[3] The plaintiff Commission filed a complaint pursuant to the Commodity Exchange Act, 7 U.S.C. §13a-1, obtaining *ex-parte* relief under circumstances where there was good cause to believe that the defendants had or were about to engage in fraud in violation of the statute. Even though that statute is not at issue in this case, the Court's consideration of the circumstances is instructive here where the fraudulent activity has already been established and the key players in the fraud have been indicted; *see also Commodities Futures Trading Commission v. FX Trading,*

The AremisSoft Trust has established that Laiki permitted Kyprianou to transfer funds for purposes which it knew or had reason to know were unrelated to any legitimate business activities of AremisSoft. Laiki had such a close affiliation with the perpetrators that Laiki maintained customer relationships even after their massive fraud became notorious world-wide. (Compl. ¶ 47). There is a danger that, to conceal its own misdeeds and actions taken at the perpetrators' urging, Laiki will cause certain documents to be destroyed or "lost." Indeed, Laiki has resisted disclosure to the Trust at every turn. Moreover, since Laiki's involvement in the AremisSoft fraud likely dates back to as early as 1999, it would be too convenient for Laiki to claim that records will no longer exist as this case winds its way through litigation.

The records, documents and data relating to the history of each account and the transactions through which the fraudulently obtained funds passed is the very basis of the AremisSoft Trust's case against Laiki. It is that information that will conclusively establish the circumstances under which the accounts were created, the origins and destinations of the funds passing through those accounts, and whether or not Laiki acted improperly in the context of the account activity. The documents Laiki has in its possession are critically important to the Trust and will further support its claims against the Bank. Accordingly, to prevent or to lessen the risk of

---

*LLC*, No. 2:05-cv-05722, 2005 WL 3801597 (D.N.J. Dec. 5, 2005) (entering restraining notice prohibiting, *inter alia*, destruction of records).

destruction which would greatly harm the Trust, a preservation order should be entered and the relevant documents should be transferred to the care, custody, and control of Laiki's United States counsel.

Lastly, there should be little if any burden on Laiki to preserve and produce this information.  As an international banking institution, Laiki has the resources to maintain the documents and data the Trust seeks it to preserve.   Indeed, Laiki should have been preserving all material relating to Kyprianou, Poyiadjis, and AremisSoft long before now.

At the very least, Laiki was on notice in May 2001 that Kyprianou's and Poyiadjis' conduct within AremisSoft had aroused suspicions in the United States when the *New York Times* published an article in May regarding a sham contract between AremisSoft and the Bulgarian government.  (Compl. ¶ 28).  By August of 2001, AremisSoft had been de-listed from the NASDAQ and the United States Government had begun criminal investigations of Kyprianou and Poyiadjis. (Compl. ¶ 30-31).  It is well established that a party is obligated to preserve evidence as soon as it is aware that the evidence is relevant to or likely to become the subject of litigation. *Micron Technology, Inc. v. Rambus, Inc.,* 255 F.R.D. 135, 148 (D.Del. 2009); *Zubalake v. UBS Warburg LLC*, 229 F.R.D. 422, 431-32 (S.D.N.Y. 2004) (party must suspend its routine document retention/destruction policy and put in place a "litigation hold" once party reasonably anticipates litigation).  Even if the

party is not actually aware that the evidence may be the subject of litigation, the obligation to preserve evidence arises when the party should have known that the evidence may be relevant to future litigation. *Micron Technology* at 148, citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998); *see also, Samsung Electronics Co, Ltd. v. Rambus, Inc.*, 439 F.Supp.2d 524, 541 (E.D. Va. 2006) (patentee's duty to preserve material evidence arose prior to filing of lawsuit when patentee reasonably knew that litigation was likely). Because Laiki has been obligated to preserve the relevant records relating to Kyprianou, Poyiadjis, and AremisSoft since at least May 2001, it will cause no prejudice and be of no undue burden to the Bank if the Court orders the preservation and production of that information in this case.

## II.   LAIKI CANNOT RELY ON FOREIGN LAW TO REFUSE PRODUCTION OF DOCUMENTS

Laiki cannot rely on foreign law to evade its preservation and production obligations. *See, e.g., Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 541 (N.D.Ill. 2004). In that case, which is factually similar to this case in many respects,[4] the defendant citizens of Belize argued that an order compelling them to produce documents in the District Court would cause them to violate the laws of Belize and subject them to civil liability there. *Id.* at 540. The Court, however, found that the

---

[4] The *Dexia Credit* case involved a bankruptcy creditor's action against the company's CEO and managers to recover for a multimillion dollar fraud arising out of the CEO's falsification of financial information, concealment of true financial information, and the theft and channeling of funds into several trusts maintained by the defendants. 231 F.R.D. 538.

defendants had not met their burden of showing that the interests of comity relieved them of their production obligations. *Id.* at 545.  In particular, the Court noted that even though a defendant trust was a citizen of Belize it had offices in the United States and took advantage of the laws of the United States. *Id.*  The Court also noted that the location of the documents was irrelevant to the requirement to produce them. *Id.*

The *Dexia Credit* Court followed the Restatement (Third) of Foreign Relations Law § 442, which states:

> (1)(a) A court or agency in the United States, when authorized by statute or rule of court, may order a person subject to its jurisdiction to produce documents, objects or other information relevant to an action or investigation, even if the information or the person in possession of the information is outside the United States....
>
> (c) In deciding whether to issue an order directing production of information located abroad, and in framing such an order, a court or agency of the United States should take into account the importance of the investigation or litigation of the documents or other information requested; the degree of specificity of the request; whether the information originated in the United States; the availability of alternative means of securing the information and the extent to which noncompliance with the request would undermine important interests of the state where the information is located.

*Id.* at 542-43; *see also Alfadda v. Fenn*, 149 F.R.D. 28 (S.D.N.Y. 1993) (denying protective order concerning disclosure of information prohibited by Swiss secrecy laws).

In this case, there is no question that the information the AremisSoft Trust seeks is critical to the pursuit of the asserted claims. Most importantly, there is no other source for the information the AremisSoft Trust needs. As the U.S. civil litigation system is premised upon the concept of full and liberal discovery as a means to achieving the larger goal of adjudication of civil disputes, the United States and this Court have a strong interest in ordering Laiki to preserve and transfer the requested materials to its United States counsel. *Dexia Credit* at 549.

Alternatively, even if Laiki were entitled to certain protections from disclosure for select documents, the relief requested here would not vitiate any such protections. This motion is intended simply to create a level playing field whereby documents and data will be preserved in the hands of Laiki's US counsel for safekeeping. Laiki would retain whatever arguments it wishes to make in the future against disclosure.

Under unique circumstances such as these, where the very documents upon which the AremisSoft Trust's claims  are based may be destroyed as the parties wade through the litigation process, the Court should act immediately to ensure that the critical evidence is preserved and produced to the custody and control of Laiki's attorneys in this case.

## CONCLUSION

For these reasons, the AremisSoft Trust respectfully requests that this Court issue an Order requiring Laiki to (i) retain and preserve all documents, records and data, kept in any format, concerning Kyprianou, Poyiadjis, AremisSoft and their affiliated entities and the facts at issue in this case, and (ii) to produce such documents, records and data to the custody and control of its United States attorneys.

Dated:     May 21, 2009          Respectfully submitted,

GREENBERG TRAURIG, LLP

By:     /s/  David Jay
        Hal M. Hirsch
        David Jay
200 Park Avenue
Florham Park, New Jersey 07932
(973) 360-7900

*Attorneys for the AremisSoft Liquidating Trust*