# EXHIBIT  A

## ALECOS MARKIDES

Legal Consultant – Lawyer

In association with the Law Office Markides, Markides & Co.

Date: 30 June, 2005
Our Ref:     G0133

Messrs
Cyprus Popular Bank Ltd
154 Limassol Avenue
2025 Nicosia

**BY DOUBLE REGISTERED POST,and**
**BY E-MAIL**

**Dear sirs**

This letter of demand is sent in accordance with instructions of my clients:

A. The **AremisSoft Corporation Liquidating Trust (**the **"AremisSoft Trust"),** successor of **AremisSoft Corporation,** a company incorporated in the State of Delaware in the U.S.and/or successor to all of the said Corporation's assets and all its rights, title, and interest therein, as provided for in its Plan of Reorganization and Liquidating Trust Agreement all as confirmed by Order of the United States District Court, District of New Jersey, dated July 1, 2002, and

B.  The Co-trustees of the **AremisSoft Trust** Mr. Joseph P. LaSala  and Mr. Fred S. Zeidman, both  residents of the States of New Jersey and Texas, United States of America ("U.S."), respectively.

My aforesaid clients demand that you should disclose and hand over copies of all documents whatsoever, which are or have been at any time in your possession, power or control, including but not limited to all debit and credit advices, wire transfers, bank statements, correspondence, emails, signature cards, account opening documents, notes of meetings and of other oral communications, resolutions, credit or loan agreements, other agreements, etc. pertaining to the aforesaid **AremisSoft Corporation** and any and all of its affiliates, including but not limited to **Aremis (Holdings) Ltd** including but not limited to the following accounts with your Bank, namely the Account of **AremisSoft Corporation** 106-33-000750,  and the account of **Aremis (Holdings) Ltd 189-245-90011**

Please consider the matter as being of the utmost urgency. My clients hope that your response will reach me not later than the 7th of July,2005.

**Yours sincerely**

**Alecos Markides**

Copies:Mr. Joseph P. LaSala  and Mr. Fred S. Zeidman,
Mr. Hal Hircsh and Mr Ron Lefton, counsel for **AremisSoft Trust** and the Co-trustees of **AremisSoft Trust,** Mr. Joseph P. LaSala  and Mr. Fred S. Zeidman

# EXHIBIT  B

Claim no. 2005 Folio No. 885/886

IN THE HIGH COURT OF JUSTICE

QUEEN'S BENCH DIVISION

COMMERCIAL COURT

Before The Honourable  Mr. Justice Cresswell

B E T W E E N

(1)  Joseph P. LaSala

(2)  Fred S. Zeidman

(as the Co-Trustees of the AremisSoft Corporation Liquidating Trust- a corporation created by the Federal Court of the United States of America)

<u>Claimants</u>

-and-

Lycourgos Kyprianou

<u>Defendant</u>

Applicants

Joseph P. LaSala

**First Applicant**

Fred S. Zeidman

**Second Applicant**

(as the Co-Trustees of the AremisSoft Corporation Liquidating Trust)

Respondents

(1) Lycourgos Kyprianou

(2) LBS Mortgages Limited

(3) Mackrell Turner Garrett (A Firm)

(4) National Westminster Bank plc

(5) Bank of Cyprus Public Company Limited

(6) The Cyprus Popular Bank Limited (trading as Laiki Bank)

2169648

(7) Ahli United Bank (UK) plc (formerly United Bank of Kuwait plc)

(8) Barclays Bank plc

(9) HSBC Bank plc

(10) Mike Miraglotta

Respondents

---

ORDER

---

**THIS ORDER**

1. This Order is an ancillary order in aid of a Freezing Order ("the Freezing Order") made against Lycourgos Kyprianou ("the First Respondent"). The Freezing Order was made on 27 October 2005 and corrected on 28 October 2005 by Mr Justice Aikens on the application of Joseph P. LaSala and Fred S. Zeidman, the Co-Trustees of the AremisSoft Corporation Liquidating Trust ("the Applicants").

2. This Freezing Order was made without notice to the Respondents.

3. This Order made against the Sixth, Seventh, Eight, Ninth and Tenth Respondents is made without notice to the Respondents. The Respondents have a right to apply to the court to vary or discharge the order – see paragraph 6 below.

4. There will be a further hearing in respect of this order on 11 November 2005 ("the return date").

**The Sixth, Seventh, Eight and Ninth Respondents**

4.1 The Applicants shall be at liberty to inspect and take copies of any entries in bankers' books, including ledgers, day books, cash books, account books and all other books used in the ordinary business of the bank whether those records are in written form or are kept on microfilm, magnetic tape or any other form of mechanical or electronic data retrieval mechanism, held by the Sixth, Seventh, Eight and Ninth Respondents in relation to any account held by the First Respondent whether solely or jointly with any other person(s). Such inspection must be permitted by the Sixth, Seventh, Eight and Ninth Respondents on reasonable notice from the Applicants' solicitors at any time during business hours after 9.30 am on Thursday, 10 November 2005.

4.2  The Sixth, Seventh, Eight and Ninth Respondents, respectively, shall disclose to the Applicants by 4pm on Friday 11 November 2005 all documents in their possession relating to the affairs of the First Respondent from 1 January 1999 including, but not limited to: correspondence with the First Respondent, correspondence with third parties about the First Respondent, all internal memoranda relating to any account that the First Respondent has at the Sixth, Seventh, Eight and Ninth Respondent (respective) banks, all cheques drawn on any such account, all documents relating to any debits or credits relating to any account that the First Respondent has at the Sixth, Seventh, Eight and Ninth Respondent banks and all documents relating to any loans or facilities or applications for the same.

4.3  The Sixth, Seventh, Eight and Ninth Respondents shall disclose to the Applicants' solicitors within 3 business days of service of this Order on them, details of all accounts held (past or present) by the First Respondent with the Sixth, Seventh, Eight and Ninth Respondents, together with details of all linked accounts wherever in the world such accounts are located

**The Tenth Respondent**

4.4  The Tenth Respondent must within 3 business days of service of this order and to the best of his ability inform the Applicants' solicitors of

4.4.1  all of the First Respondent's assets in England and Wales exceeding £5,000 (five thousand pounds) in value whether in the First Respondent's own name or not and whether solely or jointly owned, giving the value, location and details of all such assets, including in respect to each bank account that the First Respondent holds within England and Wales, the name or names in which the account is held, the number of the account, the bank name, branch name and sort code at which the account is held and the balance;

4.4.2  The reference immediately above to the First Respondent's assets include, for this purposes of this part of this Order, assets that are derived from or that appear to be derived from relevant transactions (as defined below) or which may represent the proceeds of such transactions

4.4.3  Every authority or mandate or power or instrument that has been given to the Tenth Respondent that enables, authorises or permits the Tenth Respondent to deal with the First Respondent's assets.

4.5  The Tenth Respondent must within 3 business days of service of this order provide to the Applicants' solicitors.

4.5.1  Every document within his possession, power or custody relating to any such authority or mandate or power or instrument;

4.5.2        Every document within his possession, power or custody evidencing, relating to or connected with any relevant transaction. A relevant transaction is, for this purposes of this part of this Order, any transaction, dealing, transfer, disposal, acquisition, charge, mortgage, pledge or lien of any of the First Respondent's assets or any asset belonging to Pavlos Meletiou, King Mazax Lines Limited, Hermione Kyprianou, Semark Consultancy Services ltd, Global Consolidators Ltd, L.K Global (Holdings) N.V., Aremis Holdings Limited, Aremis Technology Ventures Limited, Sincock Holdings Corporation, Southwood Management Limited and Palantine Asset Management Ltd.

4.6      Within 5 working days after being served with this order, the Tenth Respondent must swear and serve on the Applicants' solicitors an affidavit setting out the information referred to in paragraph 4.4 above.

**Costs**

5.      To the extent that the Sixth, Seventh, Eight and Ninth Respondents incur expenses in providing the information required by paragraphs 4.1, 4.2 and 4.3, of this Order the Applicants undertake to pay all and any such expenses (provided the same are reasonably incurred). The Applicants undertake to pay all and any expenses to which the Tenth Respondent is put in providing the information required by this Order (provided the expenses are reasonably incurred).

**Variation or Discharge of this Order**

6.      Anyone served with or notified of this Order may apply to the court at any time to vary or discharge this order (or so much of it as affects that person), but they must first inform the Applicants' solicitors. If any evidence is to be relied upon in support of the application, the substance of it must be communicated in writing to the Applicants' solicitors in advance.

7.      The Orders of Aikens J. dated 27, corrected on 28 October, and 28 October 2005 be varied to the following effect: there be added after the word "fraud" in undertakings 7 and 4 respectively of Schedule B the words "and the existing proceedings between the Applicants and the First Respondent and others in Cyprus and any related proceedings in Cyprus" the words "and not for any other purpose" to be deleted.

**Communications with the Court**

All communications to the court about this order should be sent to Room E201, Royal Courts of Justice, Strand, London WC2A 2LL quoting the case number. The telephone number is 020 7947 6826.

The offices are open between 10a.m. and 4.30p.m. Monday to Friday.

**SCHEDULE A**

**Affidavits**

The Applicants relied on the following affidavits –

(1) First affidavit of Ronald Lefton dated 27 October 2005 filed on behalf of the Applicants.

(2) First and Third affidavits of Richard Bamforth the first dated 28th October and the third in draft to be sworn on 3 November 2005.

**SCHEDULE B**

**Undertakings given to the Court by the Applicants**

1.      The Applicants will serve upon the First Respondent together with this Order as soon as practicable –

1.1      The First and Third affidavits of Richard Bamforth and exhibits containing the evidence relied upon by the Applicants, and any other documents provided to the court on the making of this application (save in so far as the same have not already been provided to the First Respondent).

1.2      the application notice;

2.      If the court later finds that this order has caused loss to the Sixth, Seventh, Eight, Ninth or Tenth Respondents, and decides that the Sixth, Seventh, Eight, Ninth or Tenth Respondents should be compensated for that loss, the Applicants will comply with any order the court may make.

3.      If this order ceases to have effect the Applicants will immediately take all reasonable steps to inform the Sixth, Seventh, Eight, Ninth and Tenth Respondents in writing that it has ceased to have effect.

4.      The Applicants undertake that in respect of the documents provided pursuant to paragraphs 4.1 to 4.5 (inclusive) of this Order, they will be used solely for the purpose of: (1) following and tracing the proceeds of the First Respondent's fraud and (2) the existing proceedings between the Applicants and the First Respondent and others in Cyprus and any related proceedings in Cyprus.

**Name and Address of Applicants' Legal Representatives**

The Applicants' legal representatives are:

Olswang, 90 High Holborn, London WC1V 6XX.  Ref:RVB/RDH/17318/1.

Fax: +44 (0)20 7067 3999

Telephone: +44 (0)20 7067 3000 (8.30am to 8.00pm Monday to Friday)

After hours telephone: +44 (0)7973 685 457

# EXHIBIT  C



## LAIKI BANK

*Associate HSBC Group*

Your Ref : RVB/CZM/17318-1
Our Ref   : KMM/ST/KYPRIANOU & OTHERS

Olswang                                        By Fax No. 020 7067 3999
90 High Holborn                                & Post
London
WC1V 6XX

9 November 2005

Dear Sirs

**LaSala and Zeidman –v- Lycourgos Kyprianou and Others**

We refer to your letter of 8 November 2005 received after office hours.

We would like to clarify that we do not hold within this jurisdiction details of linked
accounts elsewhere in the world. If you require information regarding the accounts
held in Cyprus, please take all the requisite steps to serve the Order of Mr Justice
Cresswell dated 3 November 2005.  The details of the Head Office are as follows:-

Laiki Bank
Nicosia Main 001
39 Arch Makarios III Avenue
1065 Nicosia
Cyprus

Insofar as the UK operation is concerned, and in accordance with paragraph 4.2 of the
Order of Mr Justice Cresswell dated 3 November 2005, we enclose herewith all
documents, which we have in our possession relating to the affairs of the First
Respondent with effect from 1 January 1999.

Copy passport of Dr Lycourgos Kyprianou Passport No. BB002665
Copy passport of Mrs Ermioni Kyprianou Passport No. BB002964
Personal Account Application Form dated 2 September 2004
Copy passport of Lykourgos Kyprianou  Passport No. C240779
Copy Electricity bill of Dr Kyprianou and Mrs Kyprianou dated 10 August 2004
Credit Search for Lykourgos Kyprianou dated 1 September 2004

We would be grateful, if you could please provide us with the sum of £200
representing costs incurred with providing you with the information required in
accordance with the Court Order.

-1-

**THE CYPRUS POPULAR BANK LIMITED**
Legal Services: Laiki Bank Business & Administration Centre  995 High Road  North Finchley  London N12 8PW
Tel: 020 8492 2000  Swift: LIKIGB2L  Fax: 020 8492 2056  Web: www.laiki.com

Incorporated in Cyprus with limited liability. Laiki Bank is the trading name of The Cyprus Popular Bank Limited
Registered in England – 14 Cavendish Place  London W1G 9DJ. Registered number BR000274
Registered in Cyprus – Registration number 1 – Public, 154 Limassol Avenue  2026 Nicosia  Cyprus

 **LAIKI BANK**

We would be grateful if you could please acknowledge receipt of this letter and enclosures.

Yours faithfully

**Legal Services Department**

Enc.

This fax and any attachments are confidential and may also be privileged. If you are not the named recipient, please notify the sender immediately and do not disclose the contents to another person, use it for any purpose, or store or copy the information in any medium.

# EXHIBIT  D

FEE STAMPS ON
ORIGINAL
$ /.40

## EASTERN CARIBBEAN SUPREME COURT
## IN THE HIGH COURT OF JUSTICE
## BRITISH VIRGIN ISLANDS

REGISTRAR HIGH COURT
08/11 05
3·33 p.m
VIRGIN ISLANDS

Claim No: 255 of 2005

B E T W E E N :

(1)    **JOSEPH P LASALA**
(2)    **FRED S ZEIDMAN, as Co-Trustees of the AremisSoft**
       **Corporation Liquidating Trust**

Applicants

-and-

(1)    **LYCOURGOS KYPRIANOU**
(2)    **AREMIS HOLDINGS LIMITED**
(3)    **AREMIS TECHNOLOGY VENTURES LIMITED**
(4)    **SINCOCK HOLDINGS CORPORATION**
(5)    **SOUTHWOOD MANAGEMENT LIMITED**
(6)    **PALANTINE ASSET MANAGEMENT LTD**
(7)    **CASSIERE ENTERPRISES INC.**
(8)    **CAPITAL GROWTH OVERSEAS PARTNERS INC**
(9)    **MOMENTUM EQUITIES INC**
(10)   **MORGAN CAPITAL PARTNERS INC**
(11)   **WESTMINSTER INTERNATIONAL**
       **SECURITIES LTD**
(12)   **BARRINGTON ASSET MANAGEMENT LTD**

Respondents

---

## ORDER



Before Her Ladyship the Hon. Justice Joseph ~~Risto~~ Olivetti me

IMPORTANT:

NOTICE TO THE RESPONDENTS

(1)    This Order prohibits you from dealing with your assets in the British Virgin
       Islands up to the amount stated.  The Order is subject to the exceptions at the end

I

SPD/613595/1494119

of the Order.  You should read it all carefully.  You are advised to consult a solicitor as soon as possible.  You have a right to ask the Court to vary or discharge this Order.

(2)     If you disobey this Order you will be guilty of contempt of Court and may be fined or your assets may be seized.

## THE ORDER

An Application was made on 8 November 2005 by the solicitors for Joseph P Lasala and Fred S Zeidman as Co-Trustees of AremisSoft Liquidating Trust, the Applicants, for orders (1) to issue and serve on the First Defendant the Claim Form out of the jurisdiction; (2) freezing the assets of the Defendants; and (3) the appointment of a receiver over the assets of the 2nd to 12th Defendants inclusive.  Upon hearing the solicitors for the Applicants, Her Honour Justice Olivetti heard the Application and read the affidavit of Ronald D Lefton and Hermione Markides.

As a result of the Application IT IS ORDERED that:

1.1     The Applicants do have leave to serve the Claim Form herein on the First Respondent at his address 1Andi Tserioti Street, Tseri, District of Nicosia, Cyprus as soon as reasonably practicable after 8 November 2005 or such later date as the Court may order.

1.2     Upon such date as the Applicants shall serve the Claim Form herein on the First Respondent it shall serve a copy of this Order and the affidavit of Ronald D Lefton and Hermione Markides.

1.3     That the First Respondent shall file an acknowledgement of service of the Claim Form with the Registrar of the Court within 28 days of service of the Claim Form on him.

2

1.4     That the First Respondent shall file his defence to the claim with the Registrar of the Court within 42 days of service of the Claim Form on him,

1.5     That proof of service be filed on record.

## APPOINTMENT OF RECEIVER

2.1     Andrew Bickerton of BDO British Virgin Islands, P.O Box 34, Sea Meadow House, Tobacco Wharf, Road Town, Tortola, British Virgin Islands ("the Receiver") is appointed  Receiver over the shares of the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh and Twelfth Respondents and their assets specifically but not limited to the shares and stock options of AremisSoft Corporation owned and registered in the names of the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh and Twelfth Respondents and is hereby directed forthwith to take all necessary and appropriate steps to cause himself to be registered as a shareholder and member of AremisSoft Corporation and secure and control any sums held by the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh and Twelfth Respondents in any bank accounts that he identifies.

2.2.    Andrew Bickerton do file his consent to act as receiver on or before the 9th November, 2005.

## INJUNCTION

3.      Disposal of Assets

3.1     The Respondents must not (i) remove from the British Virgin Islands any of their assets which are in the British Virgin Islands whether in their own name or not and whether solely or jointly owned up to the value of US$500,000,000 or (ii) in any way dispose of or deal with or diminish the value of any of their assets

whether they are in or outside the British Virgin Islands whether in their own name or not and whether solely or jointly owned up to the same value.

3.2    In particular, but without prejudice to the foregoing, the Respondents shall not dispose of or deal with or diminish, or cause or procure the disposal of or dealing with or diminishment of (a) the value of or the shares or stock options of AremisSoft Corporation or of beneficial interests in such shares or stock options (b) sums credited to accounts in the names of the Respondents or (c) other assets in the names of the Respondents.

3.3    If the total unencumbered value of the Respondents' assets in the British Virgin Islands exceeds US$500,000,000 the Respondents may remove any of those assets from the British Virgin Islands or may dispose of or deal with them so long as the total unencumbered value of their assets still in the British Virgin Islands remains above US$500,000,000.

3.4    If the total unencumbered value of the Respondents' assets in the British Virgin Islands does not exceed US$500,000,000 the Respondents must not remove any of those assets from the British Virgin Islands and must not dispose of or deal with any of them, but if they have other assets outside the British Virgin Islands the Respondents may dispose of or deal with those assets so long as the total unencumbered value of all their assets whether in or outside the British Virgin Islands remains above US$500,000,000.

4.    Disclosure of Information.

4.1    The Respondents must inform the Applicants in an affidavit within 14 days of the service of this Order on them of all their assets and financial accounts, including but not limited to banking and/or brokerage accounts (whether currently opened or not) whether in or outside the British Virgin Islands and whether in their own

name or not and whether solely or jointly owned, giving the value, location and details of all such assets.

5.      Exceptions to this Order.

5.1     Nothing in this Order shall prevent the original directors of the companies and/or the original registered share holders and/or the ultimate beneficial oeners from acting on behalf of the companies for the purpose of defending this action and any other actions which have been or are in the future commenced against them by the Claimants, either in this Court or elsewhere.

6.      Effect of this Order

6.1     A Respondent who is an individual who is ordered not to do something must not do it himself or in any other way.  He must not do it through others acting on his behalf or on his instructions or with his encouragement.

6.2     A Respondent which is a corporation and which is ordered not to do something must not do it itself or by its directors, officers, employees, or agents, or in any other way.

7.      Third Parties

7.1     <u>Effect of this Order</u>  -  It is a contempt of Court for any person notified of this Order knowingly to assist in or permit a breach of the Order.  Any person doing so may be sent to prison, fined, or have his assets seized.

7.2     Except for the purpose of obtaining legal notice, any person notified of this Order must not directly or indirectly inform anyone of these proceedings or the contents of this Order, or warn anyone that proceedings have been or may be commenced

SPD/613595/1494119

against them by the Applicants until 6:00 p.m. on the Return Date or further order of the Court.

7.3    <u>Effect paragraph 2 of this Order outside the British Virgin Islands</u> - The terms of this Order do not affect or concern anyone outside the jurisdiction of this Court until it is declared enforceable or is enforced by a court in the relevant country and then they are to affect him only to the extent they have been declared enforceable or have been enforced UNLESS such person is:

7.3.1    a person to whom this Order is addressed or an officer or an agent appointed by power of attorney of such a person; or

7.3.2    a person who is subject to the jurisdiction of this Court and (i) has been given written notice of this Order at his residence or place of business within the jurisdiction of this Court and (ii) is able to prevent acts or omissions outside the jurisdiction of this Curt which constitute or assist in a breach of the terms of this Order.

7.4    <u>Set off by Banks</u> - this injunction does not prevent any bank from exercising any right of set off it may have in respect of any facility which it gave to the Respondents before they were notified of this Order.

8.    Undertakings

8.1    The Applicants give to the Court the undertakings set out in Schedule 1 to this Order.

9.    Duration of this Order

9.1.    This Order will remain in force up to and including 2 December 2005 ("the Return Date"), unless before then it is varied or discharged by a further Order of

6

SCHEDULE 1

Undertakings given to the Court by the Applicants

(1)     If the Court later finds that this Order has caused loss to the Respondents, and decides that the Respondents should be compensated for that loss, the Applicants will comply with any Order the Court may make.

(2)     The Applicants will cause an affidavit to be sworn and filed exhibiting the transcript of what was said to the Court by the Applicants' solicitors.

(3)     Anyone notified of this Order will be given a copy of it by the Applicants' solicitors.

(4)     The Applicants will pay the reasonable costs of anyone other than the Respondents which have been incurred as a result of this Order including the costs of ascertaining whether that person holds any of the Respondents' assets and that if the Court later finds that this Order has caused such a person loss, and decides that the person should be compensated for that loss, the Applicants will comply with any Order the Court may make but limited in like manner as undertaking (1) above.

(5) The Applicant to file the Original of Ronald D. Lefton's affidavit as soon as possible. he

BY THE COURT

Dated :- 8/11/05

_____

Jg. REGISTRAR

8

# EXHIBIT  E

To                                                                    May 16, 2006
Mr. Michalis Kamperis
Corner of Agiou Paulou Avenue and
2 Rizokarpasou str.,
1107, Nicosia
Cyprus


**Subject: Aremis Holdings Ltd and Aremis Technology Ventures Ltd**

With the present letter we inform you that pursuant to the order dated
08/11/2005, page 6, para 7.3, the terms of the order are not binding for any
person outside the jurisdiction of the Court that made the order, unless these
terms have been declared enforceable by a Court in the relevant country. In
that case, the terms are enforceable only to the extent that they have been
declared enforceable by a Cyprus Court.

In view of the abovementioned, our Bank is not obliged to comply with the
orders that you have sent us and we do not regard as binding the order
appointing Mr. Andrew Bickerton as Receiver.

Therefore, we do not consider that Mr. Andrew Bickerton is acting as the
Receiver of the above named companies and we are not obliged to follow his
instructions set out in his letter dated 22.12.2006.

Furthermore, while the court proceedings in Cyprus, Civil Action no. 9200/05,
are still pending, and the above named companies are interested parties 8
and 9, we can not give the information and/or disclosure requested before the
issue of a final judgment, since this information is the subject of the above
mentioned action and interim application for the issue of an interim order.


CYPRUS POPULAR BANK PUBLIC COMPANY LIMITED


. . . . . . . . . . . . . .
Stalo Christodoulidou
Legal Advisor

# EXHIBIT  F

# Greenberg
# Traurig

Hal M. Hirsch
Tel. (212) 801-6868
Fax (212) 805-5568
hirschb@gtlaw.com

June 13, 2008

Marfin Egnatia Bank
Legal Department
56 Zefyrou Delta Falirou
Athens 175 64
Greece

Re:   **Lycourgos Kyprianou, Hermione Kyprianou and Evie Kyprianou -- Powers of Attorney granted to Joseph P. LaSala and Fred Zeidman, as Co-Trustees of the AremisSoft Corporation Liquidating Trust**

Dear Sirs:

We are counsel for and act as instructed by Joseph P. LaSala and Fred Zeidman, who are Co-Trustees of the AremisSoft Corporation Liquidating Trust (a trust created by a United States District Court).

The AremisSoft Corporation Liquidating Trust was formed in the bankruptcy proceedings of AremisSoft Corporation. That bankruptcy resulted from the massive fraud committed on AremisSoft and its more than 6,000 investors by AremisSoft's two senior officers and principal shareholders, Roys Poyiadjis and Lycourgos Kyprianou. Messrs. LaSala and Zeidman, as Co-Trustees of the AremisSoft Trust, are required, among other things, to recover and liquidate assets for the benefit of the Trust and its beneficiaries. The investors in AremisSoft have approved losses which aggregate almost USD 500 million.

In furtherance of their court approved responsibilities, the Co-Trustees brought court actions against, among others, Lycourgos Kyprianou and his wife Hermione (a/k/a "Noni") and obtained mareva orders against them with worldwide effect. The Co-Trustees reached a settlement with Hermione Kyprianou and her daughter, Evie Kyprianou, of all claims, including claims that their accounts have been used to secret assets of Lycourgos Kyprianou. As part of the settlement, Hermione and Evie Kyprianou have each granted to the Co-Trustees Durable and Irrevocable General Powers of Attorney, dated 13, March 2008, ("POA"). True and correct copies of the

ALBANY

AMSTERDAM

ATLANTA

BOCA RATON

BOSTON

BRUSSELS*

CHICAGO

DALLAS

DELAWARE

DENVER

FORT LAUDERDALE

HOUSTON

LAS VEGAS

LONDON*

LOS ANGELES

MIAMI

MILAN*

NEW JERSEY

NEW YORK

ORANGE COUNTY

ORLANDO

PHILADELPHIA

PHOENIX

ROME*

SACRAMENTO

SILICON VALLEY

TALLAHASSEE

TAMPA

TOKYO*

TYSONS CORNER

WASHINGTON, D.C.

WEST PALM BEACH

ZURICH

*Strategic Alliance
Tokyo-Office/Strategic Alliance

Greenberg Traurig, LLP | Attorneys at Law | Met Life Building | 200 Park Avenue | New York, NY 10166 | Tel 212.801.9200 | Fax 212.801.6400

www.gtlaw.com

Marfin Egnatia Bank
13 June 2008
Page 2

POAs, are enclosed.  The Co-Trustees have instructed us to contact you in performance of the POAs.

Pursuant to the terms of the POAs, Hermione Kyprianou and Evie Kyprianou have agreed to assist the Trust to identify the Lycourgos Kyprianou Assets (as defined in the POAs) in which they now or in the ten years prior to the POAs had an interest. Our clients therefore are legally authorized by Hermione Kyprianou and Evie Kyprianou for the purposes of dealing in those assets.

Our clients believe that you may have in your possession information and/or documentation relating to the Lycourgos Kyprianou Assets over which Hermione and/or Evie Kyprianou may act.  Therefore, and pursuant to the terms of the POAs, we request you provide to us, on behalf of our clients, the following information and documentation:

> a)      identification of any account, including savings, money market, and/or depository accounts, vaults and safe deposit boxes, lines of credit, and debit and credit accounts ("Accounts"), in the names of either Hermione Kyprianou, Evie Kyprianou, and/or Lycourgos Kyprianou; or,

> b)      in the case of an Account or Accounts in the name of Lycourgos Kyprianou, whether either Hermione and/or Evie Kyprianou have signatory or any other form of authority to act with regard to such Accounts; or,

> c)      identification of any financial transaction by Hermione and/or Evie Kyprianou pertaining to the Lycourgos Kyprianou Assets.

We note that the POAs are effective wherever in the world such interests may be located, including, but not limited to, Greece.

Please contact me if you have any queries in relation to these matters.  We look forward to hearing from you.

Sincerely,

Hal M. Hirsch

Marfin Egnatia Bank
13 June 2008
Page 3

Encl.

cc:    H.E. Daniel V. Speckhard, United States Ambassador to Greece
       Joseph P. LaSala, Esq., and Fred M. Zeidman, Co-Trustees, AremisSoft
       Corporation Liquidating Trust

# EXHIBIT  G



**MARFIN EGNATIA BANK**

COMPLIANCE DIVISION
24, SYGROU  AVE.  ATHENS 11742
TEL. 210 9003248 & 210 9003255
FAX. 210 9003260

**GREENBER TRAURIG LLP**
**Attorneys at Law**
**Met Life Building**
**200, Park Avenue**
**New York, NY 10166**
**U.S.A.**
**Kind Attn.: Mr Hal M. Hirsch**
**FAX: 212 8055568**

C.C. (c/o Mr Hal M. Hirsch)
H. E. Daniel V. Speckhard, United States Ambassador to Greece
Mrs Joseph P. LaSala and Fred Zeidman
Co-Trustees of the AremisSoft Corporation Liquidating Trust

<u>**CONFIDENTIAL**</u>

Athens, June 8, 2008
Our Ref.: 808/08.07.08

Dear Sirs,

Subject: <u>**Disclosure of information on customer accounts**</u>
Re.:      Powers of Attorney granted to Joseph P. LaSala and Fred Zeidman
            Co-Trustees of the AremisSoft Corporation Liquidating Trust

In reply to your application dated June 13, 2008 concerning the accounts of Mrs Lycourgos Kypriannou, Hermione Kyprianou and Evie Kyprianou, we would like to inform you that according to the Greek Bank Secrecy Law, Banks are not allowed to disclose any information on any account, to an authorized representative.
Account information is strictly confidential and is available to account beneficiary and to local judiciary Authorities.

Sincerely yours,

MARFIN EGNATIA BANK SA
Compliance Division

Nikos Nisotakis                               Maria Conidou

# EXHIBIT  H

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 Case No. |
|  | : | 02-32621 (RG) |
| AREMISSOFT CORPORATION, | : |  |
| a Delaware corporation, | : |  |
|  | : | Civil Action No. |
| Debtor. | : | 02-CV-01336 (JAP) |
|  | : |  |
| - AND - | : |  |
|  | : |  |
| In re: | : | Civil Action No. |
|  | : | 01-CV-2486 (JAP) |
| AREMISSOFT CORP. | : |  |
| SECURITIES LITIGATION | : |  |
|  | : |  |
|  | : |  |

## SUBPOENA FOR RULE 2004 EXAMINATION

TO:   **Nicos Pafitis**
      **New York Representative**
      **Marfin Popular Bank Public Company Limited**
      **222-11 41st Road**
      **Bayside, NY 11261**
      **Tel: (917) 670-1893**

YOU ARE COMMANDED AND ORDERED BY THE COURT to produce and permit inspection and copying of the documents listed in Schedule A at the place, date, and time specified below:

| PLACE | DATE AND TIME |
|---|---|
| GREENBERG TRAURIG, LLP | December 24, 2008 at 10:00 A.M. |
| 200 Park Avenue |  |
| P.O. Box 677 |  |
| Florham Park, New Jersey  07921-0677 |  |

YOU ARE COMMANDED AND ORDERED BY THE COURT to appear and testify at an examination under Rule 2004, Fed. R. Bankr. P., at the place, date, and time specified below:

| PLACE | DATE AND TIME |
|---|---|
| GREENBERG TRAURIG, LLP<br>200 Park Avenue<br>P.O. Box 677<br>Florham Park, New Jersey  07921-0677 | December 30, 2008 at 10:00 A.M. |
| **ISSUING OFFICER SIGNATURE AND TITLE**<br><br>Attorney for AremisSoft Liquidating Trust<br><br>BY: _David Jay (DJ 7221)_ | **DATE**<br>December 3, 2008 |

| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER | |
|---|---|
| GREENBERG TRAURIG, LLP<br>David Jay (DJ 7221)<br>200 Park Avenue<br>P.O. Box 677<br>Florham Park, New Jersey  07921-0677<br>Phone:   (973) 360-7900 | |

2

# PROOF OF SERVICE

| | |
|---|---|
| DATE | PLACE |

| | |
|---|---|
| SERVED ON (PRINT NAME) | MANNER OF SERVICE |

| | |
|---|---|
| SERVED BY (PRINT NAME) | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

### Rule 45 Federal Rules of Civil Procedure, Parts (c) & (d), made applicable in cases under the Bankruptcy Code by Rule 9016, Fed. R. Bankr. P.

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

3

hearing or trial.

(B)  Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of  any or all of the designated materials or of the premises.  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.   If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production.  Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A)  On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)  fails to allow reasonable time for compliance;

(ii)  requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial,

the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

(1)  A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)  When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## DEFINITIONS

1.   <u>You and Your</u>:  The terms "you" and "your" mean the person to whom this notice is addressed.

2.   <u>Person</u>:  The term "person" means any natural person, corporation, parent corporation, subsidiary, affiliate, predecessor, successor, offices, branches, divisions, segments and departments, association, company, firm, partnership, joint venture, trust, sole proprietorship, or any other private, public or governmental entity, and the present and former directors, officers, employees, partners, trustees, attorneys, accountants, advisors and agents thereof, and all other persons acting or purporting to act as their representatives.

3.   <u>Communication</u>:  The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether oral (in person or by telephone) or written, between or among any persons, and the original and all non-identical copies of all documents, including but not limited to drafts sent by you or received by you from any person (including, without limitation, inter- and intra-office memoranda and other communications and information transmitted by electronic mail (i.e., e-mail)).

4.   <u>Document</u>:  The term "document(s)" is as defined in meaning and equal in scope to the usage of that term in Rule 34(a) of the Federal Rules of Civil Procedure made applicable to bankruptcy by virtue of Bankruptcy Rule 7034 and shall include, without limitation, written, printed, electronic, typewritten, reproduced, recorded, graphic or photographic matter, however produced, reproduced or recorded, which includes but is not limited to correspondence, memoranda, interoffice communications, electronic mail, voice mail, manuals, reports, records,

insurance policies, endorsements, applications, amendments, bulletins, opinions, published and unpublished articles, summaries, statements, literature, releases, magazines, newsletters, brochures, fact sheets, notes, schedules, analysis, tables, graphs, charts, surveys, books of accounts, ledgers, invoices, receipts, purchase orders, questionnaires, contracts, agreements, bills, checks, drafts, diaries, logs, databases, notebooks, proposals, recordings, telegrams, films, and all other such documents or devices or mediums on which or through which any type is translated, recorded or preserved, including electronic data media of any kind. "Document(s)" also includes any preliminary notes or drafts of all of the foregoing, in whatever form, including printed, typed, longhand, shorthand, on paper, paper tape, tabulating cards, ribbons, magnetic tape, electronic data memory devices of any kind, microfilm, videotape, photographic record or disks, including compact and digital disks. "Document(s)" also means an authentic copy where the original is not in your possession or control and every copy of a document which is not an identical copy of the original.

5.   <u>Parties</u>: An entity's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its current and former officers, directors, employees, partners, corporate parents, subsidiaries or affiliates and all other persons or entities acting or purporting to act on its behalf.

6.   <u>Concern and Concerning</u>: The terms "concern" and "concerning," with respect to documents, mean all documents, without limitation, that explicitly or implicitly reflect, refer, relate, contain, constitute, were received in conjunction with, or were created, generated or maintained on the subject matter of the request, including, but not limited to, all documents that reflect, record, describe, evidence, constitute, analyze, memorialize, embody, discuss, evaluate, consider, review or report on the subject matter of the request.

6

7.    <u>All/Each</u>:  The terms "all" and "each" shall be construed as all and each.

8.    <u>And/Or</u>:  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

9.    <u>Including</u>:  The term "including" shall be construed to mean "without limitation."

10.    <u>Number</u>:  The use of the singular form of any word includes the plural and vice versa.

11.    <u>Marfin Popular Bank Public Company Limited</u>:  The term "Marfin Popular Bank Public Company Limited" refers to and includes Marfin Popular Bank Public Company Limited, Cyprus Popular Bank Public Company Limited, Cyprus Popular Bank Limited, Cyprus Popular Bank, Laiki Group, Laiki Bank (Hellas) S.A., Laiki Bank and/or any of its divisions, subdivisions, offices, subsidiaries, predecessors, successors, joint ventures, parents, affiliated persons, partners, present and former officers, directors, trustees, agents, representatives, employees and all other persons or entities acting or purporting to act on its behalf, including but not limited to bank branches based in Cyprus.

12.    <u>AremisSoft Corporation</u>:  The term "AremisSoft Corporation" refers to and includes AremisSoft Corporation, any of its divisions, subdivisions, offices, subsidiaries, predecessors, successors, joint ventures, parents, affiliated persons, partners, present and former officers, directors, trustees, agents, representatives, employees and all other persons or entities acting or purporting to act on its behalf.

13.    <u>AremisSoft (EE.ME.A.) Limited</u>:  The term "AremisSoft (EE.ME.A.) Limited" refers to and includes AremisSoft (EE.ME.A.) Limited, any of its divisions, subdivisions, offices, subsidiaries, predecessors, successors, joint ventures, parents, affiliated persons,

partners, present and former officers, directors, trustees, agents, representatives, employees and all other persons or entities acting or purporting to act on its behalf.

14.     <u>Barington Asset Management Limited</u>:  The term "Barimgton Asset Management Limited" refers to and includes Barimgton Asset Management Limited, any of its divisions, subdivisions, offices, subsidiaries, predecessors, successors, joint ventures, parents, affiliated persons, partners, present and former officers, directors, trustees, agents, representatives, employees and all other persons or entities acting or purporting to act on its behalf.

15.     <u>Brookview Investments Limited</u>:  The term "Brookview Investments Limited" refers to and includes Brookview Investments Limited, any of its divisions, subdivisions, offices, subsidiaries, predecessors, successors, joint ventures, parents, affiliated persons, partners, present and former officers, directors, trustees, agents, representatives, employees and all other persons or entities acting or purporting to act on its behalf.

16.     <u>Capital Growth Overseas Partners Limited</u>:  The term "Capital Growth Overseas Partners Limited" refers to and includes Brookview Capital Growth Overseas Partners Limited, any of its divisions, subdivisions, offices, subsidiaries, predecessors, successors, joint ventures, parents, affiliated persons, partners, present and former officers, directors, trustees, agents, representatives, employees and all other persons or entities acting or purporting to act on its behalf.

17.     <u>Cronos Capital, Inc.</u>:  The term "Cronos Capital, Inc." refers to and includes Cronos Capital, Inc. and its divisions, subdivisions, offices, subsidiaries, affiliates, predecessors, successors, joint ventures, parents, affiliated persons, partners, present and former officers, directors, trustees, agents, representatives, employees and all other persons or entities acting or purporting to act on its behalf.

8

18.    <u>Dutton Holdings Limited</u>:  The term "Dutton Holdings Limited" refers to and includes Dutton Holdings Limited and its divisions, subdivisions, offices, subsidiaries, affiliates, predecessors, successors, joint ventures, parents, affiliated persons, partners, present and former officers, directors, trustees, agents, representatives, employees and all other persons or entities acting or purporting to act on its behalf.

19.    <u>Easton Services Limited</u>:  The term "Easton Services Limited" refers to and includes Easton Services Limited and its divisions, subdivisions, offices, subsidiaries, affiliates, predecessors, successors, joint ventures, parents, affiliated persons, partners, present and former officers, directors, trustees, agents, representatives, employees and all other persons or entities acting or purporting to act on its behalf.

20.    <u>Hartwell Management Limited</u>:  The term "Hartwell Management Limited" refers to and includes Hartwell Management Limited and its divisions, subdivisions, offices, subsidiaries, affiliates, predecessors, successors, joint ventures, parents, affiliated persons, partners, present and former officers, directors, trustees, agents, representatives, employees and all other persons or entities acting or purporting to act on its behalf.

21.    <u>Hermione Kyprianou</u>:  The name "Hermione Kyprianou" shall mean Hermione Kyprianou, and any individual, agent, servant, attorney, representative or person acting or purporting to act on his behalf.

22.    <u>Momentum Equities Limited</u>:  The term "Momentum Equities Limited" refers to and includes Momentum Equities Limited and its divisions, subdivisions, offices, subsidiaries, affiliates, predecessors, successors, joint ventures, parents, affiliated persons, partners, present and former officers, directors, trustees, agents, representatives, employees and all other persons or entities acting or purporting to act on its behalf.

23.    <u>Morgan Capital Partners Limited</u>:  The term "Morgan Capital Partners Limited" refers to and includes Morgan Capital Partners Limited and its divisions, subdivisions, offices, subsidiaries, affiliates, predecessors, successors, joint ventures, parents, affiliated persons, partners, present and former officers, directors, trustees, agents, representatives, employees and all other persons or entities acting or purporting to act on its behalf.

24.    <u>Onyx Capital, Inc.</u>:  The term "Onyx Capital, Inc." refers to and includes Onyx Capital, Inc. and its divisions, subdivisions, offices, subsidiaries, affiliates, predecessors, successors, joint ventures, parents, affiliated persons, partners, present and former officers, directors, trustees, agents, representatives, employees and all other persons or entities acting or purporting to act on its behalf.

25.    <u>Palantine Asset Management Limited</u>:  The term "Palantine Asset Management Limited" refers to and includes Palantine Asset Management Limited and its divisions, subdivisions, offices, subsidiaries, affiliates, predecessors, successors, joint ventures, parents, affiliated persons, partners, present and former officers, directors, trustees, agents, representatives, employees and all other persons or entities acting or purporting to act on its behalf.

26.    <u>Reeves Financial Limited</u>:   The term "Reeves Financial Limited" refers to and includes Reeves Financial Limited and its divisions, subdivisions, offices, subsidiaries, affiliates, predecessors, successors, joint ventures, parents, affiliated persons, partners, present and former officers, directors, trustees, agents, representatives, employees and all other persons or entities acting or purporting to act on its behalf.

27.     <u>Roys Poyiadjis</u>:  The name "Roys Poyiadjis" shall mean Roys Poyiadjis, and any individual, agent, servant, attorney, representative or person acting or purporting to act on his behalf.

28.     <u>Quantum Group Management Limited</u>:  The term "Quantum Group Management Limited" refers to and includes Quantum Group Management Limited and its divisions, subdivisions, offices, subsidiaries, affiliates, predecessors, successors, joint ventures, parents, affiliated persons, partners, present and former officers, directors, trustees, agents, representatives, employees and all other persons or entities acting or purporting to act on its behalf.

29.     <u>Solon Zevlaris</u>:  The name "Solon Zevlaris" shall mean Solon Zevlaris, and any individual, agent, servant, attorney, representative or person acting or purporting to act on his behalf.

30.     <u>Sysco Enterprises Corporation</u>:  The term "Sysco Enterprises Corporation" refers to and includes Sysco Enterprises Corporation and its divisions, subdivisions, offices, subsidiaries, affiliates, predecessors, successors, joint ventures, parents, affiliated persons, partners, present and former officers, directors, trustees, agents, representatives, employees and all other persons or entities acting or purporting to act on its behalf.

31.     <u>Vetri Holdings Limited</u>:  The term "Vetri Holdings Limited" refers to and includes Vetri Holdings Limited and its divisions, subdivisions, offices, subsidiaries, affiliates, predecessors, successors, joint ventures, parents, affiliated persons, partners, present and former officers, directors, trustees, agents, representatives, employees and all other persons or entities acting or purporting to act on its behalf.

11

32.    <u>Westminster International Securities Limited</u>:    The term "Westminster International Securities Limited" refers to and includes Westminster International Securities Limited and its divisions, subdivisions, offices, subsidiaries, affiliates, predecessors, successors, joint ventures, parents, affiliated persons, partners, present and former officers, directors, trustees, agents, representatives, employees and all other persons or entities acting or purporting to act on its behalf.

## INSTRUCTIONS

A.    In responding to these requests, you shall furnish all responsive documents available at the time of production.

B.    You shall produce for inspection and copying the original of each document requested together with all non-identical copies and drafts of that document as they are kept in the usual course of business or you shall organize and label each document so as to correspond with the categories in this request.

C.    All pages now stapled or fastened together shall be produced stapled or fastened together and each document which you cannot legibly copy shall be produced in its original form.

D.    Each paragraph and subparagraph of these requests shall be construed independently and no other paragraph or subparagraph shall be referred to or relied on for the purpose of limiting the scope of any request.

E.    If a document responsive to any request was, but is no longer in your possession or subject to your control, state whether the document was:

      (i)    missing or lost;

      (ii)    destroyed;

      (iii)    transferred voluntarily or involuntarily; or

      (iv)    otherwise disposed of.

In each instance, identify the current or last known custodian of the document, the location of the document, and the circumstances surrounding the disposition thereof.  Include in your response the identity of the person(s) who authorized the disposition and the person(s) who disposed, transferred or destroyed the document, and state the date or approximate date of disposition.

      F.    Documents not otherwise responsive to any of the discovery requests herein must be produced if such documents mention, discuss, refer to, or explain one or more documents called for by these requests, or are attached to a document called for by these requests.

      G.    Where a claim of privilege is asserted in response to any document request, or subject thereof, and a document is not provided on the basis of such assertion, for each document not provided, the party asserting the privilege shall:

      (i)    identify the nature of the privilege (including work product) that is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked;

      (ii)    provide the type, date, title, description, and subject matter of the document; the author of the document, the addressees of the document, and any other recipients shown on the document, and the relationship of the author, addressees, and the recipients to each other;

      (iii)    describe the nature of the document in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

H.     If a portion of any responsive document is claimed to be protected from disclosure by privilege, work product, or otherwise, such document shall be produced in full with the portion claimed to be protected redacted and the word "redacted" inserted in its place and the reason for that document or portion of that document being withheld noted.

I.     You shall produce each document requested herein in its entirety, without deletion or exclusion (except as qualified by Instructions G and H above) regardless of whether you consider the entire document to be relevant or responsive.

J.     If in responding to these requests you claim any ambiguity in interpreting a request or a definition or instruction applicable thereto, such claim shall not be utilized by you as a basis for refusing to produce responsive documents, but there shall be set forth as part of your response the language deemed to be ambiguous and the interpretation chosen or used in responding to the request.

K.     The production of data or other information on disk or other computer readable medium is acceptable if the parties can agree in advance on formatting options that make information usable by the parties.  If, however, non-identical hard copies of the same information exist (such as drafts or copies with handwritten notes), you shall produce those non-identical copies as well.

L.     Each document request is continuing in nature.  Accordingly, if you obtain or discover further documents requested herein, you must produce them.

M.     Unless otherwise specified, the time period encompassed by these requests is January 1, 1999 through the present.

14

## REQUESTED DOCUMENTS

1.  All documents including, but not limited to, account opening documents, account statements, correspondence, and records of signature authority, wire transfers, deposits, withdrawals, transactions, debits and credits concerning depository accounts and/or correspondent accounts and/or linked accounts and/or any bank accounts at Marfin Popular Bank Public Company Limited, at any of its branches or affiliate banks of which AremisSoft Corporation is the account holder of record, or of which it is beneficial owner, directly or indirectly.

2.  All documents including, but not limited to, account opening documents, account statements, correspondence, and records of signature authority, wire transfers, deposits, withdrawals, transactions, debits and credits concerning depository accounts and/or correspondent accounts and/or linked accounts and/or any bank accounts at Marfin Popular Bank Public Company Limited, at any of its branches or affiliate banks standing in the names of the persons or entities below or for which the persons or entities below are beneficial owner, directly or indirectly:

    - AremisSoft (EE.ME.A.) Limited
    - Barington Asset Management Limited
    - Brookview Investments Limited
    - Capital Growth Overseas Partners Limited
    - Cronos Capital, Inc.
    - Dutton Holdings Limited
    - Easton Services Limited
    - Hartwell Management Limited
    - Hermione Kyprianou
    - Momentum Equities Limited
    - Morgan Capital Partners Limited
    - Onyx Capital, Inc.
    - Palantine Asset Management Limited
    - Reeves Financial Limited
    - Roys Poyiadjis
    - Quantum Group Management Limited
    - Solon Zevlaris
    - Sysco Enterprises Corporation
    - Vetri Holdings Limited
    - Westminster International Securities Limited

# EXHIBIT  I

Page 1

```
 1
 2              UNITED STATES BANKRUPTCY COURT
 3                 DISTRICT OF NEW JERSEY
 4
 5    In re:                  ) Chapter 11 Case
                              ) No. 02-32621
 6    AremisSoft CORPORATION, a ) (RG)
      Delaware corporation,    )
 7                            )
                              )
 8            Debtor.         ) Civil Action
      ------------------------- ) No. 02-CV-01336
 9            -AND-           ) (JAP)
      ------------------------- )
10    In re:                  )
                              ) Civil Action
11    AremisSoft CORP.        ) No. 01-CV-2486
      SECURITIES LITIGATION   ) (JAP)
12                            )
                              )
13    ---------------------------)
14
15
16          DEPOSITION OF NICOS PAPHITIS
17             NEW YORK, NEW YORK
18          Thursday, December 18, 2008
19
20
21
22
23
      Reported by:
24    PENNY SHERMAN
      JOB NO. 20312
25
```

Page 17

```
1              Paphitis
2     Q.   That the bank was closed?
3     A.   Yes, the head office -- the
4  representative bank was closed.
5     Q.   Was closed.  Who was your boss at Laiki
6  Bank when you were the chief representative?
7     A.   They had different bosses all the time.
8  The one time was Michael Louis.  The other time was
9  Chris, Christos.  In Greek it's Christos.
10 Stylianides, S-T-Y-L-I-A-N-I-D-E-S, Stylianides.
11 And one time it was Achilles Maliotis.
12    Q.   Achilles --
13    A.   Achilles, A-C-E -- A-C-H-I-L-L-E-S,
14 Maliotis, M-A-L-I-O-T-I-S.
15         They changed too many -- you know, they
16 have a rotation.  Too many names that come in my
17 head now, but the senior managers was those three.
18 And then I have after that -- it was like a tree,
19 you know, how the bank works.  Like a tree; those
20 three were at the top, and then on the sides, they
21 had other people that I was reporting to them.  But
22 the top people was those three.
23    Q.   Where were they located?
24    A.   In Cyprus.  In Nicosia.  Nicosia,
25 Cyprus.
```

Page 18

```
1              Paphitis
2     MR. BUZZETTA:  N-I --
3     THE WITNESS:  N-I --
4     MR. BUZZETTA:  C-O-S-I-A.
5     THE WITNESS:  Yes.
6     MR. BUZZETTA:  Nicosia.
7     THE WITNESS:  You study a lot of Greek.
8     MR. BUZZETTA:  Off the record.
9     (Discussion off the record.)
10    Q.   Did they travel to the United States for
11 business?
12    A.   Michael -- not for business, for
13 vacation.  Ah, yeah, for business too, to visit the
14 State Banking Department.  My job is to have a
15 meeting with them.  To visit -- Achilles -- my job
16 is visited for a meeting.  Michael Louis also visit
17 for business just to meet -- Michael Louis and
18 another -- Christos (phonetic) didn't come, I don't
19 think.
20    Q.   Would they -- would there be meetings at
21 the representative office with you?
22    A.   With me and with the examiners and
23 superintendent, I think that's what's his title,
24 Superintendent of the banking Department.
25    Q.   Do you know when the last time any one
```

Page 19

```
1              Paphitis
2  of them visited the United States was?
3     A.   The last time was Michael Louis, I
4  think.  Angelo Louis was visited too, his brother.
5     Q.   Angelo Louis --
6     A.   -- Angelo Louis was his brother.  When
7  he was in Cyprus.  The last time was when we
8  visited to inform them that we were going to close
9  the office, and it was a year before we closed the
10 office.
11    Q.   Now, when you received the subpoena that
12 we served on you, did you contact anyone at Laiki
13 Bank --
14    A.   Yes, I did.
15    Q.   -- to let them know that you were served
16 with a subpoena?
17    A.   I faxed them, too.  I called them and
18 faxed them the information.  I told them, I'm no
19 longer with the bank.  They told me, you can go
20 there as an individual.  You are not allowed to
21 give any informations from the bank.
22         They have to -- whatever informations
23 you give is -- it has to be on your personal level.
24 You don't -- the bank is not going to give -- I
25 mean, and they told me I am no longer with them and
```

Page 20

```
1              Paphitis
2  I am not allowed to give any -- disclose any
3  information regarding the clients.
4     Q.   Who did you speak with?
5     A.   I spoke with the legal department, and
6  also with international department that was in
7  charge of the -- it was in charge for the rep
8  offices.
9     Q.   Do you know the names --
10    A.   The name is Kyriacos, Kyriacos
11 Constantinon.  Let me write for you because is a
12 long name.
13    Q.   And where was this person when you
14 contacted him?
15    A.   At his office.  He called me from his
16 office.  Where he was?
17    Q.   Where's his office?
18    A.   In Cyprus.  In Nicosia.
19    Q.   You contacted him?
20    A.   I call him, yeah.  Actually, I sent -- I
21 send that to the legal department because they
22 asked me to send --
23    Q.   The subpoena?
24    A.   The subpoena.  And the legal
25 department spoke to him and he called me.  I, you
```

5 (Pages 17 to 20)

59d50e76-5ad7-4b84-8b1d-41ca056345c9

Page 21

Paphitis

1    know, I didn't call him directly.
2         I called the legal department, and then
3    from the legal department, they spoke to him
4    because I -- and then he call me and he disclosed
5    to me that, okay, you can go and testify on your
6    own personal level but you cannot allow to give any
7    informations regarding, you know, the clients, the
8    business with the bank.
9         And whatever they need, they can ask
10   directly the bank any documents or any other things
11   that you might need.  They can go directly to them
12   and ask them for that information.
13   Q.   And this individual contacted you when
14   you were here in New York?
15   A.   They called my cell phone.  They know my
16   cell phone number because I was working with
17   them -- I still have the same number for ten
18   years -- eight years.
19   Q.   Did you speak with him about the subject
20   areas that are described in the subpoena?
21   A.   No, I wouldn't go in details.
22   Q.   What did you say to him, and what did he
23   say to you about the subpoena?
24   A.   I told him what I'm going to do.  I

Page 22

Paphitis

1    am not -- I'm no longer with the bank.  What is the
2    legal department -- because every time there was
3    something that the -- with courts or subpoenas,
4    they always -- the procedure I should follow is
5    submit everything to the legal department.
6         They told me, Listen, you don't have any
7    informations.  Even if you have, you cannot give it
8    to them because you are no longer an employee with
9    the bank.  They give you subpoena on a personal
10   level.  You can go there as an individual.  You can
11   answer any questions that they -- on a personal
12   level, they ask you, but whatever they ask you
13   related to the bank, they have to come directly to
14   us.  That's their opinion; their legal opinion from
15   Cyprus.
16   Q.   And are you -- as you sit here today,
17   are you going to follow those instructions that
18   were given to you?
19   A.   No, they didn't tell me to -- I am going
20   to follow, I mean, with you.  I am here to help you
21   because I know that -- I don't have any documents
22   to give you or anything because we don't -- we
23   never keep anything in the office, just sign; FedEx
24   everything to Cyprus.

Page 23

Paphitis

1         And with the documents, I'm going to
2    help you, whatever, you know, explanations that you
3    need, how this document -- to describe the way that
4    they were doing business.  I can help you, I
5    mean --
6    Q.   Did this individual at Laiki offer to
7    pay your expenses in connection with this subpoena?
8    A.   No.
9         THE WITNESS:  Off the record.
10        (Discussion off the record.)
11        MR. BUZZETTA:  To the extent you were
12   going to have a lawyer represent you --
13        THE WITNESS:  Yes.
14   Q.   Did Laiki offer to pay your --
15   A.   No.
16   Q.   -- legal expenses --
17   A.   No.
18   Q.   -- in connection --
19   A.   No, no, no.
20   Q.   -- with the subpoena?
21   A.   No, because they told me not to submit
22   any informations.  I am not allowed to because I'm
23   no longer with the bank.
24   Q.   Did they ask you -- did this individual

Page 24

Paphitis

1    ask you to contact him after the subpoena to --
2    after the -- I'm sorry, after the deposition, to
3    report to him what happened here?
4    A.   I don't remember.  I think he didn't
5    tell me to respond.
6    Q.   Do you plan to contact him after today?
7    A.   Well, if he calls me and he asks me what
8    happened, I tell him whatever happened.  But I'm
9    not going to contact myself because it seems, to
10   me, that he didn't, you know -- they say, Okay, you
11   go there.  I tell them this is serious.  These
12   people are asking for records and you have to --
13   because when I was there, I volunteer myself to go
14   and testify that time because I knew -- I know the
15   law here, and I wanted to give all the explanations
16   and I offer myself to go down there.
17   Q.   This was in 2002?
18   A.   2 or 3, whatever, yeah.
19   Q.   And we will get to that in a moment.
20   You said you told this person that this is, in your
21   view, serious?
22   A.   Yes.
23   Q.   What was the response?
24   A.   Okay.  He told me I have to speak with

6 (Pages 21 to 24)