UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------x
:
JOSEPH P. LASALA and :
FRED S. ZEIDMAN, as CO-TRUSTEES : No. 09-CV-00968 (JAP)
of the AREMISSOFT CORPORATION
LIQUIDATING TRUST, :
  Motion Returnable:
              Plaintiffs, : June 15, 2009

        v. :

MARFIN POPULAR BANK PUBLIC :
COMPANY, LTD., Electronically Filed
 :
              Defendant.
 :
-------------------------------------------------------x

## MEMORANDUM OF LAW OF MARFIN POPULAR BANK IN OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER TO RETAIN AND PRESERVE DOCUMENTS, RECORDS AND DATA

ALLEN & OVERY LLP
Todd S. Fishman
1221 Avenue of the Americas
New York, New York 10020
(212) 610-6300
todd.fishman@newyork.allenovery.com

*Attorneys for Defendant*
*Marfin Popular Bank Public Co Ltd*

Dated: June 1, 2009

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ............................................................................................................ 4

I. The Court Should Not Grant The Requested Relief
Because There Is No Personal Jurisdiction Over The Bank ........................... 4

II. Plaintiffs Fail To Offer Any Grounds That
Justify Entry Of The Requested Preservation Order ...................................... 7

    A. Plaintiffs offer no legal or factual
       basis to grant the requested preservation order. ..................................... 7

    B. The burdens imposed by foreign law prohibitions
       argue strongly against the requested relief. .......................................... 10

    C. The Bank's affirmative obligation under U.S. law
       to preserve documents started no earlier than March 2009 ................. 13

CONCLUSION ....................................................................................................... 14

# TABLE OF AUTHORITIES

## CASES

A.S.T., LLC v. Pallenberg,
   Civ. No. 07-795 (JAP), 2007 WL 1827188 (D.N.J. June 25, 2007) ......... 6

Ashcroft v. Iqbal,
   No. 07-1015, 2009 WL 1361536 (U.S. May 18, 2009) ........................ 2, 3

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007) .................................................................................. 2

Burger King Corp. v. Rudzewicz,
   471 U.S. 462 (1985) .................................................................................. 5

Calder v. Jones,
   465 U.S. 783 (1984) .................................................................................. 5

Capricorn Power Co. v. Siemens Westinghouse Power Corp.,
   220 F.R.D. 429 (W.D. Pa. 2004) .............................................................. 7

CFTC v. Efrosman,
   No. 05 Civ. 8422 (KMW), 2005 WL 3832923
   (S.D.N.Y. Sept. 30, 2005) ......................................................................... 9

Compuwill Express, Inc. v. ATX Telecomms. Servs.,
   No. 96-2462, 2000 U.S. Dist. LEXIS 7303
   (E.D. Pa. May 31, 2000) ........................................................................... 9

Cortese v. Radian Group Inc.,
   No. 07-3375, 2008 WL 269473 (E.D. Pa. Jan. 30, 2008) ........................ 9

Dexia Credit Local v. Rogan,
   231 F.R.D. 538 (N.D. Ill. 2004) ....................................................... 10, 11

FTC v. Stout,
   No. 99-5705 (WHW), 1999 WL 34833240 (D.N.J. Dec. 8, 1999) ........... 9

Helicopteros Nacionales de Colombia, S.A. v. Hall,
    466 U.S. 408 (1984)......................................................................................... 5

Hilton v. Guyot,
    159 U.S. 113 (1895)......................................................................................... 4

IMO Indus., Inc. v. Kiekert AG,
    155 F.3d 254 (3d Cir. 1998)............................................................................. 6

Kronish v. United States,
    150 F.3d 112 (2d Cir. 1998)........................................................................... 13

LaSala v. Bank of Cyprus Public Company Limited,
    510 F. Supp. 2d 246 (S.D.N.Y. 2007) ............................................................. 3

LaSala v. Lloyds TSB Bank,
    514 F. Supp. 2d 447 (S.D.N.Y. 2007) ............................................................. 3

LaSala v. UBS, AG,
    510 F. Supp. 2d 213 (S.D.N.Y. 2007) ............................................................. 3

Lebel v. Everglades Marina, Inc.,
    115 N.J. 317, 558 A.2d 1252 (1989) ............................................................... 5

Marsellis-Warner Corp. v. Rabens,
    51 F. Supp. 2d 508 (D.N.J. 1999).................................................................... 8

Microsoft Corp. v. AT&T Corp.,
    550 U.S. 437 (2007)......................................................................................... 4

Miller Yacht Sales, Inc. v. Smith,
    384 F.3d 93 (3d Cir. 2004)............................................................................... 6

Minpeco, S.A. v. Conticommodity Servs., Inc.,
    116 F.R.D. 517 (S.D.N.Y. 1987).................................................................... 12

Mosaid Techs., Inc. v. Samsung Elecs. Co.,
    348 F. Supp. 2d 332 (D.N.J. 2004)................................................................ 13

Pueblo of Laguna v. United States,
  60 Fed. Cl. 133 (2004) ............................................................................... 8

Roy v. Brahmbhatt, Civ. No. 07-5082,
  2008 WL 5054096 (D.N.J. Nov. 26, 2008) ................................................ 6

Shaffer v. Heitner,
  433 U.S. 186 (1977) ................................................................................... 5

Societe Internationale Pour Participations Industrielles et
  Commerciales, S.A. v. Rogers, 357 U.S. 197 (1958) ............................... 12

Societe Nationale Industrielle Aerospatiale v. U.S. District Court for
  the Southern District of Iowa, 482 U.S. 522 (1987) ........................... 4, 12

Treppel v. Biovail Corp.,
  233 F.R.D. 363 (S.D.N.Y. 2006) ........................................................... 7, 8

## STATUTES

7 U.S.C. § 13a-1 ................................................................................................. 9

Fed. R. Civ. P. 9(b) ............................................................................................. 2

Fed. R. Civ. P. 65 ................................................................................................ 8

## OTHER AUTHORITIES

Manual for Complex Litigation, Fourth § 11.442 (2009) ................................. 7

Restatement (Third) of Foreign Relations Laws § 442 (1986) ................ 10, 11

Marfin Popular Bank Public Co Ltd (the "Bank") is a Cyprus-based bank, regulated by the Central Bank of Cyprus, with no connection to this forum. The Bank respectfully submits this memorandum of law in opposition to plaintiffs' motion for entry of an order requiring the Bank to retain and preserve documents, records and data.[1] Plaintiffs' motion completely lacks merit and should summarily be denied. The Bank as a matter of internal policy preserved records relating to AremisSoft, and is fully aware of its obligations to collect and maintain documents that might be requested as part of discovery in this action. No action needs to be taken by the Court at this time.

## PRELIMINARY STATEMENT

The relief plaintiffs seek in this motion -- a blanket preservation order coupled with a directive that the Bank transfer its documents from Cyprus to its attorneys in the United States for safekeeping -- is unprecedented. Plaintiffs do not cite a single decision in which a court has ordered a non-U.S. bank -- before it has even answered a civil complaint -- to preserve, collect and then ship potentially relevant documents to its attorneys in the United States for "safekeeping." (Pl. Mem. at 19.)

---

[1] References to Plaintiffs' Memorandum of Law in Support of Motion for an Order Requiring Defendant to Retain and Preserve Documents, Records and Data are shown as "Pl. Mem. at ___." References to the Certification of Hal M. Hirsch dated May 21, 2009 are shown as "Hirsch Decl. ___."

In addition, none of the circumstances that militate in favor of issuing a preservation order exists in this case. Plaintiffs can point to no demonstrated concern about preserving the integrity of existing documents. Rather, plaintiffs' application rests on the bald assertion that "[t]here is a danger that, to conceal its own misdeeds and actions taken at the perpetrators' urging, Laiki will cause certain documents to be destroyed or 'lost.'" (Pl. Mem. at 12.) This assertion is totally unfounded and should be rejected as such. Given the Bank's internal policy on document preservation, no irreparable harm is likely to result absent an order. Moreover, the costs and burden to the Bank in identifying, marshaling and producing all potentially responsive materials in this case at this preliminary stage will be enormous and carry significant implications for the Bank's compliance with Cyprus law.

What is more, plaintiffs seek this unprecedented relief in a case where there has been no threshold determination that the Court has personal jurisdiction over the Bank, that New Jersey is a proper and convenient forum for this action or that the complaint's three claims for relief satisfy the relevant pleading standards under Federal Rule of Civil Procedure 9(b) and those set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Plaintiffs' complaint contains merely threadbare recitations of claims, and as recently reinforced by the Supreme Court in Ashcroft v. Iqbal, No. 07-1015, 2009 WL 1361536 (U.S. May 18, 2009), even Rule 8 "does

2

not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at *13. Each of these points, as well as others, will be fully detailed in the Bank's motion to dismiss the complaint, which currently is due to be filed on or before June 10, 2009.[2]

In fact, plaintiffs' chances of success in this action are small. This is plaintiffs' second attempt to sue a Cyprus-based bank in the United States. Plaintiffs' first attempt was rejected. There, in plaintiffs' action against the Bank of Cyprus, District Judge Haight of the Southern District of New York expressly held that the doctrine of forum non conveniens required dismissal of their suit in favor of Cyprus, the sovereign that supervised the bank's activities and where the documentary evidence and most of the witnesses were located.[3] LaSala v. Bank of Cyprus Public Company Limited, 510 F. Supp. 2d 246, 267 (S.D.N.Y. 2007). There is no neutral principle that suggests why the result in this case should be any different.

Even further, there is no authority (and plaintiffs cite none) for directing the Bank to export its files to the United States to be held by its U.S. counsel. Transferring documents to the United States, without a complete review, will

---

[2] All exhibits are attached to the Certification of Todd S. Fishman dated June 1, 2009, submitted herewith. A copy of plaintiffs' complaint is attached thereto as Exhibit A.

[3] Judge Haight also dismissed the trustees' related lawsuits against Lloyds TSB Bank and UBS AG, two Swiss banks, on forum non conveniens grounds. LaSala v. Lloyds TSB Bank, 514 F. Supp. 2d 447 (S.D.N.Y. 2007); LaSala v. UBS, AG, 510 F. Supp. 2d 213 (S.D.N.Y. 2007).

contravene a number of foreign law prohibitions, including Cyprus bank secrecy and data protection laws, and will impose enormous burdens on the Bank. As the Supreme Court admonished, the transportation of documents "from foreign locations may increase the danger that discovery may be sought for the improper purpose of motivating settlement, rather than finding relevant and probative evidence." Societe Nationale Industrielle Aerospatiale v. U.S. District Court for the Southern District of Iowa, 482 U.S. 522, 546 (1987).

At this early stage, all the law requires is that the Bank preserve and maintain documents reasonably related to this dispute. It has and will continue done so. (See Declaration of Stelios Hadjiosif executed May 28, 2009 ("Hadjiosif Decl."), submitted herewith.)

## ARGUMENT

I.  The Court Should Not Grant The Requested Relief Because There Is No Personal Jurisdiction Over The Bank

As will be definitively shown in the Bank's motion to dismiss, the Bank is not amenable to personal jurisdiction in New Jersey. "No law has any effect, of its own force, beyond the limits of the sovereignty from which its authority is derived." Hilton v. Guyot, 159 U.S. 113, 163 (1895); accord Microsoft Corp. v. AT&T Corp., 550 U.S. 437, 454-55 (2007) (applying the notion of prescriptive comity that "United States law governs domestically but does not rule the world").

Because it has not been established that this Court has jurisdiction over the Bank, plaintiffs' requested relief cannot be granted.

Personal jurisdiction under the Due Process Clause depends upon "the relationship among the defendant, the forum and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204 (1977). Due process requires that a non-U.S. defendant either has engaged in "continuous and systematic" activities in the forum (general jurisdiction), Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984), or that it has "'purposefully directed' [its] activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities" (specific jurisdiction), Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). Accord Lebel v. Everglades Marina, Inc., 115 N.J. 317, 323-25, 558 A.2d 1252, 1254-55 (1989). Here, plaintiffs do not contend that the Bank has continuous and systematic activities with the State of New Jersey. Thus, general jurisdiction cannot apply. Nor do plaintiffs advance a specific jurisdiction theory, such that the claims for relief arise out of the Bank's minimum contacts with New Jersey.

Instead, plaintiffs rely on a third concept of jurisdiction, the so-called "effects test" established in Calder v. Jones, 465 U.S. 783 (1984). Specifically, plaintiffs allege that this Court has personal jurisdiction "because the Bank by its conduct committed an intentional tort which the Bank knew or should have known

5

would have a direct and substantial effect on the Company at its headquarters in New Jersey and other residents of New Jersey." (Compl. ¶ 27.) Established Third Circuit authority, however, expressly limits the Calder effects test. This authority holds the effects test "can only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant *expressly aimed* its tortuous conduct at the forum, and thereby made the forum the focal point of the tortious activity." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265 (3d Cir. 1998) (emphasis in original). Because the Bank, as alleged and in fact, never entered New Jersey or otherwise manifested "behavior intentionally targeted at and focused on" New Jersey, personal jurisdiction is lacking. Id.; accord A.S.T., LLC v. Pallenberg, Civ. No. 07-795 (JAP), 2007 WL 1827188, at *4 (D.N.J. June 25, 2007) (Ex. D).

Tacitly acknowledging that the effects test cannot support an exercise of personal jurisdiction in this case, plaintiffs proffer an alternative theory in their complaint: personal jurisdiction may be asserted over the Bank "based on the acts of the Bank's co-conspirators . . . who had numerous contacts with New Jersey." (Compl. ¶ 27.) But this alternative theory must be rejected as well. Neither the Third Circuit nor the Supreme Court of New Jersey has accepted the conspiracy theory of personal jurisdiction. E.g., Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 102 n.8 (3d Cir. 2004) ("it is unclear whether New Jersey even recognizes the conspiracy theory of jurisdiction"); Roy v. Brahmbhatt, Civ. No. 07-5082, 2008

6

WL 5054096, at *6-7 (D.N.J. Nov. 26, 2008) (declining to recognize the conspiracy theory of personal jurisdiction) (Ex. E).

Plaintiffs offer no facts in their complaint to justify the exercise of personal jurisdiction over the Bank on any grounds accepted under New Jersey law. Accordingly, plaintiffs' motion for a protective order should be denied.

## II.   Plaintiffs Fail To Offer Any Grounds That Justify Entry Of The Requested Preservation Order

A blanket preservation order, because it "may interfere with the normal operations" of a party and "impose unforeseen burdens," is often prohibitively expensive and unduly burdensome. Manual for Complex Litigation, Fourth §11.442 at 103 (2009). Plaintiffs make the extraordinary request that this Court order the Bank -- a non-U.S. bank based in Cyprus and subject to Cyprus banking and data protection regulations -- to collect, marshal and then transfer potentially relevant documents to its attorneys in the United States for "safekeeping" during the pendency of this action. Plaintiffs present no grounds that justify the entry of such an extraordinary blanket preservation order in this case.

### A.   Plaintiffs offer no legal or factual basis to grant the requested preservation order.

Many courts apply a balancing test for determining whether to issue a preservation order. See, e.g., Treppel v. Biovail Corp., 233 F.R.D. 363, 371 (S.D.N.Y. 2006); Capricorn Power Co. v. Siemens Westinghouse Power Corp.,

7

220 F.R.D. 429, 437 (W.D. Pa. 2004). The balancing test essentially requires the movant to show that imposition of a preservation order is "necessary and not unduly burdensome." Treppel, 233 F.R.D. at 370 (quoting Pueblo of Laguna v. United States, 60 Fed. Cl. 133, 138 (2004)). But here plaintiffs offer no relevant facts that warrant the broad order they seek. Plaintiffs submit no evidence that the Bank has actively destroyed documents relevant to the claims set forth in their complaint or has inadequate processes in place to preserve documents. All plaintiffs can muster is the irresponsible charge, untethered to any factual predicate, that "[t]here is a danger that, to conceal its own misdeeds and actions taken at the perpetrators' urging, Laiki will cause certain documents to be destroyed or 'lost.'" (Pl. Mem. at 12.) Certainly, this unsubstantiated charge cannot be accepted on its face and is soundly refuted by the internal recordkeeping polices in place at the Bank. (See Hadjiosif Decl. ¶ 4.)

Moreover, plaintiffs' own analysis conclusively impeaches their legal argument. In their brief, plaintiffs cite a series of decisions for the purported proposition that, despite the balancing test employed by many courts, "others courts readily enter preservation orders." (Pl. Mem. at 14.) But each of those "other courts" either required the movant to satisfy the stringent standards for obtaining injunctive relief under Rule 65 of the Federal Rules of Civil Procedure, Marsellis-Warner Corp. v. Rabens, 51 F. Supp. 2d 508, 519 (D.N.J. 1999); FTC v.

8

Stout, No. 99-5705 (WHW), 1999 WL 34833240, at *1 (D.N.J. Dec. 8, 1999) (Ex. F), or granted a preservation order pursuant to a controlling federal statutory scheme, Cortese v. Radian Group Inc., No. 07-3375, 2008 WL 269473, at *8 (E.D. Pa. Jan. 30, 2008) (enforcing mandatory provision for preservation of evidence under the Private Securities Litigation Reform Act of 1995) (Ex. G); CFTC v. Efrosman, No. 05 Civ. 8422 (KMW), 2005 WL 3832923, at *1 (S.D.N.Y. Sept. 30, 2005) (granting application by a government agency to preserve documents under 7 U.S.C. § 13a-1) (Ex. H). Here, plaintiffs make no showing that suffices under Rule 65, including whether they are likely to be successful on the merits of their case. Plus, no federal statutory scheme providing a basis for such an order governs this case, as plaintiffs assert only common law claims.

In fact, plaintiffs' brief refutes their charge that the Bank is somehow inclined to engage in conduct that will lead to the destruction of relevant evidence. Plaintiffs concede in their papers that the Bank "produced" documents to the AremisSoft Trust in England. (Pl. Mem. at 7; Hirsch Cert. Ex. C.) Plaintiffs also concede that when the Bank refused to produce documents to the AremisSoft Trust, the Bank either used lawful procedures to resist production or interposed objections based on recognized legal grounds. (See Hirsch Cert. Ex. E & G.) The exercise of process rights in a court of law cannot constitute concealment in any sense of the term. See Compuwill Express, Inc. v. ATX Telecomms. Servs., No.

9

96-2462, 2000 U.S. Dist. LEXIS 7303, at *26 (E.D. Pa. May 31, 2000) (Ex. I). Indeed, the Bank had good cause to resist the AremisSoft Trust's efforts in Europe to obtain documents. Plaintiffs admit that, in response to legal objections raised by the Bank, the Cyprus court *denied* an application by the AremisSoft Trust to obtain disclosure of documents. (Pl. Mem. at 9.) Plaintiffs point to no instance where the Bank improperly concealed documents required to be produced under lawfully obtained process.[4]

  B. The burdens imposed by foreign law prohibitions <u>argue strongly against the requested relief.</u>

The proposed order plaintiffs submit to this Court contains the following provision: "Marfin is directed to transfer all such documents and data to its United States counsel, Todd S. Fishman, Esq., of Allen & Overy LLP, to be held until the discovery phase of this case." Plaintiffs cite no authority for this relief. The authority on which plaintiffs do rely is inapposite and works to repudiate their argument.

Specifically, in apparent support of their extraordinary request, plaintiffs cite to <u>Dexia Credit Local v. Rogan</u>, 231 F.R.D. 538 (N.D. Ill. 2004), and the <u>Restatement (Third) of Foreign Relations Laws</u> § 442 on which the <u>Dexia</u> court

---

[4] Plaintiffs also advert to excerpts from the deposition of Nicos Paphitis, a former Bank employee. (Pl. Mem. at 10.) Mr. Paphitis's testimony that the Bank told him not to provide "disclosure [of] any information regarding the clients" is entirely consistent with Cyprus bank secrecy laws. (See infra Point II(B).)

10

relies. (Pl. Mem. at 17-19.) But as the <u>Restatement</u> plainly states, discovery is "an exercise of jurisdiction" and a U.S. court may only order a person to produce documents who is "subject to its jurisdiction." <u>Restatement (Third) of Foreign Relations Laws</u> § 442 & cmt. a (1986). Indeed, in <u>Dexia</u>, the subpoena recipients had a strong presence in the United States and did not raise any personal jurisdiction defenses, and thus the district court was not "detain[e]d . . . for long" on whether it had "the power to order the Respondents to produce the documents requested by Dexia in its subpoenas." 231 F.R.D. at 540, 545. The circumstances in this case relating to the Bank are exactly the opposite. This Court has no personal jurisdiction over the Bank -- or, in the least, that determination has not been made by any U.S. court in the context of this case -- and therefore this Court lacks the power to direct the Bank to transfer its documents to the United States.

Moreover, as the <u>Restatement</u> provides, among the factors a court should consider in ordering production is whether "compliance with the request would undermine important interests of the state where the information is located." <u>Restatement (Third) of Foreign Relations Laws</u> § 442 & cmt. c. Here, ordering the transfer of the Bank's documents at this point in time to the United States would adversely impact important substantive policies of Cyprus. The Bank -- a Cyprus-based financial institution, regulated by the Central Bank of Cyprus and subject to the directives of the European Union -- must comply with Cyprus bank secrecy and

11

data protection laws. (Hadjiosif Decl. ¶¶ 3, 5; Exs. B & C.) Failure to comply with these rules may result in severe sanctions to the Bank, including administrative penalties such as license revocation and imprisonment for individual Bank officials. (Hadjiosif Decl. ¶ 5; Exs. B & C.) Many courts hold that foreign law prohibitions factor decisively in denying production of documents located outside the United States. See, e.g., Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers, 357 U.S. 197, 211 (1958) (compliance with Swiss bank secrecy laws "constitutes a weighty excuse for nonproduction"); Minpeco, S.A. v. Conticommodity Servs., Inc., 116 F.R.D. 517, 530 (S.D.N.Y. 1987) (holding that Swiss bank secrecy laws justify the defendant's refusal to produce certain documents and answers to interrogatories).

To be clear, the Bank is not taking the position that it will not produce documents in this case. The point is that before the Bank can agree to produce any documents to the United States, it must conduct a complete review of each document for relevance and to assure compliance with Cyprus bank secrecy laws and data protection regulations. This costly and burdensome process should not be imposed on the Bank at this early stage of the proceedings, before plaintiffs have even established that this Court has personal jurisdiction or that New Jersey is the proper forum. Indeed, as the Supreme Court instructed in Industrielle Aerospatiale, "American courts, in supervising pretrial proceedings, should

12

exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." 482 U.S. at 546.

C.  The Bank's affirmative obligation under U.S. law to preserve documents started no earlier than March 2009.

Plaintiffs contend that the Bank had an affirmative obligation under U.S. decisional law to preserve relevant records "since at least May 2001," the date when a news article first surfaced questions about potential misconduct at AremisSoft. (Pl. Mem. at 16-17.) Plaintiffs are wrong.

The obligation to preserve evidence under U.S. law arises when a party has notice that the evidence is relevant to litigation, "most commonly when suit has already been filed." Kronish v. United States, 150 F.3d 112, 126 (2d Cir. 1998) accord Mosaid Techs., Inc. v. Samsung Elecs. Co., 348 F. Supp. 2d 332, 333 (D.N.J. 2004). Since news of potential fraud at AremisSoft allegedly first broke in mid-2001, plaintiffs have waited *eight years* to sue the Bank. At no time has the AremisSoft Trust sought to file substantive claims against the Bank in any other jurisdiction. For sure, the AremisSoft Trust's efforts to obtain discovery from the Bank in England, Greece and Cyprus confirmed only that the Bank was viewed as a custodian of records potentially relevant to certain aspects of the alleged AremisSoft fraud, not a claimed participant in the fraud. Given the extensive passage of time before suit was filed and the failure to pursue substantive claims

13

elsewhere, the Bank could not have reasonably foreseen litigation in the United States until after it learned that plaintiffs' complaint was filed in March 2009.

## CONCLUSION

For the reasons set forth above, Marfin Popular Bank respectfully requests that plaintiffs' application for an order requiring the Bank to preserve documents and produce them to the custody of their U.S. counsel be denied in its entirety.

Dated: New York, New York
       June 1, 2009

Respectfully submitted,

ALLEN & OVERY LLP

By: _____
Todd S. Fishman
1221 Avenue of the Americas
New York, New York 10020
(212) 610-6300
todd.fishman@allenovery.com

*Attorneys for Defendant*
*Marfin Popular Bank Public Co Ltd*

14