# EXHIBIT B

GREENBERG TRAURIG, LLP
Hal M. Hirsch (HH 0417)
David Jay (DJ 7221)
200 Campus Drive
P.O. Box 677
Florham Park, New Jersey 07932-0677
Phone: (973) 360-7900
Fax: (973) 301-8410

*Attorneys for the AremisSoft Liquidating Trust*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>AREMISSOFT CORPORATION,<br>a Delaware corporation,<br><br>Debtor. | Civil Action No.<br>02-CV-01336 (JAP)<br>Honorable Joel A. Pisano<br><br>Chapter 11<br>Bankruptcy Case No.<br>02-32621 (RG) |
| - AND - | |
| In re:<br><br>AREMISSOFT CORP.<br>SECURITIES LITIGATION | Civil Action No.<br>01-CV-2486 (JAP) |

### THIRD ANNUAL STATUS REPORT OF THE TRUSTEES
### OF THE AREMISSOFT LIQUIDATING TRUST FOR THE
### PERIOD OCTOBER 1, 2004 THROUGH SEPTEMBER 30, 2005

The AREMISSOFT LIQUIDATING TRUST (the "Trust"), by Joseph P. LaSala and Fred S. Zeidman, as co-trustees (the "Trustees"), by and through the Trust's counsel, Greenberg Traurig LLP, hereby respectfully submits this third annual status report, as follows:

A.   **Introduction**

1.   This Report is presented pursuant to Section 4.12 of the Liquidating Trust Agreement (the "Trust Agreement"), filed as an exhibit to the First Amended Plan of

Reorganization of AremisSoft Corporation (the "Plan"), confirmed by this Court (the "District Court") pursuant to Order dated July 1, 2002 (the "Confirmation Order"), and effectuated thereby. The period covered by this Report is October 1, 2004 through September 30, 2005 (the "Reporting Period").[1]

### B. First Interim Cash Distribution

2. As set forth below, during the Reporting Period, the Trustees succeeded in achieving substantial cash revenues for the Trust. As a result, the Trustees made the first interim cash distribution (the "First Interim Cash Distribution") to Authorized Claimants in the aggregate amount of $139,999,999.69 on June 23, 2005.

3. By the *Corrected Order (1) Approving the Allocation, and Directing the Distribution of, Shares of Softbrands Common Stock to Authorized Claimants, and (2) Approving Trust Distribution Percentages for Distribution of Net Trust Recoveries to Authorized Claimants, Entered Nunc Pro Tunc to February 25, 2004*, dated March 2, 2004 (the "Original Distribution Allocation Order"), this Court approved the Trust distribution percentages for the distribution of net Trust recoveries to beneficiaries. The *Order Disallowing Duplicate and/or Undeliverable Claims and Providing Other Related Relief*, issued by this Court and dated May 5, 2005 (the "Undeliverable Claims Order"), provided additional relief and direction in connection with the anticipated First Interim Cash Distribution.

4. Following the issuance of the Original Distribution Allocation Order, The Garden City Group, Inc., the Trust's claim agent ("GCG"), continued to communicate with various Trust beneficiaries, class counsel and the Trustees' counsel, continually updating its proposed

---

[1] Prior reports of the Trust were: (i) *Status Report of the Trustees of the AremisSoft Liquidation Trust, for the Period August 1, 2002 through September 30, 2003*, dated December 16, 2003, and (ii) *Supplemental Status Report of the Trustees of the AremisSoft Liquidation Trust, for the Period October 1, 2003 through September 30, 2004*, dated January 25, 2005 (the "Supplemental Status Report").

distribution matrix. Upon the Trustees' determination to make the First Interim Cash Distribution in the second quarter of 2005, preparations were made to finalize the distribution matrix. A distribution percentage of 28.05787214% of every allowed claim was set. By Motion, the Trustees sought approval of this Court for a final distribution matrix. In accordance with the *Order on Consent Approving Updated Distribution Percentages for First Interim Cash Distribution of Net Trust Recoveries to Authorized Claimants,* issued by this Court, dated June 9, 2005 (the "Order Approving Updated Distribution Percentages"), the Trust, through GCG, fixed the percentages and proposed amounts for distribution to "Authorized Claimants" based upon an anticipated distribution of the sum of $139,999,999.69 (the "Fund"). The Trust funded a special account at JP Morgan Chase established by GCG exclusively for the First Interim Cash Distribution in the exact amount of the Fund (the "Special Account").

5. On behalf of the Trustees, on June 23, 2005 (the "Distribution Date"), and consistent with the Order Approving Updated Distribution Percentages, GCG issued distribution checks to 5,901 Authorized Claimants by pre-paid, first class mail. Proof of the distribution was set forth in the *Affidavit of Shandarese Garr Regarding the First Interim Cash Distribution from the AremisSoft Liquidating Trust,* dated August 17, 2005, and filed with the Court (the "Garr Affidavit"). Attached as exhibits to the Garr Affidavit are the lists of the Authorized Claimants to whom distributions were made, the amounts issued, and a form of the notice that accompanied each distribution check. The First Interim Cash Distribution resulted in the distribution in cash of 28.05787214% on each beneficiary's Allowed Claim.

6. Following the issuance of the distribution checks, GCG undertook activity on behalf of the Trust to properly act upon returned distributions, update the Authorized Claimants' address information, and re-issue distribution checks to the Authorized Claimants where additional information was obtained. As set forth in the *Supplemental Affidavit of Shandarese*

*Garr Regarding the First Interim Cash Distribution from the AremisSoft Liquidating Trust*, dated October 3, 2005 and filed with the Court, GCG re-issued a total of 403 distributions. Re-distributions were in order because (i) changes of beneficiaries' addresses were communicated to or obtained by GCG, (ii) beneficiaries informed of the lack of receipt of the original checks, or (iii) beneficiaries made requests to GCG for re-issuance for other reasons. The re-distributions were made on August 30, 2005, and on September 14, 16 and 19, 2005.

7. As of the close of the distribution period on September 21, 2005, GCG reported that 5,423 out of 5,901 Authorized Claimants (91.9%), had negotiated their respective checks and received payments totaling $136,326,271.68 out of a total Fund of $139,999,999.69 (97.4%).

8. On September 22, 2005, after the close of the distribution period, the Trust withdrew all remaining Funds, $3,682,629.32, from the Special Account. The Trust did so in order to husband all Trust cash in the exercise of the Trustees' fiduciary duties. The refund of unclaimed distributions was returned to the Trust's principal investment account.

9. In connection with the First Interim Cash Distribution, (1) as required by the Plan, a distribution also was made to SoftBrands, Inc., in the amount of $12,640,555.55, reflecting the required percentage distribution, and taking into account the reconciliation of certain prior transactions; and (2) as required by prior order of the court, a distribution also was made to class counsel, in the amount of $28,935,662.03, reflecting the required percentage distribution.

10. In total, the Trustees distributed $177,902,489.26 in the First Interim Cash Distribution.

### C. Summary of Other Activity

11. The following represents a summary of activity of the Trust during the Reporting Period.

(a)   **Litigation Settlements**

12.   As set forth in prior Status Reports of the Trustees, the Trustees commenced and prosecuted actions in the Isle of Man against Lycourgos Kyprianou, Roys Poyiadjis and other affiliated parties, seeking to recover assets secreted there. After vigorous litigation, and lengthy negotiations which spanned many months at the end of 2004 and beginning of 2005, and pursuant to an Order of this Court and the court in the Isle of Man, the Trust obtained a litigation settlement recovery against certain defendants sufficient to allow for the First Interim Cash Distribution to the Trust's beneficiaries (the "Settlement") as described above. The Trust entered into settlement agreements with Roys Poyiadjis, a former principal/officer of the AremisSoft Corporation, and other individuals and entities affiliated with him, the terms of which were approved and are to be kept confidential and subject to a seal Order issued by this Court. By Order of this Court dated May 13, 2005, the Trustees were permitted to disclose the following regarding the settlement.

> The Liquidating Trust commenced and prosecuted a Chancery Action in the Isle of Man against, among others, Roys Poyiadjis, Spyros Poyiadjis, and their trustees Roger Meyer, John Trevor Roche Baines, Peter Grut, and certain affiliated companies and trusts for damages arising from securities fraud, common law fraud, breach of fiduciary duty, and claims of conspiracy and aiding and abetting. In addition, the Liquidating Trustees intervened in a Criminal Justice Act proceeding in the Isle of Man relating to assets located there. Further, pursuant to an order of the Court (Hon. Joel A. Pisano, United States District Court Judge), the Liquidating Trust and the United States, by the United States Attorney for the Southern District of New York, entered into a Coordination Agreement, dated September 14, 2004, whereby the Liquidating Trust will receive all of the proceeds of all recoveries, wherever located, relating to AremisSoft.
>
> The Liquidating Trust successfully negotiated a settlement with certain of the defendants, who paid 151,768,098.35 Euros (approximately US$200,000,000.00[2]).

---

[2]   Equivalent value as of the date so designated in the Settlement.

13. Last-minute efforts to defeat the Settlement in the court in the Isle of Man on behalf of non-settling defendant Lycourgos Kyprianou and entities affiliated with him were mounted. These efforts were overcome by the Trust. To do so, the Trust's local counsel in the Isle of Man, and the Trust's United States counsel had to appear in the court in the Isle of Man. The Settlement was ultimately approved by Orders of both this Court and the court in the Isle of Man.

14. The Settlement in the Isle of Man with certain parties does not affect the claims of the Trust against Lycourgos Kyprianou in the Isle of Man or elsewhere. Thus, the action in the Isle of Man remains extant as against Lycourgos Kyprianou and those defendants who are affiliated with or otherwise controlled by him.

15. The proceeds of the Settlement were recovered and paid, part to the Trust directly and part to the United States Government, in accordance with the allocation of proceeds provision of the Coordination Agreement, previously entered into between the Trust and the United States and approved by Order of this Court, (as discussed in the prior Supplemental Status Report). Through the Trust's diligence and as required by the Coordination Agreement, the United States then timely remitted its portion of the Settlement funds to the Trust, so the First Interim Cash Distribution could be made promptly to the Trust's beneficiaries.

(b)   Claim Reductions

16. Pursuant to the Affidavit of Shandarese Garr of GCG dated February 20, 2004, previously filed with the Court, the total recognized claim amount for all valid claims asserted against the Trust at the time was $565,068,541.78. During the Reporting Period, and in anticipation of the First Interim Cash Distribution, the Trustees took action to reduce the aggregate recognized amount of the claims asserted against the Trust, in the form of a number of Court Orders, agreements and settlements, including the following:

17. <u>INFO-QUEST, S.A.</u>: On April 5, 2005, upon the application of the Trust, this Court entered an Order reducing the claim of Info-Quest, S.A. ("Info-Quest") (Claim No. ARS 52) from $57,494,871.75 to $10,000,000.00. Thus, the Trustees achieved a claim reduction of $47,494,871.75. Info-Quest received its *pro-rata* cash distribution in the context of the First Interim Cash Distribution based on the reduced claim amount.

18. <u>IRWIN JACOBS</u>: On April 26, 2005, upon application of the Trust, this Court entered an Order reducing the claim of Irwin L. Jacobs ("Jacobs") (Claim No. ARS 02012175) from $39,855,753.16 to $20,000,000.00. Thus, the Trustees achieved a claim reduction of $19,855,753.16. Jacobs received his *pro-rata* cash distribution in the context of the First Interim Cash Distribution based on the reduced claim amount.

19. <u>DUPLICATE/REFUSED CLAIMS</u>: On May 5, 2005, upon the application of the Trust, this Court entered an Order disallowing a number of duplicative and refused claims including but not limited to:

| Claim # | Claimant | Address | Recognized Claim Amount |
|---|---|---|---|
| 5860 | SB Travelers Disciplined | Small Cap Stock Port<br>125 Broad Street<br>Dept. 9<br>New York, New York 10004 | $75,568.01 |
| 3689 | JIK Investments Two LP-RCO | c/o Strong Capital Management<br>100 Heritage Reserve<br>Menomonee Falls, Wisconsin 53051 | $6,472.61 |
| 3390 | Mellon Trust/Boston Sale, as Agent | 525 William Penn Place, Room 3418<br>Pittsburgh, Pennsylvania 15259 | $388,755.55 |
| | Total | | $470,796.17 |

20. In addition to the three duplicate/refused claims above, an additional claim was stricken from the rolls of the Trust as duplicative of another claim. On May 16, 2005, GCG received notification from John A. Modry, Trustee for the John F. Modry Irrevocable Trust, stating that Claim Number ARS 3591 was duplicative of Claim Number ARS 100422. As such,

Mr. Modry returned the share certificates representing 103 shares of SoftBrands, Inc. which were previously distributed pursuant to Claim Number ARS 3591, and the duplicate claim was stricken.

21. UNDELIVERABLE DISTRIBUTIONS: Upon the Trust's application, by this Court's Undeliverable Claims Order, this Court ordered "that any claims asserted against the Trust for which distributions are refused or undeliverable after ninety (90) days of issuance be stricken from the rolls of the Trust and its claims administrator." According to Wells Fargo, the transfer agent for SoftBrands, Inc., there were four claims for which delivery of SoftBrands, Inc. shares could not be made ("Undeliverable Distributions"). Consistent with the Undeliverable Claims Order, the claims corresponding to the Undeliverable Distributions were stricken from the rolls and no distributions will be made with respect to said claims.

22. GLOBAL ASSET MANAGEMENT: Global Asset Management ("GAM") filed four Proofs of Claim on behalf of four related entities for a total amount of $6,211,013.60 ("GAM Claims"), including the following:

| Claim No. | Claimant | Address | Claim Amount Asserted |
|---|---|---|---|
| 6138 | GAM Star America Investments | George's Quay House<br>43 Townsend St.<br>Dublin 2 Ireland | $831,657.60 |
| 6139 | GAM North America Growth | c/o GAM Funds, Inc.<br>12 St. James Place<br>London SWIA INA<br>United Kingdom | $819,380.00 |
| 6140 | GAMerica Capital Fund | c/o GAM Funds, Inc.<br>GAM USA, Inc.<br>135 East 57 St.<br>New York, New York 10022 | $3,721,708.80 |
| 6141 | GAMerica Investments, Inc. | George's Quay House<br>43 Townsend St.<br>Dublin 2 Ireland | $838,267.20 |

23. The Trust objected to the GAM Claims: GAM and the Trust subsequently agreed in the course of negotiations to resolve the litigation, and that for purposes of the First Interim Cash Distribution, the Trust would pay GAM a *pro-rata* cash distribution such as would be calculated on thirty (30%) percent of each GAM Claim. With respect to distributions after the First Interim Cash Distribution, the Trust shall distribute and GAM shall accept such *pro-rata* cash distribution as would be calculated on one-hundred (100%) percent of each GAM Claim. An Order of this Court dated May 31, 2005 approved such claim reductions.

24. Taking into consideration all of the above, the revised total "Recognized Claims," for purposes of the First Interim Cash Distribution, were set, by Order of the Court dated June 9, 2005. The Trustees reduced the total claim pool from $565,068,541.78, by $66,097,269.53, to $498,971,272.25. Thus, the Trustees obtained an approximate 11.7% reduction in the total claim pool asserted against the Trust, materially enhancing the value of all other claims asserted against the Trust.

### D. Continuing Litigation

25. In the Isle of Man litigation, the Settlement with Roys Poyiadjis and related parties was reached and approved as described above. However, the Trust's Isle of Man action was only partially settled. The Trustees' action in the Isle of Man remains pending against non-settling defendants Lycourgos Kyprianou ("Kyprianou"), Aremis Holdings Limited, Aremis Technology Ventures Limited and Sincock Holdings Corp.

26. Kyprianou is in default in the Isle of Man proceeding for having failed to appear and contest the charges the Trust made against him, despite his knowledge of the litigation and claims. The Isle of Man is but one international jurisdiction where the Trust is concentrating its efforts to pursue recoveries against Kyprianou and his co-conspirators. The Trustees continue to

seek recoveries against Kyprianou and his co-conspirators, including in Cyprus, where the Trust has commenced and is prosecuting an action against them.

27.  On July 21, 2005, the Trust commenced a formal proceeding in Cyprus and sought and obtained a temporary *Mareva* injunction and interim ancillary relief against assets owned and/or controlled by Lycourgos Kyprianou and entities controlled by him. The defendants in the Cyprus action are Lycourgos Kyprianou, Pavlos Meletiou, King Mazax Lines Limited (a Kyprianou entity that owns Kyprianou's yacht), Ermioni Kyprianou (Lycourgos Kyprianou's wife), Semark Consultancy Services Limited, Global Consolidator Limited, L.K. Global (Holdings) N.V., Aremis Holdings Limited, Aremis Technology Ventures Limited, Sincock Holdings Corp., Southwood Management Limited and Palantine Asset Management Ltd. The *Mareva* injunction issued based upon the Trust's submission to the Court in Cyprus, on a *prima facia* basis, of extensive, incontrovertible evidence that Kyprianou played a primary role in, and is responsible and liable as a co-conspirator for, the massive fraud committed on AremisSoft and its shareholders – the Trust's beneficiaries. Based on this showing, the Trust achieved the unprecedented result in Cyprus of an Order of the court freezing assets worldwide worth up to US$500 million belonging to Kyprianou and entities he owns and/or controls. The Trust immediately served the *Mareva* freeze order on thousands of banks and other financial institutions worldwide and has been diligently investigating and pursuing assets belonging to Kyprianou and which are suspected of having been acquired with proceeds derived from the AremisSoft fraud. The hearing in the Cyprus court as to whether the *Mareva* injunction should be made absolute was conducted over several days after conclusion of the Reporting Period, and the court has reserved its ruling. The Trustees expect that the *Mareva* injunction will remain in place while the parties engage in discovery and prepare for trial of the substantive action on the merits, which the Trustees have filed in Cyprus. Since the Trust obtained the *Mareva* injunction

in July 2005, it has uncovered additional evidence of Kyprianou's orchestration of the fraud, and a paucity of evidence has been submitted in his defense at the hearing in Cyprus on the *Mareva* injunction. The Trustees are hopeful that the Trust will obtain a permanent *Mareva* relief and will ultimately prevail in obtaining a judgment against Kyprianou and related individuals and entities in the Cyprus proceedings.

28. Also after the close of the Reporting Period, the Trust located certain Kyprianou assets in England and has commenced legal proceedings to freeze those assets and to trace the proceeds used to acquire them. The Trust is continuing its litigation in England and elsewhere, seeking to obtain a judgment against Kyprianou and his co-conspirators and related entities with the goal of repatriating those assets subject to restitution to the Trust for the benefit of the Trust's beneficiaries.

29. Through their proactive diligence and investigation, the Trustees also discovered that Kyprianou's yacht was sailed from Cyprus to Rhodes, Greece in late August, 2005. On September 1, 2005, the Trust filed suit and sought an injunction in Rhodes asserting that the yacht was acquired with the proceeds of the AremisSoft fraud by an entity or entities controlled by Kyprianou. The Trust thereupon successfully obtained an interim injunction in Rhodes, restraining and enjoining the use of the yacht. By order of the Rhodes court, the Trust posted a guaranty on September 16, 2005 as a condition to the effect of the preliminary injunction. The preliminary injunction remained in effect throughout the close of the Reporting Period, and the yacht remains in arrest at its berth in Rhodes. Upon further efforts in the court in Rhodes, the injunction has since been made permanent in favor of the Trust. Substantive litigation concerning the ultimate rights to, and disposition of, the yacht commenced in the courts of Cyprus and is continuing following the close of the Reporting Period.

30. On September 15, 2005, the Trust commenced an action in this Court against defendants Bordier *et Cie* ("Bordier") and Dominick Company, AG ("Dominick"), seeking damages and alleging, *inter alia*, that the defendants are financial institutions which aided and abetted the breaches of fiduciary duty and money laundering committed by Lycourgos Kyprianou and Roys Poyiadjis ("Poyiadjis"). The Trust asserted that Bordier and Dominick each knew that (i) a significant portion of the assets in various accounts, with a value in the tens of million of dollars, did not rightfully belong to the beneficial owners of the entities maintaining the accounts; (ii) the individuals who were supposedly the beneficial owners of the assets in the accounts were splitting the assets between the multiple accounts held in the name of numerous different entitles; (iii) the funds were being transferred out of the accounts at the banks in Switzerland into accounts maintained by different individuals at banks in a variety of jurisdictions; and (iv) a multitude of transactions were conducted involving significant amounts of money which occurred with great frequency and for no discernible business purpose. As of the close of Reporting Period, the Trust's complaint was in the process of being translated into both German and French, as is required, in preparation for service on the defendants pursuant to the *Hague Convention on the Service Abroad of Journal and Extrajudicial Documents in Civil or Commercial Matters*. Subsequent to the Reporting Period, Bordier and Dominick moved in this Court asserting objections to the Trust's claims on jurisdictional grounds. Issues concerning the applicability and scope of jurisdictional discovery are currently before this Court.

31. In addition to their litigation and recovery efforts in Cyprus, England, the Isle of Man and Rhodes, the Trustees continue their efforts to investigate, locate and repatriate additional sources of restitution to the Trust and the Trust beneficiaries. Likewise, the Trustees continue their efforts to investigate and pursue claims against individuals and entities, some of whom are affiliated with Lycourgos Kyprianou, in various jurisdictions around the world,

including in the United States, Western Europe, Eastern Europe, the Caribbean basin, and elsewhere, and are working closely with appropriate local authorities. While the Trustees cannot disclose these additional matters publicly, the Trustees are prepared to share this information, along with a description of the Trust's efforts to locate additional Trust assets, with the Court *in camera*.

### E. Tax Issues

32. As with any major plan of reorganization, there exist tax implications created by the distribution of assets pursuant to the Plan and Confirmation Order. In addition, the distribution of "Net Trust Recoveries" implicated tax issues.

33. As previously reported, of particular concern was the tax treatment to be afforded to funds the Trust received from the recovery in the Isle of Man. Because the Trust originally was characterized as a grantor trust, its income -- including all recoveries -- could be passed through as income to the Trust beneficiaries on a *pro rata* basis. The Trust professionals posited that as the Trust's functions shifted from liquidating AremisSoft to pursuing Net Trust Recoveries, U.S. tax law was more likely to recognize the Trust as a qualified settlement fund (a "QSF"), which does not pass through income but instead files its own returns. Questions arose relating to the characterization of such proceeds as income and to whom, both under the regular personal income tax rules and the alternative minimum tax, and under tax rules applying to QSFs. Another question was whether the payment of class action attorneys' fees constitutes so-called "phantom income" to the Trust beneficiaries. Issues also existed as to the type of tax returns required to be filed by the Trust, the obligation of the Trust to pay taxes on its taxable income (gross income less deductions) and, if so, in which jurisdictions, and whether it must withhold taxes on payments to beneficiaries.

34. During the Reporting Period, certain of these tax issues were raised with the Internal Revenue Service ("IRS"). After the close of the Reporting Period, the Trust obtained favorable, formal private letter rulings from the IRS on certain of these federal tax issues, which formal rulings addressed, either directly or indirectly, the other, ancillary federal tax questions.

F. **Summary of Trustees' Fees and Expenses Paid**

35. The fees and expenses of the Trustees, and the professional fees and expenses of the Trust, paid during the Reporting Period are as set forth on Exhibit "A" hereto.

G. **Summary of Cash Receipts and Disbursements of the Trust**

36. The summary of cash receipts and disbursements of the Trust during the Reporting Period is as set forth on Exhibit "A" hereto.

Dated: February 9, 2006

GREENBERG TRAURIG, LLP

By: _____
Hal M. Hirsch
David Jay
200 Campus Drive
P.O. Box 677
Florham Park, New Jersey 07932-0677
(973) 360-7900

*Attorneys for the AremisSoft Liquidating Trust*

_____
Joseph P. LaSala, Trustee

_____
Fred S. Zeidman, Trustee

34. During the Reporting Period, certain of these tax issues were raised with the Internal Revenue Service ("IRS"). After the close of the Reporting Period, the Trust obtained favorable, formal private letter rulings from the IRS on certain of these federal tax issues, which formal rulings addressed, either directly or indirectly, the other, ancillary federal tax questions.

F. **Summary of Trustees' Fees and Expenses Paid**

35. The fees and expenses of the Trustees, and the professional fees and expenses of the Trust, paid during the Reporting Period are as set forth on Exhibit "A" hereto.

G. **Summary of Cash Receipts and Disbursements of the Trust**

36. The summary of cash receipts and disbursements of the Trust during the Reporting Period is as set forth on Exhibit "A" hereto.

Dated: February 17, 2006                    GREENBERG TRAURIG, LLP

                                            By: _____
                                                Hal M. Hirsch
                                                David Jay
                                                200 Campus Drive
                                                P.O. Box 677
                                                Florham Park, New Jersey 07932-0677
                                                (973) 360-7900

                                            *Attorneys for the AremisSoft Liquidating Trust*

_____
Joseph P. LaSala, Trustee

_____
Fred S. Zeidman, Trustee

## EXHIBIT "A"

| | |
|---|---|
| BALANCE ON HAND AS OF OCTOBER 1, 2004 | $12,081,947.18 |
| | |
| TRUST RECOVERIES FOR REPORTING PERIOD | |
| Litigation Settlement[3] | $193,945,208.48 |
| | |
| OTHER RECEIPTS | |
| Refunds of Posted Undertakings Required by High Court of Justice, Isle of Man: | $11,103,972.30 |
| Refund of Unclaimed Trust Distributions: | $3,682,629.32 |
| Interest/Dividends Earned/Asset Valuation: | $475,590.60 |
| TOTAL TRUST INCOME AND RECEIPTS FOR REPORTING PERIOD: | $209,207,400.70 |
| | |
| TOTAL TRUST INCOME, RECEIPTS AND STARTING BALANCE: | $221,289,347.88 |

---

[3] Settlement based on 151,768,098.35 Euros, which was equivalent as of the date so designated in the Settlement to US $200,000,000.00.

|   | TRUST DISBURSEMENTS FOR REPORTING PERIOD: |   |   |
|---|---|---|---|
| 1. | First Interim Cash Distribution to Trust Beneficiaries: |   | $139,999,999.69 |
| 2. | SoftBrands, Inc. First Interim Cash Distribution: |   | $12,640,555.55 |
| 3. | Class Counsel Fees <br> (15% of gross recovery from litigation settlement): |   | $28,935,662.03 |
| 4. | Co-Trustees: |   |   |
|   | A. | Monthly Fees: |   |
|   |   | LaSala            $7,500.00 x 12 | $90,000.00 |
|   |   | Zeidman           $7,500.00 x 12 | $90,000.00 |
|   | B. | Settlement Compensation: |   |
|   |   | LaSala | $2,469,522.06 |
|   |   | Zeidman | $1,269,522.06 |
|   |   | Greenberg Traurig, LLP | $5,000,000.00 |
|   |   | TOTAL: | $8,739,044.12 |
|   | C. | Trustee Expense Reimbursement: |   |
|   |   | LaSala/McElroy, Deutsch, Mulvaney & Carpenter | $60,870.60 |
| 5. | United States Trustee Fees: |   | $2,000.00 |
| 6. | Professional and Administrative Fees and Expenses: |   |   |
|   | A. | Greenberg Traurig, LLP <br> (Trust's primary counsel): | Fees: $7,376,467.99 <br> Expenses: $854,407.24 <br> Total: $8,230,875.23 |
|   | B. | Gough & Co. <br> (Isle of Man counsel to the Trust): | $625,279.49 <br> (based on conversion) |
|   | C. | Milberg, Weiss, Bershad & Schulman LLP <br> (Class Counsel Reimbursement): | $27,221.93 |
|   | D. | Markides Markides & Co. <br> (Cyprus Counsel to the Trust): | $187,759.96 <br> (based on conversion) |
|   | E. | Monfrini Crettol & Associates <br> (Swiss Counsel to the Trust): | $191,292.53 <br> (based on conversion) |
|   | F. | Richard Millet, QC <br> (United Kingdom Counsel to the Trust): | $80,351.64 <br> (based on conversion) |
|   | G. | Paul McGrath <br> (United Kingdom Counsel to the Trust): | $316,920.87 <br> (based on conversion) |
|   | H. | Elizabeth Gloster, QC: <br> (United Kingdom Counsel to the Trust): | $12,726.55 <br> (based on conversion) |
|   | I. | Panayiotis Neocleous <br> Admiralty counsel (Cyprus): | $22,050.43 <br> (based on conversion) |
|   | J. | Fees and disbursements <br> in connection with Isle of Man settlement: | $76,375.71 <br> (based on conversion) |
|   | K. | Posted undertakings required <br> by various courts (temporary disbursements): | $745,775.43 <br> (based on conversion) |
|   | L. | Wiss & Company, LLP <br> (Accountants for the Trust): | $17,925.00 |

| | | |
|---|---|---|
| 7. | Wells Fargo Fees (Transfer Agent): | $2,500.00 |
| 8. | CSC (Corporate Filings): | $1,335.00 |
| 9. | The Garden City Group, Inc. (Claims Administrator): | $99,405.11 |
| 10. | Amb. Clay Constantinou (Ret.) (Consulting Services and Reimbursement of Disbursements): | $138,229.62 |
| 11. | Investigative Services: | $363,580.95 (based on conversion) |
| 12. | Delaware Secretary of State: | $411.12 |
| 13. | Hess Dallafior (Swiss Counsel): | $7,813.72 (based on conversion) |
| 14. | Miller Advertising (Legal Notice): | $11,499.60 |
| 15. | Errors & Omissions Insurance Premiums: | $145,000.00 |
| 16. | Merrill Lynch (Trust Fees) (other fees waived): | $66,904.76 |
| 17. | Minnesota Commissioner of Revenue: | $5,819.00 |
| 18. | Georgia Department of Revenue: | $24.00 |
| 19. | Isle of Man (Fee to Isle of Man Government for expenses incurred, per Court Order): | $174,800.90 |
| | TOTAL OF TRUST DISBURSEMENTS FOR REPORTING PERIOD: | $202,110,010.54 |
| | BALANCE IN TRUST ACCOUNTS (INCLUDES RESERVES) AS OF SEPTEMBER 30, 2005: | $19,179,337.34 |