**EXHIBIT F**

# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>AREMISSOFT CORPORATION,<br>a Delaware corporation,<br><br>Debtor. | Civil Action No. 02-cv-01336 (JAP)<br><br>Honorable Joel A. Pisano<br><br>Chapter 11<br><br>Bankruptcy Case No. 02-32621 (RG) |
| - AND - | |
| IN RE AREMISSOFT CORP.<br>SECURITIES LITIGATION | Civil Action No. 01-cv-2486 (JAP) |

### AMENDED FINDINGS OF FACTS AND
### CONCLUSIONS OF LAW AND ORDER APPROVING
### COORDINATION AGREEMENT BETWEEN THE
### AREMISSOFT LIQUIDATING TRUST AND
### THE UNITED STATES, DATED AS OF SEPTEMBER 14, 2004

Whereas, the AremisSoft Liquidating Trust ("Liquidating Trust") filed a

Motion to Approve the Coordination Agreement, dated as of September 14, 2004

("Coordination Agreement" or "Agreement"), by and between the AremisSoft

Liquidating Trust ("Liquidating Trust") and the Government of the United States

("United States"), by its counsel the United States Attorney for the Southern District of New York; and

Whereas, the United States joins in this application; and

Whereas, the Liquidating Trust's Motion sets forth facts and events underlying this litigation and the fraud perpetrated on AremisSoft Corp. ("AremisSoft") and its shareholders by Roys Poyiadjis ("Poyiadjis") and Lycourgos Kyprianou ("Kyprianou") and others who aided and abetted them; and

Based on the Court's review of the Liquidating Trust's Motion and annexed exhibits, and the prior proceedings and pleadings in this action, the Court finds that the Liquidating Trust has made a prima facia showing of the following:

## FINDINGS OF FACTS

1. Prior to 1998, AremisSoft was known as LK Global Information Systems, N.V. ("LK Global"). In 1997, LK Global merged into Juno Acquisitions and subsequently changed its name to AremisSoft. AremisSoft purported to be an international provider of software with extensive operations in Cyprus, India and Eastern Europe.

2. On June 1, 1998, AremisSoft filed a registration statement with the Securities and Exchange Commission ("SEC") in connection with the initial public offering of its common stock ("IPO"). On April 22, 1999, AremisSoft completed its IPO by selling 3.3 million shares of common stock resulting in net proceeds of

over $12 million. At one point, AremisSoft had a market capitalization of over $1 billion.

3. Kyprianou and Poyiadjis were the two senior officers of AremisSoft and controlled the Company. At all relevant times that AremisSoft was a publicly traded company, Poyiadjis was the Co-Chief Executive Officer, President, and a Director of AremisSoft. Kyprianou was the founder, Co-Chief Executive Officer and Chairman of the Company. In its annual SEC filings on form 10-K, AremisSoft disclosed that Poyiadjis and Kyprianou were control persons essential to the operations of the Company. Poyiadjis and Kyprianou signed all relevant SEC filings by AremisSoft prior to their resignations.

4. Poyiadjis and Kyprianou were two of the largest shareholders of AremisSoft, with Kyprianou owning more than 48% of the outstanding common stock of the Company as of March 14, 2000, and Poyiadjis' ownership of common stock increasing from approximately 7% in 2000 to approximately 10% in 2001.

5. Poyiadjis and Kyprianou were jointly responsible for the management of AremisSoft. Poyiadjis, by virtue of his responsibilities and activities as a senior officer and/or director of AremisSoft, was privy to and directed the public reporting of the Company's plans and SEC reports, and the Company's raising of capital in the public and private sectors. Poyiadjis also had complete access to the Company's records, operations, internal reports, and all information about

AremisSoft's financial condition and performance. Kyprianou also directed the day-to-day operations of the Company, and directed the acquisition of software companies to further the impression that AremisSoft's growth strategy was premised on the integration of highly successful and profitable software companies. Kyprianou also directed the disclosure of AremisSoft's financial reporting.

6. AremisSoft admitted in public filings in November 2001 that the Company's acquisition of three software companies, E-nnovations.com, E-ChaRM Private Limited, and Denon International Limited "were recorded at values not substantiated by information developed in the investigation."

7. According to filings with the SEC in 2001, AremisSoft was unable to substantiate approximately $90 million in revenue reported in 2000.

8. AremisSoft's financial statements filed in 1999 and 2000 were materially false and misleading, with the necessary consequence that the market price of AremisSoft stock was artificially inflated.

9. Poyiadjis and Kyprianou knew, or by their status as insiders of AremisSoft were reckless in not knowing, that AremisSoft's financial statements were materially false and misleading.

10. Poyiadjis and Kyprianou sold AremisSoft stock while insiders and in possession of confidential information that the Company's financial statements

were materially false and misleading. Poyiadjis and Kyprianou collectively sold over 10 million shares of AremisSoft stock into the public market earning profits of over $330 million, which is far in excess of the 3.3 million shares the Company registered in its IPO in April 1999. Approximately $175 million of the proceeds of those sales – which has since grown to approximately $230 million – was transferred to the Isle of Man.

11. Pursuant to orders issued by Isle of Man Courts in October 2001 and June 2002, the monies in the Isle of Man have been restrained pending the outcome of litigation there.

12. In July and September 2001, Kyprianou and Poyiadjis resigned from the Company and are currently residing in Cyprus. Both Kyprianou and Poyiadjis have been indicted in the Southern District of New York for criminal securities fraud and money laundering, but have failed to appear to answer those charges.

13. In an Order entered on February 25, 2004, this Court approved the Court-appointed Claims Administrator's acceptance of valid claims constituting losses sustained by AremisSoft's shareholders at the hands of Poyiadjis and Kyprianou. The total loss amount approved is $564,881,989.99.

14. The Liquidating Trust and the United States have agreed to broadly coordinate and cooperate with each other to investigate the AremisSoft fraud and

to pursue Poyiadjis and Kyprianou and others who aided and abetted them in the AremisSoft fraud.

15. The Coordination Agreement memorializes the parties' agreement, and is the culmination of many months of negotiations between attorneys for the Liquidating Trust, the United States Attorney for the Southern District of New York, and the SEC. One of the goals of the Coordination Agreement is to maximize recoveries paid to the Liquidating Trust for the benefit of its beneficiaries ("Liquidating Trust Beneficiaries" or "Beneficiaries"). The Coordination Agreement recognizes the Liquidating Trust Beneficiaries as the victims of the AremisSoft fraud, and provides that the Liquidating Trust Beneficiaries will receive monies recovered by either the Liquidating Trust or the United States wherever located and whenever recovered.

16. The Agreement further creates a framework for coordinated efforts that is intended to avoid duplication and to efficiently pursue the common goals of the Justice Department and the Liquidating Trust, while nevertheless preserving independence in connection with the unique standing and respective interests of each of the Liquidating Trust and the Justice Department.

17. In Section 1.2 of the Coordination Agreement, the parties agree that all assets constituting proceeds relating to the AremisSoft fraud and malfeasance, including cash, securities and real property, wherever located and whenever

recovered by or disgorged to the Liquidating Trust or the United States, including the accounts frozen in the Isle of Man which currently hold approximately $230 million ("Recoverable Assets"), shall be, upon recovery, distributed pursuant to Article V of the Agreement.

18. Article V sets forth a method of allocation of the Recoverable Assets among the United States and the Liquidating Trust on behalf of the Liquidating Trust Beneficiaries. Two thirds of the Recoverable Assets shall be apportioned to the United States (the "Government Share") and one-third is apportioned to the Liquidating Trust (the "Liquidating Trust Share"). The Government Share is deemed forfeited by the payor to the United States pursuant to relevant civil and criminal forfeiture claims and such amount, less any deduction retained by the United States to offset out-of-pocket expenses actually paid to third-parties during the prosecution and investigation of the AremisSoft fraud, shall be remitted to the Liquidating Trust as promptly as possible for distribution to the Liquidating Trust Beneficiaries in accordance with the Plan of Reorganization previously approved by this Court or as it may hereafter be modified by Court order.

19. The Coordination Agreement also confirms the goal of the Liquidating Trust and the United States that a coordinated effort to locate and repatriate assets will further the ends of justice and maximize the recovery of assets for the benefit of the Liquidating Trust Beneficiaries. Types of coordination

include (i) sharing information, documents and witnesses (subject to applicable privileges and rules), (ii) coordinating discovery, tactics and strategy, (iii) taking all reasonable steps to establish the liability of Poyiadjis, Kyprianou and others, (iv) making all necessary appearances before judicial and quasi-judicial bodies and tribunals, and (v) cooperating with each other to locate, freeze and monetize recovered assets.

20. Pursuant to the Agreement, the United States also agrees to consider taking action to obtain, and execute on, a judgment against Poyiadjis, Kyprianou and others, or to facilitate and implement any settlement which the parties may reach with said persons. The parties acknowledge that pursuing these goals may entail commencing new or additional actions or proceedings in the United States and other jurisdictions, including Cyprus, Switzerland, and the British Virgin Islands.

21. The Coordination Agreement is of benefit to, and furthers the interests of, the Liquidating Trust and the Liquidating Trust Beneficiaries. It will likely provide access to thousands of pages of relevant documents not previously available to the Liquidating Trust, as well as potential access to investigators and experts with detailed knowledge of the AremisSoft fraud and additional sources of hidden funds.

## CONCLUSIONS OF LAW

22. Poyiadjis and Kyprianou, and others who aided and abetted them, perpetrated a fraud on AremisSoft causing its shareholders to lose hundreds of millions of dollars and drastically diminishing the value of its assets.

23. By reason of Poyiadjis' and Kyprianou's status at AremisSoft, they were "control persons" of AremisSoft.

24. Poyiadjis and Kyprianou, in breach of their fiduciary duties, caused AremisSoft to issue false and misleading statements to the public in its SEC fillings and press releases from its IPO on April 22, 1999 through at least July 27, 2001, pertaining to its revenue, earnings, contracts, and acquisitions. Based on AremisSoft's SEC filings in November 2001, Poyiadjis and Kyprianou grossly overstated AremisSoft's results of operations and its prospects for future growth, and falsely reported the values of companies it acquired to substantiate the impression that AremisSoft's growth strategy was premised on the integration of highly successful and profitable software companies. As a result of the fraudulent conduct, the value of AremisSoft stock was artificially inflated.

25. Poyiadjis and Kyprianou, while insiders, unlawfully profited from their fraud by secretly selling over 10 million shares of AremisSoft stock at artificially inflated prices and earning profits of over $330 million dollars.

26. Poyiadjis and Kyprianou knowingly or recklessly violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder in that they: (a) employed devices, schemes and artifices to defraud; (b) made material misrepresentations of fact and failed to disclose material facts necessary in order to make their statements, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices and a course of conduct that operated as a fraud or deceit upon AremisSoft and its shareholders whose claims have been approved in this action. Poyiadjis and Kyprianou are jointly and severally liable for such violation.

27. Poyiadjis and Kyprianou were also "control persons" of persons who were primarily liable under Section 10(b) of the Securities Exchange Act of 1934. In addition to being primarily liable, Poyiadjis and Kyprianou are secondarily liable for those primary violations pursuant to Section 20(a) of the Securities Exchange Act of 1934. Poyiadjis and Kyprianou are jointly and severally liable for such violation.

28. Poyiadjis and Kyprianou defrauded AremisSoft. Poyiadjis and Kyprianou have willfully and knowingly, negligently and/or recklessly and in bad faith breached their fiduciary duties to AremisSoft and unjustly enriched themselves at the expense of AremisSoft. Poyiadjis and Kyprianou are jointly and severally liable for such violation.

29. Poyiadjis and Kyprianou further breached the securities laws and their fiduciary duties by trading on inside information. As a result, the proceeds of the insider trading must be disgorged for the benefit of the Liquidating Trust and its Beneficiaries. See 11 U.S.C. § 541(a); *Brophy v. Cities Serv. Co.*, 31 Del. Ch. 241, 70 A.2d 5 (1949). Poyiadjis and Kyprianou are jointly and severally liable for such violation.

### ORDER

Based on the foregoing, and for good cause shown, it is on the 12th day of October 2004, ORDERED that the Liquidating Trust's Motion to Approve the Coordination Agreement be and hereby is GRANTED.

IT IS FURTHER ORDERED that the Liquidating Trustees and the Justice Department are directed to coordinate their actions as set forth in the Coordination Agreement to maximize recoveries for the benefit of the Liquidating Trust Beneficiaries.

IT IS FURTHER ORDERED that all monies recovered by the Liquidating Trust or the Justice Department by reason of the AremisSoft fraud shall be distributed pursuant to the terms of the Coordination Agreement.

IT IS FURTHER ORDERED that the Liquidating Trust Agreement establishing the Liquidating Trust is hereby amended to provide that to the extent Recoverable Assets (as such term is defined in the Coordination Agreement) are

recovered by reason of proceedings in or related to funds in the Isle of Man, including accounts restrained in the Isle of Guernsey, the professional fees payable to Class Counsel be reduced to 15% of such recovered assets.

IT IS FURTHER ORDERED that the Court shall retain exclusive jurisdiction to hear and determine all matters arising out of, and related to, the Coordination Agreement, including without limitation, the interpretation and enforcement of the Coordination Agreement.

IT IS FURTHER ORDERED that a true copy of this Order shall be served upon all counsel of record in this matter within ten (10) days of entry hereof on the docket.

_____
Hon. Joel A. Pisano
United States District Judge

Form order – ntcorder

## UNITED STATES BANKRUPTCY COURT

District of New Jersey
MLK Jr Federal Building
50 Walnut Street
Newark, NJ 07102

| | | |
|---|---|---|
| In Re: | AremisSoft Corporation and AremisSoft Corporation | |
| SSN: | | |
| EIN: | 13-3690905 | 13-3690905 |
| ADDRESS: | Two Meridian Crossings, Suite 800 Minneapolis, MN 55423 | |

Case No:  02-32621-RG
Chapter:  11
Judge:    Rosemary Gambardella

Debtor(s)

### NOTICE OF JUDGMENT OR ORDER
Pursuant to Fed. R. Bankr. P. 9022

Please be advised that on October 14, 2004, the court entered the following judgment or order on the court's docket in the above-captioned case:

Document Number: 175
District Court's Order of Amended Findings of facts and conclusions of Law and Order approving coordination agreement between the Aremisoft Liquidating Trust and The United States dated as of 9/14/04. The following parties were served: Debtor, Debtor's Attorney, Trustee and US Trustee. Signed on 10/13/2004. (iav, )

Parties may review the order by accessing it through PACER or the court's electronic case filing system (CM/ECF). Public terminals for viewing are also available at the courthouse in each vicinage.

Dated: October 14, 2004
JJW: iav

James J. Waldron
Clerk