UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------x

|  |  |  |
|---|---|---|
| JOSEPH P. LASALA and FRED S. ZEIDMAN, as CO-TRUSTEES of the AREMISSOFT CORPORATION LIQUIDATING TRUST, | : | No. 09-CV-00968 (JAP) |
| Plaintiffs, | : | Declaration of NICOS PAPAEFSTATHIOU |
| v. | : | |
| MARFIN POPULAR BANK PUBLIC COMPANY, LTD., | : | |
| Defendant. | : | |

-------------------------------------------------------x

[Nicosia, Cyprus]

Nicos Papaefstathiou, of Nicosia, Cyprus, pursuant to 28 U.S.C. § 1746, declares as follows:

## I.   **Background**

1. I attended and graduated from the Law School of Salonica (Greece) University. Furthermore I attended postgraduate studies at the University of London (Queen Mary College) and achieved a Masters in Law (LLM) degree. I became a member of the Cyprus Bar in April 1980. I began my legal career in 1980 as a lawyer in private practice, as an associate in the Law Firm Tassos

Papadopoulos and Co. in Nicosia, Cyprus. Later I joined the Firm as a partner and I was one of the senior partners of this firm up until July 2007. Since July 2007, I hold the position of managing partner at the law firm Tassos Papadopoulos & Associates.

2.    I served two terms as President of the Cyprus Bar Association (2000-2006). I was appointed President of the Committee for Property Statement and control of state officials, which was established by the State Officers of the Republic (Property Statement and Control) Law of 2004, a position I still hold today. I also served as a Member of the Legal Council (1994-2006), the Lawyer's Disciplinary Board (2000-2006), the National Organization for the Protection of Human Rights (2000-2006), the Co-ordinating Body Against Corruption, the Accountants' Disciplinary Board (since 2003), as Head of Cypriot Delegation to the C.C.B.E. (2000-2006) and as President of the Union of Balkan Bar Associations (2004-2006).

3.    My areas of practice include advising major companies including insurance companies, drafting legislation specifically for semi-governmental organizations and acting as legal adviser to such organizations. I also act in litigation for major disputes, either in court proceeding as well as in

2

arbitrations and before administrative bodies such as the Competition Committee and the Tenders Review Authority. A major part of our practice includes the handling of international transactions, preparation of transactional documentation and public procurements. I am very familiar with the rules governing the jurisdiction of the Courts of the Republic of Cyprus and with the laws applicable in Cyprus. These include, inter alia, jurisdiction, procedural rules, and the various branches of substantive law (including local law and bi-lateral and international treaties and conventions).

4.    I make this Declaration based on my personal knowledge and in support of the Motion by Marfin Popular Bank Public Company Ltd (the "Bank") to Dismiss the Amended Complaint.

5.    Based on my experience as a lawyer I believe that I am fully competent to discuss the topics relating to Cyprus law that are in issue in this action including issues related to the Cyprus judicial system and matters of substantive Cyprus law.

6.    In connection with the preparation of this Declaration, I have reviewed the

Complaint filed by the Trustees against the Bank in the District Court for New Jersey (the "New Jersey Action").

7.     The purpose of this Declaration is to describe the Cyprus judicial system, the Cypriot legislation law applicable to the claims set forth in the Amended Complaint and to analyze those claims as a matter of Cypriot substantive law. This Declaration will further describe certain aspects of the regulatory regime to which the Bank is subject to in Cyprus (including the Cyprus Banking Law 1997, as amended). Central to the relevant regime of regulation and supervision to which the Bank of Cyprus is subject to in Cyprus, is the Central Bank of the Republic.

8.     This Declaration will begin by describing the lawsuit that has been filed in Cyprus previously  before the District Court of Nicosia by Joseph P. LaSala and Fred S. Zeidman, as Co-Trustees of the AremisSoft Corporation Liquidating Trust – the same Trustees that have commenced the New Jersey Action. I personally, defended the Bank in this court action.

**THE TRUSTEES' LAWSUITS IN CYPRUS**

9.     The Trustees initiated the Court action no. 9200/05 before the District Court of Nicosia, Cyprus.

10. In this action the Trustees were represented by Mr. Alecos Markides, a prominent lawyer and a former Attorney-General of the Republic of Cyprus. Mr. A. Markides had been acting for the plaintiffs and had been involved in this lawsuit from its very inception.

11. In this action (namely Action No. 9200/2005), which was filed in December 2005, the causes of action set out in the writ of summons are, in brief, the following:

    A. A Court order under equitable rules and/or common law and/or based on the English Bankers Evidence Act 1879 and/or the Evidence Law of Cyprus ordering the Defendants including the Bank to provide information and deliver to the Plaintiffs the:

        a) Bank account numbers relating to the 29 individuals and companies as specified, for a period starting the 1/1/98 until the issuing of the court order

        b) Bank account numbers where any monies were deposited since the 1/1/98 by any of the 29 individuals and companies as specified

        c) Information on the beneficiaries or signatories for any of the above mentioned bank accounts

        d) Signature specimens relating to the abovementioned bank accounts

        e) Statements of the above mentioned bank accounts including the

paper trail

**f)** Any information relating to any and all transactions that took place in relation to the abovementioned bank accounts including the persons involved in any of said transactions

**g)** The source and destination of any money transfers and transactions relating to the abovementioned bank accounts

**h)** The person or persons who were responsible for giving instructions for any of the transactions relating to the abovementioned bank accounts

**i)** Guarantor details

**j)** Any correspondence between the Bank and the 29 specified individuals and companies

**k)** Any correspondence the Bank had with third parties relating to the 29 specified individuals and companies

**l)** Any checks issued or deposited in the abovementioned bank accounts

**m)** All documents relating to any credits or debits relating to the abovementioned bank accounts

**n)** All documents relating to any loans, credit facilities, credit cards, charge cards and any statements of any such accounts

6

**o)** All internal memos, references, archives and electronically stored evidence and any documents in any form relating to the abovementioned bank accounts.

12.   It seems that the plaintiffs did not claim damages or any other substantive relief, but rather discovery of documents, information, etc, on the basis of various alleged principles. To my knowledge and experience, an action seeking only discovery of documents and information, but no substantive relief, is unusual for the Cypriot Courts. This Action was directed against the four largest Commercial Banks of Cyprus, including (as defendant 2) the Marfin Popular Bank Public Co. Ltd (which at the time was named Laiki Popular Bank Public Co Ltd). At the same time, the plaintiffs filed an application seeking – in terms of interim relief – essentially the same orders and remedies as the ones set out in their main Action (namely Action No. 9200/05). The District Court of Nicosia heard extensive argument on the plaintiffs' interim application and **rejected it** on various procedural and legal grounds. The ruling of the Court was issued on the 31 of August .2006 and the plaintiffs instituted an appeal before the Supreme Court of Cyprus against said ruling.

The trustees discontinued the appeal on the 4/7/08 including any other proceeding before the court and against the Bank.

## II.    **Judicial System**

13.    The Republic of Cyprus was established in 1960, when Cyprus gained independence from Great Britain.  The Republic of Cyprus is a member of the United Nations, the British Commonwealth Nations, the Council of Europe and the European Union (since May 1, 2004).    In Cyprus, the principle of separation of powers is observed, with the Judiciary being totally independent from the other branches of government.  Related to this principle is the guarantee that any party is entitled to have his or her matter heard by an independent and impartial court.  The Constitution of Cyprus fully protects human rights and fundamental freedoms, which are set out in the Articles of the Constitution.  In Cyprus, the European Convention on Human Rights and Fundamental Freedoms is observed as a matter of superior municipal law.

14.    There are two tiers of courts in the Cyprus legal system.  For civil cases, the courts of first instance are the District Courts.    For each administrative

district there is one District composed of one or more Presidents, Senior District Judges and District Judges, as decided by the Supreme Court. The competence of each level of Judges is determined by the amount in controversy. Cases seeking more than EURO500.000 are within the jurisdiction of a District Court President. The trial judge determines all issues of law as well as of fact. The second tier Court, or appellate Court, is the Supreme Court of Cyprus and is composed by thirteen members, including its President. An appellate division of the Supreme Court in civil matters consists of three judges (except in special cases where a case, because of its importance, may be heard by an enlarged Bench). Every judgment of a District Court exercising civil jurisdiction is subject to appeal to the Supreme Court. In civil and criminal appeals the Judges of the Supreme Court sit in panels of three or more. The scope of an appeal to the Supreme Court is set out in section 25(3) of the Courts of Justice Law 1960 (Law 14/60, as amended).

15.   Also, the Republic of Cyprus, being a member of the Council of Europe and of the European Union, is subject to the jurisdiction of the European Court of Human Rights and of the European Court of Justice as well of course of the Court of First Instance and decisions of the European Commission.

16.   The claims set out in the Complaint – if filed before a Cyprus Court – would be listed before a President of the District Court.   If there are specific reasons that a case should be assigned to a particular judge who has already presided over a related matter, that assignment may be requested by either party.   A letter may be addressed to the Administrative President of the District Court (before which the case is pending) and a request is put before him, enumerating the reasons why a particular case should be heard before a specific Judge.   Such requests – if supported by adequate grounds – are normally granted.   Familiarity of the Judge with the subject matter (because of his having presided over a similar case) is a ground which is normally acknowledged to be reasonable and adequate.   In Cyprus there is an appeal from judgments of the District Courts to the Supreme Court of Cyprus. Because the Republic of Cyprus is a member of the Council of Europe and of the European Union, it is subject to the jurisdiction of the European Court of Human Rights and of the European Court of Justice and thus further review may be available before those courts.

17.   The Law of the Republic of Cyprus (with regard to the matters in dispute) is, broadly speaking, based on the common law and principles of equity, as applied in common law jurisdictions, principally England.   In greater detail,

the position in Cyprus can be set out as follows:

## III.   <u>Substantive Law</u>

18.   The Constitution is the supreme law of the Republic and has superior force to any other law.   Apart from the Constitution, the following laws are applicable in the Republic of Cyprus (see s.29 of The Courts of Justice Law of 1960 (Law 14/60, as amended)):

(a)   The laws made under the Constitution.   This principally refers to legislation enacted following 1960.

(b)   The laws saved under article 188 of the Constitution subject to the conditions provided therein, save in so far as other provision has been or shall be made by a law made or becoming applicable under the Constitution. This provision preserves certain colonial legislation dating from before independence;

(c)   The common law and the doctrines of equity, save in so far as other provision has been or shall be made by any law made or becoming applicable under the Constitution or any law saved under paragraph (b) above in so far as they are not inconsistent with, or contrary to, the Constitution;

(d)     The Acts of Parliament of the United Kingdom of Great Britain and Northern Ireland which were applicable to Cyprus immediately before Independence Day (i.e. 16 August 1960), save in so far as other provision has been or shall be made by any law made or becoming applicable under the Constitution and in so far as they are not inconsistent with, or contrary to, the Constitution.

(e)     EU LAW – AMENDMENT OF THE CONSTITUTION. Following the ascendancy of the Republic of Cyprus as a full member state of the European Union, the Constitution was amended to reflect the principle of European Law that any directives, regulations decisions and instructions issued by the relevant European bodies such as the European Commission or other relevant European Union administrative bodies, supersede the application and interpretation of Cypriot legislation including the Constitution and none of the existing constitutional terms can be used in a manner so as to prevent the enforcement of any such European Union directive, regulation, decision or instruction.

12

## IV.   **Private Law**

19.   The Republic of Cyprus is essentially a Common Law jurisdiction and, though quite a few areas of substantive law have been codified or have been set out in unified legislative enactments, the Courts of Cyprus still apply common law principles as well as principles of equity (as the terms are understood in the United Kingdom and as these principles are developed by English and Commonwealth judicial authorities and precedents), except where there is specific legislation on the matter in issue or where different case law has been developed on the point by the Courts of the Republic of Cyprus.  The doctrine of precedent, as used in the United Kingdom and in English jurisprudence, also applies.

### A.   **Common Law – Contract and Tort**

20.   The Law of Cyprus on the subject of contracts is set out in the Contract Law, Cap. 149 (of the Republic of Cyprus) and on the subject of civil wrongs (torts) in the Civil Wrongs Law, Cap. 148 (of the Republic of Cyprus). These enactments are essentially a codification of the Common Law.  It is noteworthy that section 2(1) of both Laws provides as follows: "This Law

shall be interpreted in accordance with the principles of legal interpretation obtaining in England, and expressions used in it shall be presumed, so far as is consistent with their context, and except as may be otherwise expressly provided, to be used with the meaning attaching to them in English law and shall be construed in accordance therewith".

21.   Although the judgments of English Courts on matters of contract and civil wrongs (torts) after the Independence of the Republic of Cyprus are not binding on the Courts of the Republic, they are regarded as persuasive authority and are generally cited and followed in the judgments of Cypriot Courts, including those of the Supreme Court of Cyprus.

**B.   Equity – Law of Trusts**

22.   A trust is the creature of equity. The rules of English Law relating to trusts, being part of the doctrines of equity, are part of Cyprus Law by virtue of section 29 of the Courts of Justice Law of 1960 (Law 14/60, as amended). The Courts of Cyprus apply principles of equity, unless it is otherwise expressly provided by statute. Amongst the doctrines and equitable remedial devices that Cyprus Courts apply is the constructive trust (as I explain in

greater detail below).

## V.    **Practice and Procedure**

23.    The Courts of the Republic of Cyprus follow rules of practice and procedure adopted for the specific type of court.  District Courts follow the Civil Procedure Rules of Cyprus (Chapter 12 – Subsidiary Legislation), as modified from time to time.

24.    I wish to add that the Civil Procedure Rules were introduced during the Colonial Administration (1938).  They were, in substance, almost identical with the English Rules of Court and were in the English language.  These same rules continue to be in force now with only very minor amendments. They have not been translated in any of the official languages of the Republic of Cyprus and thus continue to be in force in English.

25.    It is important to point out that rights to a fair trial are enshrined in and are protected by the Constitution of the Republic of Cyprus as well as by the European Convention referred to hereinabove.

26.    Proceedings before Cyprus Courts must be conducted in one of the official

languages of the Republic, namely Greek or Turkish. Though English is widely used in Cyprus, it is not one of the official languages of the Republic and therefore judicial proceedings cannot be conducted in the said language. But this does not mean that documents in English cannot be produced before or accepted by a Court in Cyprus, since, by virtue of Law 154/90, documents, including affidavits, in a foreign language, are admissible as evidence, though if a party's attorney requests it, a document or any part thereof should be translated into one of the official languages of the Republic. In practice, documents in the English language are routinely put before the Courts of Cyprus and accepted as evidence.

27. As regards oral testimony, in Cyprus there are highly competent translators who translate from English into Greek and the reverse. Every day, trials are conducted before Cyprus Courts between foreign litigants or a foreign and a local litigant, with the said persons speaking and testifying in English, using the services of an instantaneous translator.

## VI.    **Procedure and Evidence**

28. As already stated, procedures before Cyprus courts are very similar to those that were in use in England before 1960. There are procedures for discovery, particulars and interim relief (such as freezing and interlocutory

16

orders).  Witnesses in Cyprus can be compelled to attend court and testify.
Witnesses who refuse to attend court and testify, if so directed, will be
punished by the court for contempt.  Once called as a witness, a person is
compelled to testify and can refuse to do so only on very exceptional
grounds of privilege, such as legal privilege or the privilege against self-
incrimination.

29.   Cyprus courts have numerous devices for compelling the attendance of
unwilling witnesses.  Broadly speaking, the Cyprus Law of Evidence (which
in itself is based on the common law, though it has been set out in a number
of legislative enactments) recognizes the distinction between competent and
compellable witnesses.  Any person, within the Republic, who is summoned
to give evidence or to produce a document in his possession or power, has to
attend the Court at the specified time and place.  If he fails and does not
excuse his failure to the satisfaction of the Court, a warrant may compel his
attendance and he shall also be liable to imprisonment or to a fine or to both
(sections 48 and 49 of the Courts of Justice Law of 1960 (Law 14/60, as
amended).

## VII.   The Taking Of Evidence In Cyprus For Purposes Of Litigation Abroad

30.    Cyprus is a party to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention").   Therefore, as I understand it, a United States court or a party to United States legal proceedings who seeks judicial assistance to obtain evidence from a Cyprus citizen or business, which is not a party to the United States lawsuit, must apply to the Cyprus courts, through the appropriate authorities, in accordance with the terms of the Hague Convention.   This process can be time-consuming, as the letter of request would be sent by a United States Court to the Cyprus Central Authority, the Ministry of Justice, which in turn would transmit it to the Supreme Court.   The Supreme Court would then assign the matter to a particular District Court Judge, who would in turn issue a summons to the witness from whom evidence is sought.

31.    Examination of parties or other witnesses on the request of a United States court pursuant to the Hague Convention is conducted by a Cyprus judge in a manner consistent with the procedural rules applicable in Cyprus litigation. A written list of questions to be put forth to the witness is transmitted, through the designated channels, to the Cypriot judge, who conducts the

examination on the basis of the written questions.  The hearing must be conducted in Greek, with an interpreter being present.  The parties to the United States litigation and their counsel may attend the examination and may submit limited follow-up questions through the judge. Counsel do not perform direct or cross examinations of the witness.  As a general matter, no contemporaneous transcript of the proceedings is prepared.  The judge will invariably prepare a summary of the examination.

32. To the extent documents are sought pursuant to the Hague Convention, a Cyprus Court will follow English courts and will allow production of only limited and narrowly identified categories of documents.

## VIII. The Bases for Civil Liability Under Cyprus Law

33. The subject matter of the Complaint can be litigated before the Courts of Cyprus, in the sense that the relief sought in the Complaint can be pursued before the Courts of Cyprus on the basis of the same general allegations of purported wrongdoing.  Cyprus recognizes claims for breach of contract and for various torts, including negligence, and constructive trust.  Cyprus courts have the authority to award monetary damages as well as injunctive and other relief.

19

**A.     Count I of the Complaint (Aiding and Abetting Breaches of Fiduciary Duty)**

34.   I note that Count I of the Complaint asserts a claim of "Aiding and Abetting Breach of Fiduciary Duty". In my opinion, no such independent claim would be recognized under Cyprus law.

35.   While Cyprus recognizes the concept of "fiduciary duty" and the notion of "aiding and abetting", it does not recognize an independent civil claim of "aiding and abetting the breach of a fiduciary duty."   Rather, the notion of "aiding and abetting" is a concept of criminal law and not of civil law (as an independent basis of the liability).

36.   Thus, even if there were an underlying breach of fiduciary duty under U.S. law by Lycourgos Kyprianou, as I have been informed is alleged in paragraph 49 of the Complaint, Cyprus law would not recognize a cause of action asserting that another party "aided and abetted" that breach.

**B.     Count II of the Complaint (Civil Conspiracy)**

37.    In the Civil Wrongs Law, CAP 148, article 12, one can find the offence of "joining or aiding or authorizing, counseling, commanding, procuring or

ratifying any act" that causes a civil wrong i.e. a tort. This legislation essentially codified the principles of tort as developed by the Common Law. There is no specific civil or tortious offence in Cypriot legislation called "Civil Conspiracy". Therefore Count II of the claim would essentially have to be interpreted under this Law and by the principles that apply for the committing of a tort. These principles are of course the proving of a duty against the injured party, the proving of a breach of that duty, the proving of predictability of causing damage with one's actions and the proving of an unbreakable chain of events that caused the damage where the Defendant can be shown to be a part of those events.

## C.    Count III of the Complaint (Breach of Contract)

38.    The Contract Law of Cyprus is based on the common law and principles of equity. Similarly, remedies for breach of contract are very similar to those available to common law courts in England and in the United States. Usually, contracts must be performed in accordance with their terms. The elements of a claim for breach of contract under Cyprus law are: the establishment of an agreement on the basis of consensus (by means of offer and acceptance between the parties), breach by one party of the express or implied provisions of the contract and the occurrence of loss or damage

(which the innocent party may recover on the basis of principles of recoverability, which in turn are based on the common law of England, though in Cyprus they form part of the Contract Law of the Republic of Cyprus, Cap. 149).

39.   Thus Cyprus law recognizes claims for breach of contract and the Trustees could, in principle, assert such a claim against the Bank of Cyprus before a Cyprus Court.

40.   I should note, however, that the Complaint alleges that the Bank has breached a purported term of its contract with its depositors identified as "the implied duty of good faith and fair dealing" (Complaint, paragraph 59). Cyprus does not, as a matter of law, recognize such an implied term in a contract. In addition, Cyprus does not recognize a cause of action based on a breach of an implied duty of good faith and fair dealing, such as that asserted in Count III of the Complaint.

## D.   In Pari Delicto

41.   The principle of Pari Delicto is recognized in Cyprus and in short this principle specifies that a court will consider whether the plaintiff can make out his case otherwise than through the medium and by the aid of the illegal

22

transaction to which he was himself (factually or legally) a party. If a plaintiff cannot do so then he will be denied a remedy.

**E.    Conclusion**

42.    Therefore, in terms of the matters set out in the Complaint, it is my considered view that the Courts of the Republic of Cyprus would basically apply principles of common law and equity (subject always to what I state above regarding their applicability in Cyprus) in order to determine whether the Trustees are entitled to the relief they seek in the Complaint.

It is also my considered view that if the claims set out in the Complaint are brought against the Bank before the Nicosia District Court, the said Court would accept jurisdiction and defendants (the Bank) would not be able either to contest jurisdiction or claim that the Cyprus forum is not convenient. The Nicosia District Court, as already stated, would entertain the claims and complaints of plaintiffs, would deal with them on the basis of principles of common law and equity applicable in Cyprus, and would be able to award traditional common law and equitable remedies, such as damages and injunctive relief, if appropriate.This was the case in the previous legal proceedings that were brought before the Nicosia District Court as explained

above, in part I of this Declaration. In that case the Bank accepted jurisdiction as it had no choice to do otherwise and the claim as well as the appeal were tried and concluded before the relevant Cypriot Courts without any of the parties involved ever raising the issue of jurisdiction..

## IX.   Regulation of Banks under Cyprus Law

43.   I note that in the Complaint the Trustees make various assertions about "applicable laws" imposing duties and obligations on banks in Cyprus including, inter alia, the submission of reports to regulatory authorities, the reporting of suspicious transactions and the like.  In my opinion, as a matter of public/regulatory law, the principal "applicable law" regulating the Bank of Cyprus is that of the Republic of Cyprus.

44.   Banks in Cyprus are closely regulated by a number of institutions and authorities.  Principally, banks in Cyprus (including of course the Bank of Cyprus) are supervised by the Central Bank of Cyprus, which itself operates as a supervising bank authority in the European Union (to which Cyprus acceded on 1.5.2004).  Also, as a public company, the Bank is regulated and supervised by the Cyprus Securities Commission and by the Registrar of

Companies.  Of course, in case of alleged wrongdoing, the Bank may be investigated by the prosecutorial authorities of the Republic, principally the Office of the Attorney-General of the Republic.

45.   Proper and exacting bank supervision is regarded in Cyprus as a matter of major public concern.  There is a substantial body of legislation concerning the regulation of banks, including the Central Bank Law, the Law for the Prevention and Suppression of Money Laundering Activities, the Banking Law, etc.  In particular, the Banking Law 1997 is of major significance, regulating every aspect of banking operations.  Furthermore, I would like to point out that Cyprus banks, in view of Cyprus' accession to the European Union, are also within the ambit of relevant European directives and guidelines, as adopted by the European Central Bank and similar European Institutions.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 9th day of June 2009 at Nicosia, Cyprus

NICOS PAPAEFSTATHIOU