# EXHIBIT A

**ΕΠΑΡΧΙΑΚΟ ΔΙΚΑΣΤΗΡΙΟ ΛΕΥΚΩΣΙΑΣ**
**ΕΝΩΠΙΟΝ: Λ. Παρπαρίνου, Π.Ε.Δ.**

Αρ. Αγωγής: 9200/05

**Μεταξύ:**

1. JOSEPH P. LASALA, από την Πολιτεία New Jersey των Η.Π.Α,
2. FRED S. ZEIDMAN, από την Πολιτεία Texas των Η.Π.Α, ως Συνδιαχειριστές του Εμπιστεύματος AremisSoft Corporation Liquidating Trust.

**Ενάγοντες-Αιτητές**

-και-

1. ΤΡΑΠΕΖΑΣ ΚΥΠΡΟΥ ΔΗΜΟΣΙΑ ΕΤΑΙΡΕΙΑ ΛΙΜΙΤΕΔ, από Λευκωσία, Εναγομένης 1.
2. ΛΑΙΚΗΣ ΚΥΠΡΙΑΚΗΣ ΤΡΑΠΕΖΑΣ ΔΗΜΟΣΙΑ ΕΤΑΙΡΕΙΑ ΛΙΜΙΤΕΔ, από Λευκωσία, Εναγομένης 2.
3. ΕΛΛΗΝΙΚΗΣ ΤΡΑΠΕΖΑΣ ΔΗΜΟΣΙΑ ΕΤΑΙΡΕΙΑ ΛΙΜΙΤΕΔ, από Λευκωσία, Εναγομένης 3.
4. UNIVERSAL BANK PUBLIC LIMITED, από Λευκωσία, Εναγομένης 4.

**Εναγομένους-Καθ´ ων η Αίτηση**

———————————————————

**Αίτηση Ημερ.: 2.12.05**
**δια έκδοση παρεμπίπτοντος διατάγματος**

**Ημερομηνία: 31.8.06**

**Εμφανίσεις:**

**Δια Αιτητές:** κ. Α. Μαρκίδης, κ. Μ. Καμπέρης και κ. Σπ. Ιεροθέου

**Δια Καθ´ ης η αίτηση 1:** κα Στ. Πολυβίου

**Δια Καθ´ ης η αίτηση 2:** κ. Ν. Παπαευσταθίου

**Δια Καθ´ ης η αίτηση 3:** κ. Μουσιούτας

**Δια Καθ´ ης η αίτηση 4:** κ. Ταλιαδώρος

2

**Δια ενδιαφερόμενα μέρη 1, 2, 3, 4 και 6:** κ. Λ. Παπαφιλίππου, κ. Χριστοδούλου και κα Ραφτοπούλου

**Δια ενδιαφερόμενο μέρος 5:** κ. Ορφανίδης

## ΕΝΔΙΑΜΕΣΗ ΑΠΟΦΑΣΗ

Οι ενάγοντες, σύμφωνα με την οπισθογράφηση απαιτήσεως, καταχώρησαν την υπό τον άνω αριθμό και τίτλο αγωγή ως συνδιαχειριστές του εμπιστεύματος AremisSoft Corporation Liquidating Trust. Με την αγωγή τους αξιούν εναντίον των τεσσάρων εναγομένων τραπεζών <u>διάταγμα του Δικαστηρίου που να τις διατάσσει όπως πληροφορήσουν τους ενάγοντες γραπτώς και παραδώσουν σ' αυτούς σχεδόν όλες τις πληροφορίες και έγγραφα, εντός του κύκλου εργασιών</u> τους, και που έχουν στην κατοχή τους αναφορικά με τους λογαριασμούς 29 κατ΄ ονομαζόμενων προσώπων (νομικά ή φυσικά) ως καθορίζονται στον πίνακα Α, από 1.1.98 και εντεύθεν.

Την ίδια ημέρα που καταχώρησαν την αγωγή καταχώρησαν και την υπό εξέταση μονομερή αίτηση. Το Δικαστήριο διέταξε την επίδοση της.

Με την πιο πάνω αίτηση οι αιτητές εξαιτούνται διατάγματος που αφορά όλα όσα αξιούν με την αγωγή τους και περαιτέρω:

(α)   Εντός 10 ημερών από την επίδοση του διατάγματος, διευθυντής ή άλλος εξουσιοδοτημένος υπάλληλος της κάθε μια από τις 4 τράπεζες, προβεί σε ένορκη δήλωση που να επιβεβαιώνει, διαψεύδει και ή προσδιορίζει τις αιτούμενες πληροφορίες και επιδώσει αντίγραφο της ενόρκου δηλώσεως του εις τους δικηγόρους των αιτητών.

3

(β)     Διάταγμα το οποίο να επιβάλλει στους αιτητές την καταβολή ευλόγων
εξόδων, τα οποία θα υποστούν οι καθ' ων η αίτηση – τράπεζες σε περίπτωση
εκδόσεως του αιτούμενου διατάγματος.

Την αίτηση συνοδεύει ένορκος δήλωση η οποία έγινε από κάποιο Ronald
Lefton, Αμερικάνο δικηγόρο, η οποία αποτελείται από 92 σελίδες και παραπέμπει
σε περισσότερα από 100 τεκμήρια.

Το όλο σκηνικό που αναφέρεται στη άνω ένορκη δήλωση περιστρέφεται
γύρω από 4 άξονες, ως ακολούθως:

(Α)     Η εταιρεία AremisSoft ενεγράφη στην Πολιτεία Delaware των ΗΠΑ με
κέντρο εργασιών εις ΗΠΑ, το New Jersey. Ιδρυτής της εταιρείας ήταν το
ενδιαφερόμενο μέρος 1, Λυκούργος Κυπριανού και ο οποίος ήταν πρόεδρος του
Διοικητικού   Συμβουλίου και πρώτος εκτελεστικός διευθυντής. Σε κατοπινό
στάδιο ήταν με άλλο πρόσωπο (Ρόη Πογιατζή) μέχρι την 31.7.01. Ακολούθως
έγινε ιδρυτικός πρόεδρος; (founding chairman) και στις 28.9.01 σύμφωνα με
ανακοίνωση της εταιρείας διεκόπη οιοσδήποτε δεσμός με αυτόν. Όπως
χαρακτηριστικά αναφέρεται εις την παράγραφο 10 της ένορκης δήλωσης αυτός
κατά τον ουσιώδη χρόνο ήταν αξιωματούχος , διευθυντής, κύριος μέτοχος και το
πρόσωπο που είχε τον έλεγχο της εταιρείας.

(Β)     Εις τον Λυκούργο Κυπριανού αποδίδονται διάφορες κατηγορίες,
αδικοπραξίες και ανομίες αναφορικά με την άνω εταιρεία. Μερικές εξ' αυτών
αφορούν αλλοίωση εγγράφων, έκδοση ψευδών και παραπλανητικών εγγράφων
και ανακοινωθέντων στον τύπο, παρουσίαση ψευδών λογαριασμών και άλλων
οικονομικών δεδομένων της εταιρείας που είχαν σκοπό και αποτέλεσμα η τιμή της
μετοχής της εταιρείας να διογκωθεί πέραν της πραγματικής της αξίας. Περαιτέρω
αποτέλεσμα αυτών ήταν η εταιρεία και οι επενδυτές να απολέσουν τεράστια ποσά

4

χρημάτων. Χαρακτηριστικά αναφέρονται παραδείγματα από τις πιο πάνω ισχυριζόμενες δόλιες ενέργειες του πιο πάνω μέσω της εταιρείας, όπως η δημοσίευση αγοράς 3 εταιρειών διαδικτύου για το ποσό των $32.000.000 ενώ στην πραγματικότητα αγοράσθηκαν δια ποσό κάτω του $1.000.000. Δια το έτος 2002 παρουσίασε έκθεση εσόδων δια ποσό άνω των $120.000.000 ενώ $90.000.000 δεν μπορούσαν να υποστηριχθούν. Άλλο παράδειγμα δόλου που αποδίδεται στον πιο πάνω, είναι η δημιουργία ψεύτικων βιβλίων (Bogus books) και πρακτικών της εταιρείας, ώστε να δίδεται η εντύπωση επιχειρηματικών δραστηριοτήτων ενώ δεν υπήρχαν. Επίσης κατασκεύασε (Fabricated) έγγραφα με προηγούμενες ημερομηνίες (back dated) ώστε να παρουσιάζονται διάφορα ποσά ως έσοδα της εταιρείας ενώ στην πραγματικότητα τα χρήματα τα έπαιρνε ο ίδιος.

Άλλη περίπτωση δόλου που αποδίδεται στον Λυκούργο Κυπριανού είναι η πώληση μετοχών της εταιρείας σε ανυποψίαστους αγοραστές, αναφορικά με την πραγματική οικονομική κατάσταση της εταιρείας και την «φουσκωμένη» αξία της μετοχής της. Η πώληση των μετοχών υπό του πιο πάνω γινόταν μέσω εταιρειών που ήλεγχε ο ίδιος και συμπεριλαμβάνονται μέσα στις κατονομαζόμενες εταιρείες του πίνακα Α.

Με τον άνω τρόπο ο Λυκούργος Κυπριανού απεκόμισε μεγάλα κέρδη. Μερικά εξ´ αυτών $87.500.000 κατατέθηκαν σε τράπεζες της Ελβετίας και Κύπρο (Καθ´ ης η αίτηση 1). Τα πιο πάνω παραδείγματα είναι μόνο μερικά από τα πολλά που αναφέρονται στην ένορκο δήλωση και αφορούν δόλο, κατάχρηση εμπιστοσύνης, εμπορεία εκ των έσω κλπ.

Οι περιπτώσεις δόλου και άλλες ενέργειες του πιο πάνω οι οποίες γίνονταν κατ´ ισχυρισμό με τη βοήθεια τρίτων, κατονομαζομένων στην ένορκο δήλωση, είναι πολλές και δεν εξυπηρετεί οτιδήποτε η περαιτέρω παράθεση τους.  Εις την ένορκο δήλωση ως άνω γίνεται εκτενής αναφορά των ισχυριζόμενων παράνομων

5

ενεργειών του Λυκούργου Κυπριανού, με συσχετισμό σε τεκμήρια αλλά και σε συσχέτιση των ενεργειών του Λυκούργου Κυπριανού με διάφορες άλλες εταιρείες ή πρόσωπα που περιλαμβάνονται στον πίνακα Α και για τα οποία επιζητείται πληροφόρηση.

(Γ)   Η AremisSoft τον Μάρτιο του 2002 ζήτησε την προστασία της πτωχευτικής διαδικασίας λόγων των οικονομικών προβλημάτων που αντιμετώπιζε. Ως αποτέλεσμα της διαδικασίας αυτής δημιουργήθηκε με έγκριση Αμερικάνικου Δικαστηρίου, το AremisSoft Corporation Liquidating Trust (εφ´ εξής «το καταπίστευμα») προς όφελος 6,000 περίπου δολιευθέντων αγοραστών μετοχών και της ίδιας της εταιρείας. Οι κύριες εργασίες της εταιρείας μεταβιβάστηκαν στην θυγατρική εταιρεία Softbrands Inc.

        Ο σκοπός του καταπιστεύματος είναι:

(Ι)   Όλες οι απαιτήσεις που πηγάζουν από την αγορά μετοχών της εταιρείας από την 22.4.99 μέχρι 27.7.01 και υπολογίζονται σε $500.000.000 και

(ΙΙ)   Απαιτήσεις και βάσεις αγωγής της ίδιας της εταιρείας πριν την πτωχευτική διαδικασία και δια ζημίες που η εταιρεία είναι υπεύθυνη λόγω των παράνομων ενεργειών του Λυκούργου Κυπριανού.

(Δ)   Οι ενάγοντες απητές διορίστηκαν από το Αμερικάνικο Δικαστήριο ως συνδιαχειριστές του καταπιστεύματος με εξουσίες να εγείρουν μεταξύ άλλων και αγωγές δια ανάκτηση του ποσού των $500.000.000 που είναι το προϊόν της καταδολίευσης των 6,000 επενδυτών που αγόρασαν μετοχές κυρίως από τον Λυκούργο Κυπριανού και συνεργατών του.

6

Οι έρευνες και δικαστικές διαδικασίες που ακολούθησαν σε αρκετές χώρες, είχαν μέχρι στιγμής το αποτέλεσμα ο Ρόης Πογιατζής, συνυπεύθυνος με τον Λυκούργο Κυπριανού, να αποδώσει εις τους αιτητές κατόπιν συμβιβασμού ποσό $200.000.000.

Οι αιτητές προχώρησαν σε διάφορες διαδικασίες ενώπιον Δικαστηρίων στην Κύπρο, Αγγλία και Βρετανικές Παρθένους Νήσους. Από τις διαδικασίες αυτές και διατάγματα που εξασφάλισαν, έλαβαν περαιτέρω πληροφορίες περί του ισχυριζόμενου δόλου και άλλων παρανομιών του Λυκούργου Κυπριανού και συνεργατών του, της διοχέτευσης του προϊόντος (χρήματα) του δόλου τους προς διάφορες κατευθύνσεις όπως επίσης και του τρόπου που ενεργούσε ο Λυκούργος Κυπριανού.

Είναι ο ισχυρισμός του ενόρκως δηλούντος, ότι μέσα από το υλικό που παρέθεσε κατέδειξε ότι οι καθ΄ ων η αίτηση τράπεζες με κάποιο τρόπο έχουν αναμειχθεί στον δόλο και παράνομες ενέργειες του Λυκούργου Κυπριανού και κατονομαζομένων προσώπων. Αυτοί σύμφωνα με τον ενόρκως δηλούντα έχουν ή μπορεί να έχουν λογαριασμούς με τις καθ΄ ων η αίτηση. Τα αιτούμενα διατάγματα είναι αναγκαία ώστε να ανιχνεύσουν (Trace) το προϊόν του ισχυριζόμενου δόλου και άλλων παράνομων ενεργειών που περιγράφηκαν.

Οι 4 τράπεζες καθ΄ ων η αίτηση, καταχώρησαν ενστάσεις. Οι λόγοι ενστάσεως είναι σχεδόν πανομοιότυπες, σε βαθμό που καλύπτονται και συνεπώς για λόγους οικονομίας θα παρατεθούν αυτοί της καθ΄ ης η αίτηση 1, Τραπέζης Κύπρου Δημόσια Εταιρεία Λτδ, οι οποίοι καλύπτουν και τους λόγους ενστάσεως των άλλων 3 καθ΄ ων η αίτηση. Οι λόγοι αυτοί είναι:

1.     Η αίτηση είναι παράτυπη και/ή αβάσιμη και δεν στηρίζεται σε συγκεκριμένη νομοθετική διάταξη και εν πάση περιπτώσει δεν ικανοποιούνται οι

7

προϋποθέσεις για την έκδοση ενδιάμεσου διατάγματος ως προβλέπεται από το άρθρο 32 του Περί Δικαστηρίων Νόμου, 14/60

2.      Το Δικαστήριο στερείται δικαιοδοσίας να εκδώσει το σχετικό διάταγμα αναφορικά με λογαριασμούς τρίτων προσώπων χωρίς την συγκατάθεση τους, και χωρίς να γνωρίζουν οι εναγόμενοι 1 αν τα τρίτα αυτά πρόσωπα έχουν γνώση της παρούσας διαδικασίας ή αν έχει γίνει προσπάθεια επίδοσης ή εάν ευρίσκονται εντός της δικαιοδοσίας της Κύπρου.

3.      Οι αιτητές δεν προσδιορίζουν καθόλου λόγους και/ή επαρκείς λόγους για τους οποίους τα αιτούμενα διατάγματα θα πρέπει να εκδοθούν, και δεν έχει καταδειχθεί το κατεπείγον για να εκδοθούν τα διατάγματα σ' αυτό το στάδιο της διαδικασίας.

4.      Δια των αιτουμένων θεραπειών ενδεχόμενα να παραβιασθεί η αρχή του τραπεζικού απορρήτου και η σχέση εμπιστευτικότητας Τράπεζας – πελατών, και η παρούσα αίτηση δεν εμπίπτει μέσα σε οποιαδήποτε από τις εξαιρέσεις του άρθρου 29 (2) του Νόμου 66(1)/97 (Περί Τραπεζικών Εργασιών Νόμου).

5.      Τα αιτούμενα διατάγματα ουσιαστικά αποτελούν προσπάθεια «ψαρέματος μαρτυρίας» (Fishing expedition») από τους ενάγοντες/αιτητές, ιδιαίτερα επειδή επεκτείνεται σε όλους τους λογαριασμούς των ατόμων που φαίνονται στον ΠΙΝΑΚΑ Α της αίτησης για μεγάλη χρονική περίοδο. Επιπλέον είναι γενικά και αόριστα και αφορούν λογαριασμούς ατόμων οι οποίοί δεν είναι διάδικοι στην αγωγή.

6.      Η αίτηση των εναγόντων/αιτητών για αποκάλυψη εγγράφων είναι πρόωρη. Έχει καταχωρηθεί πριν από την καταχώρηση των δικογράφων και   πριν την

8

ολοκλήρωση των εγγράφων προτάσεων, δηλαδή πολύ πριν την αποκρυστάλλωση των επίδικων θεμάτων.

7.   Η αποκάλυψη εγγράφων με την μορφή και το περιεχόμενο που έχει ζητηθεί δεν είναι αναγκαία στο παρόν στάδιο. Τουναντίον η σχετική αίτηση από τους ενάγοντες/αιτητές έχει καταχωρηθεί με ουσιαστικό σκοπό την υποβοήθηση των εναγόντων στην προώθηση της υπόθεσης τους, και δεν καταδεικνύεται γιατί είναι αναγκαία στο παρόν στάδιον.

8.   Δεν υπάρχουν και δεν συντρέχουν και/ή δεν απεκαλύφθησαν εξαιρετικοί λόγοι και/ή εξαιρετικές περιστάσεις (exceptional circumstances) σε αυτό το στάδιο της διαδικασίας για να δικαιολογήσουν και/ή καταστήσουν αναγκαία την αποκάλυψη εγγράφων τόσο νωρίς στη διαδικασία και δη πριν την καταχώρηση των εγγράφων προτάσεων.

9.   Τα αιτούμενα διατάγματα προκαλούν αδικία και είναι καταπιεστικά στους καθ' ων η αίτηση/εναγομένους 1 τόσον λόγω του περιεχομένου των, συμπεριλαμβανομένης της γενικότητας των όσο και λόγω και του περιορισμένου χρόνου που αναφέρεται σε αυτό.

10.   Τα αιτούμενα διατάγματα όπως είναι διαμορφωμένα είναι πανομοιότυπα με τις αξιώσεις των εναγόντων όπως εμφαίνονται στο οπισθογραφημένον κλητήριον υπό απαίτηση «Α», κι' επομένως τυχόν διάγνωση τους θα καταστήσει την αγωγή άνευ αντικειμένου. Οι ενάγοντες με την αίτηση τους επιδιώκουν την απόδοση όλων των αξιώσεων των χωρίς τη δέουσα ακροαματική διαδικασία.

11.   Δεν αποκαλύπτεται οποιαδήποτε βάση αγωγής εναντίον των καθ' ων η αίτηση 1/εναγομένους 1.

9

Τις 4 ενστάσεις συνοδεύουν ένορκες δηλώσεις στις οποίες όμως δεν προστίθεται τίποτε περαιτέρω αλλά αναφορά, επεξήγηση και προέκταση των λόγων ενστάσεως με περισσότερη ανάπτυξη τους χωρίς παράθεση γεγονότων.

Ενώπιον του Δικαστηρίου ενεφανίσθηκαν και τα ενδιαφερόμενα πρόσωπα 1-6, τα οποία καταχώρησαν ενστάσεις και έλαβαν μέρος στη διαδικασία. Εις την ένσταση που καταχώρησαν τα ενδιαφερόμενα μέρη 1-4 και 6 (σύμφωνα με τον Πίνακα Α) προβάλλονται οι ακόλουθοι λόγοι:

1.      Οι Ενάγοντες δεν νομιμοποιούνται να εγείρουν την παρούσα αγωγή με την προβαλλόμενη ιδιότητα τους ή με οποιαδήποτε ιδιότητα και/ή με βάση ισχυριζόμενη ιδιότητα που απέκτησαν με απόφαση ή διάταγμα Αμερικανικού Δικαστηρίου χωρίς να προηγηθεί η αναγνώριση και εγγραφή του σε Κυπριακό δικαστήριο.

2.      Οι Ενάγοντες δεν ικανοποιούν τις προϋποθέσεις για την έκδοση ενδιάμεσου διατάγματος που προβλέπει το άρθρο 32 του περί Δικαστηρίων Νόμου, 14/60.

3.      Οι Ενάγοντες με τα αιτούμενα διατάγματα επιδιώκουν την συνοπτική απόδοση ολοκλήρων των θεραπειών που αξιώνουν με το κλητήριο ένταλμα χωρίς την πρέπουσα κανονική ακροαματική διαδικασία.

4.      Οι υποθέσεις **Norwich Pharmacal Co and others v. Commissioners of Customs and Excise (1973) 2  All E.R. 943** και **Bankers Trust v. Shapira (1980) 1 WLR 1274** δεν αποτελούν δεσμευτικές αυθεντίες για τα κυπριακά δικαστήρια και εν πάση περιπτώσει, τα γεγονότα και νομικά σημεία των εν λόγω δύο αυθεντιών διακρίνονται από εκείνα της παρούσας υπόθεσης και/ή δύο αυθεντίες δεν εφαρμόζονται στα περιστατικά της παρούσας υπόθεσης.

10

5.     Τόσον η παρούσα αγωγή όσον και η υπό ένσταση αίτηση αποτελούν κατάχρηση της διαδικασίας του Δικαστηρίου δεδομένης της αγωγής αρ. 5581/05 του Επαρχιακού Δικαστηρίου Λευκωσίας και των ενδιάμεσων διαταγμάτων που έχουν εκδοθεί σ΄ αυτή.

6.     Η παρούσα αγωγή δεν δύναται να προχωρήσει ως έχει καθ΄ ότι δεν έχουν προστεθεί ως συνεναγόμενοι οι Ενιστάμενοι ώστε να έχουν την δυνατότητα να ακουσθούν προτού εκδοθεί οποιαδήποτε απόφαση ή διάταγμα που παραβιάσει τα προσωπικά τους δεδομένα και/ή τα συμφέροντα τους.

7.     Τα αιτούμενα διατάγματα παραβιάζουν το τραπεζικό απόρρητο και τα προσωπικά δεδομένα των Ενισταμένων χωρίς να προηγηθεί κανονική δίκη και χωρίς οι Ενιστάμενοι να είναι διάδικοι στην αγωγή.

8.     Οι Ενάγοντες είναι ένοχοι μακράς καθυστέρησης η οποία κατά τους κανόνες της επιείκειας επενεργεί αρνητικά και κατά της έκδοσης των αιτούμενων διαταγμάτων.

9.     Η υπό ένσταση μονομερής αίτηση όπως και η παρούσα αγωγή είναι κακόπιστη και εκδικητική που στοχεύει στην αλίευση πληροφοριών παρακάμπτοντας τους Ενιστάμενους.

10.     Οι Εναγόντες κωλύονται στην προσπάθεια τους να πάρουν τις αιτούμενες πληροφορίες από τις εναγόμενες τράπεζες διότι στην αγωγή 5581/05 Ε.Δ. Λευκωσίας συγκατατέθηκαν σε αναστολή διαταγμάτων που διατάσσουν τους Ενιστάμενους να προβούν σε αποκάλυψη γεγονότων της ίδιας ή παρόμοιας φύσεως προς εκείνα που επιδιώκονται με την υπό ένσταση αίτηση και την παρούσα αγωγή.

11

11.     Οι Ενάγοντες δεν έχουν καμίαν απολύτως πιθανότητα να επιτύχουν είτε στην παρούσα αγωγή είτε στην αγωγή 5581/05 Ε.Δ. Λευκωσίας.

12.     Η Ένορκη Δήλωση του Ronald D. Lefton που συνοδεύει την υπό ένσταση αίτηση είναι ελαττωματική, δεν είναι σύμφωνα με τους Θεσμούς της Πολιτικής Δικονομίας και τον Περί Αποδείξεως Νόμο και τα τεκμήρια που την συνοδεύουν δεν έχουν καμίαν απολύτως αποδεικτική αξία και/ή δεν αποτελούν πιστά αντίγραφα των πρωτοτύπων και/ή ο κ. Lefton δεν δηλώνει την πηγή προέλευσης τους και/ή δεν επιβεβαιώνει την γνησιότητα τους.

        Την ένσταση συνοδεύει ένορκος δήλωση του Παύλου Μελετίου, ενδιαφερομένου μέρους 2.

        Εις αυτή μεταξύ άλλων αναφέρονται τα ακόλουθα:

1.      Αρνείται την ιδιότητα με την οποία ενάγουν οι αιτητές όπως και την νομιμοποίηση τους στην καταχώρηση της αγωγής για τον λόγο ότι το διάταγμα του αλλοδαπού Δικαστηρίου που τους διόρισε δεν έχει αναγνωρισθεί και δεν ενεγράφη σε Κυπριακό Δικαστήριο.

2.      Αρνείται τον ισχυριζόμενο δόλο που αποδίδεται στον Κυπριανού και στους άλλους και συνεπώς αρνείται και όλες τις θεραπείες συμπεριλαμβανομένης της αναγκαιότητας ιχνηλάτησης που αξιούν οι αιτητές.

3.      Οι διαδικασίες στην Αγγλία και Βρετανικές Παρθένους Νήσους είναι απαράδεχτες και τα εκεί δικαστήρια στερούνται διαδικασίας και εν πάση περιπτώσει αρνείται τους ισχυρισμούς ότι οι αιτητές εξασφάλισαν τα ισχυριζόμενα διατάγματα.

12

4.    Στις καθ΄ ης η αίτηση τράπεζες δεν υπάρχει  περιουσία ή  στοιχεία σχετικά με την περιουσία των ενδιαφερόμενων μερών 1-4 και 6.

5.    Αρνείται τα προσόντα, πείρα κλπ του ομνύοντα την ένορκη δήλωση που συνοδεύει την αίτηση, την εργασία και εμπλοκή του στην παρούσα υπόθεση όπως επίσης και τα όσα αυτός ισχυρίζεται ότι προέβη αναφορικά με την παρούσα υπόθεση.

6.    Οι αιτητές καθυστέρησαν στην προώθηση στης παρούσας αγωγής.

7.    Οι αιτητές σύμφωνα με τα επικαλούμενα αλλοδαπά διατάγματα δεν έχουν σχετική εξουσιοδότηση για καταχώρηση της παρούσας αγωγής.

8.    Τα πρόσωπα που αγόρασαν μετοχές της εταιρείας στο χρηματιστήριο και ανοικτή αγορά, βασισθέντες επί του ενημερωτικού δελτίου δεν έχουν κανένα αγώγιμο δικαίωμα εναντίον των διευθυντών της.

9.    Αρνείται  την έρευνα σε διάφορες χώρες  για την υπόθεση υπό εξέταση και ισχυρίζεται ότι η ποινική δίωξη του Λυκούργου Κυπριανού εις ΗΠΑ  δεν προχώρησε και/ή ότι δεν ή δύναται να προχωρήσει.

10.    Είναι γνωστός ο συμβιβασμός που έγινε με τον Ρόη Πογιατζή, ο οποίος ήταν και ο μόνος υπεύθυνος, αν υπήρχε ευθύνη.

11.    Οι ισχυριζόμενες παράλληλες διαδικασίες εις ΗΠΑ καταδεικνύουν  ότι η παρούσα αγωγή όπως και η αγωγή αρ. 5581/05 Ε.Δ. Λευκωσίας αποτελούν κατάχρηση της διαδικασίας του Δικαστηρίου.

13

12.    Ο Λυκούργος Κυπριανού δεν είχε οποιαδήποτε πληροφόρηση ή σχέση με το εμπίστευμα Isle of Man το οποίο εν πάση περιπτώσει αφορούσε τον Ρόη Πογιατζή.

13.    Οι αιτητές γνώριζαν τα γεγονότα από το 2002 και αρνείται οιανδήποτε μεταγενέστερη γνώση τους.

14.    Αρνείται ότι ο Κυπριανού ήταν ο ιδρυτής της εταιρείας. Περαιτέρω ισχυρίζεται ότι το Διοικητικό Συμβούλιο της εταιρείας διόρισε τον άνω, Ιδρυτικό πρόεδρο χωρίς ο ίδιος να το γνωρίζει ή να συγκατατεθεί και κατά το χρόνο που κατείχε το άνω αξίωμα ο Κυπριανού ευρίσκετο εις Κύπρο.

15.    Αρνείται ότι ο Κυπριανού ήταν μεγάλος μέτοχος της εταιρείας ή ότι είχε τον έλεγχο αυτής η οποία ως ισχυρίζεται ελέγχετο από τον Ρόη Πογιατζή.

16.    Οιονδήποτε έγγραφο φέρει την υπογραφή Κυπριανού, υπεγράφη κατόπιν συμβουλής εμπειρογνωμόνων, νομικών συμβούλων, με καλή πίστη και χωρίς πρόθεση να εξαπατήσει ή καταδολίευση οιονδήποτε πρόσωπο.

17.    Αρνείται οποιεσδήποτε ενέργειες και τεκμήρια που αποδίδονται στον Κυπριανού όπως και ανάμειξη του σε διάφορες άλλες εταιρείες.

18.    Ο οίκος, Σαββίδης και Συνεταίροι, δεν είχε μόνο συνέταιρο τον ομνύοντα και αρνείται ότι αυτός ήταν υπεύθυνος στο γραφείο της Λευκωσίας.

19.    Αρνείται ότι επέβλεπε και διεύθυνε όλες τις ελεγκτικές και λογιστικές εργασίες της εταιρείας ή ότι συνεφώνησε ή βοήθησε τον Κυπριανού στη διάπραξη συλλογικού οικονομικού δόλου.

14

20.  Γενικά αρνείται όλες τις ενέργειες και πράξεις που του αποδίδονται και εμπεριέχουν το στοιχείο του δόλου ή της παρανομίας.

21.  Το πλοίο «NONI» αγοράστηκε από την King Mazax με δικά της χρήματα από δάνειο και ο Λυκούργος Κυπριανού δεν είναι ιδιοκτήτης του.

22.  Η ένορκος δήλωση που συνοδεύει την αίτηση δεν αποκαλύπτει κανένα αγώγιμο δικαίωμα εναντίον των 4 καθ' ων η αίτηση τραπεζών ή των ενδιαφερομένων μερών.

23.  Κανένα από τα ενδιαφερόμενα μέρη δεν διέπραξε τον ισχυριζόμενο δόλο ή άλλη παρανομία.

24.  Δια τα πρόσωπα που υποτίθεται εκπροσωπούνται από τους αιτητές δεν δίδονται λεπτομέρειες αναφορικά με την αγορά μετοχών της εταιρείας αλλά ούτε και δια τους ίδιους.

25.  Το αξιούμενο ποσό των $500.000.000 είναι ατεκμηρίωτο και αυθαίρετο.

26.  Το τεκμήριο 20 δεν είναι το ενημερωτικό δελτίο που κατατέθηκε στο Χρηματιστήριο της Νέας Υόρκης αναφορικά με την εταιρεία.

27.  Το ενημερωτικό δελτίο και όλα τα απαιτούμενα έγγραφα δια κατάθεση στο άνω Χρηματιστήριο ετοιμάστηκαν από εμπειρογνώμονες, δικηγόρους και τον Ρόη Πογιατζή οι οποίοι συμβούλευσαν τον Κυπριανού όπως υπογράψει ορισμένα απ' αυτά. Αν υπέγραψε οποιοδήποτε έγγραφο, το έπραξε με καλή πίστη όπως έπραξε και με την υπογραφή του ενημερωτικού δελτίου της εταιρείας.

15

28.    Αρνείται οιανδήποτε συνωμοσία ή άλλη παρανομία αποδίδεται στον Κυπριανού ή τον ίδιο ή άλλες κατ΄ ισχυρισμό εξηρτημένες εταιρείες του Κυπριανού.

29.    Αρνείται οιανδήποτε κατηγορία αποδίδεται στον Κυπριανού αναφορικά με την αγορά των τριών εταιρειών διαδικτύου όπως και το ισχυριζόμενο πραγματικό τίμημα αγοράς τους. Επίσης αρνείται και τα σχετικά τεκμήρια.

30.    Αρνείται την κατηγορία  που αποδίδεται στον Κυπριανού αναφορικά με το «φούσκωμα» της αξίας των  μετοχών της εταιρείας.

31.    Αρνείται ότι η δημιουργία και εγγραφή της GlobalSoft ήταν δόλια, ότι ο Κυπριανού προσωπικά είχε οιανδήποτε μετοχή στην Global Consolidator και ότι ο Κυπριανού ενήργησε κατά παράβαση του καθήκοντος εμπιστοσύνης (Fiduciary duty) που είχε προς την εταιρεία. Ο Λυκούργος Κυπριανού ουδέν ποσό ωφελήθηκε από την εγγραφή και εισαγωγή της Global Consolidator στο ΧΑΚ.

32.    Η εταιρεία δεν προσέφερε χαριστικώς στον Λυκούργο Κυπριανού δικαιώματα αγοράς των μετοχών λόγω της «πολύτιμης διαγωγής του» αλλά με την πληρωμή της αξίας των όπως και της αξίας της μετοχής σε περίπτωση άσκησης των δικαιωμάτων του.

33.    Αρνείται οιανδήποτε εμπλοκή του Λυκούργου Κυπριανού σε συναλλαγές για άλλες ενέργειες και κατηγορίες που αποδίδονται σ΄ αυτόν και έχουν σχέση με τις εταιρείες L.K.Global Holdings N.V, Inquest S.A, SouthWood, Global Consolidator και Quantum. Επίσης αρνείται γνώση συναλλαγών ή ενεργειών προσώπων όπως ο Ρόης Πογιατζής, Scott Bartel και Roger Mayer στις οποίες ο Κυπριανού δεν είχε καμία σχέση ή ευθύνη.

16

34.     Τα ενδιαφερόμενα μέρη 1-4 , 6 αρνούνται τη διαπραγμάτευση μετοχών της εταιρείας με την ισχυριζόμενη «ένδω γνώση» του Κυπριανού και πραγματοποίησης εσόδων από πωλήσεις μετοχών ή δικαιωμάτων αγοράς μετοχών της εταιρείας, μέσω τον ισχυριζόμενων εταιρειών, που κατ΄ ισχυρισμό ηλέχοντο από τον Λυκούργο Κυπριανού.

35.     Αρνείται την ισχυριζόμενη δόλια μεταβίβαση υπό του Κυπριανού περιουσία της εταιρείας στην Global Consolidator.

36.     Γενικά αρνείται οιανδήποτε εμπλοκή των ενδιαφερομένων μερών, ιδιαίτερα του Λυκούργου Κυπριανού, σε οιανδήποτε πράξη δόλου ή παρανομίας, ανάμειξη του εις άλλες εταιρείες ή χρήση τους δια τους ισχυριζόμενους παρανόμους σκοπούς και ότι αν υπέγραψε οιονδήποτε έγγραφο ή έπραξε οτιδήποτε το έκανε καλή τη πίστη χωρίς πρόθεση να καταδολιευτεί οιοσδήποτε.

        Να σημειωθεί ότι η ένορκος δήλωση, ως άνω είναι μεγάλη, αποτελείται από 50 δακτυλογραφημένες σελίδες και 148 παραγράφους. Είναι δε ασύμφορο χωρίς να εξυπηρετεί οτιδήποτε στο παρόν στάδιο η προβολή όλων των ισχυρισμών του με λεπτομέρειες.

        Το ενδιαφερόμενο μέρος αριθμός 5, στον πίνακα Α, καταχώρησε επίσης ένσταση. Οι λόγοι ενστάσεως είναι σε μεγάλο βαθμό οι ίδιοι με αυτούς που αναφέρθηκαν πιο πάνω και προβάλλονται από τα ενδιαφερόμενα μέρη 1-4 και 6. Σ΄ αυτούς τους λόγους προστίθενται και οι ακόλουθοι τρεις λόγοι και υπό στοιχεία (Θ) (1Α) και (1Γ) της ενστάσεως.

        Αυτοί είναι:

17

(Θ)   Στην ένορκη δήλωση του ομνύοντα δεν αποκαλύπτονται όλα τα γεγονότα και ή αποκρύπτονται ουσιώδη γεγονότα με τρόπο που καθιστά αυτή παραπλανητική και ή ελλιπή.

(1Α)   Οι ενάγοντες δεν έχουν καταδείξει ότι έχουν καλή υπόθεση εναντίον της εταιρείας SEMARK CONSULTANCY SERVICES LTD.

(1Γ)   Η έκδοση των διαταγμάτων δεν ήταν κατ' επειγούσης φύσης και ή οι ενάγοντες απέτυχαν να το αποδείξουν.

Την ένσταση συνοδεύει ένορκος δήλωση του κ. Κυριάκου Ορφανίδη, δικηγόρου στο γραφείο των δικηγόρων του ενδιαφερόμενου μέρους αριθμός 5.

Εις αυτή γίνεται κυρίως ανάλυση των λόγων ενστάσεως και πρόσθετα προβάλλονται οι ισχυρισμοί ότι η πιο πάνω εταιρεία ουδέποτε ενήργησε ως «alter ego» του Λυκούργου Κυπριανού.   Αυτή ιδρύθηκε ως υπεράκτια εταιρεία σύμφωνα με τους νόμους της Κυπριακής Δημοκρατίας με πραγματικούς μετόχους, αλλοδαπούς, μετά από άδεια της Κεντρικής Τράπεζας Κύπρου και με ονομαστικούς (nominee) μετόχους τους Λυκούργο και Ερμιόνη Κυπριανού.

Με άδεια του Δικαστηρίου στην ένσταση των ενδιαφερομένων μερών 1-4 και 6 προστέθηκε και ο ακόλουθος λόγος ένστασης.

13.   Οι ενάγοντες κωλύονται λόγω δεδικασμένου και/ή συμφωνίας  ημερ. 16.10.2003 που επικυρώθηκε με δικαστική απόφαση ημερ. 12.11.2003 που εκδόθηκε στην πολιτική αγωγή 01-CV-2486 (JAP) του Επαρχιακού δικαστηρίου των Ηνωμένων Πολιτειών της Επαρχίας της Νέας Υόρκης η οποία απάλλαξε τα «Απαλλαγέντα Πρόσωπα της PKF» που περιλαμβάνουν τους ομόρρυθμους

18

εταίρους, υπαλλήλους κλπ της PKF μεταξύ των οποίων κατατάσσεται και ο Παύλος Μελετίου.

Περαιτέρω καταχωρήθηκε συμπληρωματική ένορκος δήλωση από το ίδιο πρόσωπο που ορκίστηκε την ένορκο δήλωση δια υποστήριξη της ενστάσεως των ενδιαφερομένων μερών 1-4 και 6 κ. Παύλο Μελετίου.

Εις αυτή αναφέρονται μεταξύ άλλων τα ακόλουθα:

1.     Προέβηκε σε έρευνα και πληροφορήθηκε από τέως συνέταιρο της Pannell Kerr Forster (PKF) ότι μεταξύ των εναγόντων και της PKF έγινε συμβιβασμός ο οποίος επικυρώθηκε με απόφαση Δικαστηρίου των ΗΠΑ, ημερομ. 12.11.2003 (απόφαση επισυνάπτεται ως τεκμήριο).

2.     Σύμφωνα με την πιο πάνω απόφαση και συμβιβασμό που επιτεύχθη όλες οι απαιτήσεις των εναγόντων εναντίον της PKF, UK, συμπεριλαμβανομένων των υφισταμένων και πρώην διευθυντών της, συνεταίρων, αξιωματούχων, υπαλλήλων, ασφαλιστών και άλλων οντοτήτων PKF, περιλαμβανομένων αλλά μη περιοριζομένων της PKF International, των υφισταμένων και πρώην μελών και οποιουδήποτε και όλων των διευθυντών συνεταίρων, αξιωματούχων, υπαλλήλων και ασφαλιστών των υφισταμένων και πρώην μελών της PKF International (κατ´ ονομαζόμενων ως PKF Released persons) συνεβιβάστηκαν και απηλλάγησαν οι πιο πάνω απ´ αυτές.

3.     Ο ίδιος ήταν ομόρρυθμος συνέταιρος του οίκου PKF μεταξύ 1990- Μάιος 2003 και συνεπώς με βάση τον πιο πάνω συμβιβασμό απηλλάγη και ο ίδιος από τις απαιτήσεις των εναγόντων. Οι απαλλαγές που αναφέρονται στην πιο πάνω απόφαση περιλαμβάνουν και τη δική του, ως μέλους ή συνέταιρου του οίκου Savvides & Partners (Pannell Kerr Forster) που ήταν μέλος του PKF International.

19

4.    Η άνω απόφαση κοινοποιήθηκε στους δικηγόρους των αιτητών με επιστολή του δικηγόρου του ενόρκως δηλούντα, ημερ. 27.2.02.

5.    Οι αιτητές όφειλαν να αποκαλύψουν στο Δικαστήριο την άνω απόφαση.

6.    Ο κ. Lefton  κατά την αντεξέταση του στις 26.1.06, παραδέχθηκε ότι εισέπραξαν οι ενάγοντες από την ασφάλεια της PKF, $40.000.000 ως αποτέλεσμα της απαλλαγής που δόθηκε σύμφωνα με τη ρηθείσα απόφαση.

      Στην ένορκο δήλωση επισυνάπτονται διάφορα τεκμήρια που κατά τον ομνύοντα υποστηρίζουν τους ισχυρισμούς του.

      Ο κ. R. Lefton που ορκίστηκε την ένορκο δήλωση που συνοδεύει την αίτηση αντεξετάστηκε από το δικηγόρο των ενδιαφερομένων μερών 1-4 και 6.

      Ο μάρτυρας αντεξεταζόμενος αναφέρθηκε μεταξύ άλλων στο χρόνο ενασχόλησης του με την παρούσα υπόθεση και σε διάφορες ενέργειες που προέβη σχετικά. Περαιτέρω αναφέρθηκε σε δικαστικές διαδικασίες εναντίον των Κυπριανού και Πογιατζή εις Αμερική, Αγγλία, Isle of Man και Κύπρο.

      Άλλα σημεία, άξια αναφοράς, είναι ότι σύμφωνα με το σχέδιο αναδιοργάνωσης, οι 600 μέτοχοι της AremisSoft, δικαιούχοι του Liquidating Trust, πήραν ποσοστό 60.5% από τις μετοχές της θυγατρικής εταιρείας Softbrands. Απ΄ αυτό το ποσοστό των 60.5% οι δικηγόροι των class actions δικαιούνται να κάνουν αίτηση δια το 1/3 των μετοχών.

      Επίσης αποκάλυψε ότι οι αιτητές μέχρι σήμερα, κατόπιν συμβιβασμών, ανέκτησαν $250.000.000 από πρόσωπα έναντι των οποίων υπήρχαν απαιτήσεις υπό του Liquidating Trust, συμπεριλαμβανομένων των $200.000.000 που

20

λήφθηκαν από τον Πογιατζή. Μεταξύ των οντοτήτων που συνεβιβάστηκαν ήταν και η PKF.

Επίσης ανέφερε ότι πολλά από τα αρχεία της AremisSoft έχουν καταστραφεί και ότι είναι μετά τον Ιούλιο του 2005 που πληροφορήθηκαν οι αιτητές δια τους λογαριασμούς και μεταφορά χρημάτων σε εταιρείες που αναφέρονται στον κατάλογο των ενδιαφερομένων μερών. Οι πληροφορίες αυτές περιήλθαν στους αιτητές μετά την καταχώρηση της αγωγής 5581/05 του Επαρχιακού Δικαστηρίου Λευκωσίας.

Αναφορικά με τους Κυπριανού, Πογιατζή και Μελετίου αναφέρθηκε στην εμπλοκή τους σε συγκεκριμένες περιπτώσεις όπου τους αποδίδεται δόλος και παράνομες ενέργειες, όπως σε συναλλαγές των δύο πρώτων με μετοχές της AremisSoft, τα χρήματα που έλαβαν και μεταφορά τους σε τράπεζες του εξωτερικού και διάφορες εταιρείες στην περίπτωση Κυπριανού. Οι πληροφορίες δε που αιτούνται με την υπό εξέταση αίτηση είναι δια να εξακριβωθεί που τελικά κατέληξαν τα χρήματα αυτά.

Όλα τα πιο πάνω είναι όσα τέθηκαν στο Δικαστήριο, σε περίληψη ασφαλώς.

Οι δικηγόροι των μερών στις ικανές αγορεύσεις τους υποστήριξαν όπως ήταν φυσικό τις εκατέρωθεν θέσεις των πελατών τους.

Η αίτηση στηρίζεται στον περί Πολιτικής Δικονομίας Νόμο, Κεφ. 6, άρθρα 4, 5 και 9, στον Περί Δικαστηρίων Νόμο, Ν.14/60, άρθρα 21,29,31,32 και 42, στους θεσμούς Πολιτικής Δικονομίας , Δ.48 θθ 1-4, 8 και 9, στο άρθρο 3 του περί αποδείξεως νόμου, Κεφ. 9, στο άρθρο 7 του Αγγλικού The Bankers΄ Book Evidence Act 1879, στο άρθρο 22(5) του Περί Αποδείξεως Νόμου, Κεφ. 9, όπως

21

αυτό τροποποιήθηκε, στις αρχές τις επιεικείας (equity) και/ή στις αρχές που διέπουν την κατά το δίκαιο της επιεικείας αγωγή περί αποκαλύψεως και ή προσαγωγής εγγράφων, στοιχείο και ή πληροφοριών, στη νομική αρχή της υπόθεσης **Norwich Pharmacal Co and Others v. Commissioners of Customs and Excise (1973) 2 All ER p. 943)** και ή της υπόθεσης **Bankers Trust v. Shapira (1980) 1 WLR 1274**, τις νομολογιακές αρχές, που ακολούθησαν τις εν λόγω υποθέσεις και στις συμφυείς εξουσίες του Δικαστηρίου.

Οι ευπαίδευτοι δικηγόροι των αιτητών στην ομολογουμένως εξαίρετη αγόρευση τους (παραδόθηκε και σε γραπτό κείμενο) προώθησαν την αίτηση και πολύ σωστά πιστεύω, μόνο βάσει του άρθρου 32 του Νόμου 14/60 και στις αρχές της επιείκειας (equity) όπως αυτές έχουν εκφραστεί στη νομική αρχή των Αγγλικών υποθέσεων **Norwich Pharmacal και Bankers Trust** (άνω).

Συνεπώς η αίτηση θα εξεταστεί κάτω από τη νομική αυτή βάση μόνο, εφόσον οι άλλες εγκαταλείφθηκαν.

«Έχει νομολογηθεί ότι το άρθρο 32 του Ν.14/60 περιέχει το ουσιαστικό δίκαιο για τα προσωρινά διατάγματα οι δε δικονομία ρυθμίζεται από τον περί Πολιτικής Δικονομίας Νόμο, Κεφ. 6 και τους περί Πολιτικής Δικονομίας διαδικαστικούς κανονισμούς. Στη διαδικασία του προσωρινού διατάγματος το έργο του Δικαστηρίου περιορίζεται στη διαπίστωση του κατά πόσο ικανοποιούνται οι τρεις προϋποθέσεις που θέτει το άρθρο 32 του Ν. 24/60 (Βλ. **Γρηγορίου ν. Χριστοφόρου (1995) 1 ΑΑΔ 248)**». Αυτά λέχθηκαν στην υπόθεση BARICO ALOUMINIUM DESIGNS LTD V. MUSKITA – ALOUMINIUM CO LTD K.A (2002) 1 (Γ) ΑΑΔ 2015, σελ. 2037.

Το Ανώτατο Δικαστήριο σε αριθμό υποθέσεων του, εξέτασε και ανάλυσε τον τρόπο εφαρμογής του άρθρου 32 για έκδοση ή μη παρεμπίπτοντος

22

διατάγματος. (Βλ. μεταξύ άλλων **Karydas Taxi Co v. Andreas Komodikis (1975) 1 CLR 321**, **Papastratis v. Petrides** (1979) 1 CLR 231, **Odysseos v. Pieris Estates and others** (1982) 1 CLR 557, **Jonitexo Ltd v. Adidas** (1984) 1 CLR 263 και **Γρηγορίου**, (άνω)).

Οι τρεις προϋποθέσεις που πρέπει να ικανοποιηθούν κάτω από το άρθρο 32 προκειμένου να επιτύχει ο αιτητής είναι:

(α)    Σοβαρό ζήτημα για εκδίκαση.

(β)    Ορατή προοπτική και ή πιθανότητα ότι ο ενάγων δικαιούται σε θεραπεία στην αγωγή του.

(γ)    Να είναι δύσκολο ή αδύνατο να απονεμηθεί πλήρης δικαιοσύνη σε μεταγενέστερο στάδιο χωρίς την έκδοση του διατάγματος.

Αν ικανοποιούνται οι πιο πάνω προϋποθέσεις το Δικαστήριο θα πρέπει να αποφασίσει κατά πόσο είναι δίκαιο ή πρόσφορο να εκδώσει το αιτούμενο διάταγμα.

Σε σχέση με τις προϋποθέσεις που τίθενται από το άρθρο 32 του Νόμου 14/60 πρέπει να λεχθεί ότι αναφορικά με την (α) προϋπόθεση έχει ερμηνευθεί ότι δεν περιλαμβάνει οτιδήποτε πέραν της κατάδειξης μιας συζητήσιμης υπόθεσης με βάση τα δικόγραφα και με τη (β) προϋπόθεση ότι η ύπαρξη πιθανότητας να δικαιούται ο ενάγων σε θεραπεία αναφέρεται σε κάτι περισσότερο από απλή δυνατότητα, αλλά ταυτόχρονα, κάτι πολύ λιγότερο από το ισοζύγιο των πιθανοτήτων, που είναι το επίπεδο απόδειξης αστικής υπόθεσης. Αναμένεται από τον αιτητή να καταδείξει ότι έχει μια ορατή δυνατότητα επιτυχίας.

23

Η προϋπόθεση καταδείξεως κατά πόσο θα είναι δύσκολο ή αδύνατο να αποδοθεί δικαιοσύνη σε μεταγενέστερο στάδιο φέρνει στο προσκήνιο και το θέμα κατά πόσο η θεραπεία αποζημιώσεων θα ή  το ικανοποιητική εις τας περιστάσεις της υπόθεσης.

Επίσης πρέπει ν΄ αναφερθεί ότι εις το παρόν στάδιο και στο πλαίσιο της παρούσης διαδικασίας πρέπει το Δικαστήριο να αποφεύγει τη διεξοδική διερεύνηση και εξέταση επίδικων θεμάτων της αγωγής. (ίδε **Adidas v. Jonitexo (1984) 1 C.L.R 263**).

Ένα προκαταρκτικό θέμα το οποίο θα πρέπει να εξεταστεί αρχικά είναι η προβαλλόμενη ελαττωματικότητα της ένορκης δήλωσης Lefton (λόγος ενστάσεως 12 ενδιαφερομένων μερών 1-4, 6) που συνοδεύει την αίτηση, ενόψει του γεγονότος ότι επ΄ αυτής στηρίζεται η όλη υπόθεση των αιτητών.

Ο λόγος ενστάσεως ήδη έχει εκτεθεί σε προηγούμενο μέρος της απόφασης.

Εις την ικανή αγόρευση του ο κ. Παπαφιλίππου ανέφερε ότι η πιο πάνω ένορκος δήλωση παραβιάζει κάθε κανόνα καθότι εις αυτή αναφέρεται ότι:

«Η ένορκος δήλωση του βασίζεται στην εξέταση χιλιάδων εγγράφων, σε συνεντεύξεις με άτομα που ήταν άμεσα εμπλεκόμενα στις παράνομες πράξεις και σε άλλες έρευνες».

Όπως το έθεσε ο κ. Παπαφιλίππου ναι μεν στην ένορκη δήλωση του κ. Lefton αναφέρονται ορισμένα ονόματα, δεν αναφέρονται όμως όλα τα ονόματα των πληροφοριοδοτών του. Επίσης ήτο η θέση του ότι ο ενόρκως δηλών δεν αναφέρει από που πήρε τα τεκμήρια που παρουσιάζει και δεν βεβαιώνει τη

24

γνησιότητα τους. Περαιτέρω ο κ. Lefton εκθέτει προσωπικά συμπεράσματα του και νομικά αποτελέσματα επί εγγράφων.

Η Δ.39 θ.2 που ρυθμίζει το θέμα έχει ως ακολούθως:

«Affidavits shall be confined to such facts as the witness is able of his own knowledge to prove, but on interlocutory applications an affidavit may contain statements of information and belief, with the sources and grounds thereof. The costs of every affidavit which shall unnecessarily set forth matter of hearsay, or argumentative matter, or copies of or extracts from documents, shall be paid by the party filing the same».

Ο άνω θεσμός έτυχε ανάλυσης στην υπόθεση **Vuitton v. Δέρμοσακ Λτδ (1992) 1 ΑΑΔ, 1453** όπου λέχθηκαν τα ακόλουθα στη σελίδα 1463:

«Η μαρτυρία η οποία υποστηρίζει την αίτηση παρέχεται με ένορκη δήλωση, όπως προβλέπεται στη Δ.48. Η ένορκη δήλωση πρέπει να συνάδει με τους κανόνες που διέπουν τον καταρτισμό της και προβλέπονται στη Δ.39. Ο ομνύων υπόκειται σε αντεξέταση εφόσον κρίνει τούτο αναγκαίο το Δικαστήριο ή κατόπιν αιτήσεως του αντιδίκου (Δ.39 θ.1). Το περιεχόμενο της ένορκης δήλωσης πρέπει να έχει ως πηγή την προσωπική γνώση των γεγονότων από τον ομνύοντα· σε ενδιάμεσες αιτήσεις η ένορκη δήλωση μπορεί να αναφέρεται και σε γεγονότα για τα οποία δεν έχει προσωπική γνώση ο μάρτυρας, νοουμένου ότι αποκαλύπτει την πηγή από την οποία αντλείται η πληροφόρηση του. Το θέμα ρυθμίζεται από τις διατάξεις της Δ. 39 θ.2, η οποία βασίζεται στους αγγλικούς Θεσμούς που ίσχυαν μέχρι το 1993. Η Αγγλική νομολογία, ερμηνευτική των

25

παλιών Αγγλικών Θεσμών, υποστηρίζει ότι, ένορκη δήλωση η οποία
δε βασίζεται σε γεγονότα για τα οποία ο καταθέτων έχει προσωπική
γνώση και δεν αποκαλύπτει την πηγή πληροφοριών, είναι
αντικανονική (βλ. In re J.L. Young Manufacturing Company
Limited (1900) 2 Ch. 753, C.A. και Lumley v. Osborne (1901) 1
K.B. 532)· ενώ ένορκη δήλωση η οποία βασίζεται σε πληροφορίες
που παρέχονται από το δικηγόρο του διαδίκου, δε συνιστά μαρτυρία
(In re Palmes (1901) W.N. 146. Βλ. επίσης The Annual Practice
1960, σελ. 922 μέχρι 923)».

Από την εξέταση της υπό κρίσης ένορκης δήλωσης διαπιστώνεται ότι αυτή
συνάδει πλήρως προς τη Δ.39 θ.2 Μπορεί στο αρχικό μέρος της (παράγρ. 4) να
αναφέρεται ότι η ένορκος δήλωση του στηρίζεται «σε χιλιάδες έγγραφα,
συνεντεύξεις με άτομα και σε άλλες έρευνες» που έκανε αλλά εν συνεχεία
προσεκτική εξέταση της ενόρκου δηλώσεως του αποκαλύπτει ότι για κάθε
ισχυρισμό που προβάλλει γίνεται ταυτόχρονα αποκάλυψη της πηγής της γνώσης ή
πληροφόρησης του, ενίοτε με παραπομπή σε τεκμήριο ή τεκμήρια. Όσον αφορά
τα διάφορα τεκμήρια – έγγραφα που παρουσιάζει δεν κρίνεται ότι υπάρχει
πρόβλημα δικονομικό ή άλλο λαμβάνοντας υπόψη το ενδιάμεσο στάδιο που
ευρίσκεται η διαδικασία. Οιανδήποτε αποδεικτική τους αξία θα κριθεί σε
κατοπινό στάδιο όταν θα εκδικάζεται η ουσία της αγωγής.

Τέλος όσον αφορά το παράπονο ότι ο ενόρκως δηλών εκθέτει προσωπικά
του συμπεράσματα και νομικά αποτελέσματα εγγράφων, κατ΄ αρχή παρατηρείται
ότι δεν υπεδείχθη από τον κ. Παπαφιλίππου συγκεκριμένα σε ποιες παραγράφους
της ενόρκου δηλώσεως αναφέρεται το παράπονο.    Γενικά εκείνο που
παρατηρείται στην ένορκο δήλωση είναι ότι ο ενόρκων δηλών σε ορισμένες
περιπτώσεις εκφράζει προσωπικές απόψεις, γνώμη και συμπεράσματα

26

στηριζόμενος σε συμβουλές των δικηγόρων του, κάτι το οποίο δεν απαγορεύεται από τους θεσμούς.

Έχοντας υπόψη όλα τα πιο πάνω αλλά και από την εξέταση της όλης ένορκης δήλωσης Lefton, είμαι της γνώμης ότι δεν υπάρχει παραβίαση της Δ.39 θ.2.

Επανέρχομαι τώρα στην εξέταση των προϋποθέσεων του άρθρου 32.

Θα πρέπει πρώτα να εξεταστούν δύο περαιτέρω θέματα.

(α)    Η νομιμοποίηση των εναγόντων και

(β)    Το αγώγιμο δικαίωμα των εναγόντων πάντοτε εξεταζόμενα μέσα στα πλαίσια των κριτηρίων του άρθρου 32.

Το πρώτο άνω θέμα εγείρεται με τον λόγο ένστασης των ενδιαφερομένων μερών 1-4, 6, αλλά και από το ενδιαφερόμενο μέρος αρ. 5.

Η ουσία του λόγου της ένστασης συνίσταται στο ότι η αλλοδαπή απόφαση (τεκμ. 1) της ένορκης δήλωσης Lefton, βάσει της οποίας οι ενάγοντες έλκουν την εξουσία τους δια έγερση της παρούσας αγωγής, δεν ενεγράφη εις Κύπρο και συνεπώς δεν νομιμοποιούνται να εγείρουν την παρούσα αγωγή.

Περαιτέρω οι ενάγοντες ενάγουν με την ιδιότητα του εμπιστευματοδόχου, του εμπιστεύματος AremisSoft, ως εκπροσωπούντες την εταιρεία και τους 6,000 μετόχους που έχουν απαίτηση εναντίον του Λυκούργου Κυπριανού. Η ιδιότητα αυτή που παρεχωρήθη από Αμερικανικό Δικαστήριο είναι άγνωστη στα Κυπριακά Δικαστήρια και δεν μπορεί να αναγνωριστεί.

27

Όσον αφορά το πρώτο σκέλος του λόγου ένστασης πιστεύω ότι η όλη επιχειρηματολογία και σκεπτικό εδράζεται επί λανθασμένου συλλογισμού. Οι ενάγοντες δεν επιζητούν την εγγραφή αλλοδαπής απόφασης για σκοπούς εκτέλεσης της. (Βλ. **Κωνσταντίνου κ.α v. Εκδοτικής Εταιρείας Δημόκριτος κ.α (1986) 1 (A) ΑΑΔ 206)**.

Η νομική υπόσταση και εξουσία των εναγόντων, ως συνδιαχειριστών του εμπιστεύματος, όπως διορίστηκαν με διάταγμα του Ομοσπονδιακού Δικαστηρίου ημερ. 29.7.02 (Βλ. παράγρ. 6 ένορκης δήλωσης Lefton) καθορίζονται στο Liquidating Trust Agreement (τεκμ. 2) και επικυρωτικό διάταγμα (τεκμ. 1). Με βάση δε αυτά φαίνεται ότι έχουν την εξουσία προώθησης, μεταξύ άλλων δικαστικών διαδικασιών δια απαιτήσεις αποζημιώσεων κλπ δια ζημίες που υπέστη η εταιρεία (AremisSoft) και καταδολιευθέντες μέτοχοι συνεπεία του δόλου και ενεργειών των Κυπριανού, Πογιατζή κ.α. Είναι πρόδηλο ότι αυτό πράττουν οι ενάγοντες με την παρούσα αγωγή τους. Προωθούν και προώθησαν δικαστικά ότι θεωρούν αναγκαίο και βοηθητικό δια επίτευξη του τελικού σκοπού ανάληψης των αποζημιώσεων ως άνω. Οι νόμοι που ανέφερε ο κ. Παπαφιλίππου – N.121(1)/00, Κεφ. 10 ως ετροποποιήθηκε με τον Ν.130(1)/00, Ν.11/76και ο Κανονισμός 44/01 (Council Regulation (E.C) N.o 44/01)  - δεν έχουν να κάνουν τίποτε με το υπό εξέταση θέμα.

Όσον αφορά το δεύτερο σκέλος του λόγου ένστασης και πάλι πιστεύω ότι δεν μπορεί να επιτύχει. Οι ενάγοντες ενάγουν υπό την ιδιότητα τους ως Trustees in Bankruptcy.

Στην παράγραφο 36 του επικυρωτικού διατάγματος (τεμ. 1 ένορκη δήλωση Lefton) αναφέρεται ότι οι ενάγοντες ως συνδιαχειριστές του εμπιστεύματος έχουν σύμφωνα με το δίκαιο των ΗΠΑ, την ιδιότητα, τα καθήκοντα, τις εξουσίες και τις αρμοδιότητες «σύνδικου πτώχευσης» (Bankruptcy Trustee).

28

Σύμφωνα με το άρθρο 29 (γ) του Ν.14/60 αναγνωρίζονται εις Κύπρο το κοινοδίκαιο και αρχές της επιείκειας. Βάσει του κοινοδικαίου σύνδικος πτώχευση νομιμοποιείται να εκπροσωπεί τα συμφέροντα περιουσίας πτωχεύσαντος. Σχετικά είναι τα ακόλουθα αποσπάσματα από τους **Dicey and Morris, «The conflict of Laws»** 13η έκδοση.

Στον τόμο 1 σελίδα 161 αναφέρονται τα ακόλουθα:

«In some cases, the claimant claims to be entitled to sue in England in a representative capacity, relying on an appointment made under foreign law. As Parker J. observed in Kamouh v. Associated Electrical Industries International Ltd, two conflicting principles can be found, 'first that [the English] courts should as a matter of comity give effect to the curator's tuteur's right under foreign law to sue in his own name; second, that municipal procedure should be applied'. The first principle applies in the case of trustees in bankruptcy, liquidators, receivers, administrators of alien property and curators of mentally disordered persons (…). But the second principle applies to administrators of deceased persons and to administrators of absentee's property».

(Η υπογράμμιση είναι του Δικαστηρίου).

Η υπόθεση Kamouh που τέθηκε και από τον κ. Παπαφιλίππου καλύπτεται από την δεύτερη αρχή (Principle) ενώ η παρούσα υπόθεση υπό εξέταση, από την πρώτη.

Περαιτέρω στο ίδιο Σύγγραμμα ως άνω, τόμος 2, σελ. 1185 παράγραφος 31-069 αναφέρονται:

29

«It was at one time disputed whether a foreign trustee in bankruptcy could sue in that capacity in England to recover a debt due to the bankrupt. However, on proof that the foreign trustee has, under the law of the country in which he was appointed, a right to sue in his own name to recover such debts, an English court will now clearly recognise his right thus to sue in England».

Συνεπώς δια τους πιο πάνω λόγους ο λόγος ένστασης 1 δεν μπορεί παρά να αποτύχει. Οι ενάγοντες από το υλικό που τέθηκε στο Δικαστήριο φαίνεται ότι νομιμοποιούνται στην έγερση της παρούσας αγωγής.

Επανέρχομαι τώρα να εξετάσω το δεύτερο θέμα που έχει τεθεί πιο πάνω ήτοι τη φύση της παρούσας αγωγής σε συνάρτηση με το επικαλούμενο αγώγιμο δικαίωμα των αιτητών.

Είναι αυτονόητο ότι το θέμα αυτό σχετίζεται με τις δύο πρώτες προϋποθέσεις του άρθρου 32. Δια να μπορεί ένας ενάγοντας να καταδείξει ότι υπάρχει σοβαρό ζήτημα για εκδίκαση κατά τη δίκη και περαιτέρω πιθανότητα να δικαιούται σε θεραπεία, θα πρέπει ασφαλώς πρώτα να διαπιστωθεί κατά πόσο έχει αγώγιμο δικαίωμα ώστε να δικαιούται τις αιτούμενες θεραπείες.

«A right that is to be protected by injuction must be one that is known to law or equity (Βλ. **Day v. Brownigg** (1878) 10 Ch.D 298)».

Οι τέσσερις καθ' ων η αίτηση εγείρουν το θέμα με την ένσταση τους.

Οι ενάγοντες, όπως φαίνεται στο κλητήριο ένταλμα, αξιούν έναντι των εναγομένων διάταγμα του Δικαστηρίου αποκάλυψης (disclosure) δυνάμει του

30

δικαίου της επιεικείας (equity) και της νομικής αρχής στην υπόθεση **Norwich Pharmacal** και ή της υπόθεσης **Banker's Trust** και ή των νομολογιακών αρχών που ακολούθησαν και ή του Αγγλικού Bankers Evidence Act of 1879 και/ή του άρθρου 22(5) του περί Αποδείξεως Νόμου Κεφ. 9 που να διατάσσει τις εναγόμενες όπως πληροφορήσουν γραπτώς τους ενάγοντες και παραδώσουν σ' αυτούς τα διάφορα στοιχεία και πληροφορίες που αξιούν οι ενάγοντες από τις εναγόμενες και αφορούν τους λογαριασμούς και παρεμφερή θέματα των προσώπων του πίνακα Α, στο κλητήριο ένταλμα.

Η βάση της αγωγής είναι πρωτότυπη και η Κυπριακή νομολογία δεν διαφωτίζει το θέμα. Η υπόθεση **TBF (CYPRUS) LTD κ.α v. Εμπορικής Μελετών Σχεδιασμών και Επιχειρηματικού Κεφαλαίου ΑΕ κ.α.** (2001) 1 (Α) ΑΑΔ 153 που αναφέρθηκε από τους δικηγόρους των αιτητών, αφορούσε αίτηση δια αποκάλυψη εγγράφων κάτω από τη Δ.28 θ.1 των θεσμών πολιτικής δικονομίας. Η αίτηση δια αποκάλυψη έγινε μέσα στα πλαίσια αίτησης για παραμερισμό κλητηρίου εντάλματος. Το Ανώτατο Δικαστήριο αποφάσισε ότι σε αιτήσεις δια παραμερισμό του κλητηρίου, το Δικαστήριο μπορεί να κάνει χρήση της διαδικασίας αποκάλυψης σε κατάλληλη περίπτωση. Το Ανώτατο Δικαστήριο αναφέρθηκε σε δύο Αγγλικές αποφάσεις. Την **Banker's Trust Co** (άνω) που αφορούσε το δικαιοδοτικό ζήτημα μέσα από παρόμοιο δικονομικό πλαίσιο και την **Rome v. Punjab National Bank (1989) 2 All ER 136** που είχε περισσότερη αμεσότητα με το εξεταζόμενο θέμα όπως αναφέρεται.

Από τα πιο πάνω φαίνεται ότι η άνω απόφαση (TBF (Cyprus Ltd κ.α) (άνω)) δεν βοηθά το εξεταζόμενο θέμα που αφορά τη βάση της αγωγής.

Ο Banker's Books Evidence Act 1879 και το άρθρο 22 του περί αποδείξεως νόμου, Κεφ. 9 έτυχε ανάλυσης στην υπόθεση **Κολλαρίδου v. Κολλαρίδη (1997) 1 (Γ) ΑΑΔ 1408**.

31

«Αποφασίστηκε ότι:

Η κεντρική σκέψη της Αγγλικής νομολογίας όπως και οι ρυθμίσεις του Άρθρου 7 του Banker's Books Evidence Act 1879, το οποίο υιοθετήθηκε με το Άρθρο 22 του Κεφ. 9, δε δίδει δικαίωμα στο διάδικο για έρευνα και αναζήτηση στοιχείων για να ανακαλύψει και δημιουργήσει υπόθεση. Εκείνο στο οποίο αποσκοπεί είναι απλώς στη διευκόλυνση της δικαστικής διαδικασίας σε ότι αφορά την προσκόμιση μαρτυρίας από τραπεζικούς οργανισμούς προς αποφυγήν της μεταφοράς και παρουσίασης όλων των βιβλίων και εγγράφων της τράπεζας στο Δικαστήριο».

Σημαντικά επίσης είναι τα όσα λέθηκαν στη σελίδα 1411 και που αφορά το εξεταζόμενο θέμα.

«Η επιθεώρηση και λήψη αντιγράφων από τραπεζικό οργανισμό γίνεται: «για σκοπούς της διαδικασίας». Εισάγει δηλαδή η διάταξη διαδικαστικές ρυθμίσεις, και όχι ουσιαστικό δίκαιο. Η ερμηνεία αυτή ενισχύεται και από τις διατάξεις των προηγούμενων εδαφίων του άρθρου 22, όπου ρυθμίζονται ακριβώς ζητήματα διαδικασίας, ώστε να διευκολύνεται πρακτικά η προσκόμιση της μαρτυρίας από τραπεζικούς οργανισμούς στο Δικαστήριο».

(Η υπογράμμιση είναι του παρόντος Δικαστηρίου).

Συνεπώς δεν μπορούμε να μιλούμε για αγώγιμο δικαίωμα βάσει του **Banker's Books Evidence Act 1879** και του άρθρου 22 του *περί αποδείξεως νόμου Κεφ. 9*.

32

Παραμένουν συνεπώς οι επικαλούμενες αρχές της επιείκειας όπως αυτές πηγάζουν από τις υποθέσεις **Norwich Pharmacal** και **Bankers Trust** (άνω).

Οι αρχές της επιείκειας είναι εφαρμόσιμες σύμφωνα με το άρθρο 29(γ) κάτω από τις προϋποθέσεις που τίθενται στο άρθρο αυτό. (Βλ. <u>Χριστοφίδη ν. Κοτζαναστάση (1993) 1 ΑΑΔ 718</u>.

Εις το Σύγγραμμα <u>**Halsbury's Law of England**</u> 4ᵗʰ έκδοση (Reissue) τεύχος 37 σελ. 76 παράγρ. 208 αναφέρονται:

«208. Claim for pre-action disclosure otherwise than under statutory provisions. Where the court has no power under statute to order pre-action disclosure and production of documents, because the party in whose control the documents are is not likely to be a party to subsequent proceedings, a potential claimant may commence proceedings for an order for disclosure and production by issuing proceedings against a person who has such documents in certain circumstances. (Παραπέμπει στο σημείο αυτό μεταξύ άλλων στην υπόθεση Norwich Pharmacal (άνω)). Since the person who has control of the documents is not likely to be a party, the claimant has no cause of action against him as a wrongdoer. However, if the defendant to such proceedings can be shown to have become involved in the wrongdoing of others, whether voluntarily or not, but innocently, to an extent which has facilitated the wrongdoing of those others, he comes under a duty to assist the victim of the wrongdoing by giving full information, by disclosure of documents or otherwise, which will identify the wrongdoers to the victim. A victim of a tort may also obtain such information from such a person innocently involved in the wrong, even though the victim cannot

33

show that the third party had committed a tort against the victim
without that information».

Εις την υπόθεση **Norwich Pharmacal** (άνω) τα γεγονότα της οποίας έχουν
εκτεθεί από τους ευπαίδευτους δικηγόρους λέχθηκαν τα ακόλουθα:

«Although as a general rule no independent action for discovery
would lie against a person against whom no reasonable cause of
action could be alleged, or who was in the position of a mere witness
in the strict sense, the rule did not apply where (a) without discovery
of the information in the possession of the person against whom
discovery was sought no action could be begun against the
wrongdoer, and (b) the person against whom discovery was sought
had himself, albeit through no fault of his own, been involved in the
wrongful acts of another so as to facilitate the wrongdoing. In such
circumstances although he might have incurred no personal liability,
he was under a duty to assist the person who had been wronged by
giving him full information and disclosing the identity of the
wrongdoer».

Εις την **British Steel Corpn v. Granada Television Ltd** (1981) 1 All ER
**417 στη σελ. 466** ο VISCOUNT DILHORNE αφού κάνει ευρεία αναφορά στην
υπόθεση **Norwich Pharmacal** καταλήγει:

«This passages show that the house was an unanimous in thinking
that an action for discovery would lie against an innocent person
involved in the tortious acts of another and that an order could
properly be made requiring him to name the wrongdoers».

34

(Η υπογράμμιση είναι του Δικαστηρίου).

Προς την ίδια κατεύθυνση είναι επίσης τα όσα ανέφερε ο LORD WILBERFORSE στην ίδια υπόθεση στη σελ. 459 (f-g).

Σχετική επίσης είναι η υπόθεση **Harrington v. North London Polytechnic (1984) 3 All E.R. 666** όπου ο SIR JOHN DONALDSON, MR στη σελ. 671 αναφέρεται σε αιτία αγωγής εναντίον του εναγομένου πολυτεχνείου δια αποκάλυψη. (discovery).

Η **Banker's Trust** (άνω) που είναι η άλλη υπόθεση που επικαλούνται οι ενάγοντες αφορούσε αγωγή ιχνηλάτησης ή ανίχνευσης (tracing action) και αποφασίστηκε:

«**Held** – The court was entitled, for the purpose of giving effect to a defrauded plaintiff's equitable right to trace his money, to order a bank to disclose the state of, and the documents and correspondence relating to, the account of a customer who was prima facie guilty of fraud even though the bank had not incurred any personal liability for the fraud, for unless there was the fullest possible disclosure the fund could not be traced. To justify such an order, however, the evidence of fraud against the customer had to be very strong, but, where it was, the customer was disentitled from relying on the confidential relationship between him and his bank to prevent the discovery. ...................On that basis, the court would aid the New York bank's claim to trace the money paid to the discount bank by making an order for discovery in the terms sought against that bank».

35

Να σημειωθεί ότι η τράπεζα εναντίον της οποίας εξεδόθη το διάταγμα δια αποκάλυψη ήταν η εναγόμενη 3. Εναγόμενοι 1 και 2 ήταν οι αδικοπραγήσαντες.

Εις το Σύγγραμμα **COMMERCIAL INJUCTIONS του Steven Gee QC**, 5ᵗⁿ έκδοση σελ. 695 παράγρ. 22.053 γίνεται ανάλυση της δικαιοδοσίας του δικαστηρίου να περιφρουρήσει την περιουσία εμπιστεύματος. Αναφέρονται τα ακόλουθα σχετικά:

«The court has an equitable jurisdiction to find out what has happened to missing trust funds:

«A court of equity has never hesitated to use the strongest powers to protect and preserve a trust fund in interlocutory proceedings on the basis that, if the trust fund disappears by the time the action comes to trial, equity will have been invoked in vain».

This is a separate principle from the Norwich Pharmacal principle and has a different purpose. It enables orders to be made against a defendant and against innocent third parties for the purpose of protecting the claimant′s substantive rights to the fund.

The courts have adopted this principle in tracing actions for justifying interlocutory orders made at any stage of the proceedings requiring those who may have information (including documents) about what has happened to particular assets, and who have been involved in their disposal, to provide that information to the claimant. This has included orders made against banks for disclosure of information about assets. When the claimant has the right to shares in a company and the assets in the company have gone

36

missing, the court can disregard the corporate veil and grant orders designed to reveal what has happened to the company's assets or their proceeds.

> There is olso the Norwich Pharmacal principle. In a case in which trust assets have been transferred and are missing, both principles can apply.

> The relief can be granted on an application made without notice and may take the form of a search order, but more usually is granted as against the third party on an application made with notice. Although it its not essential, the person from whom information is sought is usually  joined as a defendant in the action».

Από τα πιο πάνω φαίνεται ότι η θεραπεία της **Banker's Trust** (άνω) εξυπηρετεί άλλους σκοπούς, αυτούς που έχουν αναφερθεί πιο πάνω και που ασφαλώς δεν είναι αιτία αγωγής. Σχετικές με τον διαχωρισμό και τις δύο κατευθύνσεις που υποδεικνύει η Αγγλική νομολογία ανάλογα με τις συνθήκες και σκοπούς που εξυπηρετούνται δια της έκδοσης εντάλματος αποκάλυψης είναι και οι υποθέσεις **Murphy v. Murphy** (1999) 1 WLR 288 **στη σελ.** 289 **(G) και η** **AOOT KALMNEFT V. DENTON WILDE SAPTE** (2002) 1 Lloyd's Rep. 417 **στη σελίδα 421 παράγρ. 11.**

Σύμφωνα με την Αγγλική νομολογία που έχει τεθεί πιο πάνω με πρωταρχική την **Norwich Pharmacal** (άνω) διαφαίνεται ότι η νομική αρχή που τέθηκε στην πιο πάνω υπόθεση αποτελεί αυτοτελή αιτία αγωγής, και συνεπώς μπορεί να προωθηθεί με αγωγή, όπως έγινε στην παρούσα υπόθεση.

Για σκοπούς πληρότητας αναφέρεται η νομική αρχή όπως τέθηκε από τον Lord Reid εις την **Norwich Pharmacal** (άνω).

«The principle is that if a person, through no fault of his own, gets «mixed up» in the tortious acts of others so as to facilitate their wrongdoing, he may not incur any personal liability, but he comes under an obligation to assist the person wronged by giving him «full information» and disclosing the identity of wrongdoers».

Σε υποθέσεις που ακολούθησαν τα Αγγλικά Δικαστήρια επέκτειναν την πιο πάνω αρχή και σε υποθέσεις που αφορούσαν παραβάσεις συμβολαίου ή άλλες αδικοπραξίες. (Βλ. <u>P V.T LTD</u> (1997) 4 All ER. 200, <u>Carlton Film Distributors Ltd V. VCI PLC</u> (2003) EWHC 616 και <u>Ashworth Hospital Authority v. MGN LTD</u> (2002) 4 All E.R. 193. Επίσης δεν περιορίζεται σε υποθέσεις όπου η ταυτότητα του αδικοπραγήσαντος είναι άγνωστη. Μπορεί η θεραπεία να δοθεί ακόμη και εκεί που η ταυτότητα του αδικοπραγήσαντος είναι γνωστή αλλά η αίτηση επιζητεί αποκάλυψη σημαντικών πληροφοριών ώστε να καταστεί δυνατή η καταχώρηση της απαίτησης ή όπου ο αιτητής επιζητεί ελλείπων μέρος από την όλη υπόθεση. (Βλ. <u>AXA Equity & Law Life Assurance Society PLC V. National WESTMINSTER BANK PLC</u> (1998) CLC 1177, <u>AOOT KALMNEFT</u> (άνω)). Περαιτέρω το τρίτο πρόσωπο από το οποίο επιζητείται η πληροφόρηση δεν είναι ανάγκη να είναι αθώο μέρος, μπορεί να είναι το ίδιο αυτό τρίτο μέρος αδικοπραγίας. (Βλ. <u>CHC SOFTWARE V. HOPKINS AND WOOD</u> (1993) FSR 241).

Ο Λόρδος Woolf στην <u>Ashworth Hospital Authority</u> (άνω) σχετικά με την ελαστικότητα ασκήσεως της άνω αρχής είπε τα ακόλουθα:

«New situation are inevitably going to arise where it will be appropriate for the (Norwich Pharmacal) jurisdiction to be exercised where it has not been exercised previously. The limits which applied

38

to its use in its infancy should not be allowed to stultify its use now
that it has become a valuable and mature remedy».

Συνεπώς ενόψει όλων των ανωτέρω είναι η κατάληξη ότι βάσει της αρχής
της **Norwich Pharmacal** οι ενάγοντες έχουν στη διάθεση τους το αγώγιμο
δικαίωμα που πηγάζει από την πιο πάνω υπόθεση.

Εις την υπόθεση **Mitsui & Co v. Nexen Petroleum UK Ltd** (2005) 3 All
**E.R 511** στη σελ. 518 τίθενται οι προϋποθέσεις που πρέπει να ικανοποιηθούν
ώστε να εκδοθεί η θεραπεία της **Norwich Pharmacal** (άνω).

Η σχετική παράγραφος έχει ως ακολούθως:

«21 The three conditions to be satisfied for the court to exercise the
power to order Norwich Pharmacal relief are:(i) a wrong must have
been carried out, or arguably carried out, by an ultimate wrongdoer;
(ii) there must be the need for an order to enable action to be brought
against the ultimate wrongdoer; And (iii) the person against whom
the order is sought must: (a) be mixed up in so as to have facilitated
the wrongdoing; And (b) able or likely to be able to provide the
information necessary to enable the ultimate wrongdoer to be sued».

Θα πρέπει να υπομνησθεί και να τονισθεί ότι οι πιο πάνω προϋποθέσεις θα
πρέπει να εξεταστούν και εξετάζονται κάτω από τις δύο πρώτες προϋποθέσεις του
άρθρου 32 του Ν.14/60.

Από το υλικό ενώπιον του Δικαστηρίου φαίνεται ότι η πρώτη προϋπόθεση
που τίθεται δια έκδοση θεραπείας **Norwich Pharmacal** (όπως διατυπώνεται άνω
στην υπόθεση **Mitsui**) ικανοποιείται. Ο δόλος και οι άλλες αδικοπραξίες που

39

αποδίδονται στον Κυπριανού σε συνεργασία με άλλα πρόσωπα φαίνεται ότι έγιναν ή τουλάχιστον φαίνεται ότι συζητήσιμα (arguably) έγιναν.

Όσον αφορά την δεύτερη προϋπόθεση (**Mitsui** άνω) και που αφορά την ανάγκη δια έκδοση του διατάγματος ώστε να υπάρξει η δυνατότητα καταχώρησης αγωγής εναντίον των αδικοπραγησάντων φαίνεται ότι δεν ικανοποιείται εις τα περιστατικά της παρούσας υπόθεσης.

Εις την υπόθεση **Arab Monetary Fund v. Hashim (no 5) (1992) 2 All E.R. 911** στη σελ. 914 αναφέρονται τα ακόλουθα:

«Lord Reid was concerned to emphasise that not everyone who had knowledge of the identity of a tortfeasor could be required to provide information. The remedy was available only against a joint tortfeasor or someone who, without committing a tort, had become involved in the wrongful acts. He stated the limiting principle in the following terms ([1973] 2 All ER 943 at 948, [1974] AC 133 at 175):

'. . . if through no fault of his own a person gets mixed up in the tortious acts of others so as to facilitate their wrongdoing he may incur no personal liability but he comes under a duty to assist the person who has been wronged by giving him full information and disclosing the identity of the wrongdoers'.

The reference to 'full information' has sometimes led to an assumption that any person who has become 'mixed up' in a tortious act can be required not merely to disclose the identity of the wrongdoer but to give general discovery and answer questions on all matters relevant to the cause of action. In my view this is wrong. The

40

principle upon which Lord Reid distinguished the 'mere witness' rule was that unless the plaintiff discovered the identity of the wrongdoers he could not commence proceedings. The reasoning of the other members of the House is the same. The *Norwich Pharmacal case* is no authority for imposing upon 'mixed up' third parties a general obligation to give discovery or information when the identity of the defendant is already known.

Four years after the *Norwich Pharmacal case* Templeman J applied its principle to a case in which the plaintiff wanted to know, not the identity of the wrongdoer, but what he had done with misappropriated money. This was *London and County Securities Ltd v. Caplan* (26 May 1978, unreported). Mr Caplan was alleged to have embezzled £5m of the plaintiff's money and transferred it to the Californian branch of a United Kingdom bank. The Judge made an order requiring the bank to disclose whether it still had the money and if not, where it had gone. The case raises certain problems about extra-territoriality which I considered in *MacKinnon v. Donaldson Lufkin & Jenrette Securities Corp* [1986] 1 All ER 653, [1986] Ch 482 but which are not immediately relevant here. But the principle of making such an order seems to me, if I may say so with respect, justified by the reasoning in the *Norwich Pharmacal case*. Just as no action could be commenced unless the wrongdoer could be identified, <u>so the disappearance of the subject matter of the action could in practice make the trial nugatory</u>. As Templeman LJ explained a few months later in *Mediterranea Raffineria Siciliana Petroli SpA v. Mabanaft GmbH* [1978] CA Transcript 816 in the Court of Appeal:

'A court of equity has never hesitated to use the strongest powers to protect and preserve a trust fund in <u>interlocutory proceedings on the basis that, if the trust fund disappears by the time the action comes to trial, equity will have been invoked in vain</u>'».
(Οι υπογραμμίσεις είναι του Δικαστηρίου).

Εις την υπόθεση **Aoot Kalmneft** (άνω) στη σελ. 423, παραγρ. 17 αναφέρονται τα ακόλουθα:

17.   Likewise, in my view, when a Court is considering an application in the context of the Norwich Pharmacal jurisdiction, it should be satisfied that there is a real prospect that the information sought may assist in identifying a defendant. The principle is not simply that the wrongdoer be identified but extends in my view to his identification as a wrongdoer. The principle is that a «mixed up» third party is under a duty to disclose information <u>to enable the claimant to commence an action.</u> In Norwich Pharmacal the information required was the identity of the wrongdoer (the applicant knew what wrong had been done but not who had done it) but <u>I see no reason why the principle is limited to disclosure of the identity of an unknown wrongdoer and does not extend to information showing that he has committed the wrong.</u>

(Οι υπογραμμίσεις είναι του Δικαστηρίου).

Επίσης στην **Mitsui** (άνω) στη σελ. 518, παράγρ. 23 και 24 αναφέρονται:

«[23]  I consider first whether the second condition is satisfied. I proceed in this judgment on the basis that the claimant <u>needs further information</u>

42

which the defendant is likely to be able to provide <u>before it can fully a</u> <u>properly plead a breach of the first limb</u> .............. . In a word <u>the</u> <u>information sought is necessary to enable the action to be brought</u>».

(Οι υπογραμμίσεις είναι του Δικαστηρίου).

[24]   In my judgment despite the argument of Mr Carr QC that there is no authority directly in point, it is clear that the exercise of the jurisdiction of the court under *Norwich Pharmacal* against third parties who are mere witnesses innocent of any participation in the wrongdoing being investigated is a remedy of last resort. (It is claimant's case that the defendant is such an innocent third party.) The jurisdiction is only to be exercised if the innocent third parties are the only practicable source of information. The whole basis of the jurisdiction against them is that, unless and until they disclose what they know, there can be no litigation in which they can give evidence: see e g Lord Kilbrandon in *Norwich Pharmacal* [1973] 2 All ER 943 at 973, 975, [1974] AC 133 at 203, 205. Whilst there is a public interest in achieving justice between disputing parties, there is also a public interest in not involving third parties if this can be avoided: see John Donaldson MR in *Harrington v. North London Polytechnic* [1984] 3 All ER 666 at 670-671, [1984] 1 WLR 1293 at 1299. The jurisdiction is both exceptional and only to be exercised when it is necessary: Lord Woolf CJ in *Ashworth Hospital Authority v. MGN Ltd* [2002] 4 All ER 193 at [75]. The necessity required to justify exercise of this intrusive jurisdiction is a necessity arising from the absence of any other practicable means of obtaining the essential information».

43

Από τα πιο πάνω φαίνεται ότι είναι ουσιώδες, προκειμένου να ασκήσει την εξουσία του το Δικαστήριο σύμφωνα με την αρχή της **Norwich Pharmacal**, κατά κύριο λόγο οι πληροφορίες και γενικά η αποκάλυψη που επιζητείται από αιτητή να είναι είτε αναγκαία δια καταχώρηση αγωγής (αφού έχει πληροφόρηση των ονομάτων των εναγομένων) είτε προκειμένου να έχει πλήρη εικόνα της αδικοπραξίας ώστε να μπορέσει να καταχωρήσει την αγωγή του ή την ΄έκθεση απαίτησης του. Η **Mitsui** (άνω) πρόσθεσε και τον όρο «όταν το αθώο τρίτο μέρος είναι η μόνη πρακτικά πηγή πληροφόρησης».

Εις τα περιστατικά της παρούσας υπόθεσης σύμφωνα με την ένορκο δήλωση Lefton, παραγραφ. 145, ήδη οι ενάγοντες-αιτητές στις 21.7.05 καταχώρησαν την αγωγή 5581/05 Επαρχιακού Δικαστηρίου Λευκωσίας που αφορά τις ισχυριζόμενες αδικοπραξίες κλπ, εναντίον 12 εναγομένων που είναι τα πρόσωπα υπ΄ αριθμό 1-12 στον πίνακα Α, δια τα οποία ασφαλώς έκρινε ότι ενέχονται με τον ένα ή άλλο τρόπο εις τις ισχυριζόμενες αδικοπραξίες (το τεκμ. 82 είναι σχετικό). Επίσης στην ίδια παράγραφο αναφέρεται ότι ήδη έχει καταχωρηθεί και η έκθεση απαίτησης στην άνω αγωγή, στις 31.10.05.

Περαιτέρω στην άνω παράγραφο 145 ενόρκου δηλώσεως Lefton αναφέρονται τα ακόλουθα:

«.........On 21 July 2005, the Plaintiffs-Applicants filed an ex parte application for the issue of a Mareva Injunction and other interlocutory relief against Kyprianou as defendant 1 and Defendants 2,3,4,5,8,9, and 10 of the action no 5581/01. The application was supported by an affidavit sworn by me, Ronald Lefton, Paragraphs 1-144 of the present affidavit repeat, with the exception of some minor amendments, my affidavit supporting the ex parte application

44

for the issue of a Mareva Injuction and other interlocutory relief against the Defendants of the action no. 5581/05.».

Σημειώνεται από το πιο πάνω απόσπασμα η αναφορά Lefton ότι οι πρώτες 144 παράγραφοι των δύο ενόρκων δηλώσεων (ημερ. 21.7.05 και 2.12.05) είναι περίπου οι ίδιες.

Ως αποτέλεσμα της αίτησης ημερ. 21.7.05 αλλά και αίτηση ημερ. 26.7.05 (Βλ. παράγρ. 146 ενόρκου δηλώσεως Lefton) οι ενάγοντες –αιτητές εξασφάλισαν στην αγωγή 5581/05, διάταγμα τύπου Mareva εναντίον των εναγομένων 1, 2, 3, 4, 5, 7, 8, 9, 10, 11 και 12 (είναι τα ίδια πρόσωπα ως ο πίνακας Α με ταυτόσημους αριθμούς). Ως αποτέλεσμα παγοποίησαν όλους τους λογαριασμούς των πιο πάνω εις όλες τις τράπεζες και χρηματοπιστωτικά ιδρύματα απανταχού εις Κύπρο και εξωτερικό. Περαιτέρω εναντίον των πιο πάνω και  πρόσθετα εναντίον του εναγομένου 6 (που είναι το πρόσωπο αρ. 6 στον πίνακα Α) εξασφάλισαν και άλλα βοηθητικά διατάγματα, όπως τα αιτούμενα με την παρούσα αίτηση. (Βλ. τεκμ. 83).

Περαιτέρω από τα πιο πάνω φαίνεται ότι οι αιτητές παρόλο που είχαν όλη την πληροφόρηση δια όλα τα πρόσωπα του πίνακα 1-29 έκριναν ότι μόνο δια τα πρόσωπα με αρ. 1-12 δικαιολογείτο η δίωξη με την καταχώρηση της αγωγής 5581/05. Δια τα πρόσωπα με αρ. 13-29 παρόλο που είχαν την πληροφόρηση, ουδέν μέτρο έλαβαν εναντίον τους είτε δια καταχώρησης αγωγής ή συνένωσης τους ως εναγομένους εις την αγωγή 5581/05, όχι διότι δεν είχαν πληροφόρηση απ΄ ότι φαίνεται από την ένορκη δήλωση Lefton, παράγρα. 1-144, αλλά διότι αυτό έκριναν ορθό. Μετά την παράγραφο 144 της ένορκης δήλωσης Lefton δεν προστίθεται ουσιαστικά οτιδήποτε νέο και ουσιώδες παρά δια πιθανή παρακοή από τον Λυκούργο Κυπριανού του διατάγματος ημερ. 21.7.05 με εμπλοκή της καθ΄ ης η αίτηση 1. Επίσης τα όσα αναφέρονται δια το Μ/Υ ΝΟΝΙ δεν είναι

45

ουσιώδη στην παρούσα διαδικασία και εν πάση περιπτώσει η αναφορά είναι σε σχέση με τράπεζες του εξωτερικού. Πουθενά εις την ένορκο δήλωση Lefton ημερ. 2.12.05 προβάλλεται ο ισχυρισμός ότι η αξιούμενη πληροφόρηση είναι αναγκαία για σκοπούς καταχώρησης αγωγής εναντίον των προσώπων 13-29 εις τον πίνακα ή ότι είναι αναγκαία δια σκοπούς καταχώρησης έκθεσης απαίτησης ή ότι η δίκη ελλείψει της αιτούμενης πληροφόρησης θα είναι άνευ αποτελέσματος. Το ίδιο δηλώνουν οι δικηγόροι των αιτητών εις την αγόρευση τους.

Εκείνο που προβάλλεται με την ένορκη δήλωση Lefton είναι ότι ο εντοπισμός του προϊόντος του δόλου και εμπορίας εκ των έσω (Βλ. παραγρ. 199, 212, 221 και 223). Εις στις παραγράφους 221 και 223 προβάλλεται και ο ισχυρισμός ότι τα αιτούμενα διατάγματα είναι αναγκαία δια προφύλαξη των δικαιωμάτων των εναγόντων-αιτητών. Αυτό όμως έγινε ήδη με την αγωγή 5581/05 και τα διατάγματα Mareva που εξεδόθηκαν εκεί, όπως οι ίδιοι ζήτησαν. Συνεπώς παραμένει μόνο το αίτημα δια εντοπισμό του προϊόντος του δόλου κλπ ως ανωτέρω.

Υπενθυμίζεται όμως ότι η αγωγή υπό εξέταση αφορά αγωγή δια αποκάλυψη βάσει της αρχής της **Norwich Pharmacal**. Δεν είναι αγωγή tracing οπότε αναμφίβολα θα τίθετο σε εφαρμογή η αρχή της **Banker's Trust** (άνω) ή κατ᾿ εφαρμογή της αρχής **Norwich Pharmacal** ότι αν δεν δοθεί η αιτούμενη πληροφόρηση η δίκη στην παρούσα αγωγή θα καταστεί άνευ αποτελέσματος αν απολεστεί το αντικείμενο της αγωγής. Οι δύο αρχές είναι διαφορετικές όπως έχει αναφερθεί πιο πάνω με αναφορά στο Σύγγραμμα **Commercial Injunctions** του Steven Gee και Αγγλική νομολογία. Η αρχή της **Norwich Pharmacal** απ᾿ ότι διαφαίνεται από την Αγγλική νομολογία μπορεί να τύχει εφαρμογής και σε περιστάσεις που καλύπτονται από την **Banker's Trust** ήτοι αγωγές tracing , καθ᾿ ότι στις περιπτώσεις αυτές η αποκάλυψη (πληροφόρηση) είναι αναγκαία ώστε να μην απολεσθεί το αντικείμενο της αγωγής (tracing) και η δίκη (της tracing) να μην

46

είναι χωρίς αποτέλεσμα.   Εις την υπό εξέταση υπόθεση που είναι αγωγή δια discovery δεν τίθεται θέμα απώλειας του αντικειμένου της αγωγής ή η δίκη της θα είναι χωρίς αποτέλεσμα.

Το ακόλουθο απόσπασμα από την **A v. C** **(1980) 2 All E.R. 347 στη σελ. 351** είναι πλήρως διαφωτιστικό.

> «Now these cases provide ample authority that, in an action in which the plaintiff seeks to trace property which in equity belongs to him, the court not only has jurisdiction to grant an injuction restraining the disposal of that property; it may in addition, at the interlocutory stages of the action, make orders designed to ascertain the whereabouts of that property. In particular, it may order a bank (whether or not party to the proceedings) to give discovery of documents in relation to the bank account of a defendant who is alleged to have defrauded the plaintiff of his assets; And it may make orders for interrogatories to be answered by the defendants or their employees or directors»

Όπως φαίνεται από τα πιο πάνω αλλά και από το Σύγγραμμα **Commercial Injuctions** του S. Gee (άνω) η αίτηση δια αποκάλυψη γίνεται μέσα στα πλαίσια της αγωγής tracing και όχι με ανεξάρτητη αγωγή. Πότε καταχωρείται ανεξάρτητη αγωγή βάσει της αρχής **Norwich Pharmacal** (άνω) ήδη έχει αναφερθεί.

Αυτό που επιχειρούν οι αιτητές με την παρούσα διαδικασία ενδεχομένως – και χωρίς να αποφασίζω οτιδήποτε- να ήτο στη διάθεση τους εις τα πλαίσια της αγωγής 5581/05 Επαρχιακού Δικαστηρίου Λευκωσίας.

47

Δια τους πιο πάνω λόγους είναι η κρίση μου ότι η δεύτερη προϋπόθεση (βλ. **Mitsui** άνω) δεν ικανοποιείται.

Επίσης και ανεξάρτητα από τα πιο πάνω εις τα περιστατικά της παρούσας υπόθεσης και σε σχέση με τη δεύτερη προϋπόθεση του άρθρου 32, το αιτούμενο διάταγμα δια αποκάλυψη εναντίον των καθ' ων η αίτηση φαίνεται να προσκρούει εις τον «Mere witness» κανόνα όπως τέθηκε εις την **Norwich Pharmacal** (άνω) και αναλύεται εις την **Mercantile Group (Europe) A. G.v. Aiyela & Other (1994) 1 All ER 110** στη σελ. 115.

Ο άνω κανόνας εμποδίζει ένα διάδικο από του να εξασφαλίσει διάταγμα αποκάλυψης από ένα πρόσωπο το οποίο «will in due course be compellable to give that information either by oral testimony as a witness or on subpoena duces tecum».

Όπως δε αναφέρει ο Lord Reid εις την **Norwich Pharmacal** (άνω) σελ. 947 (H):

«....The foundation of the rule is the assumption that eventually the testimony will be available either in an action already in progress or in an action which will be brought later».

Εις τα περιστατικά της παρούσας υπόθεσης υπάρχει αγωγή σε εξέλιξη και είναι η 5581/05 (άνω) και είναι λογικό να αχθεί κάποιος το συμπέρασμα ότι οι καθ' ων η αίτηση 1 και 2 τουλάχιστον λαμβάνοντας υπόψη το υλικό που τίθεται στην ένορκο δήλωση Lefton παραγρ. 21, 26-29, 79, 92, 116, 124, 129, 131-132, 216, 217 και 219 ότι οι άνω τράπεζες τελικά θα κληθούν ως μάρτυρες κατά την ακρόαση της αγωγής 5581/05. Το ίδιο ισχύει και θα τις καθ' ων η αίτηση 3 και 4

48

λαμβάνοντας υπόψη το περιεχόμενο της παραγράφου 213 της ενόρκου δηλώσεως Lefton αλλά με πολύ μικρότερη πιθανότητα.

Τέλος όσον αφορά την τρίτη προϋπόθεση της **Mitsui** η οποία διαχωρίζεται εις δύο σκέλη περαιτέρω, παρατηρώ:

Αναφορικά με το πρώτο σκέλος, από την ένορκο δήλωση Lefton ημερ. 2.12.05 και από τις παραγράφους 21, 26-29, 79, 92, 116, 124, 129, 131-132, 216, 217 και 219 φαίνεται ότι οι καθ΄ ων η αίτηση 1 και 2 αναμείχθηκαν (mixed up) κατά τρόπο που διευκόλυνε τις αποδιδόμενες άνομες ενέργειες των προσώπων που εμφαίνονται στο πίνακα Α με αριθμούς 1, 5, 6, 11, 12 και 16-21. Δια τις υπόλοιπες, καθ΄ ων η αίτηση υπ΄ αριθμό 3 και 4 δεν υπάρχει καμία αναφορά πλην των όσων αναφέρονται στην παράγραφο 213 της άνω ενόρκου δηλώσεως και με αναφορά στα ενδιαφερόμενα πρόσωπα του πίνακα Α με αριθμό 2, 3 και 4 ότι διατηρούν λογαριασμούς εις τις τράπεζες, καθ΄ ων η αίτηση 3 και 4. Αυτό όμως δεν είναι αρκετό σύμφωνα με το πρώτο σκέλος της τρίτης προϋπόθεσης ως άνω που απαιτεί να διαφανεί εμπλοκή – ανάμειξη των καθ΄ ων η αίτηση 3 και 4 εις την διευκόλυνση των αδικοπραξιών.

Όσον αφορά το δεύτερο σκέλος της τρίτης προϋπόθεσης (**Mitsui**) δια τον ίδιο λόγο που αναφέρθηκε εξετάζοντας το πρώτο σκέλος πιστεύω ότι ικανοποιείται δια τις καθ΄ ων η αίτηση 1 και 2 και σε σχέση με τα ενδιαφερόμενα πρόσωπα του πίνακα Α, 1, 5, 6, 11, 12 και 16-21 αλλά όχι δια τις καθ΄ ων η αίτηση 3 και 4 και σε σχέση με τα υπόλοιπα ενδιαφερόμενα μέρη εφόσον δεν κατεδείχθη στον αναγκαίο βαθμό για τη διαδικασία αυτή, η ανάμειξη των καθ΄ ων η αίτηση 3 και 4 στη διευκόλυνση των αδικοπραξιών.

Έχοντας υπόψη όλα τα πιο πάνω είναι η γνώμη μου ότι από τις προϋποθέσεις που έχουν αναφερθεί στην υπόθεση **Mitsui** δεδομένου να δοθεί

49

διάταγμα τύπου **Norwich Pharmacal** δεν ικανοποιείται η δεύτερη προϋπόθεση και επίσης δεν ικανοποιείται η τρίτη προϋπόθεση αναφορικά με τις καθ' ων η αίτηση 1 και 2 καθόσον μέρος αφορά τα ενδιαφερόμενα μέρη του πίνακα Α με αριθμούς 2, 3, 4 7, 8, 9, 10, 13, 14, 15 και 22-29  και καθόλου δια τους καθ' ων η αίτηση 3 και 4.

Όλα τα πιο πάνω έχουν ως αποτέλεσμα να μην ικανοποιούνται οι δύο πρώτες προϋποθέσεις του άρθρου 32 του Ν.14/60.

Με την πιο πάνω κατάληξη σφραγίζεται η τύχη της αιτήσεως υπό εξέταση που αναπόφευκτα θα πρέπει να απορριφθεί.

Κατά εφαρμογή των όσων έχουν λεχθεί στην υπόθεση **Μαίρης Σεβαστού v. Εμμανουήλ Σεβαστού (2002) 1 (Γ) ΑΑΔ 1980, σελ. 1988** το Δικαστήριο δεν θα ασχοληθεί με οτιδήποτε άλλο κριτήριο του άρθρου 32. Κατ' αναλογία πιστεύω ότι δεν πρέπει να ασχοληθεί με άλλους λόγους ενστάσεως από τη στιγμή που το Δικαστήριο διαπίστωσε ότι δεν υπάρχει συζητήσιμο θέμα.

Δια όλους τους πιο πάνω λόγους η αίτηση ημερ. 2.12.05 απορρίπτεται. Όσον αφορά τα έξοδα αφού λαμβάνω υπόψη τα πρωτότυπα θέματα που ηγέρθησαν με την παρούσα διαδικασία και τους λόγους που απορρίπτεται η αίτηση, κρίνω όπως μη επιδικασθούν έξοδα εις βάρος των αιτητών αλλά έκαστη πλευρά να επιβαρυνθεί με τα έξοδα της.

(Υπ.) Λ. Παρπαρίνος,
Π.Ε.Δ.

Πιστόν αντίγραφο


Πρωτοκολλητής
/ΕΝ