UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-----------------------------------------------------x

|  |  |  |
|---|---|---|
|  | : | No. 09-CV-00968 (JAP) |
| JOSEPH P. LASALA and | | |
| FRED S. ZEIDMAN, as CO-TRUSTEES | : | Honorable Joel A. Pisano |
| of the AREMISSOFT CORPORATION | | United States District Judge |
| LIQUIDATING TRUST, | : | |
|  | | |
| Plaintiffs, | : | Motion Returnable: |
|  | | July 6, 2009 |
| v. | : | |
|  | | |
| MARFIN POPULAR BANK PUBLIC | : | Electronically Filed |
| COMPANY, LTD., | | |
|  | : | |
| Defendant. | | |
|  | : | |

-----------------------------------------------------x

**MEMORANDUM OF LAW OF DEFENDANT
MARFIN POPULAR BANK IN SUPPORT
OF ITS MOTION TO DISMISS THE COMPLAINT**

ALLEN & OVERY LLP
Todd S. Fishman
1221 Avenue of the Americas
New York, New York 10020
(212) 610-6300
todd.fishman@newyork.allenovery.com

*Attorneys for Defendant
Marfin Popular Bank Public Co Ltd*

Dated: June 10, 2009

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT ........................................................................ 1

FACTUAL BACKGROUND ............................................................................ 4

The Trustees' Cyprus Litigation ...................................................................... 4

The Trustees' Cyprus Litigation Involving The Bank ..................................... 5

The Trustees' U.S. Litigation Against The Bank ............................................ 6

ARGUMENT ................................................................................................... 9

I.      The Complaint Should Be Dismissed Because The
        Court Lacks Personal Jurisdiction Over The Bank ............................... 9

II.     The Complaint Should Be Dismissed Under
        The Doctrine Of Forum Non Conveniens ........................................... 12

        A.      Plaintiffs' Decision To File Suit In New Jersey
                Deserves Little Deference ....................................................... 13

        B.      Cyprus Is An Established Adequate Forum ........................... 15

        C.      Cyprus Is The Most Appropriate Forum For This Case ........ 16

                1.      The private interests weigh in favor of dismissal. .......... 16

                2.      The public interests weigh in favor of dismissal. ........... 20

                3.      The balance of factors decisively point to Cyprus. ........ 23

III.   The Complaint Fails To State A Claim For Relief
       And Therefore Should Be Dismissed.................................................... 24

       A.   Cyprus Law Governs Plaintiffs' Claims. ............................... 25

       B.   The Claim For Aiding And Abetting Breach Of
            Fiduciary Duty Fails As A Matter Of Law. ........................... 26

       C.   The Civil Conspiracy Claim Fails As A Matter Of Law. ..................... 29

       D.   The Breach Of Contract Claim Fails As A Matter Of Law. ................. 31

IV.    Plaintiffs' Claims Are Barred By The
       Applicable Statute Of Limitations ................................................ 32

V.     Plaintiffs' Claims Are Barred By
       The Doctrine Of In Pari Delicto.................................................... 35

       CONCLUSION ....................................................................... 39

# TABLE OF AUTHORITIES

## CASES

Agostino v. Quest Diagnostics Inc.,
    256 F.R.D. 437 (D.N.J. 2009) ..................................................................26

Alfadda v. Fenn,
    159 F.3d 41 (2d Cir. 1998) .......................................................................22

American Cyanamid Co. v. Fermenta Animal Health Co.,
    54 F.3d 177 (3d Cir. 1995) .......................................................................32

Ashcroft v. Iqbal,
    129 S. Ct. 1937, 2009 WL 1361536 (U.S. May 18, 2009)   ..............24, 25

A.S.T., LLC v. Pallenberg,
    Civ. No. 07-795 (JAP), 2007 WL 1827188 (D.N.J. June 25, 2007)........10

Baird v. American Med. Optics,
    155 N.J. 54, 713 A.2d 1019 (1998)..........................................................32

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007) .........................................................................passim

Bison Pulp & Paper Ltd. v. M/V Pergamos,
    No. 89 Civ. 1392, 1995 WL 880775 (S.D.N.Y. Nov. 29, 1995) .............16

Board of Educ. v. Hoek,
    38 N.J. 213, 183 A.2d 633 (1962) ............................................................29

Bondi v. Citigroup, Inc.,
    No. BER-L-10902-04, 2005 WL 975856
    (N.J. Super. Ct. Feb. 28, 2005)..........................................................35, 37

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985) ...................................................................................9

Calder v. Jones,
    465 U.S. 783 (1984) ................................................................ 10

Carteret Sav. Bank, F.A. v. Shushan,
    954 F.2d 141 (3d Cir. 1992) ..................................................... 9

Compuwill Express, Inc. v. ATX Telecomms. Servs.,
    No. 96-2462, 2000 U.S. Dist. LEXIS 7303
    (E.D. Pa. May 31, 2000)............................................................ 34

County of Morris v. Fauver,
    153 N.J. 80, 707 A.2d 958 (1998) ............................................. 32

Coyle v. Englander's,
    199 N.J. Super. 212, 488 A.2d 1083 (Super. Ct. App. Div. 1985) .......... 31

Dahl v. United Techns. Corp.,
    632 F.2d 1027 (3d Cir. 1980) .............................................. 18, 23

Davidson Extrusions, Inc. v. Touche Ross & Co.,
    131 A.D.2d 421, 516 N.Y.S.2d 230 (2d Dep't 1987) ............................ 16

Dewey v. Volkswagen AG,
    558 F. Supp. 2d 505 (D.N.J. 2008)............................................. 34

Donald G. Atteberry, DVM, P.A. v. Barclays Bank PLC,
    153 B.R. 901 (Bankr. D. Kan 1992)............................................ 23

F. Hoffmann-La Roche Ltd v. Empagran, S.A.,
    542 U.S. 155 (2004) .......................................................... 21

Foodtown v. Sigma Marketing Sys., Inc.,
    518 F. Supp. 485 (D.N.J. 1981)................................................ 34

Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.,
    817 A.2d 160 (Del. 2002)..................................................... 27

Guidi v. Inter-Continental Hotels Corp.,
    224 F.3d 142 (2d Cir. 2000) .................................................. 13

Gulf Oil Corp. v. Gilbert,
    330 U.S. 501 (1947) ...................................................................passim

Hanson v. Denckla,
    357 U.S. 235 (1958) ........................................................................11

Helicopteros Nacionales de Colombia, S.A. v. Hall,
    466 U.S. 408 (1984) ..........................................................................9

IMO Indus., Inc. v. Kiekert AG,
    155 F.3d 254 (3d Cir. 1998) .......................................................2, 10

In re Air Crash Near Athens, Greece on Aug. 14, 2005,
    479 F. Supp. 2d 792 (N.D. Ill. 2007).............................................15

In re Bennett Funding Group,
    336 F.3d 94 (2d Cir. 2003) ............................................................37

In re CBI Holding Company, Inc.,
    311 B.R. 350 (S.D.N.Y. 2004), aff'd in part and rev'd in part,
    529 F.3d 432 (2d Cir. 2008) ..........................................................38

In re Mediators, Inc.,
    105 F.3d 822 (2d Cir. 1997) ..........................................................36

In re Municipal Derivatives Antitrust Litig.,
    No. 08 Civ. 2516, 2009 WL 1204345 (S.D.N.Y. April 29, 2009)...........34

In re Parmalat Sec. Litig.,
    501 F. Supp. 2d 560 (S.D.N.Y. 2007),
    aff'd, 309 Fed. Appx. 539 (2d Cir. 2009)...................................25

Ioannidis/Riga v. M/V Sea Concert,
    132 F. Supp. 2d 847 (D. Or. 2001)...............................................16

Judson v. Peoples Bank & Trust Co.,
    25 N.J. 17, 134 A.2d 761 (1957).................................................27

Kirschner v. Grant Thornton LLP,
   No. 07 Civ. 11604 (GEL), 2009 WL 996417 (S.D.N.Y. April 14,
   2009) .................................................................................................36, 37

Klaxon Co. v. Stentor Elec. Mfg.,
   313 U.S. 487 (1941) ................................................................................25

Koger, Inc. v. O'Donnell,
   Civ. No. 07-3091, 2007 WL 3232586 (D.N.J. Oct. 31, 2007).....13, 17, 18

Lacey v. Cessna Aircraft Co.,
   932 F.2d 170 (3d Cir. 1991) ..............................................................13, 15

LaSala v. Bank of Cyprus Public Co. Ltd.,
   510 F. Supp. 2d 246 (S.D.N.Y. 2007)..............................................passim

LaSala v. Lloyds TSB Bank, PLC,
   514 F. Supp. 2d 447 (S.D.N.Y. 2007) ........................................................3

LaSala v. UBS, AG,
   510 F. Supp. 2d 213 (S.D.N.Y. 2007) ........................................................3

Leasco Data Processing Equip. Corp. v. Maxwell,
   468 F.2d 1326 (2d Cir. 1972) ..................................................................11

Lebel v. Everglades Marina, Inc.,
   115 N.J. 317, 558 A.2d 1252 (1989).....................................................9, 12

Lum v. Bank of America,
   361 F.3d 217 (3d Cir. 2004) .....................................................................25

Martinez v. Cooper Hospital-Univ. Med. Center,
   163 N.J. 45, 747 A.2d 266 (2000) ............................................................32

McCormac v. Qwest Comm'cs Int'l, Inc.,
   387 N.J. Super. 469, 904 A.2d 775 (Super. Ct. App. Div. 2006) ...........27

Mediterranean Golf, Inc. v. Hirsch,
   783 F. Supp. 835 (D.N.J. 1991).................................................................18

Microsoft Corp. v. AT&T Corp.,
    550 U.S. 437 (2007) ...................................................................21

Miller v. Boston Scientific Corp.,
    380 F. Supp. 2d 443 (D.N.J. 2005)..........................................19

Miller Yacht Sales, Inc. v. Smith,
    384 F.3d 93 (3d Cir. 2004) ........................................................11

Morgan v. Union County Bd.of Chosen Freeholders,
    268 N.J. Super. 337, 633 A.2d 985 (Super. Ct. App. Div. 1993) ............30

Noye v. Hoffmann-La Roche Inc.,
    238 N.J. Super. 430, 570 A.2d 12 (App. Div. 1990)...............................31

Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.,
    267 F.3d 340 (3d Cir. 2001) ...............................................35, 38

Phillips v. County of Allegheny,
    515 F.3d 224 (3d Cir. 2008) ......................................................24

Piper Aircraft Co. v. Reyno,
    454 U.S. 235 (1981) ...................................................................19

P.V. v. Camp Jaycee,
    197 N.J. 132, 962 A.2d 453 (2008) ......................................25, 26

Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,
    119 F.3d 935 (11th Cir. 1997) ...................................................22

Rochez Bros., Inc. v. Rhoades,
    527 F.2d 880 (3d Cir. 1975) ..........................................27, 28, 35

Roy v. Brahmbhatt,
    Civ. No. 07-5082, 2008 WL 5054096 (D.N.J. Nov. 26, 2008)...............11

Shaffer v. Heitner,
    433 U.S. 186 (1977) .....................................................................9

State Farm Mut. Auto Ins. Co. v. Simmons' Estate,
    84 N.J. 28, 417 A.2d 488 (1980) .................................................................26

Stella v. Dean Witter Reynolds, Inc.,
    241 N.J. Super. 55, 574 A.2d 468 (Super. Ct. App. Div. 1990) .............35

Sussman v. Bank of Israel,
    801 F. Supp. 1068 (S.D.N.Y. 1992),
    aff'd, 990 F.2d 71 (2d Cir. 1993)  ...........................................................22

U.S.O. Corp. v. Mizuho Holding Co.,
    No. 06 C 0459, 2007 WL 2893628 (N.D. Ill. Sept. 27, 2007),
    aff'd, 547 F.3d 749 (7th Cir. 2008) .........................................................22

VFB LLC v. Campbell Soup Co.,
    482 F.3d 624 (3d Cir. 2007) .....................................................................27

Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.,
    275 F. Supp. 2d 543 (D.N.J. 2003).........................................................31

Weil v. Express Container Corp.,
    360 N.J. Super. 599, 824 A.2d 174 (Super. Ct. App. Div. 2003) ...........29

Wight v. BankAmerica Corp.,
    219 F.3d 79 (2d Cir. 2000) .......................................................................35

Windt v. Qwest Communc's Int'l, Inc.,
    529 F.3d 183 (3d Cir. 2008) ............................................................passim

World-Wide Volkswagen Corp. v. Woodson,
    444 U.S. 286 (1980) .................................................................................11

Zweig v. National Mortgage Bank of Greece,
    No. 91 Civ. 5482, 1993 WL 227663 (S.D.N.Y. June 21, 1993)..............22

## STATUTES

31 C.F.R. § 103 ..................................................................................21

31 U.S.C. § 5311 ...............................................................................21

Fed. R. Civ. P. 1 ...............................................................................24

Fed. R. Civ. P. 8(a) ......................................................................24, 30

Fed. R. Civ. P. 9(b) ......................................................................25, 34

Fed. R. Civ. P. 12(b)(6) ...................................................................24

Fed. R. Civ. P. 44.1 ..........................................................................21

Fed. R. Civ. P. 45(b)(2) ....................................................................18

N.J. Stat. Ann. § 2A:14-1 (West 2009) .........................................32

## OTHER AUTHORITIES

Restatement (Second) of Conflicts of Laws § 145 (1971) ............26

Restatement (Second) of Conflicts of Laws § 188 (1971) ............26

Restatement (Third) of Foreign Relations Law of the United States §
403 (1987)..................................................................................21

Restatement (Second) of Torts § 876(b) (1979)............................27

Defendant Marfin Popular Bank Public Co Ltd (the "Bank") respectfully submits this memorandum of law in support of its motion to dismiss the complaint pursuant to Rules 8(a), 9(b), 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure and on the grounds of forum non conveniens.[1]

## PRELIMINARY STATEMENT

This is one of a series of actions in which plaintiffs have sued a non-U.S. bank in the United States for allegedly enabling the "massive international fraud" perpetrated by the very entity, AremisSoft Corporation, for which they were appointed trustees.  In this action, plaintiffs sue Marfin Popular Bank, a Cyprus-based bank. Their allegations relate to accounts opened by AremisSoft's corrupt insiders in Cyprus and administered by the Bank's Cyprus-based employees, all under the regulatory supervision of the Central Bank of Cyprus.  Reasons of jurisdiction, and threshold demands of fairness and international comity, all dictate that this action should be dismissed in its entirety.

In particular, the complaint must be dismissed for lack of personal jurisdiction over the Bank.  Plaintiffs fail to plead a single contact between the Bank and New Jersey.  Also, established Third Circuit authority precludes

---

[1]    References to the Complaint dated March 4, 2009 are shown as "Compl. ¶ ___." (Ex. A.)  Unless otherwise noted, all exhibits are attached to the Certification of Todd S. Fishman dated June 10, 2009, submitted herewith.

plaintiffs from securing jurisdiction over the Bank under the effects theory they advance.  See IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265 (3d Cir. 1998) (holding that the effects test "can only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant *expressly aimed* its tortuous conduct at the forum, and thereby made the forum the focal point of the tortious activity") (emphasis in original).

In addition, even if personal jurisdiction somehow were established over the Bank, this action should be dismissed because Cyprus, not New Jersey, is the appropriate forum for plaintiffs' claims.  This is plaintiffs' second attempt to sue a Cyprus-based bank in the United States.  Plaintiffs' first attempt was rejected. There, in plaintiffs' action against the Bank of Cyprus, District Judge Haight of the Southern District of New York held that the doctrine of forum non conveniens required dismissal of their suit in favor of Cyprus, the sovereign that supervised the bank's activities and where the documentary evidence and most of the witnesses were located.[2]  LaSala v. Bank of Cyprus Public Co. Ltd., 510 F. Supp. 2d 246, 267 (S.D.N.Y. 2007).  There is no neutral principle that suggests why the result in this case should be any different and why plaintiffs should be allowed to proceed against Marfin Popular Bank here, thousands of miles away from the Bank's home

---

[2]     Judge Haight also dismissed the Trustees' lawsuits against Lloyds TSB Bank and UBS AG, two Swiss banks, on forum non conveniens grounds.  LaSala

2

country of Cyprus, the most suitable forum.  Precisely because "[t]here is a local interest in having localized controversies decided at home," Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947), this Court should resist exercising any claimed jurisdiction over the Bank based on the doctrine of forum non conveniens.

Moreover, this action suffers from numerous substantive defects:

First, plaintiffs' claims for aiding and abetting breach of fiduciary duty, civil conspiracy and breach of contract each contain elemental flaws and thus fail to state a claim upon which relief can be granted.

Second, this action is barred by the applicable statute of limitations. Plaintiffs bring this action against the Bank now even though they discovered, in June 2002, that one of the chief perpetrators of the underlying fraud, Lycourgos Kyprianou, AremisSoft's founder and chief executive officer, had a banking relationship with the Bank.

Third, plaintiffs, who stand in the shoes of a tainted debtor company, are barred from pressing their claims against the Bank under the doctrine of in pari delicto.

---

v. Lloyds TSB Bank PLC, 514 F. Supp. 2d 447 (S.D.N.Y. 2007); LaSala v. UBS, AG, 510 F. Supp. 2d 213 (S.D.N.Y. 2007).

## FACTUAL BACKGROUND

Plaintiffs are court-appointed trustees, Joseph P. LaSala, a resident of New Jersey, and Fred S. Zeidman, a resident of Texas (together, "plaintiffs" or the "Trustees"), of the AremisSoft Liquidating Trust, a Delaware trust formed pursuant to three orders entered in a Chapter 11 bankruptcy case pending in this District for AremisSoft Corporation, a Delaware software technology company.

### The Trustees' Cyprus Litigation

In July 2005, the Trustees commenced proceedings in the District Court of Nicosia, Cyprus against twelve defendants -- primary players in an alleged fraud involving AremisSoft that had occurred from 1998 to 2001 (the "Main Cyprus Action"). (Compl. ¶ 35.) Nine of those defendants, including Kyprianou, are alleged either to reside in Cyprus or have operations there.[3] The central allegations in that litigation are that Kyprianou misrepresented AremisSoft's true financial condition and caused AremisSoft to overstate its revenues, resulting in losses to shareholders. In the Main Cyprus Action, the Trustees asserted various causes of action against Kyprianou, including common law fraud under Delaware and Cyprus law, conspiracy, breaches of fiduciary duty, market manipulation and violations of Section 10(b) of the Securities Exchange Act of 1934.

---

[3]     See Bank of Cyprus, 510 F. Supp. 2d at 253.

4

In connection with the Main Cyprus Action, the Trustees sought and obtained a "Mareva" injunction against assets owned or controlled by Kyprianou and related entities. (Compl. ¶ 35.)  In their Third Annual Status Report, the Trustees disclosed that, based on a showing of "extensive, incontrovertible evidence" of Kyprianou's role in the AremisSoft fraud, "the Trust achieved the unprecedented result in Cyprus of an Order of the court freezing assets worldwide worth up to US$500 million belonging to Kyprianou and entities he owns and/or controls."[4]

The Trustees have continued to pursue their claims against Kyprianou and other defendants on the merits in Cyprus.

<u>The Trustees' Cyprus Litigation Involving The Bank</u>

The Trustees also commenced another litigation in Cyprus in connection with the fraud involving AremisSoft.  In December 2005, they filed an action in the District Court of Nicosia, Cyprus seeking discovery of information concerning AremisSoft, Kyprianou and related entities from the four largest commercial banks in Cyprus, including Marfin Popular Bank.[5]

---

[4]   Third Annual Status Report of the Trustees of the AremisSoft Liquidating Trust for the Period October 1, 2004 through September 30, 2005, <u>In re AremisSoft Corp.</u>, No. 02-32621 (RG) (D.N.J. March 1, 2006) (D.I. 185) ("Third Annual Status Report") (Ex. B); <u>see also</u> Compl. ¶ 35.

[5]   <u>See</u> Second Declaration of Stelios Hadjiosif ("Hadjiosif Second Decl.") ¶ 10 & Ex. A dated June 4, 2009, submitted herewith; Declaration of Nicos

The Bank appeared in that action and opposed the Trustees' application.  On August 31, 2006, the Cyprus court issued a ruling that denied plaintiffs' application.  Thereafter, on September 14, 2006, the Trustees filed an appeal before the Supreme Court of Cyprus.  That appeal was withdrawn by the Trustees on July 4, 2008.

### The Trustees' U.S. Litigation Against The Bank

Even though the Bank has no established connection to New Jersey[6] and the Trustees since at least June 2002 have been on actual notice of the Bank's relationship with AremisSoft, plaintiffs at this late date have chosen to bring suit in this forum against the Bank for allegedly "allow[ing]" Kyprianou and co-chief executive officer Roys Poyiadjis, through accounts they "controlled" at the Bank, to carry out the wrongdoing that is the very subject of plaintiffs' substantive claims filed in Cyprus courts against the perpetrators of the alleged AremisSoft fraud. (See Compl. ¶¶ 2, 4, 38, 39, 51.)

In this action, the complaint sets out two aspects of the alleged AremisSoft fraud.  The first aspect is the main enterprise fraud.  Plaintiffs allege that from "about 1998 through July 2001," AremisSoft's two main principals, Kyprianou and Poyiadjis, "caused the Company to issue false and fraudulent public statements and

---

Papaefstathiou ("Papaefstathiou Decl.") ¶¶ 9-12 dated June 9, 2009, submitted herewith.

[6]   See Hadjiosif Second Decl. ¶¶ 3-6.

regulatory filings representing to the investing public and regulators that AremisSoft's business, revenues and profits were experiencing rapid growth with annual revenues exceeding $100,000,000." (Compl. ¶ 24.)  In particular, plaintiffs allege that Kyprianou and Poyiadjis "caused AremisSoft to announce publicly that it had acquired software companies with substantial revenues for prices totaling tens of millions of dollars when, in reality, the acquired companies were small, with minimal revenues, and the prices paid were only a small fraction of the claimed amount" and then "fabricated books and records" which caused the company to report revenue "that was almost entirely fictitious." (Compl. ¶ 25.) Plaintiffs further allege that with the value of AremisSoft artificially inflated, Kyprianou and Poyiadjis "sold their AremisSoft shares at inflated prices." (Compl. ¶ 26.)  Plaintiffs nowhere contend that the Bank participated in the main enterprise fraud.

The second aspect of the alleged AremisSoft fraud is the "sophisticated money laundering scheme" perpetrated by Kyprianou and Poyiadjis. (Compl. ¶ 27.)  Plaintiffs allege that to "conceal their illegal conduct" the corrupt AremisSoft insiders "employ[ed]" "numerous bank accounts to hold and transfer the proceeds of their scheme," including accounts at the Bank which they "controlled" and over which they had "signatory authority." (Compl. ¶¶ 27, 38-39.)  Plaintiffs advert to a number of transactions allegedly involving the Bank using the rhetorical guises of

"suspicious circumstances" (Compl. ¶ 40), "no legitimate business [purpose]"
(Compl. ¶ 41), "fraudulent and wrongful" (Compl. ¶ 44) and "looting and
defalcating" (Compl. ¶ 45). But those allegations are mere labels and legal
conclusions and do not constitute facts that meet plaintiffs' obligation to show a
plausible claim entitling them to relief.

Reduced to its core, the complaint purports to identify only seven banking
transactions, over four years, that in some way involve the transfer of money
through the Bank. (Compl. ¶¶ 40-45.) Each purported transaction occurred before
July 31, 2001 when the NASDAQ halted trading in Aremissoft (Compl. ¶ 30) and
before October 4, 2001 when the U.S. Securities and Exchange Commission filed a
civil enforcement against the corporation (Compl. ¶ 31). In the end, plaintiffs offer
only the blanket charge, made "upon information and belief," that the Bank "knew
or had reason to believe that Kyprianou and Poyiadjis were engaged in fraudulent
and unlawful activities." (Compl. ¶ 46.) When judged against the extensive
evidence the Trustees and their counsel purport to have collected during their
seven-year investigation and prosecution of the claimed AremisSoft fraud (Compl.
¶¶ 17-23), such bare assertions of wrongdoing cannot readily be accepted to sustain
this complaint against the Bank.

## ARGUMENT

I.  The Complaint Should Be Dismissed Because The
    Court Lacks Personal Jurisdiction Over The Bank

Plaintiffs bear "the burden to prove, by a preponderance of the evidence,

facts sufficient to establish personal jurisdiction" over the Bank.  See Carteret Sav.

Bank, F.A. v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992).  In this diversity action,

the New Jersey long-arm statute applies and permits the exercise of personal

jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth

Amendment.  Id. at 145.

Personal jurisdiction under the Due Process Clause depends upon "the

relationship among the defendant, the forum and the litigation."  Shaffer v.

Heitner, 433 U.S. 186, 204 (1977).  Due process requires that a non-U.S. defendant

either has engaged in "continuous and systematic" activities in the forum (general

jurisdiction), Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408,

415-16 (1984), or that it has "'purposefully directed' [its] activities at residents of

the forum . . . and the litigation results from alleged injuries that 'arise out of or

relate to' those activities" (specific jurisdiction), Burger King Corp. v. Rudzewicz,

471 U.S. 462, 472 (1985).  Accord Lebel v. Everglades Marina, Inc., 115 N.J. 317,

323-25, 558 A.2d 1252, 1254-55 (1989).  Here, plaintiffs do not contend that the

Bank has continuous and systematic activities in the State of New Jersey.  Thus,

general jurisdiction cannot apply.  Nor do plaintiffs advance a specific jurisdiction

9

theory, such that the claims for relief arise out of the Bank's minimum contacts with New Jersey.

Instead, plaintiffs rely on a third concept of jurisdiction, the so-called "effects test" established in Calder v. Jones, 465 U.S. 783 (1984). Specifically, plaintiffs allege that this Court has personal jurisdiction "because the Bank by its conduct committed an intentional tort which the Bank knew or should have known would have a direct and substantial effect on the Company at its headquarters in New Jersey and other residents of New Jersey." (Compl. ¶ 15.) Established Third Circuit authority, however, expressly limits the Calder effects test. This authority holds the effects test "can only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant *expressly aimed* its tortuous conduct at the forum, and thereby made the forum the focal point of the tortious activity." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265 (3d Cir. 1998) (emphasis in original). Because the Bank, as alleged and in fact, never entered New Jersey or otherwise manifested "behavior intentionally targeted at and focused on" New Jersey, personal jurisdiction is lacking.[7] Id.; accord A.S.T., LLC v. Pallenberg, Civ. No. 07-795 (JAP), 2007 WL 1827188, at *4 (D.N.J. June 25, 2007) (Ex. G).

Tacitly acknowledging that the effects test cannot support an exercise of personal jurisdiction in this case, plaintiffs proffer an alternative theory in their

---

[7]    See Hadjiosif Second Decl. ¶¶ 3-6.

10

complaint: personal jurisdiction may be asserted over the Bank "based on the acts

of the Bank's co-conspirators . . . who had numerous contacts with New Jersey."

(Compl. ¶ 15.)   But this alternative theory must be rejected as well.   Neither the

Third Circuit nor the Supreme Court of New Jersey has accepted the conspiracy

theory of personal jurisdiction.  E.g., Miller Yacht Sales, Inc. v. Smith, 384 F.3d

93, 102 n.8 (3d Cir. 2004) ("it is unclear whether New Jersey even recognizes the

conspiracy theory of jurisdiction"); Roy v. Brahmbhatt, Civ. No. 07-5082, 2008

WL 5054096, at *6-7 (D.N.J. Nov. 26, 2008) (declining to recognize the

conspiracy theory of personal jurisdiction under New Jersey law) (Ex. H).   And,

moreover, embracing such a theory of personal jurisdiction would be contrary to

rulings of the U.S. Supreme Court that construe the limits of due process under the

Fourteenth Amendment.   For example, in Hanson v. Denckla, 357 U.S. 235 (1958),

the Supreme Court squarely held that "[t]he unilateral activity of those who claim

some relationship with a nonresident defendant cannot satisfy the requirement of

contact with the forum State."  Id. at 253.   The Supreme Court also has established

that the mere "foreseeability" of an event in another state is not "a sufficient

benchmark for personal jurisdiction under the Due Process Clause."  World-Wide

Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980); see also Leasco Data

Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1341 (2d Cir. 1972) ("We

believe . . . that attaining the rather low floor of foreseeability necessary to support

a finding of tort liability is not enough to support in personam jurisdiction.");

Lebel, 115 N.J. at 324, 558 A.2d at 1255 ("Of course, the mere foreseeability of an

event in another state is not a sufficient benchmark for exercising personal

jurisdiction.").

Plaintiffs offer no facts to justify the exercise of personal jurisdiction over

the Bank on any grounds accepted under New Jersey law.  Accordingly, for this

reason, the complaint should be dismissed.

II.     The Complaint Should Be Dismissed Under
        The Doctrine Of Forum Non Conveniens

The doctrine of forum non conveniens permits a court to "resist imposition

upon its jurisdiction" where the convenience of the parties and interests of justice

favor trial in another forum.  Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947).

In determining whether to dismiss on the basis of forum non conveniens, courts

consider three factors: (i) the appropriate level of deference to be given to the

plaintiff's choice of forum; (ii) the availability of an adequate alternative forum;

and (iii) certain private and public interest factors.  Id. at 508-09; Windt v. Qwest

Communc's Int'l, Inc., 529 F.3d 183, 189 (3d Cir. 2008).  As in Bank of Cyprus,

510 F. Supp. 2d at 267, each of those factors points decisively towards dismissal in

favor of litigation in Cyprus, not New Jersey.

A.   Plaintiffs' Decision To File Suit In New Jersey
     Deserves Little Deference.

The presumption usually accorded a plaintiff's choice of forum is discounted

where the plaintiff, as the Trustees here, expected to litigate in foreign courts.  See

Koger, Inc. v. O'Donnell, Civ. No. 07-3091, 2007 WL 3232586, at *3-4 (D.N.J.

Oct. 31, 2007) (dismissing action on forum non conveniens grounds action filed by

New Jersey corporation where the company did regular business abroad and thus

had reason "to expect litigation" outside the United States) (Ex. I); see also Guidi

v. Inter-Continental Hotels Corp., 224 F.3d 142, 147 (2d Cir. 2000) (holding that

deference to plaintiff's choice of forum is diminished when "plaintiff is a

corporation doing business abroad and can expect to litigate in foreign courts").

Plaintiffs here are suing on behalf of a Trust which purports to represent

"over 6,000 persons and entities all across the globe."[8]  See Lacey v. Cessna

Aircraft Co., 932 F.2d 170, 180 (3d Cir. 1991) (holding that the ordinarily strong

presumption in favor of the plaintiff's choice of forum applies with less force when

the plaintiff or real parties in interest are foreign).  In addition, plaintiffs are acting

pursuant to a Trust whose governing document specifically authorizes litigation

abroad and thus they plainly expected the possibility of litigation in Cyprus.[9]

---

[8]    Complaint, LaSala v. Bordier et Cie and Dominick Company, AG, Civ. No.
05-4520 (D.N.J. Sept. 15, 2005) (D.I. 1).

[9]    Section 1.3 of the Liquidating Trust Agreement provides: "the Trustee may
pursue claims against persons and seek the recovery of assets, including but not

Indeed, co-trustee Joseph LaSala has told this Court that the Trust is prosecuting

claims and working with governmental authorities in "the United States, Austria,

Bulgaria, Cyprus, Switzerland, the United Kingdom and other countries."[10]  As

District Judge Haight found, plaintiffs "more closely resemble a corporation with

substantial resources than ordinary citizens of comparatively modest means" and,

therefore, deference to a U.S. forum "does not operate at full strength."  Bank of

Cyprus, 510 F. Supp. 2d at 257.

In addition, plaintiffs' choice of forum is diluted further because they have

not selected New Jersey based on concerns of genuine convenience.  Windt, 529

F.3d at 191; Bank of Cyprus, 510 F. Supp. at 257.  To the contrary, in this case

there is "no indication that evidence is concentrated in New Jersey, nor is there an

indication that a substantial amount of conduct giving rise to the instant dispute

occurred in New Jersey."  Windt, 529 F.3d at 191.  Indeed, since 2005 plaintiffs

have been actively prosecuting substantive claims against AremisSoft's former

chief executive officer Kyprianou and eleven others in Cyprus; the Bank is based

in Cyprus and has no connection to New Jersey; the Cyprus courts already have

---

limited to proceeds of insider sales of the Debtors' stock, in jurisdictions outside of
the United States, including but not limited to the Isle of Man, Cyprus, Monaco
and Switzerland.  The Trustee shall have authority and standing to bring and
prosecute the Trust Claims in such foreign jurisdictions."  (Ex. C.)

[10]     Declaration of Joseph P. LaSala dated May 30, 2006, LaSala v. Bordier et
Cie and Dominick Company, AG, Civ. No. 05-4520 (JAP) (D.I. 67-14) (Ex. D).

ruled on matters and heard testimony relating to the alleged underlying fraud, including issuing an asset-freezing order against Kyprianou's fund; plaintiffs' allegations in this complaint are focused on bank accounts that were opened and administered in Cyprus; the complaint does not identify a single witness in New Jersey; and the vast majority of the documents are located in Cyprus and are written in Greek.  (See Hadjiosif Second Decl. ¶¶ 3-9.)

B.      Cyprus Is An Established Adequate Forum.

Here, there can be no doubt that Cyprus is an adequate forum.  An alternative forum is adequate if (i) the defendant is amenable to service of process there and (ii) it permits litigation of the subject matter of the dispute.  See Lacey, 932 F.2d at 180.  Plaintiffs have already filed suit in Cyprus on the subject matter of this dispute, and have served process on the Bank in Cyprus in the connection with this action.  Plaintiffs are represented by counsel in Cyprus and are actively pursuing claims in that jurisdiction.

In any case, Cyprus has a well-developed legal system, and plaintiffs can assert claims against the Bank there in connection with the alleged AremisSoft fraud.  (See Papaefstathiou Decl. ¶¶ 13-18, 33-40, 42.)  Settled case law -- including the decision by Judge Haight involving these very plaintiffs -- establishes Cyprus as an adequate forum.  See, e.g., Bank of Cyprus, 510 F. Supp. 2d at 255-56 ; In re Air Crash Near Athens, Greece on Aug. 14, 2005, 479 F. Supp. 2d 792,

797 (N.D. Ill. 2007); <u>Ioannidis/Rigas v. M/V Sea Concert</u>, 132 F. Supp. 2d 847,

850 (D. Or. 2001); <u>Bison Pulp & Paper Ltd. v. M/V Pergamos</u>, No. 89 Civ. 1392,

1995 WL 880775, at *12 (S.D.N.Y. Nov. 29, 1995) (Ex. J); <u>Davidson Extrusions,</u>

<u>Inc. v. Touche Ross & Co.</u>, 131 A.D.2d 421, 516 N.Y.S.2d 230 (2d Dep't 1987).

C.    <u>Cyprus Is The Most Appropriate Forum For This Case.</u>

Where, as here, an adequate alternative forum exists, the most convenient

forum that best serves the interests of justice must be selected.  Courts consider

two sets of interests in this analysis: the private interests focusing on the

convenience of the parties, and the public's interest in having a dispute resolved in

the appropriate forum.  <u>See Gilbert</u>, 330 U.S. at 507-08; <u>Windt</u>, 529 F.3d at 189.

The balance of the private and public factors all decisively point to Cyprus as the

most appropriate forum for plaintiffs' claims.

1.    <u>The private interests weigh in favor of dismissal.</u>

Analysis of the parties' private interests includes consideration of the

"relative ease of access to sources of proof; availability of compulsory process for

attendance of unwilling, and the cost of obtaining attendance of willing, witnesses

. . . and all other practical problems that make trial of a case easy, expeditious and

inexpensive." <u>Gilbert</u>, 330 U.S. at 508.  These private interest factors weigh

heavily in favor of Cyprus, where the majority of witnesses and documents are

located, the courts are familiar with the case and the factual record is more likely to be complete.

First, the difficulty of accessing proof and the cost of securing witnesses is the paramount private interest favoring dismissal here. See Windt, 529 F.3d at 194 (noting the importance of examining "the cost for willing witnesses to attend trial and the methods available for compelling the attendance of unwilling witnesses"); Koger, 2007 WL 3232586, at *5 (noting that "ease of proof and availability of compulsory process" favored dismissal where the district court was "unable to compel the Irish employees" to testify). One of the central issues in this case is whether the Bank's officials administering the AremisSoft accounts had actual knowledge of Kyprianou's alleged fraud. Virtually all of the Bank witnesses with knowledge of the relevant facts reside in Cyprus. (See Hadjiosif Second Decl. ¶ 9.) The cost and inconvenience of transporting those witnesses -- as well as any experts on Cyprus law -- from Cyprus to New York would be enormous. This burden is made even greater by the fact that there are no direct flights from Cyprus to the New York metropolitan area.

Apart from the burden of transporting willing witnesses, there are many witnesses with unique firsthand knowledge of the alleged activity in this case that are beyond the control of either party, including Kyprianou, his wife, Pavlos Meletiou (whom plaintiffs have sued in Cyprus as Kyprianou's co-conspirator),

Theodore Theodorou (a Cyprus resident identified in paragraph 41 of the complaint) and at least two former Bank employees.  (See Hadjiosif Second Decl. ¶ 9.)  These witnesses -- being Cyprus residents -- can be compelled by Cyprus courts to testify live in Cyprus, but not in New Jersey.  See Fed. R. Civ. P. 45(b)(2).  The unavailability of these witnesses in New Jersey, and the fact that a witness's live, in-court testimony is the preferred method of presenting his or her testimony, favor dismissal.  The only way to compel any (non-live) testimony from these witnesses would be through letters of request by way of the Hague Evidence Convention, a costly and time-consuming process.  See Dahl v. United Techs. Corp., 632 F.2d 1027, 1030 (3d Cir. 1980) (affirming dismissal in favor of Norway where moving defendant "could not compel the attendance of . . . Norwegian witnesses or trial"); Koger, 2007 WL 3232586, at *5 (noting that "the preference for live testimony" and "the fact that the witnesses could only be compelled through international treaties" favor dismissal).

Second, in addition to the burden of producing witnesses from Cyprus to New Jersey, the Bank would be faced with the added burden associated with the translation of testimony.  While certain of the Bank employees can speak English, it is not their native language, and most would likely testify in Greek through an interpreter.  (See Hadjiosif Second Decl. ¶ 9.)  This process would lead to increased costs, delays and communication difficulties.  See Mediterranean Golf,

Inc. v. Hirsch, 783 F. Supp. 835, 846 (D.N.J. 1991) (concluding that "the need to translate the testimony of a witness" favors dismissal).

Third, the vast majority of the documents in this case are located in Cyprus, and many of the Bank's internal account documents are written in Greek. (See Hadjiosif Second Decl. ¶¶ 7-8.) Translation of these documents will increase significantly the cost of litigation, adding further to the factors balancing in favor of dismissal. Miller v. Boston Scientific Corp., 380 F. Supp. 2d 443, 453 (D.N.J. 2005) (holding that "the burden and expense of translating such evidence into English" favors dismissal).

Fourth, litigating this case in New Jersey will impair the Bank's ability to implead third parties who are not in the United States. If this case were litigated in Cyprus, the Bank could choose to bring a contribution claim against Kyprianou, Meletiou and other perpetrators of the alleged underlying fraud and have this case resolved in "one trial." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 259 (1981). If this case were litigated in New Jersey, however, Kyprianou would not likely appear to defend the case, since he has been indicted in the United States and is a fugitive. Similarly, Meletiou, a resident of Cyprus, does not appear to be subject to jurisdiction in the United States.

2.    The public interests weigh in favor of dismissal.

The public interest factors include judicial economy, the interest in having "localized controversies decided at home" and the interest in having issues of foreign law decided by a foreign tribunal.  Gilbert, 330 U.S. at 508-09; Windt, 529 F.3d at 189.  Consideration of these factors show a strong interest shared by the Government of Cyprus, the Bank and the Cyprus courts in having this controversy decided in Cyprus.

This case is focused on the alleged acts and omissions of a Cyprus bank in its home country.  Specifically, the complaint accuses the Bank of "serving as a vehicle to loot Company assets and launder millions of dollars in tainted proceeds" and not conducting any "investigation" or "due diligence" or raising "any concern over suspicious activity."  (Compl. ¶¶ 2, 46.)  On these issues, the Bank is actively regulated by the Central Bank of Cyprus.  (Papaefstathiou Decl. ¶¶ 43-45.)  Thus, the Cyprus government has a strong interest in having its courts decide a case concerning the activities of one of its banks.

More concretely, proceeding in the United States on plaintiffs' claims in the absence of any tangible nexus to the United States would offend established notions of prescriptive comity.  By bringing this action in New Jersey, plaintiffs no doubt will attempt to superimpose the obligations of U.S. banking laws and

20

regulations on the Cyprus banking structure.[11]  This result is eschewed by recent

pronouncements of the U.S. Supreme Court.  See Microsoft Corp. v. AT&T Corp.,

550 U.S. 437, 454-55 (2007) (applying the presumption that "United States law

governs domestically but does not rule the world"); F. Hoffmann-La Roche Ltd v.

Empagran, S.A., 542 U.S. 155, 164 (2004) ("this Court ordinarily construes

ambiguous statutes to avoid unreasonable interference with the sovereign authority

of other nations"); see also Restatement (Third) of Foreign Relations Law of the

United States §§ 403(1), 403(2) (1987) (limiting the unreasonable exercise of

prescriptive jurisdiction with respect to a person or activity having connections

with another state).

Indeed, given a sovereign nation's paramount interest in regulating its banks

locally, U.S. courts consistently dismiss actions against non-U.S. banks on grounds

of forum non conveniens.  As Judge Haight determined in the Bank of Cyprus

action on similar facts, "the strength of Cyprus's interest in the litigation outweighs

---

[11]     Plaintiffs have given no notice that they intend to bring claims under Cyprus
law.  See Fed. R. Civ. P. 44.1 ("A party who intends to raise an issue about a
foreign country's law must give notice by a pleading or other writing.").  Rather,
they assert U.S. common law claims, citing that the Bank, for example, failed "to
do sufficient due diligence and inquiry upon discovery of the irregularities in its
accounts and failing to notify AremisSoft." (Compl. ¶ 59.)  In the United States,
such duties and obligations are governed by the Bank Secrecy Act (also known as
the Currency and Foreign Transactions Reporting Act), 31 U.S.C. §§ 5311 et seq.
and its amendments.   The Office of the Comptroller of the Currency, through
implementing regulations set forth in 31 C.F.R. § 103, monitors national bank
compliance with the Bank Secrecy Act.

that of the United States" because Cyprus has a "great" "interest in regulating the conduct of banks within its borders" and that interest in the reputation of the country's banking system is "stronger" than "the United States in ensuring that United States dollars are not laundered abroad to the detriment of United States shareholders and a United States company." Bank of Cyprus, 510 F. Supp. 2d at 265; accord Alfadda v. Fenn, 159 F.3d 41, 46 (2d Cir. 1998) (affirming a forum non conveniens dismissal because France's interest in litigating a case concerning the conduct of a "French-licensed bank" "supervised by French banking authorities" weighed "heavily against the United States as a forum"); Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 953 (11th Cir. 1997) (affirming dismissal where the Cayman Islands, England and Luxembourg interests in implementing pending liquidation proceedings and "in regulating the BCCI banking entities . . . incorporated in these countries" outweighed the interest of the United States in hearing the dispute).[12]

---

[12]     Other courts reaching this same conclusion on a motion to dismiss based on forum non conveniens include: U.S.O. Corp. v. Mizuho Holding Co., No. 06 C 0459, 2007 WL 2893628, at *8 (N.D. Ill. Sept. 27, 2007) (dismissing claims of Delaware corporation against a Japanese bank on the grounds that "Japan has a far greater interest in regulating the conduct of Japanese financial institutions and their employees"), aff'd, 547 F.3d 749 (7th Cir. 2008) (Ex. K); Zweig v. National Mortgage Bank of Greece, No. 91 Civ. 5482, 1993 WL 227663, at *4 (S.D.N.Y. June 21, 1993) (dismissing claims of New York plaintiff against a Greek bank, which conduct took place in Greece within the Greek banking system) (Ex. L); Sussman v. Bank of Israel, 801 F. Supp. 1068 (S.D.N.Y. 1992), aff'd, 990 F.2d 71 (2d Cir. 1993) (dismissing fraud claim against an Israeli bank in favor of Israel,

In addition, because this case concerns the activities of a Cyprus bank in Cyprus, Cyprus law governs plaintiffs' claims against the Bank. (See Point III(A) infra.) Dismissal of this action avoids unnecessary problems in having a U.S. court apply Cyprus law -- a task most appropriately left to the Cyprus courts -- as well as the risk of inconsistent judgments by the Cyprus and U.S. courts applying Cyprus law to the same set of facts. See, e.g., Gilbert, 330 U.S. at 509 ("There is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern case, rather than having a court in some other forum untangle problems in conflict of law, and in law foreign to itself."); Dahl, 632 F.2d at 1032 (same).

3.     The balance of factors decisively point to Cyprus.

It is clear that the Cypriot courts provide an adequate alternative forum in which plaintiffs' claims can be heard. Indeed, the plaintiffs here have acknowledged as much by pursuing their underlying claims against corrupt AremisSoft insiders in Cyprus. Because plaintiffs' choice of forum deserves little deference by the Court, and because both the private and public factors to be

---

where the alleged wrongdoing occurred); Donald G. Atteberry, DVM, P.A. v. Barclays Bank PLC, 153 B.R. 901, 905 (Bankr. D. Kan 1992) (dismissing adversary proceeding against an English bank on the grounds that "England has a much stronger interest than the United States in having this controversy decided there" and that "sovereigns have a special interest in controlling the activities of those banks which operate under their authority and preventing foreign powers from trying to control the banks' essentially local activities").

considered strongly support dismissal in favor of Cyprus, this Court should dismiss on forum non conveniens grounds.

III.   The Complaint Fails To State A Claim For Relief
       And Therefore Should Be Dismissed

On a Rule 12(b)(6) motion to dismiss, courts accept as true the well-pleaded allegations in a complaint. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Under Rule 8(a), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). As the Supreme Court recently held, this interpretation of Rule 8 "governs the pleading standard 'in all civil actions and proceedings in the United States district courts.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 2009 WL 1361536, at *16 (U.S. May 18, 2009) (quoting Fed. R. Civ. P. 1) (Ex. M).

Post-Twombly, a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id. at 557. The Supreme Court intoned that Rule 8 requires "a 'showing,' rather than a blanket assertion, of entitlement to relief," and further explained "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555 & n.3. "Context matters in notice pleading," Phillips, 515 F.3d at 232, and a pleader is required to provide enough

"factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 2009 WL 1361536, at *12.

Moreover, in this case, plaintiffs must satisfy the heightened pleading requirements of Rule 9(b) because their claims against the Bank for aiding and abetting breach of fiduciary duty and conspiracy consist of a "massive international fraud" by fiduciaries, AremisSoft's former main principals. (Compl. ¶¶ 2, 24-30.) Rule 9(b) provides that a "party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The Third Circuit has held that Rule 9(b) applies to "*all* claims based on fraud," regardless of the cause of action in which they appear. Lum v. Bank of America, 361 F.3d 217, 220 (3d Cir. 2004) (holding that Rule 9(b) applies to antitrust claims based on misrepresentations) (emphasis in original); see also In re Parmalat Sec. Litig., 501 F. Supp. 2d 560, 572-73 (S.D.N.Y. 2007) (holding that Rule 9(b) applies to abetting and abetting breach of fiduciary duty claims based on fraud), aff'd, 309 Fed. Appx. 539 (2d Cir. 2009).

A.   Cyprus Law Governs Plaintiffs' Claims.

A federal court sitting in a diversity action applies the choice of law rules of the forum -- in this case New Jersey. See Klaxon Co. v. Stentor Elec. Mfg., 313 U.S. 487, 496-97 (1941). For tort and contract claims, the New Jersey Supreme Court applies the Restatement's "most significant relationship" test. See P.V. v. Camp Jaycee, 197 N.J. 132, 143, 962 A.2d 453, 460 (2008) (adopting Restatement

25

(Second) of Conflicts of Laws § 145 (1971) in tort actions); State Farm Mut. Auto Ins. Co. v. Simmons' Estate, 84 N.J. 28, 34, 417 A.2d 488, 491 (1980) (adopting Restatement (Second) of Conflicts of Laws § 188 in contract actions); Agostino v. Quest Diagnostics Inc., 256 F.R.D. 437, 460 (D.N.J. 2009) (noting that in New Jersey the "most significant relationship" test is applied in both tort and contract cases).

Here, the complaint focuses on transactions and activities relating to accounts opened at, and administered by, the Bank in Cyprus, and the alleged duties violated by the Bank are duties imposed on the Bank by Cyprus law. Thus, Cyprus law applies to both the tort and contract claims asserted by plaintiffs. See Bank of Cyprus, 510 F. Supp. 2d at 264-66.

B.   The Claim For Aiding And Abetting Breach Of
     Fiduciary Duty Fails As A Matter Of Law.

Plaintiffs' first claim for relief is for aiding and abetting breach of fiduciary duty. (Compl. ¶¶ 48-53.)  But Cyprus law does not recognize an independent claim of aiding and abetting fiduciary duty.  (See Papaefstathiou Decl. ¶¶ 34-36.) For this reason alone, the claim must be dismissed.

Even if plaintiffs' aiding and abetting claim were governed by the law of the forum (here, New Jersey),[13] it would be deficient as a matter of law.  To sustain a

___

[13]   In New Jersey, the first step in any case presenting a potential choice of law issue is "to determine whether an actual conflict exists."  Jaycee, 197 N.J. at 143,

claim for aiding and abetting breach of fiduciary duty under New Jersey law, a plaintiff must allege (i) the existence of a primary breach of fiduciary duty, (ii) the defendant's knowledge of and substantial assistance in that breach and (iii) that the plaintiff suffered damages as a result of the breach.  Judson v. Peoples Bank & Trust Co., 25 N.J. 17, 28-29, 134 A.2d 761, 767 (1957); McCormac v. Qwest Comm'cs Int'l, Inc., 387 N.J. Super. 469, 481, 904 A.2d 775, 782 (Super. Ct. App. Div. 2006); accord Rochez Bros., Inc. v. Rhoades, 527 F.2d 880, 886 (3d Cir. 1975).  New Jersey law expressly requires a showing that that alleged aider and abettor "'knows that the other's conduct constitutes a breach of duty.'"  Judson, 25 N.J. at 29, 134 A.2d at 767 (quoting Restatement (Second) of Torts § 876(b) (1979)); accord VFB LLC v. Campbell Soup Co., 482 F.3d 624, 634 (3d Cir. 2007) ("New Jersey imposes civil liability for knowingly aiding and abetting an agent's breach of a duty of loyalty to its principal.").

Here, however, the complaint is devoid of any facts showing that the Bank had knowledge of claimed breaches of fiduciary duty by AremiSoft's corrupt

---

962 A.2d at 460.  In the event Cyprus law is not found to apply, the Court should remain free to apply the law of the forum state, New Jersey, as it is either identical to or substantially the same as the law of any other applicable jurisdiction.  See Gotham Partners, L.P. v. Hallwood Realty Partners, L.P., 817 A.2d 160, 172 (Del. 2002) ("The elements of a claim for aiding and abetting a breach of a fiduciary duty are: (1) the existence of a fiduciary relationship, (2) the fiduciary breached its duty, (3) a defendant, who is not a fiduciary, knowingly participated in a breach, and (4) damages to the plaintiff resulted from the concerted action of the fiduciary and non-fiduciary.").

insiders.  Plaintiffs do not state (i) any facts showing that the Bank had actual

knowledge about the underlying alleged fraud at AremisSoft, (ii) the factual

circumstances that plausibly should have lead the Bank to engage in "due

diligence" or (iii) why the Bank plausibly had any motive to assist the unlawful

activities of Kyprianou and Poyiadjis.  While plaintiffs charge -- "upon

information and belief" -- that the Bank "knew or had reason to believe that

Kyprianou and Poyiadjis were engaged in fraudulent and unlawful activities"

(Compl. ¶ 46), they fail to set forth the source of the information and the reasons

for the belief.  Plaintiffs simply do not supply enough facts to render their claim

plausible under Twombly, let alone under Rule 9(b)'s more stringent pleading

requirements for claim a based on fraud.  See Twombly, 550 U.S. at 555 (notice

pleading under Rule 8 "requires more than labels and conclusions"); Rochez, 527

F.2d at 887 (dismissing claim where plaintiff did not show that the alleged aider

and abettor "had knowledge of Rhoades' fraudulent activities").

Moreover, plaintiffs do not allege the Bank's substantial assistance in the

underlying fraud.  Plaintiffs' allegations about the Bank's alleged role in the

transfer of monies fail to include the most basic information.  The complaint omits

to provide details about who at the Bank allegedly schemed with the corrupt

AremisSoft insiders to launder the alleged proceeds in the underlying scheme;

when these (unidentified) Bank officials associated with the corrupt AremisSoft

insiders and committed to further the scheme; and how the Bank's role in the

transfers constituted wrongful conduct (as opposed to ordinary commercial

banking activity).  For this reason as well, plaintiffs' aiding and abetting claim

cannot be sustained.

C.      The Civil Conspiracy Claim Fails As A Matter Of Law.

Plaintiffs include in their complaint a claim for civil conspiracy, which is

simply duplicative of their aiding and abetting claim.  (See Compl. ¶ 55 (alleging

that the Bank "acted in concert with Kyprianou and Poyiadjis to facilitate the

breaches of fiduciary duty").)  Both under Cyprus law[14] and New Jersey law "[t]he

gravamen of an action in civil conspiracy is not the conspiracy itself but the

underlying wrong which, absent the conspiracy, would give a right of action."

Board of Educ. v. Hoek, 38 N.J. 213, 238, 183 A.2d 633, 646 (1962).  Thus, the

civil conspiracy claim should be dismissed for the same reasons as the aiding and

abetting breach of fiduciary duty claim.

Separately, the conspiracy claim should be dismissed because plaintiffs'

vague allegations of collusion are not enough to withstand dismissal.  Under New

Jersey law, a civil conspiracy is a combination of two or more persons acting in

concert to commit an unlawful act together with an act that results in damage.

Weil v. Express Container Corp., 360 N.J. Super. 599, 614, 824 A.2d 174, 183

(Super. Ct. App. Div. 2003). A plaintiff must allege that there was one plan and that its essential scope and nature was known to each person charged with responsibility for its consequences. Id.

Plaintiffs' conclusory allegations that the Bank "acted in concert with Kyprianou and Poyiadjis" and "understood the objectives of the scheme" are not enough. (See Compl. ¶ 55.) It is the "agreement between the parties to inflict a wrong against or injury upon another person" that is the "principal element" of a conspiracy. Morgan v. Union County Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364, 633 A.2d 985, 998 (Super. Ct. App. Div. 1993) (internal quotation marks omitted). Plaintiffs do not provide a single concrete fact from which it could be plausibly inferred that the Bank and AremisSoft's corrupt insiders "had a meeting of the minds and thus reached an understanding to achieve the conspiracy's objectives." Id. As a result, their conspiracy claim is insufficiently plead. See Twombly, 550 U.S. at 551, 570 (holding that the allegation "upon information and belief that [the defendants] have entered into a contract, combination or conspiracy to prevent competitive entry" does not satisfy the fact-based pleading and entitlement requirements under Rule 8(a)(2)).

---

[14]   Cyprus law tracks the common law of civil conspiracy and thus is similar to New Jersey law on the subject. (See Papaefstathiou Decl. ¶ 37.)

D.   The Breach Of Contract Claims Fails As A Matter Of Law.

Plaintiffs' third claim is for breach of contract.  (Compl. ¶¶ 57-60.)  To state

a prima facie breach of contract claim, plaintiffs must plead the following essential

elements: a valid contract, defective performance by the defendant, performance by

plaintiff of its obligations under the contract and resulting damages.  Video

Pipeline, Inc. v. Buena Vista Home Entertainment, Inc., 275 F. Supp. 2d 543, 566

(D.N.J. 2003); Coyle v. Englander's, 199 N.J. Super. 212, 223, 488 A.2d 1083,

1088 (Super. Ct. App. Div. 1985); accord Papaefstathiou Decl. ¶¶ 38-40

(describing the elements of a breach of contract claim under Cyprus law).

Plaintiffs' claim is woefully deficient.  Plaintiffs fail to describe or attach to

the complaint any depositor agreement between the Bank and AremisSoft, to

identify any specific contractual obligation that the Bank did not fulfill, to allege

that plaintiffs have performed their contractual obligations and to set forth any

quantum of damages owed by reason of the purported breach.  Moreover, because

plaintiffs fail to identify any contract, their claim for breach of an implied covenant

of good faith and fair dealing must fail as well.  See Noye v. Hoffmann-La Roche

Inc., 238 N.J. Super. 430, 434, 570 A.2d 12, 14 (Super. Ct. App. Div. 1990) ("In

the absence of a contract, there can be no breach of an implied covenant of good

faith and fair dealing.").

Accordingly, plaintiffs' breach of contract claim should be dismissed.

IV.   Plaintiffs' Claims Are Barred By The
      Applicable Statute Of Limitations

In this action, the law of New Jersey provides for the relevant statute of

limitations.  See American Cyanamid Co. v. Fermenta Animal Health Co., 54 F.3d

177, 180 (3d Cir. 1995).  For each of plaintiffs' claims, the limitations period is six

years.  See N.J. Stat. Ann. § 2A:14-1 (West 2009).  A plaintiff's claim accrues

when the plaintiff "knew or should have known" of sufficient facts to start the

statute of limitations running.  Baird v. American Med. Optics, 155 N.J. 54, 72,

713 A.2d 1019, 1028 (1998); County of Morris v. Fauver, 153 N.J. 80, 109-10, 707

A.2d 958, 972 (1998).  The plaintiff need not have knowledge of a specific basis

for legal liability or a provable cause of action; rather he must have knowledge of

an injury and that another is at fault.  See Martinez v. Cooper Hospital-Univ. Med.

Center, 163 N.J. 45, 52, 747 A.2d 266, 270 (2000).

Plaintiffs concede that the Trust has been on notice of potential claims

against the Bank since at least June 24, 2002, the date the superseding indictment

against Kyprianou was filed by U.S. prosecutors.[15]  (Compl. ¶ 17.)  It is

indisputable that well before even this date, plaintiffs knew that AremisSoft had

---

[15]    Paragraph 17 states: "The Trust first became aware that Kyprianou had a
banking relationship with Laiki Bank upon review of the superseding indictment
filed by the United States of America against Kyprianou dated June 24, 2002.  It
states therein at paragraph 80(a), '[O]n or about September 8, 2000, KYPRIANOU
caused $16,499,977 to be transferred by wire from Brown Brothers in New York,
New York to Laiki Bank (Helias) S.A., in Athens, Greece.'"

suffered injury. As a result, the limitations period for each of plaintiffs' claims expired on June 24, 2008, many months before the filing of the instant complaint in March 2009. Plaintiffs' claims are therefore time-barred.

Plaintiffs appear to seek to extend the limitations period using two theories. First, plaintiffs may argue that the claims for relief did not accrue because they lacked sufficient information that the Bank "had a civil responsibility to the Trust for damages." (Compl. ¶ 20.) This argument should be rejected. The allegations in plaintiffs' complaint are of like kind and quality to those set forth in the superseding indictment referenced in paragraph 17 of the complaint, and contain little more than descriptions of ordinary commercial banking transactions. Plaintiffs also fail to allege any additional facts that were supposedly discovered "[a]s a result of review and analysis of the documents produced from the UK Order, the BVI order and the existing books [sic] records and documents of the Trust." (See Compl. ¶ 23.)

Second, plaintiffs may attempt to rely on a fraudulent concealment theory given the clear applicability of the statue of limitations to their claims. In their complaint, plaintiffs allege that the "Trust's investigation and attempts to obtain information from Laiki Bank have been stymied in the past," that the Bank "has refused to fully turn over the banking records of the Company and its affiliates in Cyprus," and that the Bank "has resisted due demand and legal proceedings to

obtain sufficient information from Laiki Bank needed to ascertain the full extent of

its activities and connection to the scheme perpetrated by Kyprianou and

Poyiadjis." (Compl. ¶¶ 16-17.)

 To plead and prove fraudulent concealment, plaintiffs must establish three

elements: (i) wrongful concealment by the party raising the statute of limitations

defense, resulting in (ii) the plaintiff's failure to discover the operative facts

forming the basis of his cause of action during the limitations period (iii) despite

the exercise of due diligence. <u>Dewey v. Volkswagen AG</u>, 558 F. Supp. 2d 505,

523 (D.N.J. 2008); <u>see also</u> <u>Foodtown v. Sigma Marketing Sys., Inc.</u>, 518 F. Supp.

485, 488 (D.N.J. 1981). Allegations of fraudulent concealment must be pled with

particularity under Rule 9(b). <u>Foodtown</u>, 518 F. Supp. at 489; <u>see also</u> <u>In re</u>

<u>Municipal Derivatives Antitrust Litig.</u>, No. 08 Civ. 2516, 2009 WL 1204345, at

*15 (S.D.N.Y. April 29, 2009) (Ex. N).

 Plaintiffs allege none of the required elements with adequate detail.

Plaintiffs allege only that the Bank "has resisted" due demand and legal

proceedings to obtain sufficient information. (Compl. ¶ 16.) The exercise of

process rights in a court of law cannot constitute concealment in any sense of the

term, much less fraudulent concealment. <u>See</u> <u>Compuwill Express, Inc. v. ATX</u>

<u>Telecomms. Servs.</u>, No. 96-2462, 2000 U.S. Dist. LEXIS 7303, at *26 (E.D. Pa.

May 31, 2000) (Ex. O). Moreover, plaintiffs fail to describe with any degree of

particularity what information they learned about the Bank during the course of their seven-year investigation to justify a delay in filing a timely complaint. Accordingly, any argument based on fraudulent concealment should be rejected.

V.     Plaintiffs' Claims Are Barred By
       The Doctrine Of In Pari Delicto

The equitable doctrine of in pari delicto provides that a plaintiff may not assert a claim against a defendant if that plaintiff bears fault for the claim.[16] See Stella v. Dean Witter Reynolds, Inc., 241 N.J. Super. 55, 73, 574 A.2d 468, 477 (Super. Ct. App. Div. 1990).  In the bankruptcy context, this doctrine precludes a trustee from seeking recovery on behalf of a debtor company against a third party for injuries incurred by the misconduct of the debtor's controlling managers.  See Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 356-58 (3d Cir. 2001).  "Because management's misconduct is imputed to the corporation and because a trustee stands in the shoes of the corporation," this doctrine "bars a trustee from suing to recover for a wrong that he himself essentially took part in." Bondi v. Citigroup, Inc., No. BER-L-10902-04, 2005 WL 975856, at *13 (N.J. Super. Ct. Feb. 28, 2005) (quoting Wight v. BankAmerica Corp., 219 F.3d 79, 86 (2d Cir. 2000)) (Ex. P); see also Rochez, 527 F.2d at 884 ("There is no doubt that the fraud of an officer of a corporation is imputed to the

---

[16]     The law of Cyprus as well recognizes the doctrine of in pari delicto. (See Papaefstathiou Decl. ¶ 41.)

corporation when the officer's fraudulent conduct was (1) in the course of his employment and (2) for the benefit of the corporation.").

From the face of the complaint, it is clear that AremisSoft's two controlling principles bore primary responsibility for the transactions at issue. The complaint is replete with allegations that Kyprianou and Poyiadjis engaged in a "massive international fraud" in which they caused the company "to issue false and fraudulent public statements and regulatory filings" and then sold their "AremisSoft shares at inflated prices." (Compl. ¶¶ 2, 24, 26.) As a result, the straightforward application of in pari delicto bars recovery by plaintiffs from the Bank. See, e.g., Lafferty, 267 F.3d at 360 (based on in pari delicto, affirming dismissal of claims brought by authorized creditors committee against the debtor's outside professionals for breach of contract and aiding and abetting breach of fiduciary duty, among other claims); see also In re Mediators, Inc., 105 F.3d 822, 826-27 (2d Cir. 1997) (imputing an insider's misconduct to the debtor and thereby affirming dismissal of claims brought by unsecured creditors committee against third parties, including the debtor's bank, for aiding and abetting breach of fiduciary duty); Kirschner v. Grant Thornton LLP, No. 07 Civ. 11604 (GEL), 2009 WL 996417, at *10 (S.D.N.Y. April 14, 2009) (imputing the Refco insiders' misconduct to the debtor and thereby dismissing claims brought by the litigation

trust against certain Refco professionals and banks for fraud, breach of fiduciary duty and malpractice) (Ex. Q).

Nowhere do plaintiffs even attempt to plead any facts that would appear to trigger the so-called "adverse interest exception" to the general rule of imputation. See Bondi, 2005 WL 975856, at *14 (citing In re Bennett Funding Group, 336 F.3d 94, 100 (2d Cir. 2003)). Indeed, plaintiffs are not positioned to allege or prove facts showing that AremisSoft's corrupt insiders "totally abandoned" the corporation's interests, thereby precluding imputation. See Bennett Funding, 336 F.3d at 100. AremisSoft's insiders benefitted, according to the complaint, not by embezzlement but by selling their AremisSoft shares at fraudulently-induced prices. (Compl. ¶ 26.) In such circumstances, as the district court in a Refco-related bankruptcy recovery action recently held, the fate of the insiders were not "at odds with the interests" of the debtor company, but "remained aligned with those of the corporate entity" and "the benefit procured by the insiders came at the expense of the securities purchasers, not of [the company] itself." Kirschner, 2009 WL 996417, at *9. Thus, plaintiffs are foreclosed from arguing that fraudulent conduct of the AremisSoft insiders Kyprianou and Poyiadjis cannot be imputed to the company.

Even further, plaintiffs cannot prevail under the adverse interest exception because the adverse interest exception is itself subject to a further exception: the

"sole actor" rule.  The sole actor rule applies where the culpable agents controlled the defrauded corporation.  Lafferty, 267 F.3d at 359-60 (noting that the sole actor exception applies where "the agent 'dominated' the corporation"); In re CBI Holding Company, Inc., 311 B.R. 350, 373 (S.D.N.Y. 2004) (holding that the sole actor exception "would apply to a corporation owned and managed by multiple people, so long as all of them were involved together in a fraud against the corporation"), cited with approval on appeal, 529 F.3d 432, 447 n.5 (2d Cir. 2008).  Here, plaintiffs consistently have asserted, and this Court specifically has found, that AremisSoft's corrupt insiders "controlled" the corporation and its activities.[17]

---

[17]    For example, as part of the AremisSoft bankruptcy proceedings and securities litigation, plaintiffs asserted that "Poyiadjis and Kyprianou controlled the Company"; that "Poyiadjis and Kyprianou were two of the largest shareholders of AremisSoft, with Kyprianou owning more than 48% of the outstanding common stock of the Company as of March 14, 2000, and Poyiadjis' ownership of common stock increasing from approximately 7% in 2000 to approximately 10% in 2001"; and that "Kyprianou directed the day-to-day operations of the Company" while Poyiadjis "directed the public reporting of the Company's plans and SEC reports, and the Company's raising of capital in the public and private sectors."  Motion of the AremisSoft Liquidating Trust to Approve the Coordination Agreement with the United States, In re AremisSoft Corp. Securities Litig., No. 01-cv-2486 (JAP), at ¶¶ 22-26 (D.N.J. Sept. 16, 2004) (D.I. 190-2) (Ex. E).  In connection with that motion, this Court found that "Kyprianou and Poyiadjis were the two senior officers of AremisSoft and controlled the Company" and "were jointly responsible for the management of AremisSoft."  Amended Findings of Fact and Conclusions of Law and Order Approving Coordination Agreement between the AremisSoft Liquidating Trust and the United States, dated as of September 14, 2004, In re AremisSoft Corporation, Bankruptcy Case No. 02-32621 (RG) (D.N.J. Oct. 14, 2004) (D.I. 175) (Ex. F).

In summary, the alleged fraudulent conduct of AremisSoft's two main principals should be imputed to plaintiffs, the liquidating trustees of the debtor company. As a result, plaintiffs are barred under the in pari delicto doctrine from pressing its claims against the Bank.

CONCLUSION

For the reasons stated, defendant Marfin Popular Bank respectfully requests that the Court dismiss plaintiffs' complaint with prejudice and without leave to replead.

Dated:  New York, New York
      June 10, 2009

Respectfully submitted,

ALLEN & OVERY LLP

By: _____
     Todd S. Fishman
1221 Avenue of the Americas
New York, New York 10020
(212) 610-6300
todd.fishman@newyork.allenovery.com

*Attorneys for Defendant*
*Marfin Popular Bank Public Co Ltd*