**GREENBERG TRAURIG, LLP**
Hal M. Hirsch (HH 0417)
David Jay (DJ 7221)
200 Park Avenue
Florham Park, New Jersey  07932
Phone:   (973) 360-7900
Fax:       (973) 301-8410

*Attorneys for Joseph P. LaSala and Fred S. Zeidman,*
*as Co-Trustees of the AremisSoft Liquidating Trust, Plaintiffs*

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH P. LASALA and FRED S. ZEIDMAN, as CO-TRUSTEES of the AREMISSOFT CORPORATION LIQUIDATING TRUST,<br><br>               Plaintiffs,<br><br>   v.<br><br>MARFIN POPULAR BANK PUBLIC COMPANY, LTD.,<br><br>               Defendants. | Civil Action No.<br>09-CV-09-CV-00968 (JAP) |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

GREENBERG TRAURIG
200 Park Avenue
Florham Park, New Jersey 07932
(973) 360-7900
Attorneys for the Plaintiffs

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... iii

I.      Laiki Is Subject To This Court's Jurisdiction. ................................................. 2

      A.      The *Burger King* Purposeful Availment Test ......................................... 2

      B.      The *Calder* Effects Test. ......................................................................... 4

      C.      Conspiracy Theory Of Jurisdiction. ........................................................ 5

      D.      General Jurisdiction. ................................................................................ 6

II.     NEW JERSEY IS THE PROPER FORUM FOR THE TRUST'S CASE. ......... 7

      A.      The Trust's Choice Of American Forum Is Entitled To Great
            Deference. ................................................................................................ 7

      B.      The Gilbert Factors Tilt In Favor Of This Forum. ................................ 11

            1.   The Private Interest Factors Favor Retaining Jurisdiction ............. 11

            2.   The Public Interest Factors Favor This Jurisdiction. ..................... 14

III.    THE COMPLAINT SETS FORTH VALID CLAIMS FOR RELIEF. ............. 15

      A.      This Court Should Apply New Jersey Law To All Claims. ................... 16

      B.      The Trust's Claim For Aiding And Abetting Breach Of Fiduciary
            Duty Is Set Forth With Sufficient Specificity. ...................................... 18

            1.   Rule 9(b) Does Not Apply To The Claim. ..................................... 18

            2.   The Complaint Meets Rule 9(b)'s Standards. ................................. 19

      C.      Plaintiffs' Conspiracy Claim Is Set Forth With Requisite
            Specificity. ............................................................................................ 21

            1.   Rule 9(b) Does Not Apply To The Claim. ..................................... 21

            2.   The Conspiracy Claim Is Adequately Pleaded. ............................. 21

      D.      The Breach of Contract Claim Is Set Forth With Requisite
            Specificity. ............................................................................................ 22

IV.     THE TRUST'S CLAIMS ARE NOT BARRED BY THE STATUTE OF
      LIMITATIONS ...................................................................................... 23

V.      THE DOCTRINE OF *IN PARI DELICTO* DOES NOT BAR THE
        TRUST'S CLAIMS. .......................................................................................................27

CONCLUSION.......................................................................................................................31

# TABLE OF AUTHORITIES

**Federal Cases**                                                                        **Page(s)**

*Adelphia* Recovery Trust v. Bank of America,
  No. 05 Civ. 9050, 2009 WL 1249360 (S.D.N.Y., May 6, 2009)..............................................18

*Argentum Medical, LLC v. Noble Biomaterials*,
  2009 WL 14442888 (M.D. Pa. May 21, 2009)............................................................................5

*Bachmann Software*,
  20008 WL 2875680 ....................................................................................................................5

*Bancroft & Masters, Inc. v. Augusta Nat. Inc.*,
  223 F.3d 1082 (9th Cir. 2000) ....................................................................................................5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).....................................................................................................................15

*Blystra v. Pettigrew*,
  2005 WL 2807361 (D.N.J. Oct. 25, 2005)..................................................................................5

*Bondi v. Citigroup, Inc.*,
  2005 WL 975856 (N.J. Super. Feb 28, 2005)........................................................27, 29, 30

*Boston & Maine Corp. v. Town of Hampton*,
  987 F.2d 855 (1st Cir. 1993)........................................................................................................22

*Breeden v. Kirkpatrick & Lockhart, LLP*,
  268 B.R. 704 (Bankr. S.D.N.Y. 2001)......................................................................................30

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985).................................................................................................................3, 4

*Burt v. Isthmus Develop. Co.*,
  218 F.2d 353 (5th Cir. 1955) ......................................................................................................8

*Calder v. Jones*,
  465 U.S. 783 (1984).......................................................................................................................4

*Carteret Sav. Bank, F.A. v. Shushan*,
  954 F.2d 141 (3d Cir. 1992).........................................................................................................2

*Cetel v. Kirwan Financial Group*,
  460 F.3d 494 (3d Cir. 2006).......................................................................................................24

*Craftmatic Sec. Litig. v. Kraftsow*,
  890 F.2d 628 (3d Cir. 1989).......................................................................................................19

*Eli Lilly and Co. v. Roussel Corp.,*
   23 F. Supp. 2d 460 (D.N.J. 1998) .................................................................22

*Emery v. Amer. Gen. Fin., Inc.,*
   134 F.3d 1321 (7th Cir. 1998) .....................................................................21

*Everest Nat. Ins. Co. v Sutton,*
   2007 WL 2572438 ...................................................................................4, 5

*Evesham Township Bd. of Ed. v. Vitetta Group,*
   2009 WL 4735883 ......................................................................................26

*Foodtown v. Sigma Marketing Sys., Inc.,*
   518 F. Supp. 485 (D.N.J. 1980) .................................................................27

*General Elec. Co. v. Deutz AG,*
   270 F.3d 144 (3d Cir. 2001) .......................................................................15

*Gulf Oil Corp. v. Gilbert,*
   330 U.S. 501 (1947) ................................................................................7, 11

*Harper v. LG Electronics USA, Inc.,*
   595 F. Supp. 2d 486 (D.N.J. 2009) ........................................................16, 17

*Hoffman v. Goberman,*
   420 F.2d 423 (3d Cir. 1970) .........................................................................8

*IMO Indus. v. Kiekert AG,*
   155 F.3d 254 (3d Cir. 1998) .........................................................................4

*In re Bennett Funding Group,*
   336 F.3d 94 (2d Cir. 2003) ..........................................................................29

*In re Burlington Coat Factory Securities Litig.,*
   114 F.3d 1410 (3d Cir. 1997) ......................................................................20

*In re Fruehauf Trailer Corp.,*
   250 B.R. 168 (D. Del. 2000) ..................................................................18, 20

*In re Norvergence, Inc.,*
   Bankr. No. 04-32079, Adv. No. 06-2142, 2009 WL 1346049 (Bankr. D.N.J.,
   May 13, 2009) .......................................................................................18, 30

*In re Oakwood Homes Corp.,*
   340 B.R. 510 (D. Del. 2006) ........................................................................22

*In re Parmalat Sec. Litig.,*
   501 F. Supp. 2d 560 (S.D.N.Y. 2007) .........................................................19

*In re Rockefeller Center Properties, Inc. Securities Litig.,*
   311 F.3d 198 (3d Cir. 2002)....................................................................20

*Justofin v. Metro. Life Ins. Co.,*
   372 F.3d 517, 523-24 (3d Cir. 2004) ......................................................14

*Kirschner v. Grant Thornton LLP,*
   No. 07 Civ. 11604 (GEL), 2009 WL 996417 (S.D.N.Y. April 14, 2009) ................29

*Koster v. (American) Lumbermens Mut. Casualty Co.,*
   330 U.S. 518 (1947)...............................................................................8

*Lacey v. Cessna Aircraft Co.,*
   862 F.2d 38 (3d Cir. 1988)......................................................................7

*LaSala v. Bank of Cyprus. Public Co. Ltd.,*
   510 F. Supp. 2d 246 (S.D.N.Y. 2007)......................................................10

*LaSala v. Bordier et Cie,*
   519 F.3d 121 (3d Cir. 2008)................................................................1, 19

*Lawn Doctor, Inc. v. Branon,*
   2008 WL 2064477 (D.N.J. May 14, 2008) ...............................................2, 5

*Lincoln Nat. Life Ins. Co. v. Calhoun,*
   596 F. Supp. 2d 882, 887 (D.N.J. 2009) ...............................................14, 18

*Lony v. E.I. Du Pont de Nemours & Co.,*
   886 F.2d 628, 633 (3d Cir. 1989)..............................................................7

*Lum v. Bank of America,*
   361 F.3d 217 (3d Cir. 2004)...................................................................19

*Marten v. Godwin,*
   499 F.3d 290 (3d Cir. 2007).....................................................................4

*Mellon Bank (East) PSFS, Nat. Ass'n. v. Farino,*
   960 F.2d 1217 (3d Cir. 1992)................................................................4, 5

*Middle East Banking v. State Street Banking Intl.,*
   821 F.2d 897 (2d Cir. 1987)...................................................................22

*Miller Yacht Sales, Inc. v. Smith,*
   384 F.3d 93 (3d Cir. 2004).......................................................................6

*Neuhart v. Trust Co. of New Jersey,*
   2008 WL 2415281 (App. Div. June 17, 2008) ...........................................25

*NR Media, Inc. v. Too Much Media,*
   2008 WL 544670 (D.N.J. Feb. 26, 2008) ................................................2, 5

*Official Committee of Unsecured Creditors of Allegheny Health, Educations and Research Foundation v. Pricewaterhousecoopers, LLP,*
  No 01-1397, 2008 WL 3895559 (3d Cir. July 1, 2008)......................................................28, 29

*Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.,*
  267 F.3d 340 (3d Cir. 2001)................................................................................................28

*O'Melveny & Myers v. FDIC,*
  512 U.S. 79 (1994).............................................................................................................28

*Oswell v. Morgan Stanley Dean Witter & Co.,*
  No. 06-5814, 2007 WL 1756027 (D.N.J., June 18, 2007).......................................................23

*Parr v. Buontempo Ins. Serv.,*
  L - 2500 - 06, 2006 WL 2620504 (N.J. Super. Ct. App. Div. Sept. 8, 2006) ...........................25

*Phillips v. County of Allegheny,*
  515 F.3d 224 (3d Cir. 2008)................................................................................................15

*Piper Aircraft Co. v. Reyno,*
  454 U.S. 235 (1981)............................................................................................................7

*Pryor v. Nat'l Collegiate Athletic Ass'n,*
  288 F.3d 548 (3d Cir. 2002)................................................................................................25

*Remick v. Manfredy,*
  238 F.3d 248 (3d Cir. 2001)..................................................................................................4

*Renner v. Lanard Toys Ltd.,*
  33 F.3d 277 (3d Cir. 1994)...................................................................................................6

*Rochez Bros., Inc. v. Rhoades,*
  527 F.2d 880 (3d Cir. 1975)................................................................................................20

*Rolo v. City Investing Co. Liquidating Trust,*
  155 F.3d 644 (3d Cir. 1998)................................................................................................20

*Romero v Allstate Corp.,*
  404 F.3d 212 (3d Cir. 2005)................................................................................................25

*Rose v. Bartle,*
  871 F.2d 331 (3d Cir. 1989)................................................................................................21

*Roy v. Brahmbhatt,*
  2008 WL 5054096 (D.N.J. Nov. 26, 2008) ..........................................................................5, 7

*Santos v. U.S.,*
  559 F.3d 189 (3d Cir. 2009)................................................................................................27

*Seville Indus. Machinery Corp. v. Southmost Machinery Corp.,*
   742 F.2d 786 (3d Cir. 1984) ...................................................................................19

*Shapiro v. UJB Financial Corp.,*
   964 F.2d 272 (3d Cir. 1992) ..............................................................................19, 21

*Stauffacher v. Bennett,*
   969 F.2d 455 (7th Cir. 1992) ...................................................................................6

*Strougo v. Scudder, Stevens & Clark, Inc.,*
   964 F. Supp. 783 (S.D.N.Y. 1997) ........................................................................18

*Travelers Health Assn. v. Virginia,*
   339 U.S. 643 (1950) ..................................................................................................2

*U.S. v. Poyiadjis,*
   01 CR 1177, 2002 WL 1941481, ) (S.D.N.Y. Aug. 21, 2002) ..........................12, 24

*Warriner v. Stanton,*
   475 F.3d 497 (3d Cir. 2007) ...................................................................................18

*Wilkes v. State Farm Ins. Co.,*
   No. 1:05-CV-586, 2005 WL 1667396 (M.D. Pa. ) ..................................................24

*Windt v. Qwest Communications International,, Inc.,*
   529 F.3d 183 (3d Cir. 2008) .........................................................................1, 10, 12


**State Cases**

*Gatz v. Ponsoldt,*
   925 A.2d 1265 (Del. 2007) .....................................................................................20

*Globe Motor Car Co. v. First Fidelity Bank, N.A.,*
   273 N.J. Super. 388, 641 A.2d 1136 (1993) ...........................................................22

*Lopez v. Swyer,*
   62 N.J. 267, 300 A.2d 563 (1973) ..........................................................................25

*Martinez v. Cooper Hospital-University Med. Ctr.,*
   163 N.J. 45, 747 A.2d 266 (2000) ..........................................................................24

*NCP Litigation Trust v. KPMG LLP,*
   187 N.J. 353 (2006) ..........................................................................................28, 30

*P.V. v. Camp Jaycee,*
   197 N.J. 132, 962 A.2d 453 (2008) ..................................................................19, 20

*Reach McClinton & Co. v. Rancho La Costa, Inc.,*
   62 B.R. 978 (Bankr. D.N.J. 1986) ..........................................................................25

*State of New Jersey, Dept. of Treas. v. Qwest Comm. Intern., Inc.*, 904 A.2d 786
   (N.J. App. Div. 2006)...........................................................................................................5

## Federal Statutes

12 U.S.C. § 3105(d)(6)(B) ...........................................................................................14

## State Statutes

N.J. Stat. Ann. § 2A:14-1 (West 2009).........................................................................22

## Federal Rules

Fed. R. Civ. P. 10(c) ...................................................................................................23

Fed. R. Civ. P. 8(a) .....................................................................................................15

Fed. R. Civ. P. 9(b) .....................................................................................................18

## Other Authorities

2 James Wm. Moore et al., Moore's Federal Practice § 10.05[4] (3d ed. 1999)............................2

4 Wright & Miller, Federal Practice and Procedure: Civil 3d § 1067.6 (3d Ed. 2002)..................2

Joseph P. LaSala and Fred S. Zeidman as Co-Trustees ("Plaintiffs") of the AremisSoft Liquidating Trust ("Trust") hereby file their memorandum in opposition to the motion to dismiss the Complaint brought by Defendant Marfin Popular Bank Public Company, Ltd. ("Laiki").  The Trust owes its very existence to the foresight of this Court to have created a vehicle to investigate the wrongs and to seek redress for the 6,500 defrauded shareholders of AremisSoft.  In an action against two other foreign banks brought by the Trust in this District, the Third Circuit lauded the ingenuity behind the Trust this Court created, noting that the Trust "may be seen as a gratifying testament to the flexibility and creative license that Chapter 11 accords parties in fashioning plans of reorganization." *LaSala v. Bordier et Cie*, 519 F.3d 121, 127 n. 1 (3d Cir. 2008).  The Third Circuit also recognized the essential mission of the Trust:  "As this case demonstrates, legal claims can be some of the most important and valuable assets that a bankruptcy estate has, particularly as respects a debtor's unsecured creditors and equity holders, since liquidating such claims may be their only chance at significant recovery." *Id.* at 136.  In the present case, the Trust created by this Court is pursuing the claims of a bankrupt debtor which had its principal place of business in New Jersey, with proceeds to be liquidated and distributed to the successor reorganized U.S. company and shareholder-beneficiaries of the Trust, the vast majority of whom reside in the U.S.  By its motion to dismiss, Laiki seeks, *inter alia*, to deny the Trust the benefit of the very judicial forum that created it, on the grounds that the Trust is much like Laiki, a multinational bank with billions of dollars in revenue.  Obligated as it is by its governing documents to liquidate and distribute any recoveries it makes to its beneficiaries, this Trust is anything but a vast multinational profit-making business organization.  This Trust, fulfilling the mission this Court assigned to it, is fully entitled to the benefit of this forum under controlling Third Circuit law. *Windt v. Qwest Communications International, Inc.*, 529 F.3d 183, 191 (3d Cir. 2008).  Laiki's motion to dismiss must be denied.

## I.     Laiki Is Subject To This Court's Jurisdiction.

In reviewing a motion to dismiss, all of the plaintiff's allegations are accepted as true and all disputed facts are construed in favor of the plaintiff. *NR Media, Inc. v. Too Much Media*, 2008 WL 544670, at *3 (D.N.J. Feb. 26, 2008). Thus, even "[i]f the contents of the plaintiff's complaint conflict with the defendant's affidavits, the district court must construe all reasonable inferences that can be drawn from the papers in the plaintiff's favor." *Lawn Doctor, Inc. v. Branon*, 2008 WL 2064477, at *3 (D.N.J. May 14, 2008) (citing 4 Wright & Miller, *Federal Practice and Procedure*: Civil 3d § 1067.6 (3d Ed. 2002)). In this case, the uncontested allegations establish several bases for jurisdiction over Laiki.

### A.     The *Burger King* Purposeful Availment Test.

To reject the Laiki's motion to dismiss for lack of personal jurisdiction, this Court need go no further than *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985). It is not disputed that Laiki held accounts for AremisSoft and its affiliates, as well as for companies associated with former AremisSoft CEO Kyprianou and co-CEO Poyiadjis, as well as accounts for Kyprianou and his family. Compl. ¶¶ 3, 37, 40. Laiki also held over 776,000 shares of AremisSoft stock as collateral. Compl. ¶ 43. Therefore, Laiki had knowledge of (1) the company, (2) the roles of the insiders, (3) trading in the company's stock, and (4) the activities among the various related entities and accounts. This continuing business relationship with the company more than satisfies a prima facie case for jurisdiction under the Supreme Court's "purposeful availment" test. The Court made it clear in *Burger King* that "where the defendant 'deliberately' has engaged in significant activities within a State, **or has created 'continuing obligations' between himself and residents of the forum**, **he manifestly has availed himself of the privilege of conducting business there**." 471 U.S. at 475-76 (citations omitted) (emphasis added). As such, the Court concluded, a defendant like Laiki which creates continuing

obligations with citizens of another state, as Laiki did with AremisSoft, is "subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (citation omitted). In such cases, it must follow that the Constitution's requirement that a defendant have fair warning of the possibility of being haled into court is satisfied. 471 U.S. at 472.

Personal jurisdiction against Laiki is not based on random, fortuitous or attenuated acts, or, in the words of Laiki, on the "mere foreseeability" of AremisSoft's base of operations in New Jersey. Laiki Memo. at 11. Rather, as *Burger King* notes, Laiki's continuing business obligations to AremisSoft establish "the foreseeability that is critical to due process analysis;" that is, that the defendant's conduct and connection be such that he should reasonably anticipate being haled into court in New Jersey. 471 U.S. 474.

Laiki's only defense is that it never entered New Jersey. Laiki Memo. at 10. *See also* Declaration of Stelios Hadjiosif, ¶ 3 ("The Bank has no branches located in the State of New Jersey or any place else within the United States"). But this badly simplifies and distorts the multi-faceted jurisdictional calculus and deceives by omission. Laiki (an international bank with hundreds of branch offices) is simply not forthcoming as to the extent of its business activities in the U.S. and New Jersey. There is no mention of its correspondent banking relationship with U.S. banks or any other business accounts or interests that are centered in the U.S. Laiki even ignores its U.S. representative office with a New York address out of which it serviced all U.S. Greek and Cypriot citizens across the U.S. from 1992 until that office ceased doing business in 2008.

Notwithstanding this sleight-of-hand, the Supreme Court in *Burger King* again provides the rejoinder to Laiki. The "Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." 471 U.S. at 474. In

recognizing the "inescapable fact of modern commercial life," the Court emphasized that jurisdiction may not be avoided simply because the defendant did not physically enter the forum state.  471 U.S. at 476.  *See also Mellon Bank (East) PSFS, Nat. Ass'n. v. Farino*, 960 F.2d 1217, 1225 (3d Cir. 1992) (courts have consistently rejected notion that absence of physical contacts can defeat personal jurisdiction); *Everest Nat. Ins. Co. v Sutton,* 2007 WL 2572438 at *3 (D.N.J. Sept. 4, 2007) (same).

Since the banking relationship with AremisSoft satisfies the purposeful availment test in *Burger King*, the plaintiff has made out a prima facie case.  To avoid jurisdiction, Laiki must present a compelling case that the presence of some other consideration would render jurisdiction unreasonable.  *Mellon Bank*, 960 F.2d at 1226.  As Laiki makes cites no factors that would otherwise make jurisdiction unreasonable and unconstitutional, this Court need go no further.  *Id.* at 1222, 1226.

**B.    The *Calder* Effects Test.**

This case also passes muster under the "effects" test in *Calder v. Jones*, 465 U.S. 783 (1984).  Under *Calder*, personal jurisdiction exists when the defendant has committed an out-of-state intentional tort, the brunt of the harm is felt by the defendant in the forum and the defendant expressly aimed his conduct at the forum.[1]  *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998); *NR Media,* 2008 WL 544670, at *4.

As the purposeful availment and "expressly aimed" tests are cut from the same jurisdictional cloth as both require a similar intentionality, s*ee Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir.

---

[1] Laiki does not dispute the first two factors.  Understandably, Laiki makes no argument that the brunt of the harm was not felt by AremisSoft in New Jersey since New Jersey is where AremisSoft centered its business activities.  *See NR Media, Inc. v. Too Much Media*, 2008 WL 544670, at *5 (D.N.J. Feb. 26, 2008) *citing Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir. 2001).

2007), it follows that the same rationale that satisfies the purposeful availment test -- the continuing banking relationship -- satisfies the "expressly aimed" requirement of the effects test.

It is also relevant that, as here, the defendant knew when committing the intentional torts that the plaintiff was a resident of the forum.  *See NR Media,* 2008 WL 544670 at *6 (defendant knew plaintiff's principal place of business was located in New Jersey).[2]  In sum, Laiki's connection to New Jersey was not the product of happenstance.  Clearly, its aiding and abetting of the breach of duty owed by Kyprianou and Poyiadjis to AremisSoft (its banking customer) necessarily was targeted to AremisSoft's place of business in New Jersey.

### C.      Conspiracy Theory Of Jurisdiction.

The only argument made by Laiki with respect to personal jurisdiction based on the acts of coconspirators Kyprianou and Poyiadjis is the assertion that New Jersey does not recognize such a theory.  Laiki Memo. at 10-11.  Laiki does not argue that New Jersey lacks jurisdiction over the main perpetrators, Kyprianou and Poyiadjis, who were co-chief executives of AremisSoft, headquartered in New Jersey, and for whom Laiki also held numerous other accounts for their benefit.  New Jersey recognizes the conspiracy theory of jurisdiction.  *See Blystra v. Pettigrew*, 2005 WL 2807361 (D.N.J. Oct. 25, 2005).  Even the court in *Roy v. Brahmbhatt*, 2008 WL 5054096 (D.N.J. Nov. 26, 2008), relied on by Laiki, listed numerous state and federal cases, including a New Jersey state court case, and federal court decisions in Pennsylvania and Delaware that have found the theory constitutionally acceptable.  2008 WL

---

[2] *See also Bachmann Software*, 20008 WL 2875680, at *10; *Lawn Doctor,* 2008 WL 2064477, at *6 ("the defendants expressly targeted the plaintiff in the forum state because the defendants not only knew that plaintiff worked in the forum state, but they also worked with the plaintiff while he performed services from the forum state); *Argentum Medical, LLC v. Noble Biomaterials*, 2009 WL 14442888, at *9 (M.D. Pa. May 21, 2009) (defendants were clearly aware of plaintiff's ties to Pennsylvania and knowingly carried on substantial business relationship with plaintiff).

5054096, at *7-8.[3]   As Laiki fails to establish that New Jersey lacks sufficient contacts with Laiki's co-conspirators, this Court should uphold jurisdiction on this ground also.

**D.      General Jurisdiction.**

Finally, Laiki gets ahead of itself when it asserts that general jurisdiction does not apply in this case.  Laiki Memo at 9.  Obviously, the full scale of Laiki's business activities in New Jersey and the U.S. has been hidden and is largely unknown to the Trust.   Compelling evidence (e.g., Laiki's representative office in neighboring New York from which the Laiki conducted business in the U.S. from 1992 until December 2008) strongly suggests that Laiki has had and continues to have sufficient continuous and systematic business activities in the U.S. and New Jersey to ground the Trust's claims within the Court's general jurisdiction.

Under any of the specific theories of jurisdiction discussed above, it is clear that this Court has personal jurisdiction over Laiki.  In the unlikely event that the Court is not persuaded based on facts presently known to the Trust, the Trust would be entitled to jurisdictional discovery.[4]  In the Third Circuit, jurisdictional discovery is permitted unless a plaintiff's claim of jurisdiction is clearly frivolous.  *See Renner v. Lanard Toys Ltd.*, 33 F.3d 277 (3d Cir. 1994) (abuse of discretion to deny a plaintiff discovery on the issue of jurisdiction when the plaintiff's claim for jurisdiction was "clearly not frivolous").  The banking relationship between Laiki and AremisSoft precludes any argument that the Trust's claim to jurisdiction is clearly frivolous.  Accordingly, the Trust submits herewith a motion for jurisdictional discovery with supporting authorities and attached document requests and interrogatories.

---

[3] The Court in *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 102 n. 8 (3d Cir. 2004) noted that it was unclear whether New Jersey recognizes the doctrine.

[4] Jurisdictional discovery will also unearth needed information regarding Laiki's specific account relationship with AremisSoft and its affiliates.  Although the Trust stands in the shoes of AremisSoft, Laiki has refused to turn over all banking records of the Company and its affiliates, and has resisted the Trust's efforts to obtain sufficient information to ascertain the full extent of its activities and connection to the scheme perpetrated by Kyprianou and Poyiadjis.  Compl. ¶ 16.

6

## II.   NEW JERSEY IS THE PROPER FORUM FOR THE TRUST'S CASE.

When considering a motion to dismiss on the grounds of *forum non conveniens*, a court must address: (1) the availability of an adequate alternative forum; (2) the amount of deference due the plaintiff's forum choice; (3) the private interest factors; and (4) the public interest factors. *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 633 (3d Cir. 1989).  The Third Circuit has noted that, under *Piper Aircraft Co. v. Reyno,* 454 U.S. 235 (1981), a district court must "consider the availability of an adequate alternative forum and the amount of deference to be accorded the plaintiff's choice of forum before it weighs the private and public interest factors relevant to the *forum non conveniens inquiry*."  *Lacey v. Cessna Aircraft Co.,* 862 F.2d 38, 45 (3d Cir. 1988).

### A.   The Trust's Choice Of American Forum Is Entitled To Great Deference.

Ordinarily, great deference is accorded an American plaintiff's choice of an American forum, and the court starts with a strong presumption in favor of the plaintiff's choice of forum. *Piper,* 454 U.S. at 255; *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  The burden on the defendant in the *forum non conveniens* context is deliberately heavy because "the plaintiff's choice of forum should rarely be disturbed."  *Gilbert*, 330 U.S. at 508.  The complaint of an American citizen against a foreign defendant should not be dismissed on *forum non conveniens* grounds unless trial in a U.S. court would be unjust, oppressive, or vexatious and not merely inconvenient to the defendant.  *Koster v. (American) Lumbermens Mut. Casualty Co.*, 330 U.S. 518 (1947).[5]  Here, the Trust has compelling connections with the U.S. and is entitled to the full

---

[5] *See also Hoffman v. Goberman*, 420 F.2d 423, 426-27 (3d Cir. 1970) (there must be a clear showing such oppression and vexation of a defendant as to be out of all proportion to the plaintiff's convenience, which may be shown to be slight or nonexistent).  *Burt v. Isthmus Develop. Co.*, 218 F.2d 353, 357 (5th Cir. 1955) (courts should require "positive evidence of unusually extreme circumstances and be thoroughly convinced that material injustice is manifest" before denying a citizen access to courts of this country).

benefit of the great deference due an American citizen suing in an American court.  Laiki cannot meet its very heavy burden to overcome the Trust' choice of forum.

Trustees LaSala and Zeidman are U.S citizens residing in New Jersey and Texas, respectively.  They bring this action as Trustees appointed by this U.S. Court to administer the affairs of the Trust, in connection with the bankruptcy reorganization of AremisSoft -- a U.S. public company.  The beneficiaries of the Trust are the spin-off entity, SoftBrands, itself a U.S. public company, and approximately 6,500 individuals and entities, 5,835 of whom are U.S. residents.

Recognizing that its effort to overcome the Trust's choice of its home forum is doomed to fail if great deference is paid to that choice of forum, Laiki sets out to convince this Court that the American Trustees appointed by this American court as representative of a bankrupt American company for the benefit of predominantly American shareholders are not to be treated as American plaintiffs for purposes of *forum non conveniens* analysis.  Laiki disingenuously argues that less deference is owed to the Trust's choice of forum because some small number of the Trust's beneficiaries are not American.  Laiki Memo at 13.  It offers no case support for such a proposition.  Laiki also argues that the Trust's governing document requires that the Court provide less deference to the Trust's choice.  Laiki Memo at 13-14.  But, the fact that the Trust was *authorized* to bring suit abroad does not *require* the Trust to bring suit abroad, and certainly should not deprive the Trust of the right accorded all other Americans to have recourse to this country's courts to redress grievances.

In addition, Laiki relies on Judge Haight's decision in *LaSala v. Bank of Cyprus. Public Co. Ltd.*, 510 F. Supp. 2d 246, 257 (S.D.N.Y. 2007), asserting that the Trust more closely resembles a corporation with substantial resources than an ordinary citizen of comparatively modest means and thus the normal deference due to the Trust's choice does not operate at full

strength.  Laiki Memo at 14.  The Trust created by this Court is pursuing the claims of a bankrupt debtor which had its principal place of business in New Jersey, with proceeds to be liquidated and distributed to the successor reorganized U.S. company and shareholder-beneficiaries of the Trust.  Obligated as it is by its governing documents to liquidate and distribute any recoveries it makes to its beneficiaries, this Trust is anything but a vast multinational profit-making business organization with billions of dollars in revenue like Laiki.  This Court understands this Trust it created and understands that the Trust is fulfilling the mission this Court assigned to it.  In any event, and with all due respect to Judge Haight, there is no support in any of the controlling *forum non conveniens* cases that the deference due an American plaintiff suing in his home forum is subject to a means test with deference depending on the plaintiff's resources.

Relying on *Windt v. Qwest Communications International.  Inc.*, 529 F.3d 183, 191 (3d Cir. 2008), Laiki also argues that the Trust's choice of forum deserves less deference because the Trust did not choose this forum based on concerns of genuine convenience.  Laiki tells the Court nothing about the facts and legal analysis in *Windt*.  The Third Circuit's decision in *Windt* actually fully supports the Trust's choice of this forum for resolution of its claims against Laiki.

In *Windt*, Dutch attorneys appointed as bankruptcy trustees by a Dutch court to represent the estate of a Dutch corporation sued an American company, and former executives of the American company who also were former directors of the debtor, alleging fraud, deceit, corporate mismanagement, and other misconduct.  The District Court accorded a low degree of deference to the *foreign* plaintiffs' choice, because the Dutch bankruptcy trustees had to play a role in the related bankruptcy proceedings in their home forum, and their defendants had already been brought into the trustees' home forum in two other nearly identical actions.  *Id.* at 190.  The

Third Circuit, therefore, affirmed the finding of a low degree of deference for the Dutch trustees' New Jersey case.[6]

Applying the Third Circuit's teaching to this case mandates the application of the high degree of deference to the Trust's case against Laiki. The Trustees are U.S. residents acting as representatives of a bankrupt New Jersey-based corporation. Co-Trustee LaSala has New Jersey connections in both his representative and personal capacities. Certainly, the Trust has been immersed in the New Jersey bankruptcy proceeding. Because all of the factors discussed in *Windt* point to the American forum in New Jersey as the appropriate forum, the Trust is entitled to the full benefit of the great deference due to an American plaintiff's choice of an American forum for its action.

Laiki's final attempt to overcome the great deference owed to the Trust's choice of the American forum seeks to transform a situation of necessity facing the Trust into one that was a voluntary choice of a foreign forum. Laiki Memo at 14-15. Laiki argues that the Trust has been actively pursuing an action against Kyprianou in Cyprus since 2005, suggesting that the Trust should choose the same forum against Laiki. The Trust's suit against Kyprianou in Cyprus hardly qualifies as a volitional choice of forum. As a fugitive from U.S. justice remaining in Cyprus to avoid extradition to the U.S., Kyprianou has successfully avoided his day of reckoning for the massive fraud he perpetrated with Poyiadjis. For example, the SEC brought suit against Kyprianou in the Southern District of New York and obtained a default judgment against him for more than $150 million. Kyprianou has been able to avoid payment on that judgment to this day.

---

[6] The Third Circuit stated that "the Trustees are Dutch residents acting as representatives of an insolvent Dutch corporation. Beyond this litigation, the Trustees have no connections to New Jersey in their representative or personal capacities. At the time the Trustees brought this suit, they were already immersed in the Dutch bankruptcy proceedings involving KPNQwest. Considering the particular circumstances of this case, we are satisfied that the District Court did not abuse its discretion in according the Trustees' choice of forum a low degree of deference." *Id.* at 191.

Because the Trust seeks to recover more than a judgment on paper against Kyprianou, the Trust had no viable option but a suit in Cyprus against Kyprianou and many of his alter ego companies. When the Trust chose a foreign jurisdiction, it was not because it preferred it to a forum in the U.S., but because it was the only available forum. This simply cannot be used to suggest that the Trust has voluntarily submitted its claims to the courts in Cyprus. In short, the facts establish that Trust's choice of this forum should be afforded strong deference.

### B.     The Gilbert Factors Tilt In Favor Of This Forum.

Based on the strong degree of deference afforded the Trust's choice of forum, even if Laiki can point to certain factors in favor of a dismissal of this case in favor of the Cyprus courts, it nevertheless fails to meet its heavy burden to obtain a *forum non conveniens* dismissal of this case. Balancing the relevant private and public interest factors set out in *Gilbert* confirms that the U.S. is the appropriate forum to litigate this claim. *Gilbert*, 330 U.S. at 508.

### 1.     The Private Interest Factors Favor Retaining Jurisdiction.

Certain critical non-party witnesses and documents necessary to prove the underlying breach of fiduciary duty and fraud are located in the U.S.

First, Roys Poyiadjis is available only in the U.S. Poyiadjis is currently residing in New York where he is under the custody and control of the U.S. Department of Justice as a result of his role in the AremisSoft fraud. He is unable to travel to Cyprus at this time. LaSala Decl. at ¶¶ 6-8; *U.S. v. Poyiadjis, et al.*, 01 CR 1177, 2002 WL 1941481 (LTS) (S.D.N.Y. Aug. 21, 2002). Poyiadjis would testify to Kyprianou's and his own involvement in the fraud, including how Laiki assisted them in breaching their fiduciary duties to AremisSoft. LaSala Decl. at ¶ 6. In addition, Robert Peak, the Associate Chief Accountant with the Division of Enforcement of the SEC would testify to the SEC's investigation of the AremisSoft fraud, including Laiki's involvement. Although available to testify in proceedings in the U.S, he is not available to

testify in Cyprus.   Efforts to have U.S. government employees testify in other Cyprus proceedings have been unsuccessful.  LaSala Decl. at ¶ 8.  Additional key non-party witnesses who would be available to testify in this case if tried here include George Ellis (a former AremisSoft Board member), David Latzke who became AremisSoft CFO in July 2001, and Scott Bartel, counsel to AremisSoft.  Among the subjects of their testimony would be how AremisSoft and its independent Board members were defrauded by Kyprianou.  LaSala Decl. at ¶ 12.  The fact that critical sources of proof are located in this forum makes it apparent that it would not be more convenient to submit this evidence to a court in Cyprus.  Accordingly, the Trust's choice of its home forum should remain undisturbed.

Laiki's argument about the oppressiveness of producing documents located in Cyprus that are relevant to this case is a red herring.  Laiki Memo. at 19.  Indeed, Laiki has represented to this Court in its opposition to the Trust's pending motion for an order requiring defendant to retain and preserve documents, records and data that, when it learned of the Trust's case, it began to preserve and maintain any documents related to the AremisSoft case in archives, with hard copies stored in boxes in "special storage rooms."  First Hadjiosif Decl., ¶ 4.  Therefore, all of those documents have been marshaled. preserved. and segregated.  Accordingly, the effort and cost of copying already segregated documents, which have to be copied whether the action proceeds here or in Cyprus, is of no moment in these proceedings.  Laiki's protestations that this is oppressive and vexatious is specious and belied by its own evidence on the Trust's document preservation motion.

Laiki argues that it has two former and two present employees of the bank who have knowledge of the relevant facts.  Laiki Memo. at 17.  But, a careful review of Laiki's submission tells us nothing about where the two former employees reside, or whether they would be subject to compulsory process in Cyprus, or whether they would refuse to testify in the U.S.  Second

12

Hadjiosif Decl., ¶ 9.  As for present employees, if their testimony is favorable to it, Laiki can cause them to be available in the U.S.  Laiki also complains that the cost of transporting these witnesses to New Jersey would be "enormous."  *Id.*  Laiki fails to acknowledge that it is an international bank with more than sufficient resources to absorb this cost.  Further, to the extent certain non-party witnesses reside in Cyprus, the Hague Convention on Taking Evidence Abroad, to which Cyprus and the U.S. are signatories, is an adequate means to compel documents and witness testimony.  Therefore, Laiki's arguments based on witnesses are inconsequential and do not remotely meet Laiki's heavy burden to show that litigation in this forum is oppressive or vexatious such that the Trust should not be allowed to litigate here.

Laiki also advances several make-weight arguments.  It asserts that the possible need for translation from Greek to English for live testimony and documents somehow undermines the Trust's choice of this forum.  Laiki Memo. at 18-19.  To the multi-national banking institution that is Laiki, translation and interpretation expenses will be modest and hardly oppressive.  If anything, a shift in forum would merely shift the cost and inconvenience to the Trust.

Finally, Laiki contends that it would be able to implead Kyprianou and other third parties in Cyprus if this case were to proceed there.  Laiki Memo. at 19.  The Trust's action here does not in any way preclude Laiki from pursuing any claim in Cyprus.  The law on *forum non conveniens* does not require an American plaintiff to bow to a forum where the foreign plaintiff would prefer to litigate.

In these circumstances, where the Trust has strong connections with this forum and a multitude of compelling reasons to litigate here, and Laiki offers no serious argument that litigation in this forum is oppressive or vexatious, Laiki has not met its heavy burden of showing that the private interest factors tilt in favor of Cyprus as a more convenient forum.

**2.      The Public Interest Factors Favor This Jurisdiction.**

The U.S. and New Jersey specifically, have a strong and legitimate interest in this litigation.  It is axiomatic that public policy strongly favors providing a forum in which U.S. citizens may seek redress for wrongs against them.  The U.S. also has a strong public policy interest in monitoring the activities of  banking organizations that have been licensed to operate in the U.S.  Having had a representative office in the U.S. for a period from 1992 through December 2008 during which the underlying events occurred in this case, Laiki was subject to the Federal Reserve's requirements to have procedures in place to detect, prevent, and combat money laundering in their foreign banks.[7]  Finally, as noted above, the Trust's claims are brought under U.S. law (New Jersey law).  Accordingly, such claims should be adjudicated in a U.S. court.

Laiki insists that internal regulation of the Bank is what is at issue in this case, and thus Cyprus is the proper forum to determine Cyprus' internal banking regulations.  This misunderstands the nature of the Trust's claims.  At issue here is New Jersey law on fiduciary duties of corporate officers and directors and New Jersey law establishing liability of those who assist them as aiders and abettors and coconspirators.  Cypriot banking regulations are not likely to govern the legal issues in this case.

The balance of conveniences tilts decidedly in favor of the Trust, and thus Laiki has not met its burden to overcome the high degree of deference afforded the Trust's choice of this forum.  Dismissal cannot be granted here on the grounds of *forum non conveniens*.

---

[7] 12 U.S.C. § 3105(d)(6)(B) ("[T]he Board shall consider whether the foreign bank has adopted and implements procedures to combat money laundering.  The Board may also take into account whether the home country of the foreign bank is developing a legal regime to address money laundering or is participating in multilateral efforts to combat money laundering."); 12 C.F.R. § 211.24(c)(1)(iii)(B) (quoting language of 12 U.S.C. § 3105(d)(6)(B)).

14

### III.   THE COMPLAINT SETS FORTH VALID CLAIMS FOR RELIEF.

Although Laiki makes much of the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), even following *Twombly*'s clarification of the pleading standards under Fed. R. Civ. P. 8(a) and 12(b)(6), Plaintiffs have met their burden.   Post-*Twombly* plaintiffs are simply required to present "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted).   *Twombly* did not alter the principle that courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation omitted).   Notably, "the Third Circuit has warned that particular caution be used in summarily dismissing cases that hinge on an issue relating to state of mind." *Lincoln Nat. Life Ins. Co. v. Calhoun*, 596 F. Supp. 2d 882, 887 (D.N.J. 2009) (Pisano, J.) (citation omitted).   The high level of particularity that Laiki demands at this stage is inappropriate, and the Complaint sufficiently provides Laiki with fair notice of Plaintiffs' claims and the grounds for each of them.

### A.   This Court Should Apply New Jersey Law To All Claims.

Plaintiffs agree with Laiki that the two states this Court must select between in its choice of law analysis are New Jersey and Cyprus. *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 155 (3d Cir. 2001) ("we respect the choice of law that parties agree upon to resolve their private disputes").   Laiki asserts little beyond that New Jersey courts apply the "most significant relationship" test to both tort and contract-based claims and wrongly asserts that Cyprus law governs the Trust's claims.

15

The first part of a choice of law analysis is determining if a conflict exists between New Jersey and Cyprus law with respect to Plaintiffs' claims.  *P.V. v. Camp Jaycee*, 197 N.J. 132, 144, 962 A.2d 453 (2008).  If not, the law of the forum state applies.  *Id.*  Laiki asserts that no claim for aiding and abetting a breach of fiduciary duty exists in Cyprus, but offers no definitive proof.  Its analysis as to civil conspiracy is vague as to how the law between the jurisdictions substantively differs, if at all, and it makes clear that the principles for breach of contract are effectively the same.  *See* Papaefstathiou Dec. at ¶¶ 34-38.  Assuming *arguendo* that there is no aiding and abetting claim in Cyprus, this Court need only engage in a choice of law analysis as to that claim, and New Jersey law should apply to the remaining claims.

The second step of New Jersey's choice of law analysis is to evaluate four contact points in determining the appropriate law to apply to the issue in question.[8]  During the relevant times described in the Complaint, AremisSoft had its principal place of business in New Jersey.  In addition, many of the company's shareholders were located in New Jersey.  The harm caused by Laiki's misconduct was directed at, and felt primarily in, New Jersey, where the company and many of its shareholders suffered significant damages as a result of the wrongful transactions.  While Laiki may argue that the conduct causing the injury took place in Cyprus, many of the

---

[8] These factors include:  (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship between the parties is centered.  *Harper v. LG Electronics USA, Inc.*, 595 F. Supp. 2d 486, 490 (D.N.J. 2009); *see also* Restatement (Second) of Conflicts § 145(2).  These contacts are to be evaluated along with the following factors: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability, and uniformity of result; and (g) ease in determination and application of the law to be applied.  Restatement (Second) of Conflicts § 6.  "Viewed through the section 6 prism, the state with the strongest section 145 contacts will have the most significant relationship to the parties or issues, and thus its law will be applied."  *P.V.*, 197 N.J. at 143.

events contributing to AremisSoft's bankruptcy, such as improper sales of the company's stock on the NASDAQ exchange and the company's subsequent delisting, occurred in the U.S.

The duties that Laiki aided and abetted Kyprianou and Poyiadjis in breaching were not, as Laiki insists, derived from Cyprus banking laws, but rather from U.S. fiduciary laws. New Jersey has an interest in enforcing its legal doctrines that protect the rights of companies and shareholders of companies which are located there. The parties expected that misconduct on the part of Laiki would result in litigation in New Jersey. Laiki was aware that any involvement it had in assisting directors' breach of fiduciary duties owed to their New Jersey-based corporation would culminate in it being held to account in American courts. AremisSoft and its shareholders legitimately expected that they could pursue claims relating to breaches of fiduciary duty in the state where the company had its primary place of business. The forum state has a significant interest in the outcome of this litigation, given that the Trust was established by this Court sitting within New Jersey to pursue claims precisely like this one. In fact, this Court has presided over related proceedings similar to this case involving the Trust for several years, lending further evidence to the significance of the relationship with New Jersey. In sum, the connection New Jersey has with this case, as well as its interest in seeing its laws properly enforced, demonstrate that it is the state with the most significant relationship, and its law should be applied.

Although New Jersey law clearly applies, where further factual development is needed, a choice of law finding may be premature at the motion to dismiss stage. *See Lincoln Nat'l Life Ins. Co. v. Calhoun*, 596 F. Supp. 2d 882, 887 n.6 (D.N.J. 2009) (Pisano, J.).[9] At this stage, a decision that Cyprus law applies is premature given the state of the factual record.

---

[9] *See also Warriner v. Stanton*, 475 F.3d 497, 500 (3d Cir. 2007); *Harper v. LG Electronics USA, Inc.*, 595 F. Supp. 2d 486, 490-91 (D.N.J. 2009) (deferring choice-of-law decision "until the parties present a factual record full enough to permit" a choice of law analysis, noting that plaintiffs must merely set forth "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element," and denying motion to dismiss).

**B.**   **The Trust's Claim For Aiding And Abetting Breach Of Fiduciary Duty Is Set Forth With Sufficient Specificity.**

**1.**   **Rule 9(b) Does Not Apply To The Claim.**

Laiki erroneously characterizes the Trust's claim for aiding and abetting breach of fiduciary duty as consisting of fraud on the part of former principals of AremisSoft, and therefore reasons that Fed. R. Civ. P. 9(b) applies.   However, the balance of authority holds that the pleading standards of Rule 9(b) are inappropriate here.   *See, e.g. In re Norvergence, Inc.*, 2009 WL 1346049, at *22 (Bankr. D.N.J. May 13, 2009) ("The heightened pleading requirements of Rule 9(b) 'generally does not apply to the state law claims of breach of fiduciary duty . . . [and] aiding and abetting breach of fiduciary duty . . . .'") (citations omitted); *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 197-98 (D. Del. 2000) (same); *Strougo v. Scudder, Stevens & Clark, Inc.*, 964 F. Supp. 783, 804 (S.D.N.Y. 1997).   As the Third Circuit found in a case presenting very similar facts, the aiding and abetting claim here relates to Kyprianou's and Poyiadjis' breach of their fiduciary duty of loyalty to AremisSoft, a New Jersey corporation.   *Bordier et Cie.*, 519 F.3d at 130.   These claims do not implicate Rule 9(b).   *Adelphia Recovery Trust v. Bank of America*, 2009 WL 1249360, at *21 (S.D.N.Y. May 6, 2009) (in cases involving allegations of aiding and abetting a breach of fiduciary duty of care, disclosure or loyalty, as distinct from fraud cases, Rule 9(b) is typically inapplicable).

The cases cited by Laiki do nothing to diminish this point.   *Lum v. Bank of America*, 361 F.3d 217 (3d Cir. 2004) applied Rule 9(b) to antitrust claims predicated on mail and wire fraud and on misrepresentations, not on breaches of the fiduciary duty of loyalty.   Similarly, *In re Parmalat Sec. Litig.*, 501 F. Supp. 2d 560 (S.D.N.Y. 2007), applying New York law, provides no specific analysis as to why Rule 9(b) applies to a breach of fiduciary duty, as it only discusses

the application of Rule 9(b) to substantive fraud and misrepresentation claims.  Moreover, courts must be aware that applying Rule 9(b) prior to discovery might allow sophisticated defendants to obfuscate the particulars of their fraud.  *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 284 (3d Cir. 1992).  This is a relevant consideration here, where the secret nature of the conduct of Kyprianou and Poyiadjis, as well as Laiki's uncooperative approach to requests for documents to which the Trust is entitled, have thwarted the Trust's diligent efforts to obtain information.  Under these circumstances, Rule 9(b) should not be applied.

### 2.    The Complaint Meets Rule 9(b)'s Standard.

However, even if Rule 9(b) applies, it simply requires that the Complaint gives Laiki notice of the precise misconduct alleged.  *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).  In order to do so, the Complaint need not set forth the date, time or place of the alleged conduct, but must only "inject precision and some measure of substantiation into" allegations of fraud.  *Id.*  The Third Circuit has ruled that even under Rule 9(b), the approach should be consistent with the "general simplicity and flexibility contemplated by the [the Rules]."  *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 646 (3d Cir. 1989) (citations omitted).  Furthermore, the language of Rule 9(b) makes clear that allegations concerning defendants' knowledge or intent need only be pleaded generally.

Additionally, when information necessary for the plaintiff to set forth its allegations with the particularity required by Rule 9(b) is peculiarly within the defendant's knowledge or control, the standard is relaxed.  *See In re Rockefeller Center Properties, Inc. Securities Litig.*, 311 F.3d 198, 216 (3d Cir. 2002);  *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 657 (3d Cir. 1998);  *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 197-98 (D. Del. 2000) (Rule 9(b) should not "require plaintiffs to plead issues that may have been concealed by defendants.").  Under the relaxed standard, plaintiffs are required to "accompany their legal theory with factual allegations

that make their theoretically viable claim plausible." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997).   This standard is properly applied here where critical information concerning Laiki's knowledge and participation in aiding and abetting the breach of fiduciary duty is in its exclusive possession.

Whether the relaxed or conventional standard of Rule 9(b) applies, the Complaint's allegations pass muster.  The elements of aiding and abetting breach of fiduciary duty are: (1) the existence of a primary breach of fiduciary duty, (2) the defendant's knowledge of and substantial assistance in that breach and (3) that the plaintiff suffered damages as a result of the breach. Importantly, "liability for aiding and abetting may be found on less than actual knowledge of the illegal activity. . . . How much or how little knowledge would seem to vary with the facts of each case." *Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880, 886 (3d Cir. 1975).[10]

The Complaint alleges that Kyprianou and Poyiadjis owed fiduciary duties to AremisSoft which they breached as a result of the described transactions.  The causation/damage element is clearly set forth in the Complaint.  The only aspect of the claim that Laiki takes issue with is whether the Trust has adequately pled Laiki's knowing participation in the breach.   The Complaint sufficiently pleads (1) Laiki knowingly participated in the breaches of duty by the officers, (2) Laiki refused to provide relevant information to the Trust, (3) the incredibly suspicious nature of the described transactions, including a $48 million transfer from an account at Laiki set up by a company formed by Poyiadjis to hold and illegally sell AremisSoft shares, and a transfer of 2,600,000 Cypriot Pounds from AremisSoft's Laiki account to an individual that Laiki knew or had reason to know had no legitimate business relationship with AremisSoft.

---

[10] *See also Gatz v. Ponsoldt*, 925 A.2d 1265, 1275 (Del. 2007) (in some cases, "the terms of the negotiated transaction themselves [may be] so suspect as to permit, if proven, an inference of knowledge of an intended breach of trust") (citations omitted).

Compl. ¶¶ 18, 41, 44, 50-52.  These allegations strongly support that Laiki was aware of the breaches of fiduciary duty and are more than enough to support the claim under Rule 9(b).

Furthermore, the allegations concerning Laiki's knowledge of the various accounts opened by AremisSoft's former CEO and co-CEO, as well as its knowledge of the duties they owed to AremisSoft, and subsequently breached through the transactions set forth in detail in the Complaint, provide more than sufficient knowledge to place Laiki on notice of the claim stated against it.  Compl. ¶¶ 37-47, 50-52.  Laiki's participation in these transactions, as set forth in the Complaint, was substantial, as without Laiki's involvement, they would not have been effectuated.  *Id.*  Regardless of which pleading standard this Court applies, Laiki's motion to dismiss as to the aiding and abetting breach of fiduciary duty claim should be denied.[11]

### C.    Plaintiffs' Conspiracy Claim Is Set Forth With Requisite Specificity.

#### 1.    Rule 9(b) Does Not Apply To The Claim.

It is well-established that allegations concerning civil conspiracy need not meet the standards of Rule 9(b).  *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989).  Moreover, the analysis rejecting the application of Rule 9(b)'s pleading requirements to the aiding and abetting claim is equally applicable to the conspiracy claim.

#### 2.    The Conspiracy Claim Is Adequately Pleaded.

If Rule 9(b) is applied, the civil conspiracy claim is adequately pleaded.  Laiki's attack on the civil conspiracy claim focuses upon its assertion that the agreement between the parties is

---

[11] If this Court finds that Rule 9(b) applies and that the allegations do not suffice, the Trust should be permitted to conduct discovery to obtain more specific information concerning Laiki's knowledge of and participation in Kyprianou's and Poyiadjis's breach of fiduciary duty.  *See Shapiro*, 964 F.2d at 284; *Boston & Maine Corp. v. Town of Hampton*, 987 F.2d 855, 866 (1st Cir. 1993); *Emery v. Amer. Gen. Fin., Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998).  Laiki has been uncooperative with the Trust's diligent efforts to obtain relevant documents and records, even of AremisSoft itself.  If this Court determines further specificity is required, it should permit discovery on the issue of Laiki's knowledge of and participation in the conduct described in the Complaint.

insufficiently pleaded.   However, under New Jersey law, a plaintiff need not allege that the unlawful agreement of the conspirators was express nor that each participant knew the precise limits of the illegal plan or all of its participants, but only that each participant shared in "the general conspiratorial objective." *Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 496-97 (D.N.J. 1998).  The allegations of the Complaint place Laiki on notice of the claim that it shared in "the general conspiratorial objective" of the conspiracy.   Laiki's understanding of, and implicit agreement to help achieve, the goals of the conspiracy are inferable from, among other facts alleged, the inherently wrongful and highly suspicious nature of the transactions combined with Laiki's awareness of Kyprianou's and Poyiadjis' duties to AremisSoft.  Compl. ¶¶ 40-46. As alleged in the Complaint, the general objective of the conspiracy was the continuation of wrongful transactions, effectuated through Laiki, and motivated by Laiki's desire to maintain a relationship with Kyprianou and Poyiadjis for Laiki's own financial gain.  Compl. ¶¶ 45-47, 55. The Trust more than adequately set forth facts demonstrating that the former officers of AremisSoft were working in concert with Laiki to conduct these unlawful transactions.

> **D.     The Breach of Contract Claim Is Set Forth With Requisite Specificity.**

Laiki's response to the Trust's allegations concerning the breach of contract claim is noteworthy for its omission.  Laiki does not deny that it had a contract with AremisSoft.  This silence is hardly surprising, as it is axiomatic that the relationship between a bank and its customer, as between creditor and debtor, is contractual.  *See, e.g., Globe Motor Car Co. v. First Fidelity Bank, N.A.*, 273 N.J. Super. 388, 393-94 (1993) (acknowledging debtor-creditor relationship with certain responsibilities arising from general deposit); *Middle East Banking v. State Street Banking Intl.*, 821 F.2d 897, 901-902 (2d Cir. 1987) (bank is bound by implied contract to hold deposits to be dispersed only in conformity with the customer's instructions and on its order).  Rather than assert that it did not enter into any contract with AremisSoft, Laiki

suggests that because the Trust did not attach the contract in question, or identify specific provisions, no such contract existed.   Under the notice pleading requirements of Rule 8(a), plaintiffs are not required to identify specific contract terms at issue, but must only provide Laiki with fair notice of the claim.  *Oswell v. Morgan Stanley Dean Witter & Co.*, 2007 WL 1756027, at *5 n.4 (D.N.J. June 18, 2007); *see also In re Oakwood Homes Corp.*, 340 B.R. 510, 527 (D. Del. 2006).[12]  Put another way, Plaintiffs are only required to plead the contract's legal effect, which they accomplished by virtue of ¶¶ 57-60.  *Id.*  The contract claim is straightforward:  Laiki entered into a contractual relationship with AremisSoft upon the opening of accounts for the company.   This relationship, which allowed the corporation to make deposits into and withdrawals from various accounts, obligated Laiki to follow know your customer rules and procedures, to exercise due diligence and investigate suspicious transactions.   Laiki violated these terms by permitting and assisting Kyprianou, Poyiadjis and other entities which they controlled to engage in clearly wrongful transfers, thereby damaging AremisSoft.   While further detail will be uncovered following discovery, for the purposes of this motion, the Trust's allegations read fairly in the light most favorable to the Trust are sufficient.

## IV.   THE TRUST'S CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS.

Laiki concedes that New Jersey's six-year statute of limitations governs each of the Trust's claims.  *See* N.J. Stat. Ann. § 2A:14-1 (West 2009).  Laiki errs, however, by making the facile argument that because the June 2002 criminal Indictment against Poyiadjis, Kyprianou and Mathews mentions a *single* transfer arranged by Kyprianou to Laiki, the Trust's claims against Laiki *must have* accrued in 2002 thus rendering any claim brought after June 2008 time barred.

---

[12]  Fed. R. Civ. P. 10(c) permits the attachment of written instruments to pleadings, but complaints should not be dismissed where the contract being sued upon was not attached.  *See Wilkes v. State Farm Ins. Co.*, No. 1:05-CV-586, 2005 WL 1667396, at *2 n. 2 (M.D. Pa. Jul. 15, 2005) (citing 2 James Wm. Moore et al., Moore's Federal Practice § 10.05[4] (3d ed. 1999)).

Laiki's superficial gloss of the limitations analysis is simply wrong and ignores the plain allegations in the Complaint that the Trust did not learn of Laiki's involvement in the AremisSoft fraud until, at the earliest, late in 2005. The Trust's claims, filed less than four years later in March 2009, are therefore timely.

Under New Jersey law, the limitations period begins when two conditions are met: "(1) the plaintiff has suffered actual injury; [and] (2) the plaintiff knows that the injury is due to the fault of another." *Cetel v. Kirwan Financial Group*, 460 F.3d 494, 513 (3d Cir. 2006). The cases cited by Laiki are not to the contrary, and even *Martinez v. Cooper Hospital-University Med. Ctr.*, recognizes that before the statute of limitations starts, a plaintiff must have knowledge "not only of the injury but also that another is at fault." 163 N.J. 45, 52, 747 A.2d 266, 270 (2000). As plainly pleaded in the Complaint, all the Trust learned from the 2002 criminal Indictment is that Kyprianou caused a single transfer to be made to Laiki. Compl. ¶ 17. Nowhere in the Indictment is it alleged that Laiki was complicit in any illegal activity because this was not known in 2002. In an attempt to show that the Trust had knowledge of potential claims against Laiki in 2002, Laiki contends that the allegations in the Complaint "are of like kind and quality to those set forth in the superseding indictment referenced in paragraph 17 of the complaint." Laiki Memo at 33. This is objectively unsupportable and disingenuous in the extreme. The Indictment is replete with allegations that it was Kyprianou, Poyiadjis and their co-conspirators who "directed" wire transfers into foreign banks and "committed" other overt acts, but no claim is made that any foreign bank, including Laiki, was involved in the conspiracy. *See, e.g.,* Superseding Indictment, S1 01 Cr. 1177 ¶ 79, 80, annexed as Ex.A to LaSala Decl.[13] In fact, even after the Trust reviewed the affidavit of FBI Agent Courtney Wilson in 2004 as a

---

[13] On a motion to dismiss, the Court may consider the contents of any documents attached to, or incorporated by reference in, or relied on in drafting the Complaint whose authenticity is not disputed by the parties. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

result of an order from an Isle of Man court, the Trust still was unaware "which financial institution[] had a civil responsibility to the Trust for damages, if any." Compl. ¶ 20. It was not until the Trust obtained documents from the UK and the BVI in late 2005 that it discovered that Laiki violated its legal and contractual duties to AremisSoft, and knowingly acted with willful blindness to Kyprianou and Poyiadjis's concerted actions to launder millions of dollars and to loot and convert funds from AremisSoft accounts to accounts used for their personal benefit. Compl. ¶¶ 4, 23.

Although the Trust believes it sufficiently pleaded that it discovered its injury as a result of Laiki's gross malfeasance until 2005, within six years of the filing of the Complaint, at a minimum determination of whether the discovery rule applies should be made at a hearing before the Court. *See Parr v. Buontempo Ins. Serv.*, 2006 WL 2620504 (App. Div. 2006) (requiring a *Lopez* hearing to determine the event that triggered the running of the statute of limitation).[14]

Even if the discovery rule is ignored and the limitations period is somehow deemed to have started in June 2002, the doctrine of equitable tolling applies because Laiki actively concealed information that was vital to the Trust. *See Evesham Township Bd. of Ed. v. Vitetta Group*, 2009 WL 4735883, at *14 (App. Div. March 5, 2008) (noting that equitable tolling delays the running of the statute of limitations because the plaintiff lacked vital information which was withheld by a defendant). The "doctrine of equitable tolling has traditionally been applied 'where the complainant has been induced or tricked by his adversary's misconduct into

---

[14] *See also Lopez v. Swyer*, 62 N.J. 267, 272, 300 A.2d 563 (1973) ("[I]n an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim."). The Third Circuit has noted that where it is uncertain when the statute of limitations begins to run, motions to dismiss on this ground are premature and its determination must await discovery. *See Romero v Allstate Corp.* 404 F.3d 212 (3d Cir. 2005); *see also Reach McClinton & Co. v. Rancho La Costa, Inc.*. 62 B.R. 978 (Bankr. D.N.J. 1986) (same).

allowing the filing deadline to pass.'"  *Neuhart v. Trust Co. of New Jersey*, 2008 WL 2415281, at

* 6 (App. Div. June 17, 2008).

The Trust, on numerous occasions, made requests of Laiki to turn over AremisSoft's

banking records which would have revealed the extent to which Laiki assisted Kyprianou and

Poyiadjis in transferring funds without any legitimate business purpose.  Critically important is

that the Trust, as pleaded and in fact, stands in the shoes of the former AremisSoft which was a

depositor with Laiki..  Compl. ¶ 16.  Nevertheless, despite the Trust's diligent efforts to discover

operative facts from Laiki itself, Laiki, to this day, has refused to fully turn over to the Trust the

banking records of AremisSoft and its affiliates in Cyprus.[15]  Laiki cannot have it both ways, on

the one hand concealing its activity from the Trust, and then crying foul because the Trust did

not assert its claims earlier.

The doctrine of equitable tolling "requires the exercise of reasonable insight and

diligence by a person seeking its protection."  *Neuhart*, 2008 WL 2415281, at *6 (citation

omitted).  As shown in the Complaint, beginning in 2002, the Trust made diligent efforts to

obtain books, records and information from Laiki but the Bank "was less than cooperative."

Compl. ¶ 17.  Indeed, the significance of the June 2002 criminal Indictment is not that it

triggered the accrual of the statute of limitation, but that it triggered the Trust's diligent inquiry

concerning Laiki's role in the fraud on AremisSoft.  The Trust's diligence is plainly

demonstrated by the Trust's actions in the Isle of Man in 2004 which revealed the Affidavit of

FBI Agent Wilson, and ultimately the disclosure orders in the UK and the BVI in late 2005

---

[15] The fact that Laiki failed to provide the Trust with AremisSoft's own banking records forms
the basis, in part, for the Trust's Motion for an Order Requiring Defendant to Retain and
Preserve Documents, Records and Data, which was fully submitted on June 15, 2009 and is *sub
judice*.  The Trust respectfully requests that the Court take notice of that Motion and the
arguments therein as being relevant to the application of equitable tolling.

which led the Trust to learn that losses sustained by AremisSoft were attributable to the fault of Laiki.  Compl. ¶¶ 19-23.

Laiki does not argue that the doctrine of equitable tolling should not apply, instead claiming that the Trust has not adequately pleaded fraudulent concealment.  *See Santos v. U.S.,* 559 F.3d 189, 199 (3d Cir. 2009) (recognizing distinction between equitable tolling and fraudulent concealment); *Foodtown v. Sigma Marketing Sys., Inc.*, 518 F. Supp. 485,  488 (D.N.J. 1980) ("where there is fraudulent concealment of a cause of action the period of limitation will not commence until discovery of wrong or facts which reasonably put one on notice.").  In fact, the Trust has adequately pleaded that Laiki fraudulently concealed documents and facts and stymied the Trust's diligent efforts to investigate Laiki's banking relationship with Kyprianou and AremisSoft.  Compl. ¶¶ 16, 18.  Had Laiki turned over to the Trust the documents which the Trust sought, including AremisSoft's own banking records, the Trust would have learned of Laiki's participation in the fraud on AremisSoft earlier than 2005.  It is precisely because Laiki stonewalled the Trust in its efforts to obtain AremisSoft's *own* banking records that the Trust sought discovery orders in the UK and BVI in 2005 which revealed facts forming the basis for the Trust's Complaint against Laiki here. [16]

## V.    THE DOCTRINE OF *IN PARI DELICTO* DOES NOT BAR THE TRUST'S CLAIMS.

Laiki's reliance on the *in pari delicto* doctrine suffers from the same superficial analysis as its statute of limitations defense.

The basis of *in pari delicto* is that management's misconduct is to be imputed to the corporation (or a trustee appointed in bankruptcy who stands in the shoes of the corporation), which is barred from recovering for a wrong it "essentially took part in."  *See, e.g. Bondi v.*

---

[16] If the Court were to find that the Trust's Complaint lacks Rule 9(b) particularity with respect to the fraudulent concealment claim, the Trust respectfully requests an opportunity to amend its Complaint to provide additional and explicit details.  *See Foodtown*, 518 F. Supp. at 489.

*Citigroup, Inc.,* 2005 WL 975856, * 14 (N.J. Super. Feb 28, 2005).  But as the U.S. Supreme Court teaches, state law provides the substantive law governing imputation for state law claims. *O'Melveny & Myers v. FDIC,* 512 U.S. 79, 83-85 (1994).

In 2005, the New Jersey Supreme Court squarely addressed the law of imputation under New Jersey law in *NCP Litigation Trust v. KPMG LLP,* 187 N.J. 353, 372 (2006).  Although Laiki fails to bring this case to the Court's attention, *NCP* confirms that one who is alleged to have contributed to misconduct cannot invoke imputation as a defense.  Noting that the imputation defense exists to protect innocent third parties, the Court found that an auditor who allegedly defrauded the corporation and its creditors was not an innocent party the doctrine was intended to protect.[17]

Similarly here, Laiki is alleged to have participated with Kyprianou and Poyiadjis to defraud AremisSoft.  Like the auditor in *NCP*, Laiki is alleged to have participated in the fraudulent activity and it cannot avail itself of the imputation defense to shield it from liability. Because imputation is the basis for the *in pari delicto* doctrine, and because imputation is inapplicable here, so too is the defense of *in pari delicto* inapplicable.

No doubt Laiki failed to cite the *NCP* case because it vitiates Laiki's *in pari delicto* defense.  Instead Laiki cites *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340 (3d Cir. 2001) which is inapplicable since it relied on Pennsylvania law to affirm the District Court's dismissal of claims by a debtor's creditor committee against third parties who allegedly conspired with management to commit a fraud.  267 F.3d at 344.  In 2008, the same Third Circuit in *Official Comm. of Unsecured Creditors of Allegheny Health, Educ. and Research Found. v. Pricewaterhousecoopers*, *LLP, No. 01-1397,* 2008 WL 3895559, at *4 (3d Cir. 2008), questioned, again under Pennsylvania law, whether imputation is appropriate when

---

[17] The Court went on to hold that the Trust established to represent the interests of the shareholders had standing to assert claims against the auditor.  *Id.* at 373.

the party invoking it is itself alleged to be a co-conspirator in the fraud.  Noting that *Lafferty's* view of *in pari delicto* is a "minority one," the Third Circuit certified this question to the Pennsylvania Supreme Court for guidance under Pennsylvania law. *Id.* at 5.[18]  But both *Lafferty* and *Pricewaterhousecoopers* are of no moment here given that New Jersey law of imputation is settled.  Where, as here, the party seeking to invoke the imputation defense is itself alleged to be complicit in the wrongdoing, it cannot avail itself of the defense.    Thus the *in pari delicto* defense here fails.

Even if New Jersey law on imputation is ignored, and the *in pari delicto* doctrine were somehow to apply, it does not bar the Trust's claims because Kyprianou and Poyiadjis acted for their own self interest, not for the benefit of AremisSoft.  The Complaint alleges that Kyprianou and Poyiadjis, for their own benefit, perpetrated the underlying fraud and breached their fiduciary duty to the Company.  Compl. ¶¶ 4, 41-45, 48-53.  Where, as here, wrongful acts are carried out by rogue agents who act adversely to the interest of the principal, the "adverse interest" exception to the *in pari delicto* defense applies.  *See Bondi,* 2005 WL 975856, at *14 ("if the actions of management are adverse to the corporation and benefit management or a third party, a court will not impute those actions to the corporation."); *In re Bennett Funding Group,* 336 F.3d 94, 100 (2d Cir. 2003) (adverse interest exception applies where "the [corporate officer] must have totally abandoned [the corporation's] interest and be acting entirely for his or another's purposes.").   Here, the Complaint specifically ascribes the fraudulent scheme to Kyprianou and Poyiadjis, not AremisSoft, and alleges that they breached their fiduciary duty by

---

[18] As the Third Circuit put it, under these circumstances, "imputation allegedly is being used to shield a non-innocent party from liability that would otherwise attach."  *Id.*  The Court went on to note that *in pari delicto* is generally not a valid defense for corporate directors alleged to have breached their fiduciary duties, but concluded that it was an "open question" under Pennsylvania law whether the doctrine should shield persons alleged to have knowingly aided and abetted this sort of misconduct.  *Id.* at 6.  As of the submission of this brief, the Pennsylvania Supreme Court has not yet responded to the Third Circuit's question.

concocting and implementing the scheme for their own personal profit and "totally abandoned" AremisSoft's interests.  Compl. ¶¶ 4, 41-45, 48-53.[19]

In light of these factual issues, and if the holding in *NCL*  is ignored, whether *in pari delicto* applies in this case cannot be determined as a matter of law based solely on the pleadings. As the Court in *Bondi* (cited by Laiki) held, a determination of the applicability of the doctrine must await "orderly unfolding of information through discovery."  2005 WL 975856, at * 14; *see also In re Norvergence*, 2009 WL 1346049 (because *in pari delicto* defense is not established on the face of the complaint, its determination on a motion to dismiss is premature and must await discovery).[20]

---

[19] The facts here are also distinguishable from *Kirschner v. Grant Thornton LLP*, 2009 WL 996417, at *10 (S.D.N.Y. April 14, 2009). *Kirschner* is decided under New York law and concerned the issue of standing which, although similar, is different than the *in pari delicto* defense. *Id*. at *5 n.13 (citations omitted). In *Kirschner,* the Court noted that the adverse interest rule applies where a plaintiff alleges, "not that the insiders intended to, or to some extent did, benefit from their scheme, but that the corporation was *harmed* by the scheme, rather than being one of its beneficiaries." *Id.* at *7.  The plaintiff failed to allege this, nor did the facts support it, thus the Court found the adverse interest exception inapplicable.  Here, in contrast, the Complaint is replete with allegations that Kyprianou and Poyiadjis fraudulently inflated AremisSoft's revenues in an effort to "pump" up the value of AremisSoft's stock, and "looted" and defalcated the Company and made transfers for their personal benefit which had "no legitimate business relationship with AremisSoft."  Complt. ¶¶ 2, 4, 25 41, 45.  This caused AremisSoft to "sustain[] millions of dollars in damages."  *Id.* ¶¶ 4, 15, 23.  Whereas in *Kirschner* the frauds by management "injected hundreds of millions of dollars of capital into Refco, Inc." (2009 WL 996417, at *9), the situation here was more akin to insiders "propping up moribund entities in order to misappropriate corporate assets for personal gain" (*id*), which even the court in *Kirschner* recognizes constitutes "adverse" actions which cannot be imputed to the corporation.  *See also NCP*, 187 N.J. at 381 (finding that inflating a corporation's revenue and enabling a corporation to continue in business past the point of insolvency cannot be considered a benefit to the corporation).

[20] Laiki also ignores the holding of at least one Bankruptcy Court which held that imputation of acts by corrupt management to the corporation is inappropriate when independent and innocent directors of a company could have put an end to the fraud if they were aware of it.  "The presence of a person with the ability to bring an end to the fraudulent activity at issue would demonstrate that the principal and agent are distinct entities and that the total control necessary to impute the malfeasance of management to the corporation is not appropriate."  *Breeden v. Kirkpatrick & Lockhart, LLP*, 268 B.R. 704, 710 (Bankr. S.D.N.Y. 2001).  Here the outside directors and other senior management of AremisSoft were unaware of and uninvolved in the fraud perpetrated by Poyiadjis and Kyprianou.  Upon discovering it in 2001 they acted promptly

30

## <u>CONCLUSION</u>

For the above reasons, the Trust respectfully requests that this Court deny Laiki's motion to dismiss.   Alternatively, the Trust requests that discovery be allowed to proceed and the Complaint amended to incorporate facts elicited in discovery.


Dated: July 6, 2009                                Respectfully submitted,

                                                   GREENBERG TRAURIG, LLP

                                                   By:      /s/   Hal M. Hirsch
                                                          Hal M. Hirsch
                                                          David Jay
                                                   200 Park Avenue
                                                   Florham Park, New Jersey 07932
                                                   (973) 360-7900

                                                   *Attorneys for the AremisSoft Liquidating Trust*

---

to resolve claims by means of the Chapter 11 filing for AremisSoft.  In fact, some of these same innocent directors continued functioning as directors and officers of the publicly traded Softbrands, which was a successor to AremisSoft and spun-off in the AremisSoft bankruptcy. LaSala Decl. at ¶ 12.    George Ellis and David Latzke, former directors and officers of AremisSoft and of SoftBrands, will testify to this precise factual issue if this case proceeds.  The presence of these innocent directors also demonstrates that Kyprianou and Poyiadjis were not "sole actors" and therefore the adverse interest exception to *in pari delicto* applies in this case.