UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

------------------------------------------------------x
                                                      :   No. 09-CV-00968 (JAP)
JOSEPH P. LASALA and                                  :
FRED S. ZEIDMAN, as CO-TRUSTEES                       :   Honorable Joel A. Pisano
of the AREMISSOFT CORPORATION                             United States District Judge
LIQUIDATING TRUST,                                    :

                        Plaintiffs,                   :   Motion Returnable:
                                                          July 20, 2009
            v.                                        :

MARFIN POPULAR BANK PUBLIC                            :   Electronically Filed
COMPANY, LTD.,
                                                      :
                        Defendant.
                                                      :
------------------------------------------------------x

## REPLY MEMORANDUM OF LAW OF DEFENDANT MARFIN POPULAR BANK IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

| | |
|---|---|
| LOWENSTEIN SANDLER PC | ALLEN & OVERY LLP |
| Robert J. Kipnees | Todd S. Fishman |
| 65 Livingston Avenue | 1221 Avenue of the Americas |
| Roseland, New Jersey 07068 | New York, New York 10020 |
| (973) 597-2500 | (212) 610-6300 |
| rkipnees@lowenstein.com | todd.fishman@newyork.allenovery.com |
| | |
| | *Attorneys for Defendant* |
| | *Marfin Popular Bank Public Co Ltd* |

Dated: July 13, 2009

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

ARGUMENT ......................................................................................................... 2

    I.    The Complaint Should Be Dismissed Because The
        Court Lacks Personal Jurisdiction Over The Bank ..................... 2

    II.   The Complaint Should Be Dismissed Under
        The Doctrine Of Forum Non Conveniens ................................. 6

    III.  The Complaint Fails To State A Claim For Relief
        And Therefore Should Be Dismissed ....................................... 10

    IV.  Plaintiffs' Claims Are Barred By The
        Applicable Statute Of Limitations ............................................ 12

    V.   Plaintiffs' Claims Are Barred By
        The Doctrine Of In Pari Delicto ............................................... 14

CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

## CASES

American Int'l Group v. Greenberg,
   No. 769-VCS, 2009 WL 1684808 (Del. Ch. June 17, 2009) .............................. 14

Asahi Metals Industrial Co. v. Superior Court of California,
   480 U.S. 102 (1987) ........................................................................................ 1

Ashcroft v. Iqbal,
   129 S. Ct. 1937, 2009 WL 1361536 (U.S. May 18, 2009) ................ 5, 10, 11, 12

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007) ................................................................................ 10, 12

Burger King Corp. v. Rudzewicz,
   471 U.S. 462 (1985) ........................................................................................ 3

Cenco Inc. v. Seidman & Seidman,
   686 F.2d 449 (7th Cir. 1982) ......................................................................... 15

Dewey v. Volkswagen AG,
   558 F. Supp 2d 505 (D.N.J. 2008) .................................................................. 6

Evesham Township Bd. of Ed. v. Vitetta Group,
   No. 10565-05, 2008 WL 4735883 (N.J. App. Div. March 5, 2008) ................. 13

Gulf Oil Corp. v. Gilbert,
   330 U.S. 501 (1947) ...................................................................................... 10

IMO Indus., Inc. v. Kiekert AG,
   155 F.3d 254 (3d Cir. 1998) ............................................................................ 4

In re CBI Holding Company, Inc.,
   529 F.3d 432 (2d Cir. 2008) .......................................................................... 15

Kirschner v. Grant Thornton LLP,
   No. 07 Civ. 11604 (GEL), 2009 WL 996417 (S.D.N.Y. April 14, 2009) .. 14, 15

LaSala v. Bank of Cyprus Public Co. Ltd.,
    510 F. Supp. 2d 246 (S.D.N.Y. 2007) .......................................................... 1, 6, 9

Lum v. Bank of America,
    361 F.3d 217 (3d Cir. 2004)............................................................................. 11

Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n,
    107 F.3d 1026 (3d Cir. 1997)............................................................................. 5

Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc., 983 F.2d 551,
    557 (3d Cir. 1993) ........................................................................................ 3, 4

Miller Yacht Sales, Inc. v. Smith,
    384 F.3d 93 (3d Cir. 2004)................................................................................ 5

NCP Litigation Trust v. KPMG LLP,
    187 N.J. 353, 901 A.2d 871 (2006) ................................................................ 14

Neuhart v. Trust Co. of New Jersey,
    No. L-380-05, 2008 WL 2415281 (N.J. App. Div. June 17, 2008).................. 13

NR Media, Inc. v. Too Much Media,
    No. 06-3988, 2008 WL 544670 (D.N.J. Feb. 26, 2008)..................................... 4

Piper Aircraft Co. v. Reyno,
    454 U.S. 235 (1981).......................................................................................... 9

Toys "R" Us, Inc. v. Step Two, S.A.,
    318 F.3d 446 (3d Cir. 2003).............................................................................. 5

Wexco v. Diesel Equip.,
    No. 06-2106, 2006 WL 2355396 (D.N.J. Aug. 14, 2006).................................. 4

Windt v. Qwest Communc's Int'l, Inc.,
    544 F. Supp. 2d 409 (D.N.J.),
    aff'd, 529 F.3d 183 (3d Cir. 2008)..................................................................... 7

## STATUTES

28 U.S.C. § 1782 .................................................................................................... 8

Local Civil Rule 7.2(a) ........................................................................................... 6

This case finely illustrates the Supreme Court's observation that given the "unique burdens" placed on a party "who must defend oneself in a foreign legal system," "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." Asahi Metals Indus. Co. v. Superior Court of California, 480 U.S. 102, 114-15 (1987). Clearly, the burden on the Bank in this case is severe. To defend this case on the merits, the Bank would need to traverse the distance between its home base of Cyprus and New Jersey and, moreover, to submit to proceedings under a foreign nation's judicial system and to the Trustees' claims under foreign law, all in a foreign language.

But nowhere do plaintiffs justify this great inconvenience to the Bank by satisfying their burden to show that this Court may exercise personal jurisdiction over the Bank. There are simply no contacts, alleged or otherwise shown, between the Bank and New Jersey. In addition, plaintiffs only respond superficially, if at all, to the Bank's other arguments that mandate dismissal. Plaintiffs fail to identify any neutral principle that would suggest a basis for this Court to depart from Judge Haight's dismissal on forum non conveniens grounds of plaintiffs' similar action against the Bank of Cyprus. See LaSala v. Bank of Cyprus Public Co. Ltd., 510 F. Supp. 2d 246 (S.D.N.Y. 2007). Plaintiffs' responses to the Bank's defenses based on failure to state a claim, statute of limitations and in pari delicto either ignore controlling Supreme Court precedent or rely on cases that lend no support to their arguments. Accordingly, plaintiffs' complaint should be dismissed.

## ARGUMENT

I.   The Complaint Should Be Dismissed Because The
     <u>Court Lacks Personal Jurisdiction Over The Bank</u>

Central to plaintiffs' argument that this Court has personal jurisdiction over the Bank (and that New Jersey is a proper forum) is the assertion that AremisSoft "had its principal place of business in New Jersey." (Opp. Mem. at 1.)[1] This is an overstatement. AremisSoft was a global corporation, organized under the laws of Delaware, with its U.S. headquarters in New Jersey. It maintained other offices in London, Cyprus and India. The company's by-laws, effective April 1999, fixed the "principal office for the transaction of the business of the Corporation" in London, England.[2] Plaintiffs never disclose this fact, either in their complaint or various court filings to date, and for good reason -- it is fatal to their opposition to the Bank's procedural defenses.

Specifically, plaintiffs offer no basis to establish personal jurisdiction over the Bank. Plaintiffs openly concede in their opposition papers that they do not allege general jurisdiction in their complaint. (Opp. Mem. at 6.)

Attempting to establish specific jurisdiction -- another ground not plead in the complaint -- plaintiffs principally seek to rely on the "purposeful availment"

---

[1]   References to Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss the Complaint are shown as "Opp. Mem. at ___."

[2]   Exhibit R to Supplemental Declaration of Todd S. Fishman dated July 13, 2009.

2

test set forth in Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985). Burger King, however, is inapposite to this case. There, the Supreme Court found that the exercise of long-arm jurisdiction over a Michigan franchisee in Florida did not offend due process. The operative facts were that the out-of-state Michigan franchisee, himself, initiated contacts that created a substantial connection with Burger King's home state of Florida; he "reached out beyond Michigan" and negotiated with a Florida corporation a long-term franchise agreement which expressly provided that all disputes would be governed by Florida law; he refused to make contractually required payments due in Florida; and he continued to use Burger King's trademarks following termination. Id. at 479-81.

Plaintiffs' complaint in this case against the Bank involves diametrically opposite facts from those present in Burger King: it is undisputed that AremisSoft and its corrupt insiders initiated the relationship with the Bank, not the other way around. (E.g., Compl. ¶ 37 ("From 1999 through 2002, Kyprianou opened accounts at Laiki Bank in the name of AremisSoft and the names of several of its subsidiaries and divisions."). Further, there was no substantial connection between the Bank and New Jersey because any banking relationship existed between the Bank in Cyprus and AremisSoft's principal office in London, as the company's bylaws stipulated. Because the Bank itself did not purposefully engage in activities in New Jersey, plaintiffs cannot demonstrate that this Court has specific jurisdiction over the Bank. See Mellon Bank (East) PSFS, N.A. v. DiVeronica

3

Bros., Inc., 983 F.2d 551, 557 (3d Cir. 1993) (district court's finding of specific jurisdiction reversed, holding that "[c]ontracting with a resident of the forum state does not alone justify the exercise of personal jurisdiction over a non-resident defendant . . . , particularly where, as here, the out-of-state defendant executed the 'contract' only at the behest of the resident").

For similar reasons, plaintiffs cannot find shelter in the Calder effects test. AremisSoft and its two former main principals opened the subject accounts, and the Bank administered those accounts, in Cyprus. Plaintiffs point to no specific contacts "which demonstrate that [the Bank] *expressly aimed* its tortious conduct at [New Jersey] and thereby made [New Jersey] the focal point of the tortious activity." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265 (3d Cir. 1998) (emphasis in original). Plaintiffs misplace reliance on NR Media, Inc. v. Too Much Media, No. 06-3988, 2008 WL 544670 (D.N.J. Feb. 26, 2008). A defamation action, NR Media involved a defendant that "aimed his allegedly libel comments at a New Jersey entity and allegedly interfered with that entity's defense of a New Jersey action." Id. at *6. No comparable facts are alleged in this case. See Wexco v. Diesel Equip., No. 06-2106, 2006 WL 2355396, at *8 (D.N.J. Aug. 14, 2006) ("Just because it is reasonably foreseeable that New Jersey could be affected by [the defendant's] act does not make it sufficient to overcome an implication that New Jersey was not the focal point of the dispute.").

4

Last, plaintiffs affirmatively concede, as they must, that the Third Circuit has determined that New Jersey courts have not recognized the conspiracy theory of jurisdiction. (Opp. Mem. at 6 n.3 (citing Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 102 n.8 (3d Cir. 2004).)

Recognizing their failure in pleading, plaintiffs grasp for a foothold but ultimately overreach. Plaintiffs invite the Court to permit discovery on a general jurisdiction theory. But, as the Supreme Court recently reinforced, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 2009 WL 1361536, at *13 (U.S. May 18, 2009). And under established Third Circuit law, jurisdictional discovery is only permitted "[i]f a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003). Because plaintiffs admittedly have not plead facts under a general jurisdiction theory, plaintiffs' "clearly frivolous" jurisdictional allegations do not enable them to embark on a fishing expedition in search of a theory.[3] See Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997).

---

[3] Plaintiffs have filed a "Conditional Motion for Jurisdictional Discovery" along with their opposition papers. The Bank will respond in full to that motion in a separate submission.

II.   The Complaint Should Be Dismissed Under
      The Doctrine Of Forum Non Conveniens

Plaintiffs do not dispute the main connections between this action and Cyprus:

- the bank accounts through which Kyprianou and Poyiadjis purportedly engaged in alleged wrongdoing were opened at, and administered by, the Bank in Cyprus;
- the substantial majority of witnesses and documents relating to the allegations against the Bank are located there;
- plaintiffs already are engaged in litigation in Cyprus against the primary actors in the same wrongdoing that is the subject of this action.

Nor do plaintiffs deny that their filing of this action against the Bank gives rise to piecemeal litigation on both sides of the Atlantic, resulting in duplication of proof, the risk of inconsistent judgments and a waste of judicial resources.

Rather, plaintiffs attempt to defend their decision to ask a New Jersey court to resolve one small piece of a much larger dispute they are pursuing in the Cyprus courts by pointing to their purported status as U.S. residents.[4]  (Opp. Mem. at 10.) This argument quickly dissolves against the heat of two arguments. First, this same argument was specifically rejected by Judge Haight in Bank of Cyprus, 510 F. Supp. 2d at 256-58, and plaintiffs fail to explain why this argument should carry

---

[4]   As part of their opposition papers, plaintiffs submit a declaration by Joseph LaSala.  Substantially all of Mr. LaSala's declaration violates Local Civil Rule 7.2(a) as not based on personal knowledge and containing argument.  As a result, his declaration should be disregarded by the Court.  See, e.g., Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 510 n.1 (D.N.J. 2008).

6

any greater weight in a sister federal court. Second, plaintiffs overstate AremisSoft's connection to New Jersey. As previously mentioned, AremisSoft's principal office for the transaction of business was in London. This point decidedly undermines plaintiffs' argument that its choice of forum should be accorded presumptive deference. See Windt v. Qwest Communc's Int'l, Inc., 544 F. Supp. 2d 409, 417 n.11 (D.N.J.) (concluding that "the degree of deference moves along a sliding scale" and if "plaintiff's choice of forum cannot be supported by bona fide connections, the choice of forum warrants less deference"), aff'd, 529 F.3d 183 (3d Cir. 2008). Plaintiffs do not articulate any legitimate reason for avoiding Cyprus -- where they already are pursuing claims against the primary actors in the alleged AremisSoft fraud, and where the witnesses and documents are located -- and choosing instead to sue an alleged secondary actor in the same alleged wrongdoing thousands of miles away from its home country.

Indeed, a review of the Gilbert private and public interest factors confirm that Cyprus is the most convenient forum. A key element of plaintiffs' case is whether the Bank employees responsible for accounts used by Kyprianou and Poyiadjis knew of their alleged wrongdoing. There is no dispute that the substantial majority of percipient witnesses, including Kyprianou and current and former employees of the Bank, are based in Cyprus. By contrast, almost all of the witnesses plaintiffs identify lack first-hand knowledge:

7

- Plaintiffs assert that Joseph LaSala, who lacks first-hand knowledge of the events, will testify as to "damages sustained to AremisSoft and its former investors." (Declaration of Joseph P. LaSala dated July 6, 2009 ("LaSala Decl.") ¶ 13.) Still, he makes the extraordinary assertion that he cannot testify in Cyprus because "it would be disruptive to my [law] practice if I had to travel to Cyprus to testify in this matter." (Id.) Having chosen to act as a trustee in this matter, in which litigation in Cyprus was explicitly contemplated, LaSala's own personal reluctance to travel to Cyprus is entitled to no weight.

- Plaintiffs identify three other witnesses (Robert Peak, George Ellis and David Latzke), despite the fact that none is mentioned in the complaint. Peak can only offer hearsay testimony based on his review of "bank records." (Id. ¶ 10.) Neither Ellis nor Latzke appear unable to travel to Cyprus.

- Plaintiffs also identify Roys Poyiadjis. While plaintiffs make the carefully crafted assertion that he is unable to travel to Cyprus "at this time" (Opp. Mem. at 11), his bail bond allows international travel with government and court approval. (LaSala Decl. ¶ 7.)

It is important to stress that there could not be a meaningful trial in New Jersey because key Cyprus-based non-party witnesses cannot be compelled to testify in New Jersey, and Kyprianou and his associates would not appear here voluntarily. While both Cyprus and the U.S. are parties to the Hague Evidence Convention, plaintiffs do not dispute that the taking of evidence from Kyprianou or any other non-party witness in Cyprus would yield only a summary dictated by the Cyprus judge and not an actual transcript or video-tape of testimony. By contrast, if the action proceeded in Cyprus, the parties could obtain testimony from any witness based in the United States through 28 U.S.C. § 1782, which permits the taking of evidence through the Federal Rules of Civil Procedure, yielding a deposition transcript or video-taped testimony.

8

Plaintiffs seek to minimize the significant point that if this case were heard in Cyprus, the Bank could implead Kyprianou and others and resolve all the issues in one trial. But in dismissing a case on forum non conveniens grounds in favor of Scotland, the Supreme Court rejected the identical argument that plaintiffs now make about proceeding on a separate track (Opp. Mem. at 13): "It is true, of course, that if Hartzell and Piper were found liable after a trial in the United States, they could institute an action for indemnity or contribution against these parties in Scotland. It would be far more convenient, however, to resolve all claims in one trial." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 267-68 (1981).

Finally, plaintiffs have no answer to Judge Haight's conclusion that the public interest factors in the context of this case decidedly favor Cyprus over the United States. Bank of Cyprus, 510 F. Supp. 2d at 265. While plaintiffs assert that "Cypriot banking regulations are not likely to govern the legal issues in this case" (Opp. Mem. at 14), this is simply not credible. Plaintiffs assert a breach of contract claim and, plainly, Cyprus (not U.S.) law will determine whether the Bank "violated" the provisions of the alleged contract. (See Opp. Mem. at 22-23.) Moreover, as the Bank is regulated by the Central Bank of Cyprus and the accounts were maintained in Cyprus, Cyprus (not U.S.) regulations will determine whether the Bank properly administered its accounts. To the extent plaintiffs argue that the Bank in Cyprus was obligated to adhere to more restrictive U.S. banking regulations (Opp. Mem. at 14 n.7), established notions of prescriptive comity

9

strongly militate against that result, and thus function as another factor favoring the Cyprus forum. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947) ("There is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern case, rather than having a court in some other forum untangle problems in conflict of law, and in law foreign to itself.").

### III. The Complaint Fails To State A Claim For Relief And Therefore Should Be Dismissed

Plaintiffs' opposition papers fail even to acknowledge the Supreme Court's most recent pleading decision in Ashcroft v. Iqbal. This oversight of controlling authority is easily explained: the procedures set forth in Iqbal conclusively refute any argument by plaintiffs that they state a claim for relief.

In Iqbal, the Supreme Court expressly reaffirmed the "plausibility" standard of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); determined that the standard applies to "all civil actions and proceedings in the United States district courts"; and then mandated a "two-pronged approach" to determine the sufficiency of a complaint. 2009 WL 1361536, at *12-13. The Court held that a district court must first identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth" and then determine whether any well-pled factual allegations "plausibly give rise to an entitlement to relief." Id. at *13. But "where the well-pleaded facts do not permit the court to infer more than the mere

10

possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." Id.

When measured against the Rule 8 standards -- let alone the more exacting Rule 9(b)[5] -- the scant factual allegations in plaintiffs' complaint do not sustain any of the three claims for relief. The complaint contains 63 enumerated paragraphs. Of those paragraphs, only eleven purport to set out substantive allegations against the Bank. (See Compl. ¶¶ 37-47.) None of those eleven paragraphs, however, alleges specific non-conclusory facts which support an entitlement to relief.

For example, for the aiding and abetting breach of fiduciary duty claim, plaintiffs' statement in their brief that the Bank "knowingly participated in the breaches of duty by the officers" (Opp. Mem. at 20) is not supported by any paragraph of the complaint to which they cite.[6] As the Supreme Court intoned, the right to aver knowledge generally does not give a pleader "license to evade the less

---

[5] Plaintiffs' argument that Rule 9(b) does not govern their aiding and abetting breach of fiduciary duty and conspiracy claims is wrong. (Opp. Mem. at 18.) The Third Circuit's decision in Lum v. Bank of America, 361 F.3d 217 (3d Cir. 2004), squarely holds that Rule 9(b) applies to "all claims based on fraud." Id. at 220. Should plaintiffs' allegations on those two claims somehow meet Rule 8's standards, they clearly fail under Rule 9(b) for the reasons set forth in the Bank's opening brief. Indeed, while plaintiffs argue that their claims are not grounded in fraud, nevertheless they urge the Court not to apply Rule 9(b) prior to discovery because it "might allow sophisticated defendants to obfuscate the particulars of their fraud." (Opp. Mem. at 19.)

[6] Plaintiffs cite to paragraphs 18, 41, 44, and 50 to 52 of their complaint. (Opp. Mem. at 21.) Those paragraphs only contain boilerplate assertions of

11

rigid -- though still operative -- strictures of Rule 8." Iqbal, 2009 WL 1361536, at *17. For their purported conspiracy claim, plaintiffs baldly assert that the "goals of the conspiracy are inferable from . . . the inherently wrongful and highly suspicious nature of the transactions" (Opp. Mem. at 22), but refer to no specific well-pled facts showing that the Bank "acted in concert" with AremisSoft's corrupt insiders or "understood the objectives" of the alleged scheme (Compl. ¶ 55). With respect to the breach of contract claim, plaintiffs argue the remarkable point that they "are not required to identify specific contract terms at issue." (Opp. Mem. at 23.) This clearly does not suffice under Twombly and Iqbal. Moreover, plaintiffs cite no authority for their novel assertion that the Bank breached any actual or implied contractual duty by allowing Kyprianou and Poyiadjis -- authorized accounts signatories -- to transfer money into and out of AremisSoft and other accounts. (See Opp. Mem. at 23.)

IV.  Plaintiffs' Claims Are Barred By The
     Applicable Statute Of Limitations

In its opening brief, the Bank established that plaintiffs' claims accrued no later than June 24, 2002 and that their claims thus expired no later than June 24, 2008, about nine months before plaintiffs filed the complaint on March 4, 2009. In response, plaintiffs claim they first discovered a basis for their claims against the

---

knowledge -- "knew or had reason to know," "knew or was willfully blind" and "knew or acted with willful blindness" -- which are insufficient under Iqbal.

12

Bank in late 2005 from documents obtained from the United Kingdom and British Virgin Islands. (Opp. Mem. at 25.) Plaintiffs, however, do not identify a single fact regarding the Bank that they discovered from those later obtained materials.

In addition, plaintiffs argue that equitable tolling should apply because the Bank actively concealed vital information from the Trust. (Opp. Mem. at 25.) But the two cases plaintiffs cite to support this argument rejected equitable tolling. See Evesham Township Bd. of Ed. v. Vitetta Group, No. 10565-05, 2008 WL 4735883, at *14-15 (N.J. App. Div. March 5, 2008) (finding tolling inapplicable where plaintiff failed to prove misrepresentation or concealment by defendant); Neuhart v. Trust Co. of New Jersey, No. L-380-05, 2008 WL 2415281, at *6-7 (N.J. App. Div. June 17, 2008) (finding tolling inapplicable where plaintiff did not act reasonably and with due diligence).

Plaintiffs also argue that the Bank fraudulently concealed information from the Trust. (Opp. Mem. at 27.) Nevertheless, plaintiffs fully admit that the Bank has already produced relevant documents from its U.K. branch (LaSala Decl. ¶ 16), and plaintiffs point to no instance where the Bank disregarded a court order, in any country, to produce information. Moreover, while plaintiffs appear to acknowledge that fraudulent concealment is subject to Rule 9(b)'s strict pleading requirements, plaintiffs' conclusory statements do not amount to fraudulent concealment. (See Opp. Mem. at 27.)

13

V.  Plaintiffs' Claims Are Barred By
    The Doctrine Of In Pari Delicto

In its opening brief, the Bank established that the doctrine of in pari delicto bars plaintiffs' claims. Plaintiffs respond with two main arguments. Both fail as a matter of law.

Plaintiffs first argue that the decision in NCP Litigation Trust v. KPMG LLP, 187 N.J. 353, 901 A.2d 871 (2006), prevents the Bank from benefiting from the imputation defense. Plaintiffs are incorrect. NCP does not apply to the circumstances of this case, as it narrowly held that "when an auditor is negligent within the scope of its engagement, the imputation doctrine does not prevent corporate shareholders from seeking to recover." Id. at 384, 901 A.2d at 890.

Second, plaintiffs argue that the "adverse interest" exception applies where "wrongful acts are carried out by rogue agents who act adversely to the interest of the principal." (Opp. Mem. at 29.) Plaintiffs are incorrect on this point as well. Foremost, plaintiffs' point is soundly rejected by two recent opinions applying the in pari delicto doctrine, among others cited in the Bank's opening brief. See American Int'l Group v. Greenberg, No. 769-VCS, 2009 WL 1684808, at *7, 13-14 (Del. Ch. June 17, 2009) (imputing AIG insiders' misconduct to the company and thereby dismissing claims brought derivatively against AIG's alleged third-party co-conspirators for fraud, conspiracy and aiding and abetting breach of fiduciary duty); Kirschner v. Grant Thornton LLP, No. 07 Civ. 11604 (GEL), 2009

14

WL 996417, at *10 (S.D.N.Y. April 14, 2009) (imputing the Refco insiders' misconduct to the debtor and thereby dismissing claims brought by the litigation trust against certain Refco professionals and banks for fraud, breach of fiduciary duty and malpractice). In addition, the innocent insider exception, cited by plaintiffs (Opp. Mem. at 30 n.20), has been rejected by courts as well. See In re CBI Holding Company, Inc., 529 F.3d 432, 447 n.5 (2d Cir. 2008); Cenco Inc. v. Seidman & Seidman, 686 F.2d 449, 454-56 (7th Cir. 1982).

## CONCLUSION

For the reasons stated in its opening brief and in this reply, defendant Marfin Popular Bank respectfully requests that the Court dismiss plaintiffs' complaint with prejudice and without leave to replead.

Dated: New York, New York
July 13, 2009

Respectfully submitted,

ALLEN & OVERY LLP

By: _____
Todd S. Fishman
1221 Avenue of the Americas
New York, New York 10020
todd.fishman@newyork.allenovery.com

Robert J. Kipnees
LOWENSTEIN SANDLER PC
65 Livingston Avenue
Roseland, New Jersey 07068
rkipnees@lowenstein.com

*Attorneys for Defendant*
*Marfin Popular Bank Public Co Ltd*