**GREENBERG TRAURIG, LLP**
Hal M. Hirsch (HH 0417)
David Jay (DJ 7221)
200 Park Avenue
Florham Park, New Jersey 07932-0677
Phone:    (973) 360-7900
Fax:        (973) 301-8410

*Attorneys for Joseph P. LaSala and Fred S. Zeidman,*
*as Co-Trustees of the AremisSoft Liquidating Trust, Plaintiffs*

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH P. LASALA and FRED S. ZEIDMAN, as CO-TRUSTEES of the AREMISSOFT CORPORATION LIQUIDATING TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>MARFIN POPULAR BANK PUBLIC COMPANY, LTD.,<br><br>Defendant. | Civil Action No.<br>09-CV-00968 (JAP) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO SUPPLEMENT THEIR CONDITIONAL MOTION FOR <u>JURISDICTIONAL DISCOVERY</u>

## INTRODUCTION

The Plaintiffs, Joseph P. LaSala and Fred S. Zeidman, Co-Trustees of the AremisSoft Corporation Liquidating Trust ("Plaintiffs" or "Trust"), by and through counsel, seek an order from the Court granting the Trust leave to supplement its previously-filed Conditional Motion for Jurisdictional Discovery, dated July 6, 2009 ("Motion for Jurisdictional Discovery").

On June 10, 2009, the Defendant, Marfin Popular Bank Public Company, Ltd. ("Defendant" or "Laiki") filed its motion to dismiss based on, among other things, lack of personal jurisdiction and *forum non conveniens*. The Plaintiffs believe that the allegations of their Complaint, on their face, and the current record are more than sufficient to support the exercise of personal jurisdiction over Laiki and to overcome Laiki's *forum non conveniens* argument.

Briefly recapping the facts before this Court, Laiki had a continuing and extensive business relationship with *inter alia*, **AremisSoft** which had its principal office in New Jersey.

First, Laiki had both a depository and lending relationship with AremisSoft during the same period that the bank was aiding Poyiadjis' and Kyprianou's breaches of fiduciary duty. Attached to the Hirsch Declaration accompanying this Memorandum as Exhibit A, is a page from AremisSoft's "General Ledger-1999" and a page entitled AremisSoft's "Trial Balance" from June 30, 2000. These

documents contain entries reflecting payments of interest to Laiki's predecessor (Popular Bank). There entries suggest that Laiki had a significant lending relationship with AremisSoft from 1999 through at least the end of June of 2000.[1] Moreover, the general ledger entry for this limited period identifies several million dollars in deposits into and transfers out of the Laiki account, as well as the use of this account by AremisSoft in December 1999, presumably in connection with certain AremisSoft's fraudulent transactions which occurred at that time. Throughout this period at least through the end of June 2000, Laiki was well aware that AremisSoft was a United States Company, publicly held, traded on a United States Stock Exchange, and maintained its principal office in New Jersey.

AremisSoft accounts established at Laiki, which held millions of dollars, were utilized by Poyiadjis and Kyprianou to breach their fiduciary duties. As noted above, the limited documents available to the Trust evidence that monies from these accounts at Laiki were diverted for fraudulent activities and the Laiki account was used in connection with certain fictitious transactions reported on

---

[1] The documents in Exhibit A of the Hirsch Declaration are the only ones produced to date concerning the lending relationship between Laiki and AremisSoft. The Trust is seeking production of Laiki's documents. Laiki's United States counsel has advised that they have received the equivalent of five to six boxes of documents (as some are in hard copy and some are stored in disk format) from Laiki in compliance with the Memorandum Order and Opinion of Magistrate-Judge Arpert (Aug. 7, 2009) and that such documents represent all of the known and existing documents of the Bank. The Trust has neither any certification verifying the completeness of Laiki's production to its United States counsel, nor does it have an inventory of the documents so produced, as the Order of the Magistrate Judge did not require a certification of completeness or an inventory of the documents.

AremisSoft's books and to the SEC, all in furtherance of Poyiadjis' and Kyprianou's breaches of fiduciary duty.

Second, in connection with the establishment of Laiki's banking relationship with AremisSoft, Laiki requested and obtained in or about October 1999 an opinion letter (attached to the Hirsch Declaration as Exhibit B) from AremisSoft's United States counsel, Scott Bartel, whereby he advised the Bank as follows:

> "AremisSoft is a validly organized corporation under the laws of the State of Delaware in the United States of America;
>
> On April 22, 1999, AremisSoft listed its Common Stock on the NASDAQ National Market System which is the largest over-the-counter stock market in the United States;
>
> As of October 25, 1999, AremisSoft has 15.3 million shares of Common Stock issued and outstanding with a market capitalization value of approximately $212 million USD based upon the closing share price on the NASDAQ NMS on October 22, 1999;
>
> Under the General Corporations law of the State of Delaware, AremisSoft is authorized and empowered to borrow money in its corporate name and pledge its assets in order to secure any obligation in connection with any borrowing of money;
>
> Under the General Corporations law of the State of Delaware, AremisSoft's Chief Executive Officer, Dr. Lycourgos K. Kyprianou, together with either the Company's Chief Financial Officer, Mr. Michael Tymivios or AremisSoft's Corporate Attorney, Mr. Noel Voice have the corporate authority to bind AremisSoft to contracts for any borrowing and/or pledge of assets to secure such borrowing; and
>
> Under the General Corporations Law of the State of Delaware, AremisSoft has the corporate authority to borrow money for purposes of transferring the borrowed funds to a subsidiary of AremisSoft as either a loan or as a contribution to the share capital of the

subsidiary."

Further, in addition to its extensive relationship with AremisSoft, Laiki had a significant relationship with Poyiadjis, AremisSoft's Co-CEO, during the time that he was located in the United States and engaging in breaches of his fiduciary duties. During this period Laiki extended significant credit to companies which Poyiadjis beneficially owned and controlled. Laiki secured these loans by accepting and holding as collateral over 776,000 restricted shares of AremisSoft stock. These AremisSoft stock certificates held by Laiki identified the transfer agent as: "Olde Monmouth Stock Transfer Co., Inc. (Atlantic Highlands, New Jersey)," and contained the signature of an "authorized officer" of the transfer agent. These certificates further noted that: "This certificate and the shares represented hereby are subject to the laws of the State of Delaware and to the Certificate of Incorporation and By-Laws of the Corporation. ... This certificate is not valid until countersigned by the Transfer Agent." These loans extended to a Poyiadjis beneficially owned and controlled entity, which were secured by AremisSoft stock, assisted Poyiadjis in his breaches of fiduciary duty.

These continuing business relationships by Laiki in New Jersey and in the United States more than satisfy a prima facie case for jurisdiction under the Supreme Court's "purposeful availment" test established by *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985). The Court made it clear in *Burger King* that

5

"where the defendant 'deliberately' has engaged in significant activities within a State, **or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there**." 471 U.S. at 475-76 (citations omitted) (emphasis added). A defendant like Laiki which creates continuing obligations with citizens of another state, as Laiki did with AremisSoft, is "subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (citation omitted). In such cases, it must follow that the Constitution's requirement that a defendant have fair warning of the possibility of being haled into court is satisfied. 471 U.S. at 472. Further, by doing business with a New Jersey company, by accepting the AremisSoft shares as collateral, by seeking and obtaining the protections afforded by United States and New Jersey law, by its dealings with AremisSoft's United States counsel, and by its dealings with Poyiadjis (located in the United States); Laiki had a reasonable expectation of being haled into a New Jersey court.

These facts also are more than sufficient to overcome Laiki's *forum non conveniens* argument. The Trust's choice of this forum deserves the highest level of deference because the Trustees are American citizens appointed by this American court in the bankruptcy proceeding of a corporation organized under American (Delaware) law with its principal offices in New Jersey. All of those

6

factors that pointed to the foreign forum in *Windt v. Qwest Communications International. Inc.*, 529 F.3d 183, 190-191 (3d Cir. 2008) point to this forum in this case. By doing business with a New Jersey company, by operating an office in New York, by accepting the AremisSoft shares as collateral, by seeking and obtaining the protections afforded by United States and New Jersey law, by its dealings with AremisSoft's United States counsel, by its dealings with Poyiadjis (located in the United States), and by transferring its documents to its United States' counsel as ordered by Magistrate-Judge Arpert, Laiki's strong connections to the United States are more than sufficient to deny Laiki's request for a *forum non conveniens* dismissal.

In the event that the Court believes that further fact exploration is needed to rule on the motion to dismiss, Plaintiffs have conditionally sought discovery to demonstrate, beyond any doubt, that the Court has a sufficient basis to assert personal jurisdiction over Laiki and that the dismissal on *forum non conveniens* ground is unwarranted.

To that end, Plaintiffs seek leave to file Supplemental Jurisdictional Interrogatories ("Interrogatories") and to take the deposition of Defendant Laiki in the United States pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure.[2]  The Interrogatories consist of eight narrowly-tailored interrogatories especially directed at unearthing information regarding the personal jurisdiction and *forum non conveniens* issues raised by Defendant.  In addition, the Matters of Inquiry identified in the Notice of Rule 30(b)(6) Deposition likewise seek information necessary to the disposition of Defendant's motion to dismiss the Complaint on personal jurisdiction and *forum non conveniens* grounds  This limited discovery should reveal that a majority of the witnesses who have important testimony to the causes of action and potential defenses in this case do not reside in Cyprus, but in the United States, and that the majority of the relevant documents are located in the United States.

## I.   DISCOVERY ON PERSONAL JURISDICTION AND *FORUM NON CONVENIENS*

As the Third Circuit has declared, "courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F. 3d 446, 456 (3d Cir. 2003); *see also Mellor v. Moe*, No. 05-4243 (JEI), 2006 WL 1644877 (D.N.J. June 14, 2006) (applying *Toys "R" Us* standard in granting request for discovery on personal jurisdiction and *forum non conveniens*).  Indeed, given the intense "fact-based inquiry" of the *forum non conveniens* analysis, "it behooves courts to permit

---

[2] The proposed Supplemental Jurisdictional Interrogatories are attached hereto as Exhibit A, and the proposed Notice of 30(b)(6) Deposition is attached hereto as Exhibit B.

discovery on facts relevant to *forum non conveniens* motions." *In re Bridgestone/Firestone, Inc., ATX, ATX II and Wilderness Tires Products Liability Litig.*, 131 F. Supp.2d 1027, 1030 (S.D. Ind. 2001). *Forum non conveniens* discovery "should establish what pieces of evidence are important to the cause of action and to potential defenses. Then, discovery must focus on the 'location of [these] important sources of proof.'" *Id.* (*quoting Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 451 n.3 (2d Cir. 1975)).

## II.   ELEMENTS OF THE RELATIONSHIP TO BE DISCOVERED

The first six proposed Supplemental Jurisdictional Interrogatories are aimed at filling in the gaps left by Defendant's submissions with respect to the location and accessibility of the relevant witnesses and documentary evidence in this case.

For example, although Defendant submitted a declaration attesting that "[n]one" of the "no fewer than four employees" who "were responsible for or had a role in administering accounts for AremisSoft or its former main principals" "is located in the United States," the declaration is completely silent as to where those individuals are presently located and whether they are presently subject to Laiki's control or direction. If they are subject to Laiki's control or direction, Laiki can certainly arrange for these witnesses to provide testimony in the United States. By its own admission, Laiki is a multi-national, multi-billion dollar bank and cannot claim that arranging for these witnesses to testify in the United Sates is an onerous

financial burden.  If the witnesses identified by Laiki are not subject to Laiki's control or direction, the Interrogatories inquire whether they would be willing to travel to the United States, and what relevant personal knowledge (if any) they possess.  Despite urging the Court to defer to the courts of Cyprus, the Laiki declaration does not even state that any of these individuals are currently located in Cyprus.  See Second Declaration of Stelios Hadjiosif at ¶ 9 (July 20, 2009).  Proposed Supplemental Jurisdictional Interrogatory Nos. 31 and 32 are aimed at obtaining this information.

Additionally, Defendant has been directed by Order of this Court "to preserve documents, records and data relevant to AremisSoft Corporation and its affiliates, Aremis Holdings Ltd., Lycourgos Kyprianou, Roys Poyiadjis ("Poyiadjis") and their affiliated entities," and "to transfer all such documents and data to its United States counsel . . . ." Memorandum Order and Opinion (Aug. 7, 2009).  Proposed Supplemental Jurisdictional Interrogatory Nos. 33 and 34, which track the above-quoted language, seek to confirm that all such documents have either already been transferred to the United States or are presently in the process of being transferred.  If all the relevant documents in this proceeding are confirmed

to be located in the United States, that would, of course, have a strong bearing on the *forum non conveniens* analysis.[3]

The seventh and eighth proposed Supplemental Jurisdictional Interrogatory Nos. 37 and 38 address the Defendant's practices with regard to accepting stock as collateral; more specifically its practice of accepting the stock of U.S. corporations as collateral. Laiki knew that the (now former) co-CEO of AremisSoft, Roys Poyiadjis had accounts at Laiki which he owned and controlled. These accounts included Onyx Capital, Inc. ("Onyx"). Laiki permitted Onyx, a shell company controlled by Poyiadjis and formed for the purpose of holding and selling AremisSoft stock, to open a margin account at Laiki. At the direction of Poyiadjis, Onyx deposited with Laiki 776,620 shares of AremisSoft stock as collateral for that account. Laiki knew that Poyiadjis was an insider of AremisSoft with inside knowledge at the time that Laiki took the AremisSoft stock as collateral and at the time that Laiki assisted, enabled, and abetted Poyiadjis in his breaches of fiduciary duties.

Plaintiffs knew that Poyiadjis, through Onyx, transferred AremisSoft shares to Laiki as collateral for a line of credit extended to Poyiadjis by Laiki to facilitate his margin trading activities. Thus far, the Defendant has produced no documents

---

[3] Supplemental Jurisdictional Interrogatory Nos. 35 and 36 request that Laiki identify all persons and documents Laiki consulted or obtained information from in responding to the Supplemental Jurisdictional Interrogatories.

in connection with this stock pledge transaction, the line of credit extended to Poyiadjis, or his margin trading activities.

When Laiki accepted the U.S.-listed AremisSoft stock as collateral for Poyiadjis's margin trading activities, Laiki did so knowing that it would have to seek the benefits and protections of U.S. law should it need to enforce its security interest in the AremisSoft stock and take ownership of the shares.  Moreover, at the time Laiki accepted these AremisSoft shares as collateral, Laiki maintained a U.S. office in New York, New York.  AremisSoft was an account holder at Laiki. Poyiadjis while in the U.S. maintained communication with Laiki while making use of at least part of Laiki's line of credit to facilitate his breaches of fiduciary duty.

In a stock pledge transaction, such as that between Poyiadjis/Onyx and Laiki, the parties will often prepare a stock pledge agreement executed in advance by the pledging party in order that the lender may enforce its security interest in the stock by transferring the stock to itself in the event of default.  Such agreements typically elect U.S. law where the shares pledged are from a U.S.-listed company.[4]

---

[4] The presence of a choice of law clause in a contract is one factor that the Court may consider in evaluating a defendant's contacts with this jurisdiction. *Budget Blinds, Inc. v. White*, 536 F.3d 244, 261 (3d Cir. 2008) (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)) ("[A] choice of law provision standing alone would be insufficient to confer jurisdiction, but combined with other factors, it may reinforce a party's deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.") (internal citations omitted);

Even in the absence of a stock pledge agreement, a lender must nonetheless seek recourse to U.S. law and venues in order to validly enforce its security interest in stock held as collateral. *See, e.g., Weinstein v. Schwartz*, 422 F.3d 476, 479 (7th Cir. 2005) (*citing* Del. Code tit. VI, § 9-610; *In re Copeland*, 531 F.2d 1195, 1207 (3d Cir. 1976)) ("Simply taking the shares and keeping them is not permissible means of disposing of collateral under Delaware's version of the Uniform Commercial Code. A secured party does not acquire ownership of pledged shares simply because the debtor defaults on a loan. There is a process for transferring ownership that must be followed."). In enforcing its security interest in the AremisSoft stock, transfer restrictions on the shares Laiki took as collateral would have required Laiki to obtain opinions of U.S. counsel and to formalize the transfer of ownership of the AremisSoft stock on the company's records through the transfer agent located in New Jersey. Indeed, as noted above, the identity and New Jersey address of the transfer agent is specifically set forth on the AremisSoft stock certificates obtained by Laiki as security for its loan.

---

*see also Walton Management Services, Inc. v. Southeastern Freight Lines, Inc.*, No. 07-3412, 2007 WL 3349764 at *3, (D. N.J. Nov. 9, 2007). If Laiki typically entered into agreements with its account holders requiring the deposit of U.S. securities as collateral for margin trading, and/or if these collateral deposit agreements likewise designated U.S. law as governing the deposit of U.S. securities as collateral, such facts would affect this Court's analysis as to personal jurisdiction and *forum non conveniens*.

In light of the personal jurisdiction and *forum non conveniens* arguments raised by Defendant's motion to dismiss, the Plaintiffs-and this Court-are entitled to know the details of this stock pledge transaction.

**III    DOCUMENTS NEEDED TO RULE ON DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

Prior to any ruling on the Defendant's motion to dismiss, the Plaintiffs should be allowed, at a minimum, to obtain the following categories of documents:

-All documents concerning Laiki's receipt of AremisSoft stock as collateral for Poyiadjis's margin trading activities, including all documents concerning any loans made to Poyiadjis pursuant to the line of credit secured by the AremisSoft shares, and all documents concerning the subsequent release of these shares by Laiki at the request of Poyiadjis.

-All documents concerning communications between Laiki and Poyiadjis.

-All bank records and other documents reflecting the depository relationship between AremisSoft or Poyiadjis as account holders of Laiki, including all documents concerning any account openings, sources of all deposits received on behalf of AremisSoft and/or Poyiadjis, the destination of any and all funds transferred out of the accounts held by AremisSoft and/or Poyiadjis, and any and all documents concerning checks drawn on these accounts.

-All documents concerning the making of any loans by Laiki to AremisSoft and/or Poyiadjis, including the destination of all loan transfers made from these accounts and all documents concerning the sources of any repayments.

**IV     THIS COURT SHOULD ORDER THE DEPOSITION REQUESTED BY PLAINTIFFS UNDER THE FEDERAL RULES OF CIVIL PROCEDURE.**

Plaintiffs also seek to take the deposition of Defendant in the United States pursuant to Fed. R. Civ. P. 30(b)(6). The Third Circuit has held that district courts have the discretion to enter such an order that jurisdictional discovery be taken under the Federal Rules of Civil Procedure. *In re Automotive Refinishing Paint Antitrust Litig.*, 358 F.3d 288 (3d Cir. 2004). In *Automotive Refinishing*, the Third Circuit discussed at length the Supreme Court decision in *Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct. for the S. Dist. Iowa*, 482 U.S. 522 (1987). Reviewing *Aerospatiale*, the Third Circuit noted the Supreme Court's holding that on merits discovery of a foreign defendant in an action pending in federal court, there was no requirement to first utilize the Hague Convention, rather than the Federal Rules of Civil Procedure, for such discovery. "Specifically, *Aerospatiale* holds that the Convention's language, as well as the history of its proposal and ratification by the United States, unambiguously supports the conclusion that it was 'intended as a permissive supplement, not a preemptive replacement, for other means of obtaining evidence abroad." *Automotive Refinishing*, 358 F. 3d at 300, *quoting Aeropostiale*, 482 U.S. at 536.

Stated simply, this Court has the jurisdiction to order the discovery necessary to determine if it may properly exercise jurisdiction over Laiki, and it has the discretion to require that such discovery be taken under the Federal Rules of Civil Procedure. "Because the District Court has jurisdiction over these foreign defendants to the extent necessary to determine whether they are subject to personal jurisdiction, we see no legal barrier to exercising the discretion given to trial courts by *Aeropostiale* in cases of jurisdictional discovery." *Automotive Refinishing*, 358 F.3d at 302.

The "discretion given to trial courts by *Aeropostiale*" permits this Court to order the Rule 30(b)(6) deposition as sought by the Plaintiffs. "The Federal Rules are 'the normal methods' for federal litigation involving foreign national parties unless the 'optional' or 'supplemental' Convention procedures prove to be conducive to discovery under some circumstances." *Id.* Therefore, noted the Third Circuit, "the determination of whether to resort to the Convention requires 'prior scrutiny in each case of the particular facts, sovereign interests, and likelihood that such resort will prove effective'…" *Automotive Refinishing*, 358 F.3d at 300, *quoting Aerospatiale*, 482 U.S. at 542.

In the instant case, the particular facts, the sovereign interests, and the greatest likelihood of effective jurisdictional discovery weigh strongly in favor of the discovery sought by Plaintiffs. Of vital importance, this Court has already

16

ordered the Defendant to retain and preserve its documents, records, and data by causing them to be provided to its counsel in the United States. *See* Memorandum Order and Opinion (Aug. 7, 2009). In its *forum non conveniens* argument, Laiki relied heavily on the fact that its documents and records were located in Cyprus. Now that these documents and records are in counsel's possession in his New Jersey offices, the interests of practicality and economy are clearly served by allowing the Plaintiffs to take the Defendant's Rule 30(b)(6) deposition in the same location where this Court has already ordered Laiki's documents to be produced.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Plaintiffs request that this Court issue an Order granting Plaintiffs leave to supplement their pending Conditional Motion for Jurisdictional Discovery which supplement seeks leave to file the Supplemental Jurisdictional Interrogatories and permission for Plaintiffs to take the deposition of Defendant Laiki in the United States pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.

Dated:  September 23, 2009

GREENBERG TRAURIG, LLP

By:_____/s/ Hal M. Hirsch_____
      Hal M. Hirsch
      David Jay
      200 Park Avenue
      P.O. Box 677
      Florham Park, New Jersey 07932-0677
      (973) 360-7900

*Attorneys for the AremisSoft Liquidating Trust*

# EXHIBIT A

**GREENBERG TRAURIG, LLP**
Hal M. Hirsch (HH 0417)
David Jay (DJ 7221)
200 Park Avenue
Florham Park, New Jersey  07932
Phone:  (973) 360-7900
Fax:      (973) 301-8410

*Attorneys for Joseph P. LaSala and Fred S. Zeidman,*
*as Co-Trustees of the AremisSoft Liquidating Trust, Plaintiffs*

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH P. LASALA and FRED S. ZEIDMAN, as CO-TRUSTEES of the AREMISSOFT CORPORATION LIQUIDATING TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>MARFIN POPULAR BANK PUBLIC COMPANY, LTD.,<br><br>Defendant. | Civil Action No.<br>09-CV-00968(JAP) |

## PLAINTIFFS' SUPPLEMENTAL JURISDICTIONAL INTERROGATORIES

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 33,

plaintiffs Joseph P. LaSala and Fred S. Zeidman, as Co-Trustees (the "Co-

Trustees") of the AremisSoft Corporation Liquidating Trust (the "Trust"),

hereby request that defendant Marfin Popular Bank Public Company, Ltd.

(the "Bank") answer the following interrogatories separately and fully in

writing under oath, in accordance with the Federal Rules and the

following Definitions and Instructions.

## DEFINITIONS AND INSTRUCTIONS

A.     "AremisSoft" means AremisSoft Corporation, and includes, as

the case may be, any predecessor, successor, corporate parent, affiliate,

subsidiary, division, and any partner, officer, director, , employee,

shareholder, beneficiary thereof and any accountant, attorney, agent,

representative, or any other person acting on its behalf or under its control or

direction.

B.     "Bank" or "You" means Marfin Popular Bank Public Company,

Ltd. and includes, as the case may be, any predecessor, successor, corporate

parent, affiliate, subsidiary, division, and any partner, officer, director, ,

employee, shareholder, beneficiary thereof and any accountant, attorney,

agent, representative, or any other person acting on its behalf or under its

control or direction.

C.     "Communication" means the transmittal of information (in the

form of facts, ideas, inquiries or otherwise).

2

D.    "Concerning" means referring to, describing, evidencing, or constituting.

E.    "Document" is defined to be synonymous in the meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a).

F.    Identify (With Respect to Persons).  When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment.

G.    Identify (With Respect to Documents).  When referring to documents, "to identify" means to give, to the extent known, the

  a.    Type of document;

  b.    General subject matter;

  c.    Date of the document; and

  d.    Author(s), addressee(s), and recipient(s).

H.    "Olde Monmouth" means all Olde Monmouth Stock Transfer Company, Inc., and includes, as the case may be, affiliated entities, predecessors, successors, beneficiaries, representatives, accountants, attorneys, parents, affiliates, officers, directors, subsidiaries, divisions, employees, agents, and any person acting on its behalf or under its control or direction.

3

I.     "Person" is defined as any natural person or any business, legal, or governmental entity or association.

J.     When the term "hold," "held," "holding" or like term is used in any interrogatory with respect to assets, any response should include, in addition to those instances in which the Bank has or had actual possession or custody of the asset, any instance when the asset was or is in the custody and possession of another person for the benefit of the Bank and/or its customers.

K.     When an interrogatory calls for information regarding the Bank's ownership of shares in publicly traded companies in the United States, the Bank's response may be limited, except with respect to AremisSoft shares, to instances when the amount of the shares owned by the Bank was sufficient to impose on the Bank a reporting requirement to a United States agency.

L.     When an interrogatory calls for information regarding an amount or value of something, the Bank's response should provide a reasonable approximation of the amount or value based on the best information available to the Bank.

M.     Unless otherwise specified or unless the context of an interrogatory otherwise requires, these interrogatories call for

information concerning the period from January 1, 1999 to the date of the responses to these interrogatories.

## INTERROGATORIES

31.    Identify the "no fewer than four employees" who "were responsible for or had a role in administering accounts for AremisSoft or its former main principals." Second Declaration of Stelios Hadjiosif at ¶ 9 (July 20, 2009). For each individual identified, please provide the subjects of the relevant information that he or she possesses, his or her current or last title at the Bank, his or her period(s) of employment at the Bank, and his or her involvement with respect to AremisSoft and its former principals.

32.    For each individual identified in response to Interrogatory Number 31, state whether each is presently a partner, officer, director, employee, shareholder, or beneficiary of the Bank or whether each is an accountant, attorney, agent, representative, or any other person acting on the Bank's behalf or under its control or direction. If any individual identified in response to Interrogatory Number 31 is not presently serving in any relationship to the Bank mentioned above, state whether the Bank has communicated with him or her about his or her ability and/or willingness to travel to the United States in connection with this proceeding; the individual's responses to these queries; and the grounds for any inability or

unwillingness (if any) to travel to the United States in connection with this proceeding.

33.    Identify, by category and location, any documents relevant to AremisSoft, Aremis Holdings Ltd., Lycourgos Kyprianou, Roys Poyiadjis and their affiliated entities that the Bank has in its possession, custody, or control that are not presently located -- in original or duplicate form -- in the United States.

34.    For any documents indentified in response to Interrogatory Number 33, state the steps the Bank has undertaken to transfer them to the United States, and when such transfer will take place.

35.    Identify each person who was consulted with respect to answering these interrogatories.

36.    Identify each document which the Bank consulted or which provided in part or whole the basis for any answer to these interrogatories.

37.    Identify each instance or transaction in which the Bank accepted stock or other securities of U.S. corporations as collateral for the trading or other activities of the Bank's depositors or clients.

38.    Identify the Bank's criteria for accepting U.S. securities as collateral for trading or other activities of the Bank's depositors or clients,

including any agreements governing the deposit or retention of U.S.

securities as collateral.


Dated:       Florham Park, New Jersey
September 23, 2009

GREENBERG TRAURIG, LLP


By:   ___/s/ Hal M. Hirsch_____
      Hal M. Hirsch (HH 0417)
      David Jay    (DJ 7221)
      200 Park Avenue
      Florham Park, New Jersey 07932
      (973) 360-7900

      *Attorneys for the AremisSoft*
      *Liquidating Trust*

# EXHIBIT B

**GREENBERG TRAURIG, LLP**
Hal M. Hirsch (HH 0417)
David Jay (DJ 7221)
200 Park Avenue
Florham Park, New Jersey 07932-0677
Phone:     (973) 360-7900
Fax:        (973) 301-8410

*Attorneys for Joseph P. LaSala and Fred S. Zeidman,*
*as Co-Trustees of the AremisSoft Liquidating Trust, Plaintiffs*

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH P. LASALA and FRED S. ZEIDMAN, as CO-TRUSTEES of the AREMISSOFT CORPORATION LIQUIDATING TRUST,<br><br>          Plaintiffs,<br><br>   v.<br><br>MARFIN POPULAR BANK PUBLIC COMPANY, LTD.,<br><br>        Defendant. | Civil Action No.<br>09-CV-00968 (JAP) |

### NOTICE OF FED. R. CIV. P. 30(b)(6) DEPOSITION OF MARFIN POPULAR BANK PUBLIC COMPANY, LTD.

TO:   Todd Steven Fishman         Robert J. Kipnees
        Allen and Overy, LLP           Lowenstein Sandler, P.C.
        1221 Avenue of the Americas   65 Livingston Avenue
        New York, New York 10020     Roseland, New Jersey 07068

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), Plaintiffs Joseph P. LaSala and Fred S. Zeidman, as Co-Trustees of the AremisSoft Liquidating Trust, ("Plaintiffs"), by their counsel, will take the deposition of Defendant MARFIN POPULAR BANK PUBLIC COMPANY, LTD. ("Marfin Popular Bank"), by any officer(s), director(s), employee(s), or agent(s) designated pursuant to Fed. R. Civ. P. 30(b)(6) having the most knowledge concerning the Matters for Inquiry listed on Schedule A to this Notice, on [DATE/TIME] at the offices of Greenberg Traurig, LLP, 200 Park Avenue, Florham Park, New Jersey, upon oral examination, and which will be recorded by stenographic means, before a Notary Public or other officer authorized by law to administer oaths and will continue from day-to-day, Saturdays, Sundays, and holidays excluded, until completed. You are invited to attend and cross examine.

Dated:  September 23, 2009           GREENBERG TRAURIG, LLP


                                     By:_____/s/ Hal M. Hirsch_____
                                         Hal M. Hirsch
                                         David Jay
                                         200 Park Avenue
                                         P.O. Box 677
                                         Florham Park, New Jersey 07932-
                                         0677
                                         (973) 360-7900

                                         *Attorneys for the AremisSoft Liquidating Trust*

# SCHEDULE A

# DEFINITIONS

The following terms, as used in this Schedule A accompanying the Notice of Fed. R. Civ. P. 30(b)(6) Deposition of Marfin Popular Bank, whether or not capitalized, are defined as follows:

A.   "AremisSoft" means AremisSoft Corporation, and includes, as the case may be, any predecessor, successor, corporate parent, affiliate, subsidiary, division, and any partner, officer, director, , employee, shareholder, beneficiary thereof and any accountant, attorney, agent, representative, or any other person acting on its behalf or under its control or direction.

B.   "Bank" or "You" means Marfin Popular Bank Public Company, Ltd. and includes, as the case may be, any predecessor, successor, corporate parent, affiliate, subsidiary, division, and any partner, officer, director, , employee, shareholder, beneficiary thereof and any accountant, attorney, agent, representative, or any other person acting on its behalf or under its control or direction.

C.   "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

D.   "Concerning" means referring to, describing, evidencing, or constituting.

3

E.    "Document" is defined to be synonymous in the meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a).

F.    Identify (With Respect to Persons).  When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment.

G.    Identify (With Respect to Documents).  When referring to documents, "to identify" means to give, to the extent known, the

      a.    Type of document;

      b.    General subject matter;

      c.    Date of the document; and

      d.    Author(s), addressee(s), and recipient(s).

H.    "Olde Monmouth" means all Olde Monmouth Stock Transfer Company, Inc., and includes, as the case may be, affiliated entities, predecessors, successors, beneficiaries, representatives, accountants, attorneys, parents, affiliates, officers, directors, subsidiaries, divisions, employees, agents, and any person acting on its behalf or under its control or direction.

I.    "Person" is defined as any natural person or any business, legal, or governmental entity or association.

J.    When the term "hold," "held," "holding" or like term is used in any interrogatory with respect to assets, any response should include, in addition to those instances in which the Bank has or had actual possession or custody of the asset, any instance when the asset was or is in the custody and possession of another person for the benefit of the Bank and/or its customers.

K.    "Motion to Dismiss the Complaint" means Defendant Marfin Popular Bank Public Company, Ltd.'s Motion to Dismiss the Complaint, filed in connection with the above-captioned matter on June 10, 2009.

L.    Unless otherwise stated or the context requires, the time period covered by these Matters for Inquiry is January 1, 1999 to the present day.

## MATTERS FOR INQUIRY

1.    Any and all account records for AremisSoft and AremisSoft affiliates.

2.    Any and all documents concerning communications with AremisSoft, including but not limited to, records of all telephone conversations with AremisSoft representatives, including Roys Poyiadjis and Lycourgos Kyprianou.

3.    Any and all documents concerning communications with Olde Monmouth, including without limitations all communications to effect stock transfers by, on behalf of, or for the benefit of, any of the following individuals and/or entities:

a.    Roys Poyiadjis

5

b.     Lycourgos Kyprianou

c.     AremisSoft

d.     Quantum Group Management

e.     Inlay Group Corporation

f.     Drax Trading Limited

g.     Emerging Markets Capital Group

h.     Onyx Capital, Inc.

i.     The Atlas Trust (a/k/a Atlas Trust)

j.     Oracle Capital, Inc.

k.     The Trident Trust (a/k/a Trident Trust)

l.     Cronos Capital, Inc.

m.     Olympus Capital Investment, Inc.

n.     Aremis Holdings Limited

4.     Any and all documents concerning communications with Brown Brothers Harriman & Co. with respect to any of the entities or transactions described in Request No. 3 above.

5.     Any and all documents concerning communications with Fahnestock & Company, located in Red Bank, New Jersey, with respect to any of the transactions described in Request No. 3 above.

6

6.     Any and all documents concerning the Bank's efforts to advertise, market, solicit or otherwise publicize its services to residents of the United States and specifically to residents of New Jersey.

7.     Any and all documents the Bank consulted or which provided in part or whole the basis for the Bank's answer to Plaintiffs' jurisdiction interrogatories.

8.     Any and all documents concerning the Bank's policies, practices, or transactions with respect to the acceptance of securities as collateral from its depositors, account holders, and any and all other clients or customers.

9.     Any and all documents concerning the Bank's policies, practices, or transactions with respect to the Bank's acceptance or retention of U.S.-listed securities as collateral, or for any other purpose, either for the Bank's own account or the accounts of others.

10.    Any and all documents concerning the Bank's holding of U.S. listed securities in the name of the Bank or in another's name for the benefit of the Bank with any bank, financial institution, securities firm, or other entity in the United States, including without limitation, accounts with correspondent banks, custodial accounts holding securities, bonds or other financial instruments or any other accounts of whatever type or nature holding assets for the Bank.

11.    Any and all documents concerning accounts of persons with mailing addresses in the United States.

7

12.     Any and all documents concerning any interest (whole or partial) in real property located in the United States (i) held directly, (ii) indirectly by an affiliate, (iii) held by any other person for the benefit of the Bank or (iv) held as security for a loan whether as a mortgage, deed of trust, or any other instrument.

13.     Any and all documents concerning any interest (whole or partial) the Bank holds or held in any business entity or business venture in the United States, either directly or indirectly through an affiliate or where such interest is held by another person for the benefit of the Bank.

14.     Any and all documents concerning any agreement, contract, or understanding (whether written or oral) between the Bank and any third person in the United States for the purpose of providing goods or services to the Bank.

15.     Any and all documents concerning any person who has acted as a representative of the Bank for the purpose of promoting business in the United States.

16.     Any and all documents concerning any business trips made to the United States by Bank officials.

17.     Any and all documents concerning any aspect of business done by the Bank in the United States.

18.   Any and all documents concerning any statistical information prepared by or on behalf of the Bank concerning the amount and nature of business done by the Bank in the United States.

19.   Any and all documents concerning any charitable contributions made by the Bank to persons or entities located in the United States.

20.   Any and all documents concerning the Bank's efforts to transfer documents relevant to AremisSoft to the United States.

21.   Any and all documents relied upon by the Bank in bringing its Motion to Dismiss the Complaint.