UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------x
                                                   :
JOSEPH P. LASALA and                               :
FRED S. ZEIDMAN, as CO-TRUSTEES     :    No. 09-CV-00968 (JAP) (DEA)
of the AREMISSOFT CORPORATION
LIQUIDATING TRUST,                                 :    Motion Returnable:
                                                        January 19, 2010
                    Plaintiffs,     :

              v.                                   :

MARFIN POPULAR BANK PUBLIC          :    Electronically Filed
COMPANY, LTD.,
                                                   :
                    Defendant.
                                    :    Oral Argument Requested
---------------------------------------------------x


**DEFENDANT MARFIN POPULAR BANK'S OPPOSITION TO
PLAINTIFFS' MOTION FOR A STAY OF FURTHER CONSIDERATION
OF THE MOTION TO DISMISS AND OTHER REQUESTED RELIEF**


| | |
|---|---|
| LOWENSTEIN SANDLER PC | ALLEN & OVERY LLP |
| Robert J. Kipnees | Todd S. Fishman |
| 65 Livingston Avenue | 1221 Avenue of the Americas |
| Roseland, New Jersey 07068 | New York, New York 10020 |
| (973) 597-2500 | (212) 610-6300 |
| rkipnees@lowenstein.com | todd.fishman@newyork.allenovery.com |

*Attorneys for Defendant
Marfin Popular Bank Public Co Ltd*


Dated: January 4, 2010

In a frantic bid to delay the Court's decision on Marfin Popular Bank's pending motion to dismiss, the Trustees resort to the charge of document destruction. But this charge is an illusion: the Trustees's papers are based on a false predicate, are bereft of facts establishing that any spoliation has occurred and are comprised entirely of accusations contingent on the insincere speculation that future examination of the facts might uncover misconduct. Rather than enter this ranting contest and return fire in kind, the Bank will concern itself with the facts and work to refute each of the points advanced by the Trustees.

*First*, the linchpin of the Trustees's charge is the purported discrepancy between the number of documents they claim were transferred by the Bank to its counsel in the United States ("five to six boxes of documents") and a smaller stack of documents recently produced by the Bank in Cyprus in response to a subpoena served in the pending litigation commenced by the Trust against Lycourgos Kyprianou and his co-conspirators in Cyprus ("approximately two and one-half inches thick").[1] (See Pl. Mem. at 4-5.) There is no discrepancy and the Trustees's assertion that one exists is knowingly false.

On August 26, 2009, the Trustees's counsel Mr. Hirsch telephoned the undersigned counsel for the Bank to inquire about the nature of the documents transferred from the Bank under Magistrate Judge Arpert's Memorandum Opinion and Order dated August 7, 2009 (the "August 7, 2009 Order"), and to discuss other matters relating to this litigation. (Declaration of Todd S. Fishman ("Fishman Decl.") ¶ 4, submitted herewith.) On the issue of documents, the undersigned counsel informed the Trustees's counsel: (i) that Allen & Overy received documents

---

[1]  References to Plaintiffs' Memorandum of Law filed December 15, 2009 are shown as "Pl. Mem. at ___" and references to the Declaration of Hal M. Hirsch are shown as "Hirsch Decl. ¶ ___."

from the Bank's operations in Cyprus and the United Kingdom but had not fully examined them, (ii) that Allen & Overy had received documents in both hard copy and in electronic form and (iii) that Allen & Overy was waiting to receive additional documents from the Bank's subsidiary in Athens, Greece, the precise amount unknown at the time. (Fishman Decl. ¶ 4.) Thus, the undersigned counsel initially estimated to the Trustees's counsel that Allen & Overy expected to receive, in total, approximately four to six banker's boxes worth of documents. (Fishman Decl. ¶ 4.) About two weeks later, on a September 10, 2009 telephone call, the undersigned counsel sought to clarify the number of documents received from the Bank. (Fishman Decl. ¶ 8.) During the call, the undersigned counsel told the Trustees's counsel that the initial estimate had overstated the volume of documents received from the Bank. The Trustees's counsel responded: "I don't care about the amounts." (Fishman Decl. ¶ 8.) Having squarely raised this matter with the Trustees's counsel -- and in light of counsel's dismissive response -- there was no need to further address the issue.

As a result, there is no good-faith basis to assert that wrongful destruction of documents has occurred in this case.[2] The Trustees have taken an initial estimate of documents, sought to transform it into a definitive count of the documents produced and then attempted to use that count, misleadingly, to impugn the veracity of the Bank in two separate court proceedings. The simple fact is that, in total, Allen & Overy holds approximately one box of individual, non-duplicative documents collected from the Bank's operations in Cyprus, the United Kingdom and

---

[2] The Trustees cannot point to a single written statement by the Bank or its counsel which specifies the number of documents transferred to the United States under the August 7, 2009 Order. In addition, at no point did the Trustees's counsel memorialize in written correspondence their version of the conversations with the Bank's counsel on the subject. Rather, all the Trustees can do is weakly point to their *own* non-contemporaneous statements made about the number of Bank documents, buried in a footnote in their September 23, 2009 supplemental papers. (See Hirsch Decl. ¶ 6.)

2

Greece. (Fishman Decl. ¶ 6.) The Bank in Cyprus produced a subset of those documents as required by the specific requests made in that proceeding. (Fishman Decl. ¶ 9.) Materials not included in the subset of documents produced in Cyprus are documents from the Bank's operations in the United Kingdom and Greece as well as documents relating to accounts referenced only in the complaint filed in this U.S. action. (Fishman Decl. ¶ 9.) Thus, the Trustees's allegations of spoliation are baseless. In turn, there is no cause to delay decision on the Bank's motion to dismiss, to require production of the documents held by Allen & Overy or to entertain any of the alternative remedies proffered by the Trustees.

*Second*, notwithstanding the serious nature of their charge, the Trustees's motion is devoid of any detail showing that destruction of documents has in fact occurred. The Trustees recite the word "spoliation" as an empty mantra, using it no less than 42 times in an 19-page brief. In addition, each of the Trustees's accusations of spoliation is conditional. They charge that the Bank "might" have engaged in the spoliation of evidence -- the word appearing 10 times in plaintiffs' brief -- as if surgically inserting language of conditionality removes this motion from the class of representations to the Court deemed frivolous under Federal Civil Rule 11. (See Pl. Mem. at 2, 7, 13, 15, 16.) Reduced to its core, the Trustees's motion rests on the artful formulation that unspecified "evidence could, *upon further examination*, support a finding that Defendant has willfully destroyed documents during the time period between the issuance of the August 7, 2009 Order and the October 15, 2009 Cyprus proceeding (or, at best, is wrongfully withholding documents from the plaintiff)." (Pl. Mem. at 15 (emphasis supplied).) But simply asserting it does not make it so. For all their rhetoric, the Trustees do not present a single fact that supports their charge of mishandling of documents.

3

*Third*, adverting to a fire that took place in the Bank's central archive facility on January 21, 2009, a date prior to when the Bank received notice of the complaint in this action, the Trustees attempt to raise the specter that the Bank is a serial spoliator of documents. This accusation is false as well. The official report of the Cyprus police and the report of the loss adjuster both (i) ruled out criminal actions as the cause of the fire and (ii) established that the fire was caused by the activation of the fire suppression system following a construction accident at the premises. (See Fishman Decl. ¶ 10 & Exs. C, D & E.)

As detailed in those reports, the relevant facts surrounding the origins of the fire at the Bank's archive facility are as follows: The Bank leases the facility from Phoenix Investments Ltd. On January 21, 2009, the owner of the facility conducted maintenance work on the facility. As part of that work, the owner sought to replace a metal water tank with a plastic tank, which was positioned on the roof of the facility. When removing the metal container from the roof with a fork-lift, the container capsized. This caused water to spill onto an electrical grid which, in turn, caused a short circuit and the activation of the fire suppression system. The fire extinguishing agent (an aerosol) caused the temperature within the warehouse to exceed 400°C, the auto ignition temperature of stored paper files. This resulted in the near total destruction of the warehouse. In light of the accidental circumstances that led to the fire, no fault of any kind can be attributed to the Bank.

*Fourth*, animating the Trustees's motion are its constant, yet improper, efforts to obtain pre-answer discovery. As the Court is aware, the Bank's motion to dismiss is fully briefed, oral argument was presented on October 13, 2009 and the parties are now awaiting the Court's decision. Attendant to the Bank's motion, plaintiffs have filed two applications seeking jurisdictional and forum-related discovery, one motion on July 6, 2009 (Docket No. 32) and a

4

second "supplemental" motion on September 23, 2009 (Docket No. 50). Despite the fact that there has been no activity in this case since the October 13, 2009 argument, this is now the Trustees's third application for discovery. The piling on of motions by the Trustees, however, are all for naught. As the Supreme Court recently intoned: "the doors of discovery" are not unlocked "for a plaintiff armed with nothing more than conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). Unless and until the Court determines that the Bank is amenable to personal jurisdiction in New Jersey, that the District of New Jersey offers the Bank a convenient forum, that the complaint adequately pleads a claim for relief and that any claim is timely filed under the applicable statute of limitations, the Trustees are not entitled to discovery.

*Fifth*, none of the cases cited by the Trustees remotely supports their suggestion that, as an alternative remedy, a special master should be appointed to conduct a review of the documents held by the Bank's U.S. counsel. (See Pl. Mem. at 11.) In the first instance, the Trustees cite Yacavino v. Visceglia, 2006 WL 2033895 (N.J. Super. Ct. App. Div. 2006). But Yacavino is wholly unrelated to wrongful withholding of documents and, instead, concerns the appointment of a special master to analyze the merits of the plaintiffs' breach of contract claim. In other cases cited, a special master was appointed in circumstances having nothing to do with this action. In Grider v. Keystone Health Plan Central., Inc., 580 F.3d 119, 125-26 (3d Cir. 2009), a special master was appointed simply because the parties could not meet the original discovery deadlines set by the court and, in Wachtel v. Health Net, Inc., 482 F.3d 225, 227-28 (3d Cir. 2007), an appointment was made for the sole purpose of determining whether certain documents listed on defendant's privilege log were discoverable. For the fourth case on which the Trustees rely, the district court appointed a special master only after a detailed investigation and report conclusively established that the defendant engaged in document destruction. See In

5

re Prudential Ins. Co. of Am. Sales Practices Litig., 962 F. Supp. 450, 496-97 (D.N.J. 1997). Decidedly, there is no cause to appoint a special master for any purpose, as the Bank has fully complied with the August 7, 2009 Order and the Trustees offer only speculative accusations to suggest otherwise.

*Sixth*, the Trustees's motion proves too much and, contrary to its purpose, serves further to bolster the Bank's motion to dismiss on forum non conveniens grounds. The Trustees disingenuously suggest that dismissal on forum non conveniens grounds in favor of Cyprus will somehow prevent the Trust from ever recovering documents already transferred to the United States. (Pl. Mem. at 10.) Yet, the Trustees's recent actions prove otherwise. In their motion, the Trustees have chronicled steps taken to use a separate proceeding in Cyprus to circumvent the judgment of this Court on the Bank's motion to dismiss and to dictate whether pre-answer discovery in this action is justified under Third Circuit law. With the motion to dismiss pending -- along with the two pending motions seeking jurisdictional and forum-related discovery -- the Trustees caused their Cyprus attorney to issue a subpoena to the Bank in Cyprus as part of the longstanding Cyprus court action against Lycourgos Kyprianou and other perpetrators of the alleged AremisSoft fraud. Those documents were then transferred to the Trustees's U.S. counsel, presumably for use in this case. These actions on the part of the Trustees prove, with great force, that the Trustees are fully able to proceed with this case in Cyprus, where the Bank and virtually all of the main witnesses are located, as opposed to causing the Bank to defend itself in a foreign jurisdiction with which it had no contact.

Accordingly, Marfin Popular Bank respectfully requests that the Court deny in its entirety plaintiffs' application to stay further consideration of the Bank's motion to dismiss and for related relief.

Dated: New York, New York
January 4, 2010

Respectfully submitted,

ALLEN & OVERY LLP

By: _____
Todd S. Fishman
1221 Avenue of the Americas
New York, New York 10020
todd.fishman@allenovery.com

Robert J. Kipnees
LOWENSTEIN SANDLER PC
65 Livingston Avenue
Roseland, New Jersey 07068
rkipnees@lowenstein.com

*Attorneys for Defendant*
*Marfin Popular Bank Public Co Ltd*